1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLACK LIVES MATTER SEATTLE-
KING COUNTY, ABIE EKENEZAR,
SHARON SAKAMOTO, MURACO
KYASHNA-TOCHA, ALEXANDER
WOLDEAB, NATHALIE GRAHAM,
AND ALEXANDRA CHEN,

               Plaintiffs,

    v.

CITY OF SEATTLE, SEATTLE POLICE
DEPARTMENT,

               Defendant.

No. 2:20-cv-00887RAJ

MOTION FOR TEMPORARY
RESTRAINING ORDER

NOTE ON MOTION CALENDAR:
June 9, 2020

Oral Argument Requested

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887)

148463518.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 4

III.    ARGUMENT ......................................................................................................... 12

      A.      Standard for Granting Temporary Relief ............................................. 12

      B.      Plaintiffs Are Likely to Succeed on the Merits Because the City's Use of Force Is Unconstitutional. .................................................................... 13

            1.      The City's Actions Violate the First Amendment ................................... 13

            2.      The City's Actions Violate the Fourth Amendment ............................... 19

      C.      Plaintiffs Will Suffer Irreparable Harm Unless the Court Grants Their Motion ................................................................................................... 21

      D.      The Balance of Equities and Public Interest Weigh in Favor of an Injunction ............................................................................................. 23

IV.     CONCLUSION ...................................................................................................... 24

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) –i

148463518.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## TABLE OF AUTHORITIES

2

PAGE

3

4

CASES

5

*All. for the Wild Rockies v. Cottrell*,
6    632 F.3d 1127 (9th Cir. 2011) ....................................................................13

7  *Allee v. Medrano*,
    416 U.S. 802 (1974)..........................................................................14, 18
8

9  *Am. Beverage Ass'n v. City & Cty. of S.F.*,
    916 F.3d 749 (9th Cir. 2019) ....................................................................23
10

11  *Associated Press v. Otter*,
    682 F.3d 821 (9th Cir. 2012) ..............................................................21, 23
12

  *Cmty. House, Inc. v. City of Boise*,
13    490 F.3d 1041 (9th Cir. 2007) ..................................................................23

14  *Collins v. Jordan*,
    110 F.3d 1363 ( 9th Cir. 1996)............................................................15, 16
15

16  *Connick v. Myers*,
    461 U.S. 138 (1983)....................................................................................13

17  *Cuviello v. City of Vallejo*,
    944 F.3d 816 (9th Cir. 2019) ....................................................................22
18

19  *Drakes Bay Oyster Co. v. Jewell*,
    747 F.3d 1073 (9th Cir. 2014) ..................................................................23
20

21  *Edwards v. South Carolina*,
    372 U.S. 229 (1963)....................................................................................14

22  *Galvin v. Hay*,
    374 F.3d 739 (9th Cir. 2004) ....................................................................14
23

24  *Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) (en banc) ....................................................13
25

26  *Gaudiya Vaishnava Soc'y v. City and Cty. of S. F.*,
    952 F.2d 1059 (9th Cir. 1990) ..................................................................14

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) –ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Graham v. Connor*,
   490 U.S. 386 (1989) .................................................................................................19

*Hague v. Comm. for Indus. Org.*,
   307 U.S. 496 (1939) .................................................................................................14

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ..................................................................................24

*Lacey v. Maricopa Cty.*,
   693 F.3d 896 (9th Cir. 2012) ..................................................................................15

*LaDuke v. Nelson*,
   762 F.2d 1318 (9th Cir. 1985) ................................................................................18

*Liston v. Cty. of Riverside*,
   120 F.3d 965 (9th Cir. 1997) ..................................................................................19

*Logan v. City of Pullman*,
   392 F. Supp. 2d 1246 (E.D. Wash. 2005) ..............................................................19

*Melendres v. Arpaio*,
   695 F.3d 990 (2012) ..........................................................................................18, 23

*N. Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .................................................................................................13

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) .................................................................................................13

*NAACP W. Region v. City of Richmond*,
   743 F.2d 1346 (9th Cir. 1984) ................................................................................14

*Nelson v. City of Davis*,
   685 F.3d 879 (9th Cir. 2012) ............................................................................19, 20

*Pinard v. Clatskanie Sch. Dist. 6J*,
   467 F.3d 755 (9th Cir. 2006) ..................................................................................13

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
   709 F.3d 1281 (9th Cir. 2013) ................................................................................13

*Skoog v. Cty. of Clackamas*,
   469 F.3d 1221 (9th Cir. 2006) ................................................................................13

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ..................................................................................12

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Terminiello v. Chicago,*
 337 U.S. 1 (1949) ................................................................................................14

*Thornhill v. Alabama,*
 310 U.S. 88 (1940) ..............................................................................................14

*United States v. Grace,*
 461 U.S. 171 (1983) ............................................................................................14

*Warsoldier v. Woodford,*
 418 F.3d 989 (9th Cir. 2005) ..............................................................................21

*Young v. Cty. of L.A.,*
 655 F.3d 1156 (9th Cir. 2011) ......................................................................20, 21

**OTHER AUTHORITIES**

Alex Bartick, *Mayor Durkan Announces Temporary Ban on the Use of Tear Gas
 by SPD at Demonstrations* ............................................................................22, 24

First Amendment .................................................................................................. passim

Fourth Amendment ............................................................................................... passim

Annual Report (April 2020),
 https://www.seattle.gov/Documents/Departments/OPA/Reports/2019-Annual-
 Report.pdf ...............................................................................................................7

Centers for Disease Control and Prevention,
 https://emergency.cdc.gov/agent/riotcontrol/factsheet.asp ...................................21

Chase Burns & Rich Smith, *SPD Disperses Crowd with Blast Balls, "Chemical
 Agents," on Eighth Day of Protests Against Police Brutality*, The Stranger
 (June 7, 2020, 1:13 AM),
 https://www.thestranger.com/slog/2020/06/06/43857405/spd-disperses-crowd-
 with-blast-balls-chemical-agents-pepper-spray-on-eight-day-of-protests-
 against-police-brutality ...........................................................................................10

*Chief Best orders temporary ban on tear gas during protests on 8th day of action
 in Seattle area after George Floyd's killing*, Seattle Times (June 5, 2020, 6:34
 AM, updated June 6, 2020, 6:20 AM) .....................................................................10

Cole Miller (KOMO News), Tweet (June 6, 2020 7:41 PM),
 https://twitter.com/ColeMillerTV/status/ 1269459358288494592 .........................15

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – iv

148463518.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Converge, (@WWConverge), Tweet (June 1, 2020 11:06 PM)
https://twitter.com/WWConverge/status/1267699185479938049 ("Pink
Umbrella Video")...........................................................................................7, 8, 10, 11

Evan Bush, Amanda Snyder, and Elise Takahama, *Sparked by death of George
Floyd, Seattle protesters clash with police*, Seattle Times (May 29, 2020, 9:09
PM, updated May 30, 2020, 6:40 PM)....................................................................5

Frances Robles, Audra D.S. Burch, and Matt Furber, *What happened before
George Floyd died*, N.Y. Times (May 29, 2020, 7:58 PM, updated May 30,
2020, 6:40 PM) ......................................................................................................4

https://spdblotter.seattle.gov/wp-content/uploads/2020/06/4860_001.pdf.....................6

Jemima McEvoy, Seattle Police Use Tear Gas Against Protestors Despite City
Ban, Forbes (June 8, 2020, 10:54 AM),
https://www.forbes.com/sites/jemimamcevoy/2020/06/08/seattle-police-use-
tear-gas-against-protestors-despite-city-ban/#791c43415b4b ................................12

Jim Brunner and Christine Clarridge, *Washington State Patrol apologizes for
officer's 'Don't kill them, but hit them hard' instruction regarding Seattle
protesters*, Seattle Times (June 3, 2020, 8:40 AM, updated June 3, 2020, 5:30
PM) ................................................................................................................9, 21

Lewis Kamb & Daniel Beekman, *Seattle mayor, police chief agree to ban use of
tear gas on protesters amid ongoing demonstrations*, Seattle Times (June 5,
2020, 1:06 PM, updated June 6, 2020, 6:28 AM)..................................................10

The Love Bar (@lovebarofficial), Tweet (June 6, 2020, 8:09 p.m.),
https://twitter.com/lovebarofficial/status/1269466387182841857?s=20 ...............10

