# EXHIBIT 1

| | |
|---|---|
| **From:** | Sharifi, Ghazal |
| **To:** | LAW_Police_Action |
| **Cc:** | Sharifi, Ghazal |
| **Subject:** | FW: BLM et al v. Seattle -- LEGAL PROCESS |
| **Date:** | Tuesday, June 9, 2020 12:05:00 PM |
| **Attachments:** | 2020-06-09, BLM v Seattle, summons.pdf |
| | 2020-06-09, BLM v Seattle, compl.pdf |
| | 2020-06-09, BLM v Seattle, cover sheet.pdf |
| | image001.png |



**Ghazal Sharifi**
Assistant City Attorney
Police Action Team

Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it.  Thank you.

**From:** Holmes, Peter <Peter.Holmes@seattle.gov>
**Sent:** Tuesday, June 9, 2020 12:05 PM
**To:** Maxey, Brian <Brian.Maxey@seattle.gov>; Holmes, Peter <Peter.Holmes@seattle.gov>;
Schochet, John <John.Schochet@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>;
Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Subject:** FW: BLM et al v. Seattle -- LEGAL PROCESS

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, June 09, 2020 11:58 AM
**To:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; City
Clerk Filing <CityClerkFiling@Seattle.gov>
**Cc:** Molly Tack-Hooper <mtackhooper@aclu-wa.org>; John Midgley <jmidgley@aclu-wa.org>;
McMillan, Joseph M. (Perkins Coie) <JMcMillan@perkinscoie.com>; 'changro@seattleu.edu'
<changro@seattleu.edu>; Nancy Talner <TALNER@aclu-wa.org>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

| CAUTION: External Email |
|---|

Counsel,

We represent plaintiffs in the attached complaint that was filed in the Western District of Washington.

Following up on the calls I just had with Michelle Chen and Pete Holmes, we intend to seek a temporary restraining order this afternoon.  Please let us know whether the City would be willing to negotiate a stipulated TRO today.  And if the City intends to oppose the TRO motion, we are open to negotiating a briefing schedule so that it is heard as soon as possible.

Please let us know if you would like to discuss.  My cell phone is 206.618.4293.

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# EXHIBIT 2

| From: | Sharifi, Ghazal |
|---|---|
| To: | DPerez@perkinscoie.com; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (Perkins Coie; chamgro@seattleu.edu; Nancy Talner |
| Cc: | Holmes, Peter; Chen, Michelle; Boies, Carolyn; Litfin, Jennifer M; Nakata, Kelly; Nadelman, Jessica; Sharifi, Ghazal |
| Subject: | BLM et al v. Seattle -- LEGAL PROCESS |
| Date: | Tuesday, June 9, 2020 12:49:12 PM |
| Attachments: | image001.png |

Mr. Perez,

Good afternoon. We are in receipt of the Complaint filed on behalf of the Plaintiffs. We are reviewing the document and need to confer with our clients regarding your request below. Can you propose language or further detail about what Plaintiffs seek in the TRO specifically to help guide our discussions? In the meantime, we are filing notices of appearance today.

Looking forward to working with you.

Best,

Ghazal Sharifi

**Ghazal Sharifi**
Assistant City Attorney
Police Action Team
Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it.  Thank you.

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, June 09, 2020 11:58 AM
**To:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; City Clerk Filing <CityClerkFiling@Seattle.gov>
**Cc:** Molly Tack-Hooper <mtackhooper@aclu-wa.org>; John Midgley <jmidgley@aclu-wa.org>; McMillan, Joseph M. (Perkins Coie) <JMcMillan@perkinscoie.com>; 'changro@seattleu.edu'

<changro@seattleu.edu>; Nancy Talner <TALNER@aclu-wa.org>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

CAUTION: External Email

Counsel,

We represent plaintiffs in the attached complaint that was filed in the Western District of Washington.

Following up on the calls I just had with Michelle Chen and Pete Holmes, we intend to seek a temporary restraining order this afternoon.  Please let us know whether the City would be willing to negotiate a stipulated TRO today.  And if the City intends to oppose the TRO motion, we are open to negotiating a briefing schedule so that it is heard as soon as possible.

Please let us know if you would like to discuss.  My cell phone is 206.618.4293.

David

**David A. Perez |  Perkins Coie** LLP
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# EXHIBIT 3

| From: | Perez, David A. (Perkins Coie) |
|---|---|
| To: | Sharifi, Ghazal; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (Perkins Coie); chamgro@seattleu.edu; Nancy Talner |
| Cc: | Holmes, Peter; Chen, Michelle; Boies, Carolyn; Litfin, Jennifer M; Nakata, Kelly; Nadelman, Jessica |
| Subject: | RE: BLM et al v. Seattle -- LEGAL PROCESS |
| Date: | Tuesday, June 9, 2020 2:43:54 PM |
| Attachments: | image001.png |

CAUTION: External Email

Dear Ghazal,

Thanks so much for reaching out.  Here is language that we would be willing to enter in a stipulation.

The City of Seattle, including the Seattle Police Department and any other officers, departments, agencies, or organizations acting within the Seattle Police Department's jurisdiction or under the Seattle Police Department's control (collectively, "the City"), is hereby enjoined from employing chemical weapons or projectiles of any kind against persons engaging in peaceful protests or demonstrations.  This injunction includes: (1) any chemical irritant such as and including CS Gas ("tear gas") and OC Gas ("pepper spray") and (2) any projectile such as and including flash-bang grenades, "pepper balls," "blast balls," and rubber bullets.

Please let us know your thoughts as soon as possible.  We plan to file the TRO papers with Judge Jones this afternoon.

Take care,

David

**David A. Perez | Perkins Coie** LLP
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

**From:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Sent:** Tuesday, June 09, 2020 12:49 PM
**To:** Perez, David A. (SEA) <DPerez@perkinscoie.com>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; chamgro@seattleu.edu; Nancy Talner <TALNER@aclu-wa.org>

**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

Mr. Perez,

Good afternoon. We are in receipt of the Complaint filed on behalf of the Plaintiffs. We are reviewing the document and need to confer with our clients regarding your request below. Can you propose language or further detail about what Plaintiffs seek in the TRO specifically to help guide our discussions? In the meantime, we are filing notices of appearance today.

Looking forward to working with you.

Best,

Ghazal Sharifi

**Ghazal Sharifi**
Assistant City Attorney
Police Action Team
Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it.  Thank you.

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, June 09, 2020 11:58 AM
**To:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; City Clerk Filing <CityClerkFiling@Seattle.gov>
**Cc:** Molly Tack-Hooper <mtackhooper@aclu-wa.org>; John Midgley <jmidgley@aclu-wa.org>; McMillan, Joseph M. (Perkins Coie) <JMcMillan@perkinscoie.com>; 'changro@seattleu.edu' <changro@seattleu.edu>; Nancy Talner <TALNER@aclu-wa.org>

**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

CAUTION: External Email

Counsel,

We represent plaintiffs in the attached complaint that was filed in the Western District of
Washington.

Following up on the calls I just had with Michelle Chen and Pete Holmes, we intend to seek a
temporary restraining order this afternoon.  Please let us know whether the City would be
willing to negotiate a stipulated TRO today.  And if the City intends to oppose the TRO
motion, we are open to negotiating a briefing schedule so that it is heard as soon as possible.

Please let us know if you would like to discuss.  My cell phone is 206.618.4293.

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the
sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the
sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# EXHIBIT 4

| | |
|---|---|
| **From:** | Perez, David A. (Perkins Coie) |
| **To:** | Sharifi, Ghazal; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (Perkins Coie); Nancy Talner; "changro@seattleu.edu" |
| **Cc:** | Holmes, Peter; Chen, Michelle; Boies, Carolyn; Litfin, Jennifer M; Nakata, Kelly; Nadelman, Jessica |
| **Subject:** | RE: BLM et al v. Seattle -- LEGAL PROCESS |
| **Date:** | Tuesday, June 9, 2020 3:02:52 PM |
| **Attachments:** | image001.png |

CAUTION: External Email

All, replying all to correct an e-mail address I got wrong (Prof. Chang).

We'll look out for your response.

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

---

**From:** Perez, David A. (SEA)
**Sent:** Tuesday, June 09, 2020 2:44 PM
**To:** 'Sharifi, Ghazal' <Ghazal.Sharifi@seattle.gov>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; changro@seattleu.edu; Nancy Talner <TALNER@aclu-wa.org>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>
**Subject:** RE: BLM et al v. Seattle -- LEGAL PROCESS

Dear Ghazal,

Thanks so much for reaching out.  Here is language that we would be willing to enter in a stipulation.

The City of Seattle, including the Seattle Police Department and any other officers, departments, agencies, or organizations acting within the Seattle Police Department's jurisdiction or under the Seattle Police Department's control (collectively, "the City"), is hereby enjoined from employing chemical weapons or projectiles of any kind against persons engaging in peaceful protests or demonstrations.  This injunction includes: (1) any chemical irritant such as and

including CS Gas ("tear gas") and OC Gas ("pepper spray") and (2) any projectile such as and including flash-bang grenades, "pepper balls," "blast balls," and rubber bullets.

Please let us know your thoughts as soon as possible.  We plan to file the TRO papers with Judge Jones this afternoon.