Lynda V. Mapes, *Seattle demonstrations vent anguish at death of George Floyd
and more, for a 'grieving nation,'* Seattle Times (May 31, 2020, 8:54 PM,
updated June 1, 2020, 6:28 AM)..............................................................................6

Office of Police Accountability processing 12,000 complaints after weekend
demonstrations (June 1, 2020),
https://www.seattle.gov/Documents/Departments/OPA/PressReleases/06-01-
20_OPA-Press-Release-Following-Demonstrations.pdf ..........................................7

Open letter advocating for an anti-racist public health response to demonstrations
against systemic injustice occurring during the COVID-19 pandemic,
available at
https://drive.google.com/file/d/1Jyfn4Wd2i6bRi12ePghMHtX3ys1b7K1A/vie
w (last visited June 7, 2020) .................................................................................21

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – v

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Press Conference with SPD Chief Carmen Best at 1:06, June 7, 2020,
    https://www.facebook.com/Q13FOX/videos/252009629404175/ ..........................................11

SEATECD, *This is the moment it all happened,* Reddit (June 1, 2020, 9:50 p.m.),
    https://www.reddit.com/r/Seattle/comments/gv0ru3/this_is_the_moment_it_al
    l_happened/?utm_content=title&utm_medium=post_embed&utm_name=c736
    02c64f0943ab8ca74390668acd85&utm_source=embedly&utm_term=gv0ru3
    ("The Moment Video").............................................................................................................8

*Seattle area protest updates: City reacts to George Floyd killing, Bellevue
    imposes curfew amid protests,* Seattle Times (May 31, 2020, 11:03 AM,
    updated May 31, 2020, 11:28 PM) ..........................................................................................6

*Seattle-area protests: Police declare a riot as demonstrators gather for fourth day
    to call for police accountability* (June 1, 2020, 2:38 PM, updated June 3, 2020,
    6:34 AM), https://www.seattletimes.com/seattle-news/george-floyd-protests-
    continue-in-seattle-area-demonstrators-expected-to-gather-for-fourth-day-to-
    call-for-racial-justice/.........................................................................................................7, 8

*Seattle-area protests: Police declare a riot as demonstrators gather for fourth day
    to call for police accountability,* Seattle Times (June 1, 2020, 2:38 PM,
    updated June 3, 2020, 6:34 AM).........................................................................................7, 9

*Seattle mayor, police face questions over response to George Floyd protests,
    downtown turmoil,* Seattle Times (May 31, 2020, 9:00 PM, updated June 1,
    2020, 10:40 AM)...................................................................................................................5

Seattle Police Department (@SeattlePD), Tweet (June 8, 2020, 12:18 AM),
    https://twitter.com/SeattlePD/status/1269891637448019968....................................................18

Seattle Police Department (@SeattlePD), Tweet (June 7, 2020, 12:18 a.m.),
    https://twitter.com/SeattlePD/status/1269891637448019968...........................................12, 18

*Seattle police use blast balls, pepper spray to try to disperse Saturday protesters,*
    Seattle Times (June 6, 2020, 8:18 AM, updated June 7, 2020, 2:26 AM)............................10

*Seattle Protest Updates: The city reacts to the death of George Floyd,* Seattle
    Times (May 30, 2020, 10:38 AM, updated May 31, 2020, 1:26 AM) .......................................5

Seattle Times (June 2, 2020, 3:19 PM, updated June 3, 2020, 2:20 PM)......................................9

Statement by the Office of the Federal Public Defender (June 8, 2020),
    https://waw.fd.org/ ..................................................................................................................3

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – vi

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Transcript: Mayor Durkan's Remarks at Sunday, June 7 Press Conference, June 7,
2020, https://durkan.seattle.gov/2020/06/transcript-mayor-durkans-remarks-
at-sunday-june-7-press-conference/ ........................................................................................24

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – vii

148463518.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## I.      INTRODUCTION

This is an action to defend the First and Fourth Amendment rights of peaceful protesters demonstrating against police brutality in Seattle.  Irreparable harm will result without a temporary restraining order because the Defendants have shown they are incapable of voluntarily stopping the use of excessive force against protesters that has caused serious injury and risks more. The proven chilling effect of this threat of violence on First Amendment rights is presumed harmful, and the evidence submitted here meets the standard for temporary relief.

Since May 25, thousands of protesters have taken to the streets of Seattle—a classic public forum—to protest the gross, systemic injustices perpetrated by law enforcement against people of color generally and Black people specifically.  On a nightly basis, these protests against police brutality have been met with police brutality. To control and suppress these demonstrations, the Seattle Police Department ("SPD") has shot protesters with rubber bullets and sprayed them with mace.  It has thrown flash-bangs (grenades by any other name) and canisters of chemical agents such as tear gas and pepper spray indiscriminately into crowds to disperse largely peaceful protesters.  Despite a global pandemic, the City of Seattle ("City") has authorized SPD to deploy weapons that cause respiratory distress and induce panic and fleeing, compressing already large crowds into smaller spaces, increasing the likelihood of spread of COVID-19.  Rather than deescalate tensions and respond to the isolated instances in which protesters have threatened public safety with targeted and proportionate force, the Seattle Police Department ("SPD") has used overwhelming and unconstitutional force to disperse peaceful protesters, journalists, and even medical personnel, and the evidence shows a TRO is necessary.

The purpose and effect of this excessive force has been to restrict, frustrate, and deter protesters from exercising their rights under the First and Fourth Amendment to the Constitution: the rights to peaceful assembly, petition for redress of grievances, freedom of speech, freedom of the press, and freedom from excessive force.  Even the threat or prospect of the use of chemical agents and other less lethal weapons has the effect of chilling protest.  In effect, the response by

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) –1

148463518.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the City to these protests has been to curtail the right to protest in the first place.  That is

unconstitutional and the reason Plaintiffs now seek a temporary restraining order ("TRO") to

enjoin the City from further use of weapons such as pepper spray, tear gas, blast balls, and flash-

bang grenades against peaceful protesters.

The Court should grant this motion for three reasons.  ***First***, Plaintiffs are likely to

succeed on the merits of their First and Fourth Amendment claims.  The City's authorization of

the use of less-lethal weapons to control and suppress chills Plaintiffs' right to free speech

constitutes retaliation in violation of the First Amendment.  The United States Supreme Court

has upheld preliminary injunctions based on the First Amendment where police action chills

people from exercising their First Amendment rights.

The City's policies and practices have been overbroad and underinclusive: rather than

focus on arresting, the SPD has hurled blast balls and canisters of tear gas and pepper spray at

entire crowds of peaceful protesters.  A few days ago, 26 elected officials urged Seattle Mayor

Jenny Durkan and SPD Chief Carmen Best "to end the damage that SPD has caused by

overreaction to mostly peaceful protests," highlighting that "[i]t is well documented that peaceful

protests are being targeted by law enforcement and turned into violent conflict."[1]

The City's actions also violate the Fourth Amendment prohibition on excessive force,

and the First Amendment rights at stake strengthen that claim.  The City's authorization of the

use of less-lethal weapons against protestors as a means of "crowd control," absent any imminent

and specific threat to public safety, is inherently excessive, and violates the Fourth Amendment.

The City's own leaders—including the Mayor and most of the City Council—have

acknowledged that the SPD's response to these protests have been disproportionate and

improper; but those condemnations have not stopped SPD from continuing these unconstitutional

tactics.  The City's own Civil Rights Director recently stated that City employees fear for their

own public safety—not because of protesters, but because of their own police force.  The Office

---

[1] Declaration of David A. Perez ("Perez Decl."), Ex. 2 (6/7/2020 Letter).

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 2

148463518.6

1    of the Federal Public Defender for the Western District of Washington recently urged SPD "to

2    stop using brutal tactics on peaceful protesters—including tear gas, flash-bang grenades, pepper

3    spray, rubber bullets, tasers, and batons."[2]

4             *Second*, Plaintiffs are likely to suffer irreparable harm if an injunction does not issue.  It

5    is well-established that the loss of constitutional rights qualifies as irreparable harm, particularly

6    where the First Amendment is concerned.  As Plaintiffs' testimonial and video evidence

7    confirms, the SPD's actions have the effect of blocking demonstrators from fully exercising their

8    First Amendment rights.  The accompanying declarations demonstrate that the City's actions

9    chill Plaintiffs' prospective exercise of their rights.