Take care,

David

**David A. Perez |  Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

---

**From:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Sent:** Tuesday, June 09, 2020 12:49 PM
**To:** Perez, David A. (SEA) <DPerez@perkinscoie.com>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; chamgro@seattleu.edu; Nancy Talner <TALNER@aclu-wa.org>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

Mr. Perez,

Good afternoon. We are in receipt of the Complaint filed on behalf of the Plaintiffs. We are reviewing the document and need to confer with our clients regarding your request below. Can you propose language or further detail about what Plaintiffs seek in the TRO specifically to help guide our discussions? In the meantime, we are filing notices of appearance today.

Looking forward to working with you.

Best,

Ghazal Sharifi



**Ghazal Sharifi**
Assistant City Attorney
Police Action Team

Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it.  Thank you.

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, June 09, 2020 11:58 AM
**To:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; City Clerk Filing <CityClerkFiling@Seattle.gov>
**Cc:** Molly Tack-Hooper <mtackhooper@aclu-wa.org>; John Midgley <jmidgley@aclu-wa.org>; McMillan, Joseph M. (Perkins Coie) <JMcMillan@perkinscoie.com>; 'changro@seattleu.edu' <changro@seattleu.edu>; Nancy Talner <TALNER@aclu-wa.org>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

| CAUTION: External Email |
| --- |

Counsel,

We represent plaintiffs in the attached complaint that was filed in the Western District of Washington.

Following up on the calls I just had with Michelle Chen and Pete Holmes, we intend to seek a temporary restraining order this afternoon.  Please let us know whether the City would be willing to negotiate a stipulated TRO today.  And if the City intends to oppose the TRO motion, we are open to negotiating a briefing schedule so that it is heard as soon as possible.

Please let us know if you would like to discuss.  My cell phone is 206.618.4293.

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767

c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# EXHIBIT 5

| | |
|---|---|
| **From:** | Sharifi, Ghazal |
| **To:** | Perez, David A. (Perkins Coie); mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (Perkins Coie); Nancy Talner; "changro@seattleu.edu" |
| **Cc:** | Holmes, Peter; Chen, Michelle; Boies, Carolyn; Litfin, Jennifer M; Nakata, Kelly; Nadelman, Jessica; Sharifi, Ghazal |
| **Subject:** | RE: BLM et al v. Seattle -- LEGAL PROCESS |
| **Date:** | Tuesday, June 9, 2020 3:28:59 PM |
| **Attachments:** | image001.png |

David,

Thank you for your response. I respectfully request some additional time to this afternoon to communicate with the clients on the below proposal. We certainly hope we can reach an agreement.

Will be in touch soon.

Best,
Ghazal



**Ghazal Sharifi**
Assistant City Attorney
Police Action Team
Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it.  Thank you.

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, June 9, 2020 3:02 PM
**To:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (Perkins Coie) <JMcMillan@perkinscoie.com>; Nancy Talner <TALNER@aclu-wa.org>; 'changro@seattleu.edu' <changro@seattleu.edu>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>
**Subject:** RE: BLM et al v. Seattle -- LEGAL PROCESS

| CAUTION: External Email |
|---|

All, replying all to correct an e-mail address I got wrong (Prof. Chang).

We'll look out for your response.

David

**David A. Perez | Perkins Coie** LLP
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

---

**From:** Perez, David A. (SEA)
**Sent:** Tuesday, June 09, 2020 2:44 PM
**To:** 'Sharifi, Ghazal' <Ghazal.Sharifi@seattle.gov>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; chamgro@seattleu.edu; Nancy Talner <TALNER@aclu-wa.org>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>
**Subject:** RE: BLM et al v. Seattle -- LEGAL PROCESS

Dear Ghazal,

Thanks so much for reaching out.  Here is language that we would be willing to enter in a stipulation.

The City of Seattle, including the Seattle Police Department and any other officers, departments, agencies, or organizations acting within the Seattle Police Department's jurisdiction or under the Seattle Police Department's control (collectively, "the City"), is hereby enjoined from employing chemical weapons or projectiles of any kind against persons engaging in peaceful protests or demonstrations.  This injunction includes: (1) any chemical irritant such as and including CS Gas ("tear gas") and OC Gas ("pepper spray") and (2) any projectile such as and including flash-bang grenades, "pepper balls," "blast balls," and rubber bullets.

Please let us know your thoughts as soon as possible.  We plan to file the TRO papers with Judge Jones this afternoon.

Take care,

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

---

**From:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Sent:** Tuesday, June 09, 2020 12:49 PM
**To:** Perez, David A. (SEA) <DPerez@perkinscoie.com>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; chamgro@seattleu.edu; Nancy Talner <TALNER@aclu-wa.org>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

Mr. Perez,

Good afternoon. We are in receipt of the Complaint filed on behalf of the Plaintiffs. We are reviewing the document and need to confer with our clients regarding your request below. Can you propose language or further detail about what Plaintiffs seek in the TRO specifically to help guide our discussions? In the meantime, we are filing notices of appearance today.

Looking forward to working with you.

Best,

Ghazal Sharifi



**Ghazal Sharifi**
Assistant City Attorney
Police Action Team
Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095

Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it.  Thank you.

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, June 09, 2020 11:58 AM
**To:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; City Clerk Filing <CityClerkFiling@Seattle.gov>
**Cc:** Molly Tack-Hooper <mtackhooper@aclu-wa.org>; John Midgley <jmidgley@aclu-wa.org>; McMillan, Joseph M. (Perkins Coie) <JMcMillan@perkinscoie.com>; 'changro@seattleu.edu' <changro@seattleu.edu>; Nancy Talner <TALNER@aclu-wa.org>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

| CAUTION: External Email |
|---|

Counsel,

We represent plaintiffs in the attached complaint that was filed in the Western District of Washington.

Following up on the calls I just had with Michelle Chen and Pete Holmes, we intend to seek a temporary restraining order this afternoon.  Please let us know whether the City would be willing to negotiate a stipulated TRO today.  And if the City intends to oppose the TRO motion, we are open to negotiating a briefing schedule so that it is heard as soon as possible.

Please let us know if you would like to discuss.  My cell phone is 206.618.4293.

David

**David A. Perez | Perkins Coie** LLP
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# EXHIBIT 6

| From: | Perez, David A. (Perkins Coie) |
|---|---|
| To: | Sharifi, Ghazal |
| Cc: | Holmes, Peter |
| Subject: | RE: BLM et al v. Seattle -- LEGAL PROCESS |
| Date: | Tuesday, June 9, 2020 3:29:56 PM |
| Attachments: | image001.png |

> **CAUTION: External Email**

By the way, my cell is 206.618.4293.  Pete knows that, but wanted to make sure you have it, too.

---

**From:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Sent:** Tuesday, June 09, 2020 3:29 PM
**To:** Perez, David A. (SEA) <DPerez@perkinscoie.com>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; Nancy Talner <TALNER@aclu-wa.org>; 'changro@seattleu.edu' <changro@seattleu.edu>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Subject:** RE: BLM et al v. Seattle -- LEGAL PROCESS

David,

Thank you for your response. I respectfully request some additional time to this afternoon to communicate with the clients on the below proposal. We certainly hope we can reach an agreement.

Will be in touch soon.

Best,
Ghazal



**Ghazal Sharifi**
Assistant City Attorney
Police Action Team
Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in

error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it.  Thank you.

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, June 9, 2020 3:02 PM
**To:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (Perkins Coie) <JMcMillan@perkinscoie.com>; Nancy Talner <TALNER@aclu-wa.org>; 'changro@seattleu.edu' <changro@seattleu.edu>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>
**Subject:** RE: BLM et al v. Seattle -- LEGAL PROCESS

> **CAUTION: External Email**

All, replying all to correct an e-mail address I got wrong (Prof. Chang).

We'll look out for your response.

David


**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/


**From:** Perez, David A. (SEA)
**Sent:** Tuesday, June 09, 2020 2:44 PM
**To:** 'Sharifi, Ghazal' <Ghazal.Sharifi@seattle.gov>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; chamgro@seattleu.edu; Nancy Talner <TALNER@aclu-wa.org>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>
**Subject:** RE: BLM et al v. Seattle -- LEGAL PROCESS

Dear Ghazal,

Thanks so much for reaching out.  Here is language that we would be willing to enter in a stipulation.

The City of Seattle, including the Seattle Police Department and any other

officers, departments, agencies, or organizations acting within the Seattle Police Department's jurisdiction or under the Seattle Police Department's control (collectively, "the City"), is hereby enjoined from employing chemical weapons or projectiles of any kind against persons engaging in peaceful protests or demonstrations.  This injunction includes: (1) any chemical irritant such as and including CS Gas ("tear gas") and OC Gas ("pepper spray") and (2) any projectile such as and including flash-bang grenades, "pepper balls," "blast balls," and rubber bullets.


Please let us know your thoughts as soon as possible.  We plan to file the TRO papers with Judge Jones this afternoon.