10            These tactics also cause irreparable harm under the Fourth Amendment.  On June 5, the

11   City announced that it would "temporarily" stop using tear gas.  By then, the City had

12   replenished its stock of pepper spray and flash bangs, which it had been running low on, so the

13   SPD was able to resume deploying pepper spray canisters, which had a similar effect of

14   indiscriminately gassing peaceful protesters.  The tear gas ban was short-lived: in the early

15   morning hours of June 8, SPD deployed an arsenal of tear gas against protestors so thick, the gas

16   shrouded dozens of SPD officers on bicycles riding down the once-filled street.  Night after

17   night, peaceful protesters have been met with violence and disproportionate force in violation of

18   the First and Fourth Amendments, with no end in sight.

19            *Third*, the balance of equities and public interest tilt sharply in favor of Plaintiffs because

20   this balance must always be struck in favor of preventing a violation of constitutional rights,

21   especially where the challenged action harms not just the Plaintiffs but many similarly situated

22   people seeking to exercise their First Amendment rights.  Rather than develop a narrowly

23   tailored policy to deal with the relatively few disruptive protesters, the City has chosen an

24   overbroad and underinclusive one: punish all protesters with blast balls, tear gas, pepper spray,

25   rubber bullets, and other force, rather than specifically deal with any individual protesters who

26

---

[2] Statement by the Office of the Federal Public Defender (June 8, 2020), https://waw.fd.org/.

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 3

148463518.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

allegedly caused damage.  Whatever interest the City might have in crowd control does not and cannot justify continuing to deploy less-lethal weapons against gassing peaceful protesters. Moreover, an injunction is in the public interest because public health officials have made clear that the use of chemical agents—such as tear gas and pepper spray—poses a significant risk of spreading COVID-19.

Because the City has and continues to pursue a policy of excessive force against peaceful protesters in violation of their First and Fourth Amendment rights, Plaintiffs request that the Court issue an order enjoining the indiscriminate use of less-lethal on peaceful demonstrators.[3]

## II.    BACKGROUND

On Monday, May 25, 2020, George Floyd was murdered in Minneapolis, Minnesota. Mr. Floyd, a Black man, was accused of a non-violent offense and arrested by Officer Derek Chauvin, a white officer of the Minneapolis Police Department ("MPD"), and three other officers.  Officer Chauvin pressed his knee—and the full weight of his body—into Mr. Floyd's neck as Mr. Floyd lay pinned to the ground for eight minutes and 46 seconds.  Mr. Floyd struggled to breathe and pleaded for both mercy and his mother.  Rather than allow Mr. Floyd to breathe, other officers held his legs or stood by, watching as Mr. Floyd began to die.  Among Mr. Floyd's last words were, "please, please, please, I can't breathe."  During the last two minutes and 53 seconds, Mr. Floyd was non-responsive.  Mr. Floyd died at the scene, a victim of excessive use of force.  But Mr. Floyd was not the first victim of such force, nor, unfortunately, will he be the last.  The words "I can't breathe" have been heard before in a similar context and have become a rallying cry for those seeking racial justice and an end to discriminatory and unconstitutional police practices.[4]

---

[3] Plaintiffs conferred over the phone with counsel for the City and informed them that they would be requesting the relief sought.  Perez Decl. ¶ 2.  The City did not indicate whether they oppose the relief sought herein, but Plaintiffs assume that the City opposes such relief.

[4] *See generally* Frances Robles, Audra D.S. Burch, and Matt Furber, *What happened before George Floyd died*, N.Y. Times (May 29, 2020, 7:58 PM, updated May 30, 2020, 6:40 PM), https://www.seattletimes.com/nation-world/what-happened-before-george-floyd-died/.

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

After George Floyd's murder, demonstrators gathered around the Seattle area on a daily basis to protest police brutality. These protesters have been overwhelmingly peaceful but have been met with overwhelming police brutality.

On May 29, the first day of protests in Seattle, SPD officers in riot gear responded to protests by deploying pepper spray and flash bang grenades to disperse the crowd and sow panic and disorder among the protesters.[5] Video surfaced of an SPD officer punching a man being held to the ground.[6]

On May 30, SPD officers continued using chemical irritants and flash-bang grenades on protesters and engaged in other violent tactics, including pepper-spraying a young girl[7] and randomly throwing a flash-bang grenade or tear gas into the crowd.[8] Protestors in downtown Seattle were hit with pepper spray, flash-bang grenades, and tear gas without warning, let alone an order from SPD to move or disperse.[9]  *See e.g.*, Declaration of Alexandra Chen ("Chen Decl.") ¶¶ 4-5; Declaration of Nathalie Graham ("Graham Decl.") ¶ 3 ("They deployed tear gas, which filled the street like plumes of smoke … Its effects were so powerful, so painful, and so alarming that I was physically unable to remain in the intersection. As a result, I was unable to continue reporting on that incident."). That afternoon, Plaintiff Alex Woldeab and his partner attended a peaceful protest at Westlake Park. Declaration of Alex Woldeab ("Woldeab Decl.") ¶ 3. Around 3:45 p.m., he heard loud explosions that sounded like SPD deploying flash-bang grenades. He and his partner moved to a crowd gathering at 5th and Pine with their hands up chanting "hands up, don't shoot." *Id.* SPD shot tear gas near where Mr. Woldeab and his

---

[5] Evan Bush, Amanda Snyder, and Elise Takahama, *Sparked by death of George Floyd, Seattle protesters clash with police*, Seattle Times (May 29, 2020, 9:09 PM, updated May 30, 2020, 6:40 PM), https://www.seattletimes.com/seattle-news/protesters-break-windows-clash-with-police-in-downtown-seattle/.

[6] *Seattle Protest Updates: The city reacts to the death of George Floyd*, Seattle Times (May 30, 2020, 10:38 AM, updated May 31, 2020, 1:26 AM), https://www.seattletimes.com/seattle-news/protest-updates-as-the-country-reacts-to-the-death-of-george-floyd-follow-the-latest-developments-in-seattle-and-elsewhere/.

[7] Declaration of Abie Ekenezar ("Ekenezar Decl.") ¶ 11.

[8] *Seattle mayor, police face questions over response to George Floyd protests, downtown turmoil*, Seattle Times (May 31, 2020, 9:00 PM, updated June 1, 2020, 10:40 AM), https://www.seattletimes.com/seattle-news/politics/seattle-mayor-police-face-questions-over-response-to-george-floyd-protests-downtown-turmoil/.

[9] *Id.*

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

partner stood, anyway.  He and his partner felt the effects of tear gas immediately, burning eyes and difficulty breathing.  They immediately left the protest.

Near 5th Avenue and Cherry, Alexandra Chen was marching with a friend, when SPD, without warning, fired flash-bang grenades into the crowed.  The gas came next.  It got caught in her eyes, and under the mask she wore to protect herself from COVID-19.  Ms. Chen lost sight of her friend, who had been hit by shrapnel.  After that, they left the protest.  Chen Decl. ¶¶ 5-12.

Close by on East Pine, Nathalie Graham (a journalist) saw a truck playing music with protestors dancing around it.  It was a joyful scene until SPD "threw a flash bang grenade into the crowed without warning.  They deployed tear gas seconds later."  Graham Decl. ¶¶ 6-7.  At this point she decided to leave the protest because she feared for her safety.  *Id.* ¶ 9.

The violence by SPD continued as the weekend wore on.  On Sunday, May 31, Seattle Police Chief Carmen Best also expressly authorized the use of tear gas on protestors.[10]  That day, the SPD again deployed flash-bang grenades, pepper spray, and blast balls against protesters and militarized the streets of downtown Seattle despite mostly peaceful protests.[11]

In response to police brutality during the first weekend of protests (May 29-31), the Seattle Office of Police Accountability received about 12,000 individual complaints of abusive conduct by SPD, including SPD officers placing a knee on the neck area of two arrested people,

---

[10] https://spdblotter.seattle.gov/wp-content/uploads/2020/06/4860_001.pdf

[11] Lynda V. Mapes, *Seattle demonstrations vent anguish at death of George Floyd and more, for a 'grieving nation,'* Seattle Times (May 31, 2020, 8:54 PM, updated June 1, 2020, 6:28 AM), https://www.seattletimes.com/seattle-news/seattle-demonstrations-vent-anguish-at-death-of-george-floyd-and-more-for-a-grieving-nation/ ("There were a couple of tense moments, with police setting off flash bangs and pepper spray on Fourth Avenue, but the protests were mostly peaceful as of Sunday evening"); *see also Seattle area protest updates: City reacts to George Floyd killing, Bellevue imposes curfew amid protests*, Seattle Times (May 31, 2020, 11:03 AM, updated May 31, 2020, 11:28 PM), https://www.seattletimes.com/seattle-news/seattle-protest-updates-on-day-2-of-curfew-the-city-reacts-to-the-death-of-george-floyd/.