Take care,

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/


**From:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Sent:** Tuesday, June 09, 2020 12:49 PM
**To:** Perez, David A. (SEA) <DPerez@perkinscoie.com>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; chamgro@seattleu.edu; Nancy Talner <TALNER@aclu-wa.org>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

Mr. Perez,

Good afternoon. We are in receipt of the Complaint filed on behalf of the Plaintiffs. We are reviewing the document and need to confer with our clients regarding your request below. Can you propose language or further detail about what Plaintiffs seek in the TRO specifically to help guide our discussions? In the meantime, we are filing notices of appearance today.

Looking forward to working with you.

Best,

Ghazal Sharifi


**Ghazal Sharifi**
Assistant City Attorney
Police Action Team
Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it.  Thank you.


**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, June 09, 2020 11:58 AM
**To:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; City Clerk Filing <CityClerkFiling@Seattle.gov>
**Cc:** Molly Tack-Hooper <mtackhooper@aclu-wa.org>; John Midgley <jmidgley@aclu-wa.org>; McMillan, Joseph M. (Perkins Coie) <JMcMillan@perkinscoie.com>; 'changro@seattleu.edu' <changro@seattleu.edu>; Nancy Talner <TALNER@aclu-wa.org>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

CAUTION: External Email

Counsel,

We represent plaintiffs in the attached complaint that was filed in the Western District of Washington.

Following up on the calls I just had with Michelle Chen and Pete Holmes, we intend to seek a temporary restraining order this afternoon.  Please let us know whether the City would be willing to negotiate a stipulated TRO today.  And if the City intends to oppose the TRO motion, we are open to negotiating a briefing schedule so that it is heard as soon as possible.

Please let us know if you would like to discuss.  My cell phone is 206.618.4293.

David

**David A. Perez |  Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# EXHIBIT 7

| | |
|---|---|
| **From:** | Sharifi, Ghazal |
| **To:** | Perez, David A. (Perkins Coie); mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (Perkins Coie); Nancy Talner; "changro@seattleu.edu" |
| **Cc:** | Holmes, Peter; Chen, Michelle; Boies, Carolyn; Litfin, Jennifer M; Nakata, Kelly; Nadelman, Jessica; Sharifi, Ghazal |
| **Subject:** | RE: BLM et al v. Seattle -- LEGAL PROCESS |
| **Date:** | Tuesday, June 9, 2020 5:04:00 PM |
| **Attachments:** | image001.png |

David,

Thank you for your patience. We accepted most of your language – our proposal is in italics below. We added in an additional element to enable officers to protect individuals from physical harm. This is consistent with other similar TROs.

Please let us know your thoughts. Happy to discuss further.

All the best,

Ghazal

*The City of Seattle, including the Seattle Police Department and any other officers, departments, agencies, or organizations under the Seattle Police Department's control (collectively, "the City"), is hereby enjoined from employing chemical weapons or projectiles of any kind against persons lawfully engaging in peaceful protests or demonstrations.  This injunction includes: (1) any chemical irritant such as and including CS Gas ("tear gas") and OC spray ("pepper spray") and (2) any projectile such as and including flash-bang grenades, "pepper balls," "blast balls," and rubber bullets, unless the incident commander or above-ranking member of command staff specifically authorizes such use of force in response to specific acts of violence creating likely imminent physical harm to an individual(s). This Order does not preclude individual officers from taking reasonable, necessary, and proportional action to protect against imminent threat of physical harm to themselves or identifiable others, including the deployment of OC spray.*



**Ghazal Sharifi**
Assistant City Attorney
Police Action Team
Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without

printing, copying, or forwarding it.  Thank you.

**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, June 9, 2020 3:02 PM
**To:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org;
McMillan, Joseph M. (Perkins Coie) <JMcMillan@perkinscoie.com>; Nancy Talner <TALNER@aclu-
wa.org>; 'changro@seattleu.edu' <changro@seattleu.edu>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>;
Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata,
Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>
**Subject:** RE: BLM et al v. Seattle -- LEGAL PROCESS

> **CAUTION: External Email**

All, replying all to correct an e-mail address I got wrong (Prof. Chang).

We'll look out for your response.

David


**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/



**From:** Perez, David A. (SEA)
**Sent:** Tuesday, June 09, 2020 2:44 PM
**To:** 'Sharifi, Ghazal' <Ghazal.Sharifi@seattle.gov>; mtackhooper@aclu-wa.org; jmidgley@aclu-
wa.org; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; chamgro@seattleu.edu; Nancy
Talner <TALNER@aclu-wa.org>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>;
Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata,
Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>
**Subject:** RE: BLM et al v. Seattle -- LEGAL PROCESS

Dear Ghazal,

Thanks so much for reaching out.  Here is language that we would be willing to enter in a
stipulation.

The City of Seattle, including the Seattle Police Department and any other

officers, departments, agencies, or organizations acting within the Seattle Police Department's jurisdiction or under the Seattle Police Department's control (collectively, "the City"), is hereby enjoined from employing chemical weapons or projectiles of any kind against persons engaging in peaceful protests or demonstrations.  This injunction includes: (1) any chemical irritant such as and including CS Gas ("tear gas") and OC Gas ("pepper spray") and (2) any projectile such as and including flash-bang grenades, "pepper balls," "blast balls," and rubber bullets.


Please let us know your thoughts as soon as possible.  We plan to file the TRO papers with Judge Jones this afternoon.

Take care,

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/


---

**From:** Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Sent:** Tuesday, June 09, 2020 12:49 PM
**To:** Perez, David A. (SEA) <DPerez@perkinscoie.com>; mtackhooper@aclu-wa.org; jmidgley@aclu-wa.org; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; chamgro@seattleu.edu; Nancy Talner <TALNER@aclu-wa.org>
**Cc:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; Boies, Carolyn <Carolyn.Boies@seattle.gov>; Litfin, Jennifer M <Jennifer.Litfin@seattle.gov>; Nakata, Kelly <Kelly.Nakata@seattle.gov>; Nadelman, Jessica <Jessica.Nadelman@seattle.gov>; Sharifi, Ghazal <Ghazal.Sharifi@seattle.gov>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

Mr. Perez,

Good afternoon. We are in receipt of the Complaint filed on behalf of the Plaintiffs. We are reviewing the document and need to confer with our clients regarding your request below. Can you propose language or further detail about what Plaintiffs seek in the TRO specifically to help guide our discussions? In the meantime, we are filing notices of appearance today.

Looking forward to working with you.

Best,

Ghazal Sharifi


 **Ghazal Sharifi**
Assistant City Attorney
Police Action Team

Seattle City Attorney's Office
Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Phone: 206-684-8217
Cell: 206-418-8781
FAX:  206-684-8284
ghazal.sharifi@seattle.gov

**CONFIDENTIALITY STATEMENT:** This message may contain information that is protected by the attorney-client privilege, the attorney work product doctrine, or by other confidentiality provisions.  If this message was sent to you in error, any use, disclosure, or distribution of its contents is prohibited.  If you receive this message in error, please contact me at the telephone number or e-mail address listed above and delete this message without printing, copying, or forwarding it.  Thank you.


**From:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>
**Sent:** Tuesday, June 09, 2020 11:58 AM
**To:** Holmes, Peter <Peter.Holmes@seattle.gov>; Chen, Michelle <Michelle.Chen@seattle.gov>; City Clerk Filing <CityClerkFiling@Seattle.gov>
**Cc:** Molly Tack-Hooper <mtackhooper@aclu-wa.org>; John Midgley <jmidgley@aclu-wa.org>; McMillan, Joseph M. (Perkins Coie) <JMcMillan@perkinscoie.com>; 'changro@seattleu.edu' <changro@seattleu.edu>; Nancy Talner <TALNER@aclu-wa.org>
**Subject:** BLM et al v. Seattle -- LEGAL PROCESS

<div style="background:#f5e6a8">CAUTION: External Email</div>

Counsel,

We represent plaintiffs in the attached complaint that was filed in the Western District of Washington.

Following up on the calls I just had with Michelle Chen and Pete Holmes, we intend to seek a temporary restraining order this afternoon.  Please let us know whether the City would be willing to negotiate a stipulated TRO today.  And if the City intends to oppose the TRO motion, we are open to negotiating a briefing schedule so that it is heard as soon as possible.

Please let us know if you would like to discuss.  My cell phone is 206.618.4293.

David

**David A. Perez |  Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# EXHIBIT 8

| | |
|---|---|
| **From:** | Perez, David A. (SEA) |
| **To:** | Sharifi, Ghazal |
| **Subject:** | Read: RE: BLM et al v. Seattle -- LEGAL PROCESS |
| **Date:** | Tuesday, June 9, 2020 5:05:57 PM |
| **Attachments:** | Read RE BLM et al v. Seattle -- LEGAL PROCESS.msg |

CAUTION: External Email

_____

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 20-cv-01616-RBJ

AGAZI ABAY,
GABRIEL THORN,
AMY SCHNEIDER, and
MICHAEL McDANIEL

      Plaintiffs,

v.

CITY OF DENVER,

      Defendant.

---

### ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

---

This matter is before the court on plaintiffs Agazi Abay, Gabriel Thorn, Amy Schneider, and Michael McDaniel's request for an temporary restraining order to enjoin defendant the City and County of Denver ("Denver")—specifically the Denver Police Department and police officers from other local jurisdictions from whom Denver has requested assistance in responding to the protests that have arisen following the George Floyd incident in Minneapolis—from using chemical agents or certain physical force against individuals engaged in demonstration activities, documentation of the demonstration and police activities, or the treatment of injured demonstrators. ECF No. 10.