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 6

148463518.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

SPD officers covering badge numbers, and SPD Officers failing to record activity on their body cameras.[12]  For all of 2019, the Office of Police Accountability received just 928 complaints.[13]

On June 1, SPD unleashed tear gas on peaceful protesters chanting on Capitol Hill after SPD officers escalated the confrontation.  Video from the front line of the Capitol Hill protest shows largely peaceful crowds exercising their First Amendment rights.  Converge, (@WWConverge), Tweet (June 1, 2020 11:06 PM) https://twitter.com/WWConverge/status/1267699185479938049 ("Pink Umbrella Video"); *see also* Declaration of Omari Salisbury ("Salisbury Decl.") ¶ 3 (link to June 1 video).[14]  These peaceful protestors were behind a police barricade, one casually speaking with police officers on the other side of the barricade, another trying to de-escalate the situation.  *Id.*  Yet they were hit with pepper spray, flash-bang grenades, and later tear gas and blast balls without provocation. *Id.*; Declaration of Muraco Kyashna-tochá ("Kyashna-tochá Decl.") ¶¶ 3-6.  The first escalation was the pepper spray.  And it all started when an SPD officer tried to pull away a protestor's pink umbrella.  Pink Umbrella Video; Salisbury Decl. ¶ 3 (June 1 video).  There was no warning before the SPD officer hit protestors with pepper spray, nor were there any audible warnings from the video about what came next.  Salisbury Decl. ¶ 3 (June 1 video).  One video shows an officer, behind the front lines, holding a spray can above his head and spraying gas into the crowd and hitting protestors well behind the front line.  *Id.* at 0:33.  This led many more officers

---

[12]  Office of Police Accountability processing 12,000 complaints after weekend demonstrations (June 1, 2020), https://www.seattle.gov/Documents/Departments/OPA/PressReleases/06-01-20_OPA-Press-Release-Following-Demonstrations.pdf; *Seattle-area protests: Police declare a riot as demonstrators gather for fourth day to call for police accountability*, Seattle Times (June 1, 2020, 2:38 PM, updated June 3, 2020, 6:34 AM), https://www.seattletimes.com/seattle-news/george-floyd-protests-continue-in-seattle-area-demonstrators-expected-to-gather-for-fourth-day-to-call-for-racial-justice/.

[13]  Office of Police Accountability 2019 Annual Report (April 2020), https://www.seattle.gov/Documents/Departments/OPA/Reports/2019-Annual-Report.pdf.

[14]  *Seattle-area protests: Police declare a riot as demonstrators gather for fourth day to call for police accountability* (June 1, 2020, 2:38 PM, updated June 3, 2020, 6:34 AM), https://www.seattletimes.com/seattle-news/george-floyd-protests-continue-in-seattle-area-demonstrators-expected-to-gather-for-fourth-day-to-call-for-racial-justice/.

to begin spraying gas into the crowd.  *Id.* at 0:37-0:43.  The crowd began to disperse.[15]  The Moment Video 0:34.  Then, without warning, came the flash-bang grenades.  *Id*. at 0:35. Officers fired over a dozen flash-bang grenades into the dispersing crowd, trapping some protestors, and continuing to fire after the crowd left the barricade, *Id.* at 0:35 to 0:55.  Many remaining protestors had their hands in the air.  Pink Umbrella Video at 1:12-1:28.  Then came the tear gas canisters, fired into a quickly emptying intersection.  The Moment Video 0:55-1:51.

Plaintiff Muraco Kyashna-tochá was at the Capitol Hill barricade that evening, protesting peacefully.  In fact, she appears in the June 1, 2020 video in the Salisbury Declaration.  Without provocation, SPD officers began pepper spraying her and others at the barricade.  "There was pepper spray on the whole right side of my body, my eye, my ear, my hair, and my mask.  It took almost a minute for the pain to take effect.  After a minute I could no longer see clearly.  But I knew the police threw flash bangs grenades—because I could hear their loud bangs and see the bright flashes of light."  Kyashna-tochá Decl. ¶ 5.  A two-hour shower after the incident wasn't enough to stop her body from burning.  Ms. Kyashna-tochá never heard the SPD issue any warnings that they were about to use pepper spray, or worse, against the protestors.  But if SPD had issued such warnings, she would have moved back "at least half a block away" to avoid confrontation.  *Id.* ¶¶ 3-10.

Mr. Woldeab and his partner were also injured by SPD's use of force on June 1 in Capitol Hill.  Woldeab Decl. ¶ 7.  As they turned the corner onto E Pike St and 11th Ave Mr. Woldeab and his partner were immediately hit with flash-bang grenades and tear gas.  *Id*. ¶ 6.  They had no warning.  *Id*.  Mr. Woldeab's partner stumbled, choking on the fumes, and was temporarily blinded.  *Id*. ¶ 7.  The gas blinded and suffocated Mr. Woldeab too.  *Id*.  Finally, they reached a

---

[15] SEATECD, *This is the moment it all happened,* Reddit (June 1, 2020, 9:50 p.m.), https://www.reddit.com/r/Seattle/comments/gv0ru3/this_is_the_moment_it_all_happened/?utm_content=title&utm_medium=post_embed&utm_name=c73602c64f0943ab8ca74390668acd85&utm_source=embedly&utm_term=gv0ru 3 ("The Moment Video"); *see also Seattle-area protests: Police declare a riot as demonstrators gather for fourth day to call for police accountability* (June 1, 2020, 2:38 PM, updated June 3, 2020, 6:34 AM), https://www.seattletimes.com/seattle-news/george-floyd-protests-continue-in-seattle-area-demonstrators-expected-to-gather-for-fourth-day-to-call-for-racial-justice/.

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-00887) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

volunteer, civilian medic who doused water and milk in their eyes to relieve the pain. *Id.* The couple did not return to the protests that night.[16] *Id.*

The SPD's use of these chemical agents in the middle of a global health crisis is even more troubling because they increase the potential for COVID-19 to spread in the community. See Declaration of William Daniell ("Daniell Decl.") ¶¶ 53-54, 57. The SPD declared the June 1 incident a "riot,"[17] but videos of the protest make clear that SPD—not the protesters—instigated any riot that occurred. Salisbury Decl. ¶ 3. (Video of June 1 protest).

On Tuesday, June 2, SPD again deployed tear gas, pepper spray, blast balls, flash-bang grenades, and rubber bullets, causing protesters to flee in fear.[18] *See* Salisbury Decl. ¶ 3 (June 2 video 1:19-5:11). SPD even employed this means as protestors retreated with their hands up. *Id.* But the vast majority of protestors at 11th and Pine that night had been peaceful. Graham Decl., ¶¶ 10-11. This conduct aligns with what a Washington state Trooper told his team working alongside SPD to not "kill" protestors, but to "hit them hard."[19]

By Friday, June 5, SPD had gotten so out of control that Mariko Lockhart, the City's own Director of the Office for Civil Rights, wrote an open letter in which she denounced SPD's excessive response, expressly noting that she had "heard from other City leadership and

---

[16] Mr. Woldeab can't sleep at night because of his encounters with SPD. He incessantly checks social media to ensure his friends are safe. "I know that when I attend a protest where the Seattle Police Department is present I will never be safe." He feels the same for those he holds dear. Woldeab Decl. ¶ 11.

[17] *Seattle area protests: Police declare a riot as demonstrators gather for fourth day to call for police accountability*, Seattle Times (June 1, 2020, 2:38 PM, updated June 3, 2020, 6:34 AM), https://www.seattletimes.com/seattle-news/george-floyd-protests-continue-in-seattle-area-demonstrators-expected-to-gather-for-fourth-day-to-call-for-racial-justice/ ("videos of the officers spraying the crowd and deploying flash bangs quickly spread on social media Monday night; many of those who shared them said the footage showed the police were escalating the confrontation.").