For the reasons stated herein, the motion is GRANTED IN PART.

## I. BACKGROUND

On May 28, 2020 citizens of Denver, Colorado joined a nationwide expression of outrage at the death of George Floyd and other acts of violence perpetrated by police officers against the

African American community.  Though much of the demonstrations have remained peaceful, violence and destruction has occurred at the hands of citizens and police officers alike.

Plaintiffs challenge the Denver Police Department ("DPD")'s use of chemical agents (including mace/oleoresin capsicum spray or mist/pepper spray/pepper gas, tear gas, skunk, inert smoke, pepper pellets, xylyl bromide) and rubber projectiles on protestors participating in these demonstrations.  ECF No. 1.  Plaintiffs sue on behalf of themselves and similarly situated individuals, alleging that during these demonstrations the Denver police have in some instances violated their First Amendment right to free speech and their Fourth Amendment right against excessive force by using pepper spray, pepper balls, rubber bullets, flashbang grenades, and tear gas to punish plaintiffs for demonstrating against police brutality.

The Court has reviewed video evidence of numerous incidents in which officers used pepper-spray on individual demonstrators who appeared to be standing peacefully, some of whom were speaking to or yelling at the officers, none of whom appeared to be engaging in violence or destructive behavior.  *See* ECF No. 10 at 5.  Plaintiffs cite video evidence of officers using projectiles on several journalists in the process of documenting the scene.  *Id.* at 6–8. Plaintiffs cite video evidence in which a projectile struck and knocked out a peaceful protestor. After a "medic" protestor attempts to rescue the unconscious protestor the medic is subsequently shot with projectiles.  *Id.* at 9.  Plaintiffs further cite video evidence of four incidents in which police projectiles struck the eyes of peaceful demonstrators, in some cases resulting in facial fractures, in some cases resulting in permanent loss of vision.  *Id.* 9–10.  Finally, plaintiffs cite video evidence of three incidents in which officers threw tear gas or shot pepper balls into peaceful crowds.  *Id.* at 10–11.

Plaintiffs allege that defendant's use of such force has resulted in injuries including loss

of vision, fractured bones requiring surgery, deep lacerations, loss of eyes, ruptured testicles.  *Id.* at 2.  They further allege that officers have targeted peaceful protestors, journalists, and protest "medics" and have retaliated against demonstrators for engaging in demonstrations, and sometimes for expressing anti-law enforcement.  *Id.* at 2–3.  Plaintiffs allege that this use of force against peaceful protestors and others is sometimes intentional and that officers target projectiles at demonstrators' heads and groins.  *Id.* at 3.

<p align="center">Procedural Background</p>

Plaintiffs filed a complaint in Denver District Court on June 4, 2020.  ECF No. 1-1. Defendant removed to this Court.  ECF No. 1.  Plaintiffs' complaint alleges two causes of action premised on 42 U.S.C. § 1983.  ECF No. 1-1 at 21, 23.  First, plaintiffs allege that defendant violated their Fourth Amendment right against excessive force.  *Id.* ¶¶ 87–97.  Second, plaintiffs allege that defendant violated their First Amendment right to free speech.  *Id.* ¶¶ 98–108.

This Court heard the parties in an emergency oral argument on the motion for a TRO on June 5, 2020 at 6:00 p.m.  ECF No. 13.

## II.  STANDARD OF REVIEW

In determining whether to grant a TRO, the court must analyze the following factors: (1) whether the movant has a substantial likelihood of success on the merits; (2) whether irreparable harm will ensue if the request for a TRO is denied; (3) whether the threatened injury outweighs the harm that the TRO may cause the defendant; and (4) whether, if issued, the TRO will not adversely affect the public interest.  *See General Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007).

## III.  ANALYSIS

### A.  <u>Likelihood of Success on the Merits</u>

In cases in which the deprivation of constitutional rights is at issue, the likelihood of the success on the merits factor is determinative. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (quoting *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012), *cert. denied*, --- U.S. ---, 133 S. Ct. 651 (2012)) ("[I]n First Amendment cases, the likelihood of success on the merits will often be the determinative factor.").

Before turning to these issues, however, I wish to make certain things perfectly clear, as I did during the hearing held earlier this evening.  First, people have an absolute right to demonstrate and protest the actions of governmental officials, including police officers.  It is one of the many freedoms on which this country was built.  Second, police have a very difficult and often thankless job.  They frequently are called upon to make split second decisions and to expose themselves to danger while protecting the health and safety of the rest of us.  Third, some of the behaviors of what I hope and believe to be a minority of the police officers in Denver and the nation during recent days (and before), not only vis-à-vis persons of color but against peaceful protesters of all backgrounds, have been disgusting.  Finally, as I emphasized during the hearing, the difficulty is in trying to draw an enforceable line that permits police officers to use appropriate means to respond to violence and destruction of property without crossing the line into the chilling free speech and abusing those who wish to exercise it.

I analyze the likelihood of success of each of plaintiffs' two claims.

1. Plaintiffs' Fourth Amendment Claim

The Fourth Amendment guarantees the right to be free from excessive force.  Excessive force claims are analyzed under the objective reasonableness standard of the Fourth Amendment. *See Graham v. Connor,* 490 U.S. 386, 395 (1989).  The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the fact

that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions. *Id.* at 396–97.  The Fourth Amendment standard requires inquiry into the factual circumstances of every case.  *See id.* at 396–97.  Relevant factors include the severity of the crime, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest.  *See id.*

Here, plaintiffs provide video evidence of police conduct at the demonstrations.  Those videos show that the officers had ample time for reflection and were not dealing with dangerous conditions.  Named plaintiffs were attacked with rubber bullets, tear gas, etc, allegedly solely on the basis of their presence at the demonstrations, their viewpoint, or their attempts to render treatment to injured protestors.  Additionally, plaintiffs allege that officers specifically aimed at heads and groins, causing broken facial bones and ruptured testicles.  These are peaceful demonstrators, journalists, and medics who have been targeted with extreme tactics meant to suppress riots, not to suppress demonstrations.

There may later be questions of qualified immunity to grapple with, but plaintiffs have established a strong likelihood that defendant engaged in excessive force contrary to the Fourth Amendment.

### 2.  Plaintiffs' First Amendment Claim

The First Amendment provides that all citizens have a right to hold and express their personal political beliefs.  *See Cohen v. California*, 403 U.S. 15, 24 (1971).  Organized political protest is a form of "classically political speech."  *Boos v. Barry*, 485 U.S. 312, 318 (1988). "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association."  *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014).  This "reflects a profound national commitment to the principle that debate

on public issues should be uninhibited, robust, and wide-open," and the Supreme Court has

"consistently commented on the central importance of protecting speech on public issues." *Id.*

(internal citations omitted) (collecting cases).  Thus courts must "scrutinize carefully any

restrictions on public issue picketing." *Id.* (citations omitted).

Additionally, the Supreme Court "has repeatedly held that police may not interfere with

orderly, nonviolent protests merely because they disagree with the content of the speech or

because they simply fear possible disorder." *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006)

(citing *Cox v. Louisiana,* 379 U.S. 536, 550 (1965)).  Indeed, "it has long been clearly

established that the First Amendment bars retaliation for protected speech and association."

*Buck v. City of Albuquerque*, 549 F.3d 1269, 1292 (10th Cir. 2008) (quoting *Mimics, Inc. v.*

*Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005)).

The Tenth Circuit examines "First Amendment retaliation claims under *Worrell v. Henry*,

219 F.3d 1197 (10th Cir. 2000)," which requires inquiry into whether (1) plaintiffs were engaged

in constitutionally protected activity; (2) defendants caused the plaintiffs to suffer an injury that

would chill a person of ordinary firmness from continuing to engage in that activity; and (3)

defendant's actions were motivated by plaintiffs' protected activity. *Id.*

Here, first, plaintiffs were engaged in constitutionally protected activity through

organized political protest.  Second, defendant's use of excessive force likely caused injury

sufficient to chill a person of ordinary firmness from continuing to engage in that political

protest.  Officers used physical weapons and chemical agents to prevent not just peaceful

demonstration, but also the media's ability to document the demonstrations and plaintiffs' and

third parties' ability to offer aid to demonstrators.  Peaceful demonstrators' legitimate and

credible fear of police retaliation is silencing their political speech—the very speech most highly

valued under the First Amendment.  Third, it also seems likely that defendant's actions were motivated by the content of plaintiffs' demonstrations against police violence.  Citizens should never have to fear peaceful protest on the basis of police retaliation, especially not when protesting that very same police violence.

As with plaintiffs' Fourth Amendment claims, there may later be questions of qualified immunity.  For now, however, I find that plaintiffs have established a strong likelihood that defendant violated plaintiffs' First Amendment right to free speech.

### B.  Irreparable Harm to the Movant

"The Supreme Court has made clear that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'"  *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1190 (10th Cir. 2003) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality)).