[18] *Seattle-area protests: Demonstrators gather for fifth day to call for peace and change after George Floyd's* death, Seattle Times (June 2, 2020, updated June 3, 2020, 2:20 PM), https://www.seattletimes.com/seattle-news/seattle-area-protests-demonstrators-expected-to-gather-for-fifth-day-to-call-for-peace-and-change-after-george-floyds-death/.

[19] Jim Brunner and Christine Clarridge, *Washington State Patrol apologizes for officer's 'Don't kill them, but hit them hard' instruction regarding Seattle protesters*, Seattle Times (June 3, 2020, 8:40 AM, updated June 3, 2020, 5:30 PM), https://www.seattletimes.com/seattle-news/washington-state-patrol-apologizes-after-officer-tells-his-team-dont-kill-them-but-hit-them-hard-in-reference-to-seattle-protesters/ (with embedded video).

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

employees that they fear for their personal safety, not because of other protestors but because of the police." Perez Decl., Ex. 1.[20]

The City then announced a temporary halt to tear gas for 30 days.[21] The City made clear that this "temporary ban only applies to tear gas — not flash bang grenades, pepper spray and other crowd-control tools and tactics."[22] And it left open the possibility that members of SPD's SWAT team could still deploy tear gas on protesters.

The next night, June 6, SPD again responded to peaceful protests by unleashing violence to disperse protesters, including by throwing blast balls, flash-bang grenades, and canisters of pepper spray at the crowd.[23]

Videos of the June 6 incident show that the police began throwing blast balls and shooting gas into the packed crowd not because of any imminent threat to public or officer safety, but because they wanted a large, densely packed crowd to quickly and collectively move back five feet. The Love Bar (@lovebarofficial), Tweet (June 6, 2020, 8:09 p.m.), https://twitter.com/lovebarofficial/status/1269466387182841857?s=20; *see also* Salisbury Decl. ¶ 3.[24] Then, at least two SPD officers started spraying the protesters, with one officer spraying into a group of protesters even as protesters were moving away from the barricade. *Id.* 0:43-0:45. SPD officers began forcefully moving protesters backward. *Id.* 0:55-1:10. Then again, as

---

[20] *See also Chief Best orders temporary ban on tear gas during protests on 8th day of action in Seattle area after George Floyd's killing*, Seattle Times (June 5, 2020, 6:34 AM, updated June 6, 2020, 6:20 AM), https://www.seattletimes.com/seattle-news/seattle-area-protests-demonstrators-plan-eighth-day-of-action-after-george-floyds-killing/.

[21] *Id.*

[22] *See* Lewis Kamb & Daniel Beekman, *Seattle mayor, police chief agree to ban use of tear gas on protesters amid ongoing demonstrations*, Seattle Times (June 5, 2020, 1:06 PM, updated June 6, 2020, 6:28 AM), https://www.seattletimes.com/seattle-news/watchdog-groups-to-seattles-mayor-and-police-chief-spd-should-stop-using-tear-gas-on-demonstrators/.

[23] *Seattle police use blast balls, pepper spray to try to disperse Saturday protesters*, Seattle Times (June 6, 2020, 8:18 AM, updated June 7, 2020, 2:26 AM), https://www.seattletimes.com/seattle-news/seattle-area-protests-demonstrators-prepare-for-ninth-day-of-action-after-george-floyds-killing/.

[24] Chase Burns & Rich Smith, *SPD Disperses Crowd with Blast Balls, "Chemical Agents," on Eighth Day of Protests Against Police Brutality*, The Stranger (June 7, 2020, 1:13 AM), https://www.thestranger.com/slog/2020/06/06/43857405/spd-disperses-crowd-with-blast-balls-chemical-agents-pepper-spray-on-eight-day-of-protests-against-police-brutality.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

occurred only a few days prior, SPD officers began using pepper spray and blast bombs without warning against the protesters as they moved backwards, away from the officers.  *Id.* 1:11-1:27. Setting aside the logistical impossibility of having a large crowd move back together five feet, the protesters' overall delay or reluctance in moving back did not justify the gratuitous and excessive force that the police employed.  The police faced no threat of physical harm to themselves or others, and there was no threat of property damage either.

On June 7, Chief Best did not disavow the extreme police violence of June 6, responding only that SPD would be considering changes to its "footprint," "format," and "posture" of "police out here on the scene." Press Conference with SPD Chief Carmen Best at 1:06, June 7, 2020, https://www.facebook.com/Q13FOX/videos/252009629404175/.

Later that day, over two dozen leaders signed an open letter condemning "the police tactics used in daily protests," and made clear they are "concerned that the response of the Seattle Police Department (SPD) is escalating the conflict in the streets of Seattle, particularly in Capitol Hill and in communities of color, with their inappropriate use of force." Perez Decl., Ex. 2 (June 7 Letter from City, County, and State Officials); *see also* Perez Decl., Ex. 3 (June 8 Letter from elected officials of color representing City of Seattle).

This letter urges the City "to change [its] tactics" and "to end the damage that SPD has caused by overreaction to mostly peaceful protests" and makes clear that "continued violence by the police will only polarize this necessary conversation in unproductive ways."  The letter goes on to make the following observations about the harmful effects of SPD's use of force against protesters:

> This harms the relationship between law enforcement and the community, harms our city, and harms law enforcement officers and their families in the form of emotional trauma. Physical violence is being perpetrated against members of our community by SPD. Emotional trauma and extraordinary racial aggression is being inflicted. Constitutional rights are at risk. Police tactics are exacerbating health risks amidst a devastating respiratory pandemic. The public health crisis of law enforcement anti-black

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 11

148463518.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

> violence is so extreme as to have eclipsed the previous disease that
> gripped our city . . .
>
> Deploying police in riot gear to form a wall of officers positioned
> against peaceful protesters is not conducive to de-escalation and
> healing; a moratorium on tear gas that is then replaced with pepper
> spray is not de-escalation.

Perez Decl., Ex. 2; *see also id*., Ex. 3 ("[L]aw enforcement's response to people exercising their

First Amendment right to freedom of speech and demonstration must shift right now").

None of it mattered: in the early morning hours of June 8, a day before filing this action,

and two days after the Mayor Durkan and Chief Best announced the "ban" on tear gas, SPD used

what appeared to be such large quantities of tear gas on protestors that it engulfed the *entire city

block*.[25] More demonstrations are scheduled in Seattle today and in the coming days, including a

statewide walkout and march being promoted by Plaintiff Black Lives Matter Seattle-King

County, among others, scheduled for Friday, June 12.  The City has made no credible efforts to

restrict SPD's ability to deploy excessive force.

## III.   ARGUMENT

### A.   Standard for Granting Temporary Relief

The standard for issuing a temporary restraining order is "substantially identical" to the

standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,

240 F.3d 832, 839 n.7 (9th Cir. 2001).

Plaintiffs who seek a TRO or preliminary injunction must show: (1) that Plaintiffs are

"likely to succeed on the merits," (2)  that Plaintiffs are "likely to suffer irreparable harm in the

absence of preliminary relief," (3)  "that the balance of equities tips in [Plaintiffs'] favor," and 4)

"that an injunction is in the public interest." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d

---

[25] *See* Salisbury Decl. ¶ 6 (June 7 video, starting at 1:29:00); Seattle Police Department, TWITTER (June 7, 2020, 12:18 a.m.), https://twitter.com/SeattlePD/status/1269891637448019968; Jemima McEvoy, Seattle Police Use Tear Gas Against Protestors Despite City Ban, Forbes (June 8, 2020, 10:54 AM), https://www.forbes.com/sites/jemimamcevoy/2020/06/08/seattle-police-use-tear-gas-against-protestors-despite-city-ban/#791c43415b4b.

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 12

148463518.6

1281, 1289 (9th Cir. 2013) (alteration in original) (quoting *Winter*, 555 U.S. at 20). Although not

dispositive by itself, the first of these factors—likelihood of success on the merits—is the "most

important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). However,

"[h]ow strong a claim on the merits is enough depends on the balance of harms: the more net

harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still

supporting some preliminary relief." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1133

(9th Cir. 2011) (quoting *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*,

582 F.3d 721, 725 (7th Cir. 2009)). Thus, while Plaintiff's claims on the merits are extremely

strong, temporary relief would be appropriate even if they were less clearly meritorious given

how sharply the balance of harms tips in Plaintiffs' favor. *See Shell Offshore*, 709 F.3d at 1291.