The demonstrations in Denver are ongoing, likely even as this opinion is written.  The demonstrations will likely continue tonight and at least into the weekend.  If immediate relief is not granted, plaintiffs' speech would be chilled and outright denied over the next several days or weeks of demonstrations.  Indeed, irreparable harm has already occurred in the form of physical injury and the suppression of speech; there is no reason such harm would not otherwise continue if this relief were denied.  Officers would continue to use force, secure in the knowledge that retrospective claims take a significant amount of time, effort, and money to pursue.

Significantly, plaintiffs also note that their "speech is deeply rooted in the [current] time and context."  ECF No. 10 at 18.  I recognize the importance of shielding and uplifting this ongoing, nationwide movement.  As such, I find that irreparable harm would occur were I to deny this relief.

## C.  **Balancing Harm to the Nonmovant**

Plaintiffs' motion does not discuss potential harm to the defendant.  In theory, the inability to use the complained-of tactics limit the officers' ability to protect themselves against potential violence from demonstrators.  Yet this is a hypothetical harm, especially given the fact that officers have access to many other types of non-lethal weapons that they use on a daily basis, including tazers.  The unlikelihood of such harm to officers is outweighed by the very real harm that has already been caused to plaintiffs.

## D.  **Public Interest**

The Tenth Circuit has recognized that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)). The Tenth Circuit has particularly recognized a "strong public interest in protecting First Amendment values." *Cate v. Oldham*, 707 F.2d 1176, 1190 (10th Cir. 1983).  Even where individuals' constitutional rights come into conflict with other important values or public objectives, the Tenth Circuit has held that those other values must yield to the protection of individuals.  For example, in *Awad v. Ziriax*, the Tenth Circuit noted that "[w]hile the public has an interest in the will of the voters being carried out . . . the public has a more profound and long-term interest in upholding an individual's constitutional rights."  670 F.3d at 1132.

Here, it is clearly in the public interest to protect plaintiffs' right to demonstrate, the media's ability to document that demonstration, and third parties' ability to render aid to demonstrators without threat of excessive force by police.  Plaintiffs' lawsuit is itself a class action on behalf of "all similarly situated demonstrators and citizens of Denver whose

constitutional rights have been, and continue to be, violated by the Denver Police Department."
ECF No. 10 at 2.

Plaintiffs do not expressly discuss the potential harm to the public interest. The most likely potential harm is an increase in property damage. Although I do not agree with those who have committed property damage during the protests, property damage is a small price to pay for constitutional rights—especially the constitutional right of the public to speak against widespread injustice. If a store's windows must be broken to prevent a protestor's facial bones from being broken or eye being permanently damaged, that is more than a fair trade. If a building must be graffiti-ed to prevent the suppression of free speech, that is a fair trade. The threat to physical safety and free speech outweighs the threat to property.

### E.  Conclusion

In issuing this relief I do not seek to prevent officers from protecting themselves or their community. I seek to balance citizens' constitutional rights against officers' ability to do their job. However, the time is past to rely solely on the good faith and discretion of the Denver Police Department and its colleagues from other jurisdictions. I believe in everything that Commander Phelan testified during tonight's hearing about the duty of the police to protect the rights of citizens who demonstrate and protest. However, the Denver Police Depart has failed in its duty to police its own.

### ORDER

Plaintiffs' motion for a temporary restraining order, ECF No. 10, is GRANTED in PART. The Court temporarily enjoins the City and County of Denver, and specifically the Denver Police Department and officers from other jurisdictions who are assisting Denver Police Officers, from employing chemical weapons or projectiles of any kind against persons engaging

in peaceful protests or demonstrations.  To be better assure that this idealistic order is carried out, the Court temporarily enjoins the Denver Police Department and officers from other jurisdictions working with Denver Police Department officers from using chemical weapons or projectiles unless an on-scene supervisor at the rank of Captain or above specifically authorizes such use of force in response to specific acts of violence or destruction of property that the command officer has personally witnessed.  The Court further orders that:

1.  Kinetic Impact Projectiles ("KIPs") and all other non- or less-lethal projectiles may never be discharged to target the head, pelvis, or back.

2.  KIPs and all other non- or less-lethal projectiles shall not be shot indiscriminately into a crowd.

3.  Non-Denver officers shall not use any demonstration of force or weapon beyond what Denver itself authorizes for its own officers.  Any non-Denver officer permitted to or directed to be deployed to the demonstrations shall be considered an agent of Denver such that Denver shall ensure such officer is limiting their use of force to that authorized by the Defendant.

4.  All officers deployed to the demonstrations or engaged in the demonstrations must have their body-worn cameras recording at all times, and they may not intentionally obstruct the camera or recording.

5.  Chemical agents or irritants (including pepper spray and tear gas) may only be used after an order to disperse is issued.

6.  Any and all orders to disperse must be followed with adequate time for the intended audience to comply, and officers must leave room for safe egress.  If it appears that the

intended audience was unable to hear the order, the order must be repeated prior to the

use of chemical agents or irritants.


DATED this 5th day of June, 2020, 8:39 p.m.


BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

# EXHIBIT 10

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jared Goyette, Craig Lassig, and The Communications Workers of America, on behalf of themselves and other similarly situated individuals, | Case No. 20-cv-1302 (WMW/DTS) |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFF JARED GOYETTE'S MOTIONS FOR CLASS CERTIFICATION AND TEMPORARY RESTRAINING ORDER** |
| City of Minneapolis; Medaria Arradondo, Minneapolis Chief of Police, in his individual and official capacity; Robert Kroll, Minneapolis Police Lieutenant, in his individual and official capacity; John Harrington, Minnesota Department of Public Safety Commissioner, in his individual and official capacity; Matthew Langer, Minnesota State Patrol Colonel, in his individual and official capacity; and John Does, 1-2, in their individual and official capacities, | |
| Defendants. | |

---

Plaintiff Jared Goyette, a freelance journalist, filed this putative class-action lawsuit against Defendants, challenging the treatment by law enforcement officers of members of the news media reporting on the events in Minneapolis following the tragic death of George Floyd.[1] Before the Court are Goyette's Motion to Certify Class and Motion for Temporary

---

[1] Goyette filed an amended complaint on June 8, 2020, the day on which the Court held the hearing on Goyette's motions for a temporary restraining order and class certification. The amended complaint adds two Plaintiffs: Craig Lassig and The Communications Workers of America. Because Goyette's motions and accompanying argument are premised on the allegations as stated in the initial complaint, and because

Restraining Order.  (Dkts. 2, 5.)  For the reasons addressed below, Goyette's motions are denied without prejudice.

## BACKGROUND

On May 25, 2020, George Floyd died as a result of an encounter with four officers of the Minneapolis Police Department (MPD).  Video of the encounter captured by bystanders shows MPD officers placing Floyd, who is black, in handcuffs and pinning him to the ground face down, while then-officer Derek Chauvin knelt on Floyd's neck.  Floyd and several bystanders pleaded with Officer Chauvin to change his position to allow Floyd to breath.  Officer Chauvin refused and continued to kneel on Floyd's neck for several minutes after Floyd became unresponsive.  Video of the encounter circulated rapidly, and hundreds of justifiably angry citizens began protesting in Minneapolis and Saint Paul, as well as nationally and around the world.

On May 26, 2020, despite mostly peaceful demonstrations, protesters at the MPD's 3rd Precinct building vandalized police vehicles with graffiti and targeted the precinct building where the officers involved in bringing about Floyd's death were assigned.  Law enforcement officers used foam projectiles and tear gas in an effort to repel some of the protestors.  Again, on May 27, 2020, hundreds of people protested in Minneapolis.  While covering the protests at the 3rd Precinct, Goyette witnessed a projectile fired by MPD officers near the precinct building hit a young male protester in the head.  As Goyette was documenting bystanders assisting the injured protester, Goyette was hit in the head with a

---

Defendants did not have a fair opportunity to address the amended complaint, the Court declines to consider the amended complaint for purposes of the instant motions.

projectile.  A moment later, a canister of tear gas landed nearby, making it impossible for Goyette to see.  Goyette maintains that he was clearly identifiable as a member of the news media as he carried a large camera, monopod, and notebook.  That same evening, an auto parts store near the 3rd Precinct building was set on fire, and other nearby stores were looted and vandalized.   In total, the Minneapolis Fire Department responded to approximately 30 fires related to the protests that evening, during which some fire trucks attempting to respond were hit with rocks and other projectiles.

On May 28, 2020, MPD officers abandoned the 3rd Precinct building, which was set on fire by protesters.  The fire department was unable to respond the 3rd Precinct building fire, and others nearby, because of safety concerns.  The Saint Paul Police Department reported dozens of fires and more than 170 damaged or looted businesses.

On May 29, 2020, Minnesota Governor Tim Walz announce that the state would restore order, calling on the resources of the Minnesota State Patrol, other state agencies, and the Minnesota National Guard.  Governor Walz implemented an emergency executive order imposing a nighttime curfew in Minneapolis and Saint Paul.  *See* Minn. Exec. Order No. 20-65 (May 29, 2020).  All "members of the news media" were exempted from the curfew.  *Id.*  The curfew was disregarded by many, and individuals hiding among otherwise peaceful protesters continued to commit acts of looting, vandalism, and arson.

On May 30, 2020, the largest deployment of the Minnesota National Guard in state history was mobilized, along with the State Patrol and local law enforcement officers, to restore order.  They moved aggressively to disperse protesters who remained out after the

curfew.  On May 31, 2020, law enforcement officers arrested approximately 150 people near downtown Minneapolis for disregarding the curfew.