**B.     Plaintiffs Are Likely to Succeed on the Merits Because the City's Use of Force Is Unconstitutional.**

**1.     The City's Actions Violate the First Amendment**

The First Amendment reflects a "profound national commitment" to the principle that

"debate on public issues should be uninhibited, robust, and wide-open." *N. Y. Times Co. v.

Sullivan*, 376 U.S. 254, 270 (1964). The Supreme Court has consistently commented on the

central importance of protecting speech on public issues. *See, e.g.*, *Connick v. Myers*, 461 U.S.

138, 145 (1983); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982). To prove a

First Amendment retaliation, Plaintiffs must show: (1) they "engaged in a constitutionally

protected activity, (2) the defendant's actions would chill a person of ordinary firmness from

continuing to engage in the protected activity and (3) the protected activity was a substantial or

motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755,

770 (9th Cir. 2006); *see also Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006).

The United States Supreme Court has upheld preliminary injunctions based on the First

Amendment where police action "chill[s] the willingness of people to exercise their First

Amendment rights." *Allee v. Medrano*, 416 U.S. 802, 810 (1974).

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

There is no question that taking to the streets to protest police brutality is at the core of what the First Amendment was designed to protect.  Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment.  *Edwards v. South Carolina*, 372 U.S. 229 (1963); *Thornhill v. Alabama*, 310 U.S. 88 (1940); *NAACP W. Region v. City of Richmond*, 743 F.2d 1346 (9th Cir. 1984).  The traditional public forum consists of streets, sidewalks, and parks—places that have "immemorially been held in trust for use of the public . . . for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939); *accord United States v. Grace*, 461 U.S. 171, 177 (1983); *Gaudiya Vaishnava Soc'y v. City and Cty. of S. F.*, 952 F.2d 1059, 1065 (9th Cir. 1990).  Moreover, "[t]here is a strong First Amendment interest in protecting the right of citizens to gather in traditional public forum locations that are critical to the content of their message, just as there is a strong interest in protecting speakers seeking to reach a particular audience." *Galvin v. Hay*, 374 F.3d 739, 752 (9th Cir. 2004) (holding dispersal of protected First Amendment assembly unconstitutional even though it violated location restriction).  Seattle protestors have chosen to protest near the police precinct on Capitol Hill as a part of their message against police brutality.

Criticism of the government is no less protected when it is angry or even inflammatory. *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949) (Free speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.").

The City's deployment of less-lethal weapons as means of crowd control has trampled upon Plaintiffs' First Amendment rights.  Night after night since May 29, thousands of demonstrators have taken the streets of Seattle to protest against racial injustice and police brutality.  They have been met with a level of force unprecedented in our City's history sufficient to deter a person of ordinary firmness from exercising their First Amendment rights.  In response to alleged (but demonstrably isolated) incidents of protester misconduct, SPD has

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  indiscriminately targeted entire crowds by hurling teargas canisters, pepper spray grenades, and

2  blast bombs.  In doing so, SPD's express purpose has been to "disperse" the protest—i.e., to end

3  it.  *Cf. Lacey v. Maricopa Cty.*, 693 F.3d 896, 917 (9th Cir. 2012) ("It is hard to conceive of a

4  more direct assault on the First Amendment than public officials ordering the immediate arrests

5  of their critics.").

6           In various videos submitted with this motion and with Plaintiffs' complaint, it is clear

7  that SPD begins to disperse crowds with disproportionate and excessive force.  *See, e.g.*, Cole

8  Miller (KOMO News), Tweet (June 6, 2020 7:41 PM), https://twitter.com/ColeMillerTV/status/

9  1269459358288494592; Kyashna-tochá Decl. ¶ 10; Graham Decl. ¶ 6; Chen Decl. ¶¶ 4-5;

10  Woldeab Decl. ¶¶ 7, 11. Blocking or dispersing g a protest "before demonstrators have acted

11  illegally or before the demonstration poses a clear and present danger is presumptively a First

12  Amendment violation."  *Collins v. Jordan*, 110 F.3d 1363, 1371( 9th Cir. 1996). (citing *Carroll*

13  *v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180-81 (1968).

14           In *Collins*, the Ninth Circuit rejected San Francisco's attempts to curtail protests—which,

15  like the protests here, were prompted by an incident of racial injustice—given the unique

16  protections afforded to such activity under the First Amendment:

17                    Demonstrations can be expected when the government acts in
18                    highly controversial ways, or other events occur that excite or
                     arouse the passions of the citizenry. The more controversial the
19                    occurrence, the more likely people are to demonstrate. Some of
                     these demonstrations may become violent. The courts have held
20                    that the proper response to potential and actual violence is for the
                     government to ensure an adequate police presence, and to arrest
21                    those who actually engage in such conduct, rather than to suppress
                     legitimate First Amendment conduct as a prophylactic measure.

22  *Id*. at 1372 (citations omitted).  Rather than "arrest those who actually engage" in violence, the
23
24  SPD has chosen to suppress the legitimate First Amendment rights of everyone at these protests.

25  That is not permitted under the First Amendment.  *Id*. at 1373.

26

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Moreover, SPD's use of force furthers no policy objective.  SPD's actions are both grossly overbroad while simultaneously ineffective to achieve any legitimate aims.  The vast majority of protestors in the last 11 days have been peaceful.  Naturally, SPD's use of force against these peaceful protests targets all protesters indiscriminately, applying the same excessive force to peaceful protestors and bystanders.  *See* Kyashna-tochá Decl. ¶ 5 ("But seemingly without any provocation, the police officers began pepper spraying me and other protestors at the barricade."); Woldeab Decl. ¶ 4 ("We were not being violent to anyone, and we were not destroying or threatening any property.  But SPD still launched chemical agents at us[.]").  But SPD's excessive force is also ineffective in that it is not targeted at apprehending agitators and lawbreakers.  If SPD's aim is to control the crowd and apprehend agitators, it should do that. Launching incendiary grenades, firing rubber bullets, and gassing peaceful protestors does no such thing.

Likewise, the second element of the claim is satisfied because there is no question the evidence demonstrates that SPD's use of excessive force has chilled—and will continue to chill— Plaintiffs from engaging in protected speech and from recording SPD's violations of their First Amendment rights.  The evidence shows police officers using explosive devices and chemical agents against largely peaceful demonstrators to prevent those demonstrators from exercising their First Amendment rights to speak and assemble.  As the June 7, 2020, letter from City, County, and State elected officials makes clear: "It is well documented that peaceful protests are being targeted by law enforcement and turned into violent conflict."  Perez Decl., Ex. 2.

Moreover, SPD appears to be using these explosive devices and chemical agents to inspire fear and break up demonstrations, and it is working to deter protesters and chill the exercise of First Amendment rights:

- "We were almost immediately met with flash bangs and tear gas without any warning. I was stunned. . . ."  Woldeab Decl. ¶¶ 6.

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

- "If the police had announced they were going to pepper spray me I would have moved back at least half a block away.  . . . I am afraid of being pepper sprayed by the police without notice again." Kyashna-tochá Decl. ¶¶ 5, 9-12.

- "I did not participate in any protests between May 30 and June 6 in Seattle because I was too frightened by the violent police response to attend . . . . If the police stopped using blast balls, and indiscriminately using tear gas and pepper spray (and other chemical irritants), I would gladly join the protests and exercise my First Amendment right to assemble."  Sakamoto Decl. ¶¶ 4-6.

The evidence in the record also demonstrates Plaintiffs' likelihood of success on the third element of Plaintiffs' First Amendment claim—that the protected activity be a "substantial or motivating factor" in the use of force.  The City has been explicit that SPD is authorized to use less-lethal weapons as a form of "crowd control" to control and suppress protests, rather than to address individual conduct that poses a threat to public safety.  In addition, the unprecedented nature of the less-lethal force deployed on a regular basis by SPD since the killing of George Floyd is also highly suggestive of the fact that the protesters' speech is that the protected activity be a substantial or motivating factor in SPD's use of force.   Broderick Decl. ¶¶ 6-8, 12; Kyashna-tochá Decl. ¶ 10.  Although people gather to peacefully protest all the time in Seattle, it is only in response to demonstrations against police brutality that SPD has responded with an overwhelming deployment of less-lethal weapons.