Goyette filed this action on June 2, 2020, and contemporaneously moved for a temporary restraining order and for class certification.  Goyette's complaint asserts three causes of action arising under 42 U.S.C. § 1983 for alleged violations of the United States Constitution: (1) retaliation for exercising rights protected by the First Amendment, (2) unlawful seizure and excessive force in violation of the Fourth Amendment, and (3) violations of procedural due process rights protected by the Fourteenth Amendment.

In support of his motion for a temporary restraining order, Goyette contends that "the MPD and the State Patrol have engaged in alarming, aggressive tactics to harm and intimidate credentialed, or otherwise identifiable members of the news media providing on-the-scene coverage" of the events following Floyd's death.  Goyette alleges that several members of the news media, after identifying themselves as members of the press, have been arrested, threatened, shot with rubber bullets, or subjected to chemical irritants. Goyette alleges four specific incidents involving the Minnesota State Patrol and members of the news media, none of which involved Goyette.  Goyette alleges twelve specific incidents involving the MPD and members of the news media, including the incident in which Goyette was hit with a projectile on May 27, 2020.  Goyette alleges ten additional incidents in which the law enforcement agency involved is ambiguous or unspecified.  As a result of these encounters, Goyette argues that members of the news media "have a reasonable fear that Defendants will continue to carry out their unconstitutional customs or

4

policies of deploying less-lethal projectiles and chemical irritants without constitutionally adequate warning."

According to Minnesota State Patrol Colonel Matthew Langer, the Minnesota State Patrol has not used chemical irritants or less-lethal munitions to try to maintain order and safety since May 31, 2020. Langer also declares that the Minnesota State Patrol does not have a practice or policy of targeting or harassing members of the news media. And, according to Langer, the Minnesota State Patrol gave dispersal orders before deploying chemical irritants or less-lethal munitions during its attempts to secure any area. Likewise, MPD Commander Scott Gerlicher declares that no tear gas or less-lethal munitions have been used by the MPD since May 31. Gerlicher asserts that he did not approve the use of threats, intimidation, or force against any member of the news media specifically because the individual was a member of the news media, nor did any other incident commander. MPD officers have discretion to use "marking rounds" or "foam rounds," but only in situations in which there is an imminent threat to life or safety. If individuals claiming to be members of the news media were arrested in the process of controlling crowds, the MPD released them once they were identified as members of the news media. Defendants assert that, from June 1, 2020, through Friday, June 5, 2020, there have been no major incidents of rioting, vandalism, looting, or arson.

## ANALYSIS

### I.    Motion for Temporary Restraining Order

Goyette seeks to prevent Defendants from taking certain actions against individuals who have "identified themselves as a member of the news media or [when] it is reasonably

5

clear that the individual is engaged in news gathering activities." Goyette seeks to enjoin Defendants from taking the following actions against such individuals: (1) the use of a chemical agents including but not limited to mace, pepper spray, and tear gas; (2) the use of any physical force, including but not limited to non-lethal projectiles; (3) the arrest, detention, or taking into custody of any person except as justified by probable cause for arrest; and (4) the use of threating language or gestures to harass or intimidate. The prohibitions that Goyette seeks would not apply to circumstances in which members of the news media present an imminent threat of violence or bodily harm to persons or damage to property.

Federal Rule of Civil Procedure 65 authorizes a district court to grant injunctive relief in the form of a temporary restraining order. When determining whether a temporary restraining order is warranted, a district court considers the four *Dataphase* factors: (1) the threat of irreparable harm to the movant, (2) the probability that the movant will succeed on the merits, (3) the balance between this harm and the injury that an injunction would inflict on other parties, and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The purpose of a temporary restraining order is to maintain the status quo. *Kelley v. First Westroads Bank*, 840 F.2d 554, 558 (8th Cir. 1988). The burden rests with the moving party to establish that injunctive relief should be granted. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). Preliminary injunctive relief is an extraordinary remedy that is never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Because the "failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction," *Novus*

6

*Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) (internal quotation marks omitted), the Court begins its analysis with this *Dataphase* factor.

Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). But to establish the need for injunctive relief because of irreparable harm, the movant "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising*, 725 F.3d at 895 (internal quotation marks omitted); *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015). A mere "possibility of harm" is insufficient. *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Here, Goyette moved for a temporary restraining order on June 2, 2020, seeking to enjoin Defendants from arresting and threatening members of the news media, and from using chemical irritants or physical force, including less-lethal munitions, against members of the news media. But Goyette does not allege that any of the conduct that he seeks to enjoin—occurring over a five-day period of unprecedented civil unrest—has occurred

since May 31, 2020, or facts that plausibly demonstrate that such conduct is likely to recur

imminently.  Commander Gerlicher and Colonel Langer have declared that the MPD and

Minnesota State Patrol have used neither chemical irritants nor less-lethal munitions since

May 31, 2020, and these assertions are uncontroverted.[2]  It is Goyette's burden to establish

the threat of irreparable harm.  But Goyette's brief does not even address this *Dataphase*

factor.[3]  As a result, Goyette has not established that harm is certain and of such imminence

that there is a clear and present need for equitable relief.[4]

---

[2]     At the June 8, 2020 hearing, neither party claimed that MPD or Minnesota State
Patrol has used chemical irritants or less-lethal munitions since May 31, 2020 against the
news media or anyone else for crowd control.

[3]     Goyette contends that, when a plaintiff's First Amendment rights are at stake,
demonstrating a likelihood of success on the merits is all that is needed to warrant an
injunction.  *See Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th
Cir. 2012) ("When a plaintiff has shown a likely violation of his or her First Amendment
rights, the other requirements for obtaining a preliminary injunction are generally deemed
to have been satisfied." (quoting *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir.
2011), *vacated on reh'g*, 705 F.3d 845 (8th Cir. 2012))).  The cases on which Goyette relies
involve movants seeking to enjoin enforcement of a *statute* restricting speech, a
circumstance in which demonstrating a likelihood of success on the merits of the movants'
First Amendment claim would generally establish a likelihood of irreparable harm.  But
that does not obviate the requirement of a movant to show a threat of irreparable harm.
"[W]here a duly enacted statute is involved, a likelihood of success on the merits may be
characterized as one, but not the only, threshold showing that must be met by a movant for
a preliminary injunction."  *Planned Parenthood Minn. v. Rounds*, 530 F.3d 724, 732 n.5
(8th Cir. 2008); *accord Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959)
("The basis of injunctive relief in the federal courts has always been irreparable harm and
inadequacy of legal remedies.").

[4]     At the June 8, 2020 hearing, Goyette's counsel argued that Defendants' alleged
unconstitutional tactics could resume if protests become violent again.  As an example,
counsel referred to the possibility that an acquittal of the former officers involved in
Floyd's death could prompt renewed violent protests in Minneapolis.  Such speculative
risks of uncertain future events are not a basis for obtaining preliminary injunctive relief.

8

"[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973). The Court recognizes the gravity of Goyette's claims. Essential to free government, the freedom of speech and freedom of the press are among our most fundamental rights and liberties. Abridgment of these rights "impairs those opportunities for public education that are essential to effective exercise of the power of correcting error through the process of popular government." *Thornhill v. State of Alabama*, 310 U.S. 88, 741 (1940). The protests in Minnesota, and now around the globe, are rooted in acts of shocking police brutality. The police response to those protests is of exceptional importance to how the community moves forward. Media reporting on events like those at issue here enables the public to meaningfully participate as citizens in a constitutional democracy.

Goyette has asserted extensive allegations of egregious conduct by law enforcement directed at members of the news media. Several members of the media were allegedly threatened or subject to unlawful arrests. Others sustained severe, permanent injuries while reporting on events of intense public concern. They deserve better.[5] Indeed, Governor

---

*See, e.g.*, *Chlorine Inst., Inc.*, 792 F.3d at 915–16 (explaining that speculative harm does not support preliminary injunctive relief).

[5] The Court is acutely aware of the circumstances that law enforcement encountered. Law enforcement has a difficult job under normal circumstances, and "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (internal quotation marks omitted). This was especially true when Minnesota endured an unprecedent period of rioting, looting, arson, and civil unrest. Notwithstanding, there remain allegations of conduct that no civilized society would condone, even in an uncivilized time.

Walz has publicly condemned some of the conduct highlighted by Goyette. The Minneapolis City Council voluntarily entered into a TRO with the Minnesota Department of Human Rights that accelerates the review of officer conduct and requires the Chief of Police or his designee to expressly authorize any use of crowd-control weapons, such as chemical agents and marking rounds, during protests and demonstrations. And Defendants concede that any member of the media that has been injured by the unlawful conduct of law enforcement has a right to seek redress in court. But Goyette has not established that the "extraordinary" equitable relief he seeks, *Winter*, 555 U.S. at 7, is necessary at this time. Accordingly, Goyette's motion for a temporary restraining order is denied without prejudice. *See, e.g.*, *Medtronic, Inc. v. Ernst*, 182 F. Supp. 3d 925, 934-35 (D. Minn. 2016) (denying temporary restraining order based solely on plaintiff's failure to demonstrate irreparable harm).