The sheer amount of chemical agents that are being indiscriminately thrown at otherwise peaceful protests is objectively unreasonable, suggests that a substantial or motivating purpose of this use of force is to disperse the protesters exercising their First Amendment rights.  In several videos taken early June 8 by a journalist, the street below is covered in plumes of gas and smoke.  Broderick Decl. ¶ 12.  According to the SPD's own Tweet announcing the use of tear gas on June 8, the tear gas was used because a single person blocks away was rumored to have a gun.  Seattle Police Department (@SeattlePD), Tweet (June 7, 2020, 12:18 a.m.),

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

https://twitter.com/SeattlePD/status/1269891637448019968.  Indiscriminately using force against an entire crowd of peaceful protesters because of a report that one person had a gun is not indicative of a targeted response to an individual posing a threat to public safety.  The evidence before the Court is more than enough to allow the Court to draw the inference that the real goal of the SPD's use of less-lethal force was, and is, to stop protesters from protesting police brutality.

Days before, on June 6, SPD justified its June 6 use of pepper spray, flash grenades, and blast balls as a response to protesters throwing "improvised explosives."  To support this claim, SPD posted a picture of the so-called "improvised explosive," which was actually a shattered prayer candle.  *See* Seattle Police Department (@SeattlePD), Tweet (June 8, 2020, 12:18 AM), https://twitter.com/SeattlePD/status/1269891637448019968.

On this record, the Court should grant a TRO. The Supreme Court has expressly held that, "[w]here, as here, there is a persistent pattern of police misconduct, injunctive relief is appropriate." *Allee*, 416 U.S. at 815.  Accordingly, the Ninth Circuit has approved injunctive relief where plaintiffs have alleged the existence of a pattern or practice of unlawful official conduct.  For example, in *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985), the Ninth Circuit approved injunctive relief against warrantless government searches of farmworker housing because "the district court . . . found that the defendants engaged in a standard pattern of officially sanctioned police behavior." *Id.* at 1324; *accord Melendres v. Arpaio*, 695 F.3d 990, 998 (2012).

Plaintiffs have shown an ongoing pattern and practice of police use of SPD excessive force that has been encouraged, tolerated, and ratified by the City. It shows no sign of abating, even after an obviously-ineffectual claim to pause the use of tear gas. Plaintiffs have a real and immediate fear of being again subjected to police use these weapons in circumstances that do not call for such force and that deter and punish peaceful protesting and harm peaceful protesters. As

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 18

148463518.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

long as the protests continue, this harmful and unconstitutional pattern will be repeated absent this Court's intervention.

### 2.     The City's Actions Violate the Fourth Amendment

The Fourth Amendment guarantees the right to be free from excessive force.  Courts analyze claims of excessive force under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).

When the governmental interests at stake are substantial, a greater intrusion upon the Fourth Amendment rights of the person may be justified. Conversely, when the governmental interest is insubstantial, the application of even minimal force may be unreasonable.  When balancing the degree of force used against the governmental interests, "it is the *need* for force which is at the heart of the *Graham* factors."  *Liston v. Cty. of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997)) (emphasis in original) (citation omitted).

Applying these factors, the Ninth Circuit has held that "firing projectiles, including pepperballs, in the direction of individuals suspected of, at most, minor crimes, who posed no threat to the officers or others, and who engaged in only passive resistance," is unreasonable. *Nelson v. City of Davis*, 685 F.3d 867, 880 (9th Cir. 2012) (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1284-95 (9th Cir. 2001)).  Likewise, the Ninth Circuit has "rejected the contention that the use of pepper spray is a 'minimal' intrusion, due to the immediacy and 'uncontrollable nature' of the pain involved."  *Id*. at 878 (citations omitted); *see also Logan v. City of Pullman*, 392 F. Supp. 2d 1246, 1261 (E.D. Wash. 2005).  Thus, the Ninth Circuit has found that the use of pepper spray to disperse protestors can constitute excessive force where it is "unnecessary to subdue, remove, or arrest the protestors," even if protesters failed to heed a police warning. *Young v. Cty. of L.A.*, 655 F.3d 1156, 1167 (9th Cir. 2011) (citation omitted).

The Ninth Circuit has also noted that where the individuals targeted by the police are innocent or at least not engaged in "serious criminal behavior," that "significantly reduce[s] the governmental interest involved."  *Nelson* , 685 F.3d at 80.  In *Nelson*, the Ninth Circuit found

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

that "[a]lthough the officers encountered individuals at various points . . . who threw bottles or other debris at them," that did not justify the use of force against Plaintiff or others around him when the officers "did not see anyone in [Plaintiff's] group throwing bottlers or engaging in any other threatening or dangerous behavior." *Id.* The Ninth Circuit held that even if the officers had issued orders to disperse and the plaintiff did not comply immediately, the failure to comply "could only rise to the level of passive resistance," which the Ninth Circuit has held "neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Id.* at 881; *see also Young*, 655 F.3d at 1165-66.

Here, videos of SPD's conduct and eye-witness accounts reveal the unreasonableness of the City's conduct. The police in these videos are not responding to any immediate threat or public safety need, but instead resorting to extreme tactics for no legitimate reason. Salisbury Decl. ¶ 3 (2:40-4:40); Kyashna-tochá Decl. ¶¶ 5-7("[W]e were still non-violent and police officers continued to avoid eye contact. I did not hear them issue any warnings, and they did not have any masks. But seemingly without any provocation, the police officers began pepper spraying me and other protestors at the barricade."); Ekenezar Decl. ¶ 11 (recorded SPD gassing a young girl on May 30 in downtown Seattle); *id.* ¶¶ 12-22 (I "was shocked" during SPD's June 6 use of excessive force. "The light and sound emitted from weapons the SPD was using made me feel like I was back in Afghanistan again.").

Video evidence demonstrates that SPD responded with extreme tactics to situations that undeniably did not warrant such force, including a dispute over a protestor's umbrella, Salisbury Decl. ¶ 3 (2:40-4:40), and protestors dancing around a truck, Graham Decl. ¶ 6. A law enforcement officer working with SPD prepared his fellow officers by saying: "Don't kill them, but hit them hard."[26]

---

[26] Jim Brunner & Christine Clarridge, *Washington State Patrol apologizes for officer's 'Don't kill them, but hit them hard' instruction regarding Seattle protesters*, Seattle Times (June 3, 2020, 8:40 AM, updated June 3, 2020, 5:30 PM), https://www.seattletimes.com/seattle-news/washington-state-patrol-apologizes-after-officer-tells-his-team-dont-kill-them-but-hit-them-hard-in-reference-to-seattle-protesters/ (with embedded video).

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

These weapons cause far greater harm and trauma than can be justified by the gravity of any threat posed by individual demonstrators during recent protests. *See Young*, 655 F.3d at 1162; *see also* Facts About Riot Control Agents Interim Document, Centers for Disease Control and Prevention, https://emergency.cdc.gov/agent/riotcontrol/factsheet.asp.  In addition, the pepper spray and tear gas are known to cause coughing and spitting, increasing the risk of spreading COVID-19 among the protestors. *See* Daniell Decl. ¶¶ 20, 28, 53-54, 57.  The concern about the impact of the use of chemical agents on protesters during this pandemic led over 2,000 health professionals, led by doctors at the University of Washington, to sign a petition calling attention to these dangers.[27]

These facts all show that Plaintiffs have proven a likelihood of success on their Fourth Amendment claim.

## C.      Plaintiffs Will Suffer Irreparable Harm Unless the Court Grants Their Motion

Peaceful protests in Seattle, the surrounding areas, and across the country continue, and more peaceful protests are planned throughout the week and beyond.  Plaintiffs will suffer immediate and irreparable injury if the City is permitted to continue to violate their civil rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (A "colorable First Amendment claim" is "irreparable injury sufficient to merit the grant of relief.") (internal quotation marks omitted).  Because constitutional violations can often not be adequately remedied through damages, the Ninth Circuit does "not require a strong showing of irreparable harm for constitutional injuries." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019).