## II.     Motion for Class Certification

Goyette also moves for an order certifying the following class:

> All members of the news media, as the term is used in Emergency Executive Order 20-69, who intend to engage in news gathering or reporting activities in Minnesota related to the protest activities that followed the death of George Floyd and the law enforcement response to those protests.[6]

---

[6]     Notably, Goyette does not offer a definition of news media, and the term in not defined in Executive Order 20-69. Nor does Goyette offer a definition of news gathering or reporting activities. Moreover, Goyette's proposed class would include *any* news media who merely *intend* to engage in news gathering or reporting activities on the specified subject at some unspecified future time. Consequently, the proposed class likely would require an individualized inquiry into the state of mind of each putative member.

In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Federal Rule of Civil Procedure 23 are met. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). To obtain class certification under Rule 23, a plaintiff must prove: (1) the class is so numerous that joinder is impracticable; (2) there are common questions of law and fact; (3) the claims and defenses of representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the class' interests. Fed. R. Civ. P. 23(a).[7] To determine whether class certification is proper, the Court must make a "limited preliminary inquiry, looking behind the pleadings." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). A class action may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *Gen. Tel. Co of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Defendants argue that Goyette's motion for class certification is premature because no discovery has occurred in this case.[8] "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify

---

[7]     A plaintiff must also demonstrate that a class action is appropriate under Rule 23(b), Fed. R. Civ. P.

[8]     Goyette implicitly acknowledges that class certification may be premature by stating that the "Court should also bear in mind that an order that grants or denies class certification may be altered or amended before final judgment" and that the "Court remains free to modify the class certification order as necessary in light of further factual development in this case." *Cf. Klein v. TD Ameritrade Holding Corp.*, 327 F.R.D. 283, 298 (D. Neb. 2018) (finding a motion for certification of an injunctive-relief class to be premature when "plaintiff essentially concedes the motion is premature, stating '[a]t this stage and before any merits discovery has been undertaken, Plaintiff reserves his right to seek any and all of these remedies on behalf of the Class.' ").

the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "Sometimes the issues are plain enough from the pleadings . . . and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160; *see Hall v. Equity Nat'l Life Ins. Co.*, 730 F. Supp. 2d 936, 941 (E.D. Ark. 2010) ("In some instances, a court can decide on certification before any discovery has yet taken place."). But the propriety of class-action status seldom can be determined on the pleadings alone. *Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir. 1977). Rule 23(c) was amended in 2003 to afford more time to engage in discovery prior to certification and make other determinations, rather than deny class certification. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 (2018) (recognizing that 2003 amendments "raised the standard for certifying a class from an early, conditional ruling to a later, relatively final decision" and "expand[ed] the opportunity for parties to engage in discovery prior to moving for class certification" (quoting Willging & Lee, *From Class Actions to Multidistrict Consolidations: Aggregate Mass-Tort Litigation after Ortiz*, 58 U. Kan. L. Rev. 775, 785 (2010))).

A class action may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *Wal-Mart Stores, Inc. v. Duke*, 564 U.S. 338, 350–51 (2011). At this time, the Court is unable to conduct this rigorous analysis before determining whether Goyette's claims can be resolved on a class-wide basis. While Goyette's claims may ultimately be suitable for class-wide resolution, the Court concludes that fact discovery is necessary to determine whether the Rule 23

requirements can be satisfied.[9] *See Keech v. Sanimax USA, LLC*, Civ. No. 18-683, 2019 WL 79005, at *5 (D. Minn. Jan. 2, 2019) ("Without discovery in this case, the Court cannot undertake the rigorous analysis required of the class allegations."); *see, e.g.*, *Jonathan Small & Jotmar, Inc. v. Target Corp.*, Civ. No. 13-1509, 2013 WL 12142545, at *1 (D. Minn. Aug. 23, 2019) (denying motion for class certification because no discovery had yet to occur). This conclusion is particularly warranted in light of the amended complaint Plaintiffs filed on the morning of the hearing, after the parties had fully briefed the pending motion for class certification.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED:**

1.     Plaintiff Jared Goyette's Motion for Temporary Restraining Order, (Dkt. 5), is **DENIED WITHOUT PREJUDICE.**

2.     Plaintiff Jared Goyette's Motion for Class Certification, (Dkt. 2), is **DENIED WITHOUT PREJUDICE**.

Dated:  June 9, 2020                                s/Wilhelmina M. Wright
                                                              Wilhelmina M. Wright
                                                              United States District Judge

---

[9]     The Court is mindful of Goyette's expedited effort to obtain class certification and prospective injunctive relief for members of the media covering issues of immense public concern, while jeopardizing their own safety in doing so. But "[n]o one benefits when judges are forced to decide premature . . . class-certification motions." *Johnson v. U.S. Bank Nat. Ass'n*, 276 F.R.D. 330, 336 (D. Minn. 2011). Goyette acknowledges as much. Even when no class is certified, the Court retains equitable jurisdiction to craft injunctions that extend beyond the circumstances of the named plaintiff. *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019).

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DON'T SHOOT PORTLAND, a nonprofit
corporation, in its individual capacity;
NICHOLAS J. ROBERTS, in an individual
capacity and on behalf of themselves and all
others similarly situated; and MICHELLE
"MISHA" BELDEN, in an individual capacity
and on behalf of themselves and all others
similarly situated,

                 Plaintiffs,

    v.

CITY OF PORTLAND,

                 Defendant.

No. 3:20-cv-00917-HZ

ORDER

HERNÁNDEZ, District Judge:

       Plaintiffs Don't Shoot Portland, Nicholas Roberts, and Michelle "Misha" Belden, on

behalf of themselves and all others similarly situated, bring this action against Defendant City of

Portland. Compl. 1, ECF 1. Plaintiffs allege that Defendant, through the Portland Police Bureau,

1 - ORDER

violated the First and Fourth Amendments by using oleoresin capsicum ("OC") and

orthochlorobenzalmalonitrile ("CS") (collectively, "tear gas") during recent and ongoing

Portland protests. Plaintiffs also filed a Motion for a Temporary Restraining Order ("TRO"),

asking this Court to prohibit the City of Portland from using tear gas as a crowd control measure.

Pl. Mot. TRO ("Pl. Mot."), ECF 2. For the reasons that follow, Plaintiffs' motion is granted in

part.

## BACKGROUND

On May 29, 2020, citizens of Portland, Oregon, joined nationwide protests against the

death of George Floyd and other acts of violence perpetrated by police officers against the

African American community. While many demonstrations have remained peaceful, violence

and destruction have occurred. Plaintiffs in this case challenge the Portland Police Bureau

("PPB")'s use of tear gas against protestors participating in these demonstrations.

The Court has reviewed the declarations and video evidence submitted by the parties.

Defendant highlights the destruction that occurred on the first night of demonstrations, including

a fire instigated by protestors inside the Justice Center.[1] Reese Decl. ¶ 6. Defendant also offers

evidence of largely peaceful marches—without any police intervention—and of officers using

tear gas in response to individuals shaking fences and throwing projectiles. *See* Sheffield Decl.

Plaintiffs do not dispute that, in some instances, officers deployed tear gas after individuals,

within a larger crowd of peaceful protestors, threw water bottles and fireworks. Wilbanks Decl.

---

[1] According to Defendant, "[t]he Justice Center houses the Multnomah County Detention Center.
The Multnomah County Detention Center serves as the initial booking facility for all arrestees in
Multnomah County and houses adults in custody for the County, as well as state and federal
inmates involved in court matters . . . . As of May 29th, the Justice Center held approximately
250 adults in custody." Def. Resp. 4, ECF 17.

2 - ORDER

¶ 8; Kruszewski Decl. ¶ 9; Khalsa Decl. ¶ 13.[2] But they also offer evidence that, in certain incidents, officers fired cannisters of tear gas at protestors without warning or provocation both in front of the Justice Center and elsewhere in downtown Portland. *See, e.g.*, Roberts Decl. ¶¶ 14–15, 22–23; Bezdek Decl. ¶¶ 11, 23, 24; Theus Decl. ¶ 9; Butera-Smith Decl. ¶¶ 8, 9; Rushton Decl. ¶¶ 10, 11. Plaintiffs also recount multiple occasions in which crowds were surrounded by tear gas without available avenues of escape. Roberts Decl. ¶ 15; Theus Decl. ¶ 11; Bezdek Decl. ¶ 23; Butera-Smith ¶¶ 14, 15. Tear gas was also fired at protesters attempting to comply with officers' orders to leave the areas at issue. Wilbanks Decl. ¶¶ 14, 15; Bezdek Decl. ¶¶ 20, 23.

Defendant's use of tear gas is governed by two internal policy directives: Directive 635.10, "Crowd Management/Crowd Control,"[3] and Directive 1010.00, "Use of Force."[4] Additionally, on June 6, 2020, Mayor Ted Wheeler, as Commissioner of the Portland Police Bureau, imposed further limitations on the use of tear gas, directing that "gas should not be used unless there is a serious and immediate threat to life safety, and there is no other viable alternative for dispersal." Dobson Decl. ¶ 13.