---

[27] Open letter advocating for an anti-racist public health response to demonstrations against systemic injustice occurring during the COVID-19 pandemic, available at https://drive.google.com/file/d/1Jyfn4Wd2i6bRi12ePghMHtX3ys1b7K1A/view (last visited June 7, 2020).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Irreparable injury has already occurred in the streets of Seattle through interrupted speech, suppressed speech, deterred speech, and both physical and emotional injury caused by excessive force by SPD on peaceful protestors. Peaceful protestors are leaving Seattle demonstrations out of fear for their personal safety and for the physical injuries sustained at the hands of SPD in exercising their First Amendment rights. Graham Decl. ¶¶ 9,16; Woldeab Decl. ¶ 7. Worse, and demonstrating the need for a TRO, others are afraid to exercise their First Amendment rights and peacefully demonstrate out of fear of SPD's use of excessive force. Declaration of Elliot Grace Harvey ("Harvey Decl.") ¶¶ 2-3; Sakamoto Decl. ¶¶ 3-5; Lachman Decl. ¶ 3.

While Defendants' actions against peaceful protesters on Seattle streets would constitute irreparable harm even under normal circumstances, these times are anything but normal. Seattle and communities across the globe are battling COVID-19, a novel respiratory illness. The use of tear gas and pepper spray has the potential for severe consequences in light of COVID-19. Daniell Decl. ¶¶ 20, 28, 53-54, 57. Exposure to tear gas and pepper spray cause coughing, eye watering, and throat and nose. *Id*. ¶¶ 20, 28. These bodily reactions in turn make people more susceptible to COVID-19. *Id*. ¶¶ 54, 57. Indeed, Public Health-Seattle & King County specifically oppose "the use of tear gas & other respiratory irritants based on the potential to increase COVID-19 spread."[28]

The so-called temporary "ban" on using tear gas by SPD announced by Mayor Durkan and Chief Best is insufficient to prevent further constitutional violations against peaceful protestors for several reasons. First, the "ban" is not mandatory or comprehensive; it is a guideline that has already been breached without warrant or apparent consequences. Second, the "ban" can be reversed at any time. Third, the "ban" only addresses tear gas, but not other weapons employed by SPD such as pepper spray and flash-bang grenades. And fourth, the "ban"

---

[28] Alex Bartick, *Mayor Durkan Announces Temporary Ban on the Use of Tear Gas by SPD at Demonstrations*, KOMO News (June 5, 2020) (quoting Dr. Jeffrey Duchin of Public Health, Seattle and King County).

MOTION FOR TEMPORARY RESTRAINING ORDER (No. 2:20-cv-00887) – 22

148463518.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

did not prevent the constitutional violations that occurred at the intersection of 11th and Pine in Capitol Hill.  Multiple videos and eye-witness accounts confirm SPD used pepper spray and flash-bang grenades against peaceful protestors. *See, e.g*., Salisbury Decl. ¶ 3; Woldeab Decl. ¶ 2; Ekenezar Decl. ¶ 4; Graham Decl. ¶¶ 2, 6; Kyashna-tochá Decl. ¶ 5.  Finally, the City has already broken its own so-called ban, using tear gas against protesters on Capitol Hill early Monday morning.  The "temporary ban" on tear gas apparently lasted only two days.

These injuries to Plaintiffs' constitutional rights "unquestionably constitute[] irreparable injury." *See Otter*, 682 F.3d at 826.

### D.   The Balance of Equities and Public Interest Weigh in Favor of an Injunction

The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.  Since this case involves a government actor, the balance of equities factor merges with the fourth factor, public interest.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). This balance tilts sharply in Plaintiffs' favor because the balance of equities and public interest always favor "prevent[ing] the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotation marks omitted). "The fact that [Plaintiffs] have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [Plaintiffs'] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (internal quotation marks omitted).  Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Beverage Ass'n v. City & Cty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (quoting *Melendres*, 695 F.3d at 1002 (internal quotation marks omitted)).

Plaintiffs have shown irreparable and concrete harm because SPD's actions block their ability to exercise their First Amendments rights, and violate their Fourth Amendment freedom from excessive force.  By contrast, the relief Plaintiffs seek does little, if any, harm to the City,

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

which can and should pursue less restrictive and more narrowly tailored tactics. Indeed, Seattle's Mayor recently conceded that the SPD has crossed the line:

> Use of force must be rare, it must be necessary and it must be proportional. Like everybody in our community, we know that was not the case, not only this week but in cases before. I know that safety was shattered for many by the images, sound and gas more fitting of a war zone, and for that, I'm sorry.[29]

The Mayor's apology is significant because it acknowledges that SPD has overreacted and concedes that SPD has more proportionate tactics that it can use to prevent violence, safeguard property, and maintain order.

And finally, health experts have made clear that the use of chemical sprays—such as the tear gas and OC spray that the SPD has indiscriminately used against peaceful demonstrators—poses a significant risk of spreading COVID-19. Daniell Decl. ¶ 53. In fact, Dr. Jeffrey Duchin, the head of King County Public Health, has denounced the use of "respiratory irritants" like tear gas as a crowd control method because of the "potential to increase COVID-19 spread.[30] Granting this temporary restraining order is undeniably in the public's interest.[31]

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant their request for preliminary relief, and immediately enjoin the City from targeting peaceful protesters with blast balls, and canisters of tear gas and pepper spray.

---

[29] Transcript: Mayor Durkan's Remarks at Sunday, June 7 Press Conference, June 7, 2020, https://durkan.seattle.gov/2020/06/transcript-mayor-durkans-remarks-at-sunday-june-7-press-conference/

[30] Alex Bartick, *Mayor Durkan Announces Temporary Ban on the Use of Tear Gas by SPD at Demonstrations*, KOMO News (June 5, 2020) (quoting Dr. Jeffrey Duchin of Public Health, Seattle and King County).

[31] Plaintiffs also request that the Court conclude no bond is necessary in connection with the TRO. Where, as here, "there is no realistic likelihood of harm to the defendant from enjoining [its] conduct," the court "may dispense with the filing of a bond." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 24

148463518.6

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

DATED:  June 9, 2020

By:  s/ David A. Perez
David A. Perez, WSBA No. 43959
s/ Joseph M. McMillan
Joseph M. McMillan, WSBA No. 26527
s/ Mallory Gitt Webster
Mallory Gitt Webster, WSBA No. 50025
s/ Carolyn Gilbert
Carolyn Gilbert, WSBA No. 51285
s/ Nitika Arora
Nitika Arora, WSBA No. 54084
s/ Heath Hyatt
Heath Hyatt, WSBA No. 54141
s/ Paige L. Whidbee
Paige L. Whidbee, WSBA No. 55072

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Fax:  206.359.9000
E-mail:  DPerez@perkinscoie.com
E-mail:  JMcMillan@perkinscoie.com
E-mail:  MWebster@perkinscoie.com
E-mail:  CGilbert@perkinscoie.com
E-mail:  NArora@perkinscoie.com
E-mail:  HHyatt@perkinscoie.com
E-mail:  PWhidbee@perkinscoie.com

By:  s/ Molly Tack-Hooper
Molly Tack-Hooper, WSBA No. 56356
s/ Nancy L. Talner
Nancy L. Talner, WSBA No. 11196
s/ Lisa Nowlin
Lisa Nowlin, WSBA No. 51512
s/ Breanne Schuster
Breanne Schuster, WSBA No. 49993
s/ John Midgley
John Midgley, WSBA No. 6511

**American Civil Liberties Union of**
**Washington Foundation**
P.O. Box 2728
Seattle, WA 98111
Telephone:  (206) 624-2184
E-mail:  mtackhooper@aclu-wa.org
E-mail:  talner@aclu-wa.org
E-mail:  lnowlin@aclu-wa.org
E-mail:  bschuster@aclu-wa.org

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 25

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

E-mail:  jmidgley@aclu-wa.org

2

3

By:  s/ Robert S. Chang
Robert S. Chang, WSBA No. 44083

4

**Fred T. Korematsu Center for Law and**
**Equality**

5

Ronald A. Peterson Law Clinic

6

Seattle University School of Law
1112 E. Columbia Street

7

Seattle, WA  98122
Telephone:  206.398.4025
Fax:  206.398.4077

8

E-mail:  changro@seattleu.edu

9

*Attorneys for Plaintiffs Black Lives Matter*

10

*Seattle-King County, Abie Ekenezar, Sharon*
*Sakamoto, Muraco Kyashna-tochá, Alexander*

11

*Woldeab, Nathalie Graham, and Alexandra*
*Chen*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:20-cv-
00887) – 26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

148463518.6