## STANDARDS

The standard for a temporary restraining order (TRO) is "essentially identical" to the standard for a preliminary injunction. *Chandler v. Williams*, No. CV 08-962-ST, 2010 WL 3394675, at *1 (D. Or. Aug. 26, 2010) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brushy & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001)); *see also Daritech, Inc. v. Ward*, No. CV–11–570–BR, 2011 WL 2150137, at * 1 (D. Or. May 26, 2011) (applying preliminary injunction standard

---

[2] Defendant also asserts that officers have been targeted with other projectiles, including "bricks, full cans of soup, frozen water bottles, full water bottles, rocks, steel sling shot balls, fireworks, bottles, beer cans, flares and many other items." Schoening Decl. ¶ 15.
[3] Directive 635.10 is available at: https://www.portlandoregon.gov/police/article/649358.
[4] Directive 1010.00 is available at: https://www.portlandoregon.gov/police/article/751998.

to motion for TRO). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 21 (2008)). "The elements of [this] test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Similarly, serious questions going to the merits, coupled with a balance of equities that tips sharply in a plaintiff's favor, will support the issuance of an injunction if the other elements of the test are met. *Id.* at 1134–35 (internal citations omitted).

## DISCUSSION

Before turning to the TRO analysis, there are four points worth addressing. First, as Judge Jackson noted in resolving a similar motion just days ago in the District of Colorado, people have a right to demonstrate and protest the actions of governmental officials, including police officers, without fear for their safety. This right is enshrined in the First and Fourth Amendments of the Constitution. Second, police in this country have difficult, dangerous, and often traumatic jobs. As the Supreme Court has recognized, officers are often "forced to make split-second judgments [] in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Third, this case arises in unprecedented times. COVID-19 is a highly contagious and deadly respiratory virus that has taken too many lives and upended communities throughout this country. Finally, like Judge Jackson, the Court recognizes the difficulty in drawing an enforceable line that permits police officers to use appropriate means

4 - ORDER

to respond to violence and destruction of property without crossing the line into chilling free speech and abusing those who wish to exercise it.

I.    **Likelihood of Success on the Merits**

   A.  **Fourth Amendment Claim**

The Fourth Amendment prohibits unreasonable searches and seizures. Excessive force claims are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham*, 490 U.S. at 395. The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the fact that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions. *Id.* at 396–97. The Fourth Amendment standard requires inquiry into the factual circumstances of every case. *Id.* Relevant factors include the severity of the crime, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest. *Id.*

Here, Plaintiffs provide video evidence and declarations documenting the use of tear gas against protestors. While Defendant points to the destruction that occurred at the Justice Center on May 29, 2020, Plaintiffs offer evidence that tear gas was used indiscriminately in other instances throughout the city. In some of these instances, there is no evidence of any provocation. In others, individuals appear to have shaken fences and thrown water bottles and fireworks at the police. Either way, there is no dispute that *Plaintiffs* engaged only in peaceful and non-destructive protest. There is no record of criminal activity on the part of Plaintiffs. To the contrary, there is even evidence that some protesters were confronted with tear gas while trying to follow police orders and leave the demonstrations. Given the effects of tear gas, and the potential deadly harm posed by the spread of COVID-19, Plaintiffs have established a strong likelihood that Defendant engaged in excessive force contrary to the Fourth Amendment.

### B.  First Amendment Claim

The First Amendment provides that all citizens have a right to hold and express their personal political beliefs. *See Cohen v. California*, 403 U.S. 15, 23–24 (1971). Organized political protest is a form of "classically political speech." *Boos v. Barry*, 485 U.S. 312, 318 (1988). "Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment." *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996). However, "[i]n order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'" *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (alterations in the original) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994).

There is a serious question as to whether Plaintiffs will succeed on their First Amendment claim. At this juncture, the parties' sole dispute is whether Plaintiffs can demonstrate that their protected activity was a substantial or motivating factor in PPB's conduct. Plaintiffs have submitted evidence demonstrating that officers indiscriminately used force against peaceful protestors on multiple occasions. On a few occasions, officers continued to fire tear gas canisters as people attempted to leave the protest area, effectively blocking their escape. One protestor was subjected to rubber bullets, tear gas, and a flash bang at close range as he was calmly walking towards the waterfront, trying to comply with officers' orders. Another was confronted by a group of seven officers, who rolled tear gas down the street towards her even as she informed the officers she was trying to go home. These incidents demonstrate that preventing criminal activity near the Justice Center was not the sole purpose of PPB's use of force. Instead, officers may

have been substantially motivated by an intent to interfere with Plaintiffs' constitutionally

protected expression.

## II.    Irreparable Harm

Plaintiffs must also "demonstrate that irreparable injury is *likely* in the absence of an

injunction." *Winter*, 555 U.S. at 22. "Typically, monetary harm does not constitute irreparable

harm." *Calif. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009), *vacated*

*and remanded sub nom. Douglas v. Indep. Living Ctr. of S. Calif., Inc.,* 565 U.S. 606 (2012). The

deprivation of a constitutional right, however, may constitute irreparable injury. *Melendres v.*

*Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (affirming the district court's finding that, in the

absence of an injunction, the plaintiffs faced irreparable harm where it was likely they would be

unlawfully detained in violation of the Fourth Amendment); *see also Elrod v. Burns*, 427 U.S.

347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury."). *But see City of L.A. v. Lyons*, 461 U.S. 95, 111

(1983) (holding that the plaintiff was not entitled to an injunction without a showing of any "real

or immediate threat that the plaintiff will be wronged again").

Plaintiffs have demonstrated a threat of immediate, irreparable harm in the absence of a

TRO. Plaintiffs have shown a likelihood of success on the merits on their Fourth Amendment

claim and at least a serious question as to whether they have been deprived of their First

Amendment rights. There is a real and immediate threat that Plaintiffs will be deprived of these

rights as protests continue. The declarations in this case show that PPB has regularly used tear

gas to disperse peaceful protestors. It is likely that it will continue to do so. The risk of

irreparable harm is further heightened by the context in which these protests are occurring.

Despite the global coronavirus pandemic, Plaintiffs and other protestors throughout the

country—frequently wearing protective face coverings—have taken to the streets to protest police brutality and systemic injustice after the killing of George Floyd. But the use of tear gas under these circumstances may put protestors' health at risk, contributing to the increased, widespread infection of this lethal virus. Without a court order limiting the circumstances in which PPB may use tear gas, Plaintiffs are likely to suffer irreparable physical and constitutional injuries.

### III.    Balance of Equities

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks omitted). Defendant points to harm that includes "the breaking of the windows of the Justice Center and other buildings, setting off fireworks, property destruction, looting, setting fires in the Justice Center and other areas of downtown, throwing and launching deadly projectiles at the police, and attempting to dismantle a fence put up to protect the Justice Center." Def. Resp. 22.

 In theory, limits on the use of tear gas may impede officers' ability to protect themselves against potential violence from demonstrators. But any harm in limiting Defendant's use of tear gas is outweighed by the irreparable harm that Plaintiffs—engaged in peaceful protest—are likely to endure. The relief afforded limits but does not eliminate the use of tear gas. Accordingly, the balance of equities weighs in Plaintiffs' favor.

### IV.    Public Interest

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (internal quotation marks omitted). The Ninth Circuit has found

that "it is always in the public interest to prevent the violation of a party's constitutional rights."

*Melendres*, 695 F.3d at 1002 (internal citations and quotations omitted); *see also Cuviello v. City of Vallejo*, 944 F.3d 816, 834 (9th Cir. 2019) ("We have consistently recognized the significant public interest in upholding free speech principles." (internal quotations and brackets omitted)).

This is a significant moment in time. The public has an enormous interest in the rights of peaceful protesters to assemble and express themselves. These rights are critical to our democracy. The community, however, also has an interest in allowing the police to do their jobs and to protect lives as well as property.

Here, there is evidence that officers have violated the constitutional rights of peaceful protestors, as well as their own department's internal directives and guidelines. Limiting the use of tear gas may mean that officers are unable to stop some property damage. But the unconstrained use of tear gas cannot weigh in the public's interest when this use is likely to exacerbate the transmission of COVID-19, for those engaged in peaceful protest as well as the community at large. The Court therefore finds that the public interest weighs in favor of granting a TRO in this case.

## V.     Relief

While the Court acknowledges that Mayor Wheeler has issued additional guidance on the use of tear gas during these protests, Defendant has not submitted sufficient evidence to show that this guidance will be effective in preventing its use against peaceful protestors in violation of the First and Fourth Amendment. The Court also notes that a court order offers Plaintiffs additional recourse in the event that these violations continue. The Court therefore orders that PPB be restricted from using tear gas or its equivalent except as provided by its own rules generally. In addition, tear gas use shall be limited to situations in which the lives or safety of the

public or the police are at risk. This includes the lives and safety of those housed at the Justice

Center. Tear gas shall not be used to disperse crowds where there is no or little risk of injury.

    This order will expire in 14 days unless extended, superseded, or vacated by a subsequent

order. Plaintiffs are not required to post security.

<div align="center">**CONCLUSION**</div>

    Plaintiffs' Motion for a Temporary Restraining Order [2] is granted in part.

IT IS SO ORDERED.

Dated: _____ June 9, 2020 _____.

_____

MARCO A. HERNÁNDEZ
United States District Judge