1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| BLACK LIVES MATTER SEATTLE-KING COUNTY, ABIE EKENEZAR, SHARON SAKAMOTO, MURACO KYASHNA-TOCHA, ALEXANDER WOLDEAB, NATHALIE GRAHAM, AND ALEXANDRA CHEN,<br><br>                 Plaintiffs,<br><br>    v.<br><br>CITY OF SEATTLE,<br><br>                 Defendant. | No. 2:20-cv-887 RAJ<br><br>MOTION FOR ORDER TO SHOW CAUSE WHY CITY OF SEATTLE SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE PRELIMINARY INJUNCTION<br><br>NOTE ON MOTION CALENDAR: July 30, 2020<br><br>Oral Argument Requested |

MOTION FOR CONTEMPT (No 2:20-cv-887 RAJ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................. 2

      A.    SPD Violated the Injunction by Targeting Peaceful Protesters and Deploying Projectiles Indiscriminately into Crowds............................ 2

      B.    SPD Violated the Injunction by Targeting Journalists ......................... 7

      C.    SPD Violated the Injunction by Targeting Legal Observers ................. 9

      D.    SPD Violated the Injunction by Targeting Medics................................ 9

III.   ARGUMENT ................................................................................................. 10

      A.    Legal Standard for Contempt.............................................................. 10

      B.    The City Plainly Violated the Preliminary Injunction by Targeting Peaceful Protestors, Journalists, Legal Observers, and Medics.......................... 11

IV.   CONCLUSION.............................................................................................. 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# I.    INTRODUCTION

The City of Seattle has willfully and brazenly violated the preliminary injunction. The Court should hold the City in contempt. Two days ago, the Seattle Police Department (SPD) ambushed peaceful protesters with a level of violence that surpasses that seen in early June. Protestors were indiscriminately hit with blast balls, pepper spray, and blunt force objects. Journalists were trampled. Medics were maced for attending to patients. Legal observers were shot at close range. The injuries were extensive.

The City's actions—documented in horrific detail in the declarations accompanying this motion—plainly violate the preliminary injunction. The City will argue that its actions were justified because some protesters allegedly committed property crimes and threw things at police officers. But that would be the same argument the City made before, which the Court rejected in declaring that it is unconstitutional to use force against an entire crowd because of the actions of a few specific protesters who individually pose a threat. The evidence shows many instances of indiscriminate use of the weapons against people who are not suspected of any alleged violence or property crime, without warning and without provocation. A "Wall of Moms" poses no threat to a line of armored police officers in riot gear. Those mothers were not violent, were not wielding weapons, and were not breaking any laws; they were there to protest police brutality. Instead, they were met with more police brutality. For many protesters, struggling to understand why the SPD reacted so violently, this felt like vengeance. The sheer amount of blast balls and pepper spray used against protesters supports that notion.

Simply put, it is *always* wrong to attack protesters peacefully exercising their constitutional rights with potentially lethal force. It is *never* justified to attack journalists, medics, legal observers. It is *always* unconstitutional to fire indiscriminately into a crowd. But that's exactly what SPD did throughout July 25, 2020, in clear violation of this Court's order.

The Court should order the City to show cause why it should not be held in contempt.

MOTION FOR CONTEMPT (No 2:20-cv-887 RAJ) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

148988058.4

## II.  BACKGROUND

On June 12, 2020, the Court enjoined the City of Seattle from "employing chemical irritants or projectiles of any kind against persons peacefully engaging in protests or demonstrations." Dkt. 34 at 11.  Chemical irritants and projectiles were defined to include pepper spray, flash-bang grenades, pepper balls, blast balls, rubber bullets, and foam-tipped projectiles.  *Id.*  The only exception allows for individual officers to deploy these chemical weapons or projectiles against peaceful protesters if and only if it is 1) necessary; 2) reasonable; 3) proportional, and 4) targeted to either protect against "specific imminent threat of physical harm" or to respond to "specific acts of violence or destruction of property." *Id.*  On June 17, 2020, the Court converted its June 12 order into a preliminary injunction in effect through September 30, 2020 (Dkt. 42) ("the Injunction").

On July 25, 2020, protesters in Seattle again took to the streets, to peacefully protest police violence.  Soon after the demonstrations started, as detailed in the many declarations filed with this motion.  SPD began using indiscriminate and excessive force to suppress the mostly peaceful demonstrations against police violence.[1]

A.  **SPD Violated the Injunction by Targeting Peaceful Protesters and Deploying Projectiles Indiscriminately into Crowds.**

Many witnesses consistently say the same thing: on July 25, SPD suddenly and without warning divided the protesters into two groups and began an all-out assault.  SPD officers lobbed flash-bang grenades, blast balls filled with pepper spray, and foam tipped bullets into the middle of retreating crowds.  Bonifilia Decl., at ¶¶ 7-9; Matney Decl., at ¶¶ 10, 19; Butler Decl., at ¶¶ 5-7.  People screamed and ran in terror as chaos ensued.  Baker Decl. ¶ 14; Sill Decl. ¶ 7.

Jessica Bonafilia was marching peacefully and without incident.  When she reached the SPD East Precinct, SPD threw flash bangs to push the crowd back down Pine Street.  Bonifilia Decl., ¶¶ 5-6.  She never heard a warning or dispersal order.  *Id.* ¶ 6.  The entire crowd tried to

---

[1] Counsel conferred about this motion on July 27, 2020. Counsel for the City committed to providing Plaintiffs information about what less lethal weapons were used on July 25, 2020.  David Perez Decl., Ex. D.

MOTION FOR CONTEMPT (No 2:20-cv-887 RAJ)  –2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

retreat as SPD continued deploying flash-bang grenades and other incendiary devices.  *Id.* ¶¶ 6-7.

SPD officers lobbed blast balls overhand into the middle of the crowd.  *Id.* ¶ 7.  Standing about

10 rows back from the police line in the crowd of protesters, she was hit by one of those blast

balls, which exploded on her right leg.  *Id.* ¶ 9.  **The blast knocked her to the ground, singed**

**her clothing, and gave her first and second-degree burns**.  *Id.* ¶¶ 9, 16.  By the time she

reached safety from SPD's violence, her thighs were **covered in blood**.  *Id.* ¶13.  Four of her

friends were also hit by SPD projectiles.  *Id.* ¶17.

Kathryn Forest joined the "Wall of Moms" group.  *Id.* ¶ 5.  In her words "the group has

become a means for mothers to more tangibly support the anti-racism, anti-police brutality

movement by shielding other protesters who might be more readily targeted with aggressive law

enforcement tactics."  *Id.*  They did not have weapons, they did not destroy any property, and

they did not hurt anyone.  *Id.* ¶ 8.  They posed no threat to anyone.  *Id.*  When she returned to Cal

Anderson Park after marching, she was about to start her good-byes and start heading home to

Tacoma—but then came the explosions.  *Id.* ¶ 9.  **Law enforcement emerged in force and**

**began deploying flash grenades indiscriminately into the crowd.**  *Id.*  Terrified and disoriented

she linked arms with the Wall of Moms.  *Id.* ¶¶ 11-13.  The police lobbed flash bang grenades at

their feet.  *Id.* ¶ 14.  One detonated at her feet and injured her.  *Id.*  The Wall of Moms raised

their umbrellas to shield themselves.  *Id.* ¶15.  The officers began spraying mace wildly at them

and telling them to stay back, even though they had not moved forward.  *Id.*; *see also* Baker

Decl. ¶¶ 22-23.  Ms. Forest peeked behind her umbrella, when an officer sprayed her at close

range in the face—incapacitating her.  Forest Decl. ¶ 16.  Her eyes, face, and lungs were burning

as she was grabbed by the other Wall of Moms women; saline rinse didn't help.  *Id.* ¶ 17.  Ms.

Forest had never experienced anything like this and left thinking the police wanted to attack the

Wall of Moms—they seemed angry and fixated on hurting them.  *Id.* ¶ 18.

Sophia Bruce was peacefully marching with her parents when without warning SPD

approached from behind and fired flash bangs, blast balls, and pepper spray indiscriminately into

MOTION FOR CONTEMPT (No 2:20-cv-
887 RAJ)  –3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the crowd.  Bruce Decl. ¶ 7.  She held out her umbrella to protect against the blasts, but one flash-bang detonated beside her.  *Id.* ¶ 8.  A piece of shrapnel from the flash-bang grenade struck her head and caused serious injury.  *Id.* ¶¶ 6-9.  The images are horrifying.

Meanwhile, Cass Bunting was marching peacefully.  Bunting Decl. ¶¶ 3-4.  Near the end of the march, and without warning, SPD began firing incendiary devices indiscriminately into the crowd.  *Id.* ¶ 7.  Bunting felt an explosion at their feet and immediately lost all feeling in their feet.  *Id.* ¶ 8.  The incendiary device burned a large area on both ankles, leaving Bunting unable to walk for an hour.  *Id.* ¶¶10, 13.  Bunting screamed for a medic and was carried out to receive medical attention.  *Id.* ¶ 12; Ex. A-E (photos of injuries).

Nearby, Jessica Butler saw SPD throwing flash bangs towards peaceful protesters.  Butler Decl., ¶¶ 5-6.  Ms. Butler did not see protesters doing anything other than peacefully demonstrating.  *Id.* ¶ 6.  Shortly thereafter, she was struck in the back of the leg with a projectile.  *Id.* ¶7.  SPD struck a person next to her in the back.  *Id.* Shortly after, she went home. *Id.*

Joshua Matney joined the protest at Broadway and East Pine Street where he found SPD firing projectiles indiscriminately into the crowd of peaceful protestors. Matney Decl. ¶ 10. ("These officers were firing baton rounds – rubber bullets or sponge-tipped bullets – indiscriminately into the crowd.").  An officer about ten feet away fired a projectile at Matney and hit him in the right thigh.  *Id.* ¶ 12.  A few minutes later, SPD began "throwing blast balls deep into the crowd, indiscriminately. They were not just throwing them at the front." One blast ball struck Matney in the ankle and exploded—he had to go to the ER.  *Id.* ¶ 21, 29.

Tyler Sill was in the middle of the crowd peacefully marching when SPD started launching incendiary devices and other projectiles near the East Precinct without any warning.  Sill Decl.. ¶¶ 7-8.  He too was hit by a blast ball that exploded so close to him that it burned his leg in two places, through his pants.  *Id.* ¶ 12.  He was never closer than fifty feet from an SPD officer.  *Id.* ¶ 13. He saw many other blast balls explode right next to people.  *Id.* ¶ 15 (photos of his injuries).

MOTION FOR CONTEMPT (No 2:20-cv-887 RAJ)  –4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2   A poignant example of gratuitous violence can be seen in SPD's aggressive grabbing and

3   destroying protesters' umbrellas.  Addams Decl. ¶¶ 5, 7.  **Umbrellas are not weapons.**  They are

4   purely defensive, to protect protesters from gas and projectiles launched by the police.  *Id.* ¶ 6;

5   Matney Decl., at ¶ 11.  Nevertheless, SPD instigated conflict by ripping umbrellas from the

6   hands of protesters.  Addams Decl., at ¶ 5.  Police simultaneously shot chemical agents and

7   projectiles into the crowd at close range.  *Id.*, ¶ 9; Matney Decl., ¶ 6 (police officers stole the

8   shield from woman prior to deploying pepper spray).  Protesters were left vulnerable and

    defenseless to these weapons. Addams Decl., ¶ 7, 9.

9       Even those at the back of the demonstration were not safe from SPD's excessive force.

10  Trimble Decl. at ¶ 2.  Jessica Trimble has limited mobility and cannot run.  *Id.* ¶¶ 3-4.  She

11  decided to join the July 25 protest after seeing SPD target the media with pepper spray.  Ms.

12  Trimble thought she would be safe in the back, *id.*, at ¶ 4, but SPD officers approached them

13  quickly from behind and without warning fired flash bangs and pepper balls into the crowd, *id.* ¶

14  7.  She moved away as fast as she could.  *Id.* ¶¶ 6-7.  Once she finally got away, she left the

15  demonstration and went home.  *Id.* ¶ 9.

16      And, those at the front who tried to run from SPD's violence were often trapped and

17  subjected to more force. *See* Merino Decl., at ¶ 8.  ("I was complying with the officers and was

18  backing up slowly.  The group was tight, and many people were scared, so we had to be careful

19  not to cause a stampede. . . . I was not making eye contact or speaking to an officer, but I was

20  pepper sprayed directly in the face for no reason.").  Even after Ms. Merino was immobilized by

21  the pepper spray, an officer targeted her with a blast ball that exploded on her ankle.  *Id.*[2]

22      Video from July 25 shows that SPD's use of force was not only indiscriminate but also

23  directed against people **who were retreating and posed no threat** to SPD officers.  *See* Mike

24

25      [2] Similarly, Plaintiff Alexandra Chen was part of a group of protesters trying to retreat from the police
    while the police were firing flash bangs into the crowd. The protesters retreated for several blocks, and still the

26  police followed, physically pushing protesters from behind and using flash bangs and chemical irritants on anyone
    who was not moving as quickly as the officers wanted them to move. Chen Decl. ¶¶ 6-9.

MOTION FOR CONTEMPT (No 2:20-cv-
887 RAJ)  –5

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

148988058.4

Baker (@ByMikeBaker), Twitter (Jul. 25, 2020, 7:27 PM),

https://twitter.com/ByMikeBaker/status/1287212851807940608.  The video shows SPD

launching an incendiary device that appears to strike a woman who was ten to twenty feet behind

the line of protesters that SPD was pushing back. *Id*. (0:11-0:19).  And as protesters tried to help

her, SPD pepper sprayed them, too.  SPD continued spraying the protesters as they ran, ignoring

their screams of agony and terror.  *Id.* (0:25-0:44).  SPD then threw a second woman to the

ground, slamming her head onto the concrete curb.  *Id.* (0:17-0:22).  The second woman is also

visible at the beginning of this clip, wearing a pink bandana, clearly trying to get to safety, away

from SPD.  *Id*. (0:01-0:11).  Officers showed little regard for the safety of persons injured by

their actions. *Id.* (0:27 "there's a person on the ground"; 0:34).

> Another video shows SPD shooting pepper spray at a man standing at his bike, presenting

no danger to the SPD officers. Patrick Malone (@pmalonedc), Twitter (Jul. 25, 2020, 7:29 PM),

https://mobile.twitter.com/pmalonedc/status/1287213310505410562.

> A third video shows an officer spraying a protester with pepper spray as another officer

hits him with a baton. When the protester fell to the ground, the SPD officer hit him in the face

again with pepper spray.  Then, SPD attacked people trying to help the defenseless protester on

the ground, spraying them with pepper spray even as they pull the protester to safety.

@daeshikjr, Twitter (Jul. 25, 2020, 11:16 PM),

https://twitter.com/daeshikjr/status/1287270463773609987?s=09.  *See also* Declaration of

Corinne Arnold ("Arnold Decl.") ¶ 19.

> The experiences of the witnesses who have submitted declarations in this case do not

reflect unique or isolated incidents.  They paint a picture of a clear **resurgence of the excessive

force and retaliation by SPD that the June 17 Preliminary Injunction sought to enjoin**.

SPD's actions were neither necessary, reasonable, proportional, nor targeted to a specific threat.

SPD's response on July 25 also showcased alarming tactics that also violate the June 17

Preliminary Injunction. SPD would, without warning, begin advancing their line, launching

MOTION FOR CONTEMPT (No 2:20-cv-
887 RAJ)  –6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   pepper spray, projectiles, and other incendiary devices to push back the protesters.  Oberstadt

2   Decl. ‖ 3 (protester close enough to the police to hear a dispersal order given).  Once SPD had

3   pushed back the protesters, SPD would retreat back to where they began. Protesters would then

4   start to fill in the void.  Then, after waiting some time, SPD would move in again with the same

5   approach. SPD's advancements never appear to be in response to any specific threat and instead

6   seem to be an opportunity for SPD to use force against protesters and retaliate against them for

7   exercising their first amendment rights. Kyashna-tochá Decl. ‖‖ 14, 16-25.

8          After observing the July 25 protest, the NLG also concluded that SPD violated the

9   Court's injunction by "engag[ing] in the indiscriminate use of crowd control munitions against

10  largely peaceful protestors."  Perez Decl., Ex. C.

11  **B.      SPD Violated the Injunction by Targeting Journalists**

12         There is never any reason to attack journalists present at demonstrations to record the

13  events unfolding and provide a critical check on governmental power.  Journalists are often

14  clearly identifiable by their press badges and known to police.

15         But on July 25, SPD repeatedly targeted journalists with brutal violence.  SPD hit Omari

16  Salisbury, the journalist who captured the "pink umbrella" video and other footage used in

17  support of the preliminary injunction, at least **three separate times** on July 25.   As SPD,

18  without warning, began advancing toward the crowd, SPD officers started shooting at Mr.

19  Salisbury who was off to the side, away from the retreating crowd.  Omari Salisbury, Converge

20  Media, Livestream, Seattle Protests, Facebook, at 3:24:04-3:24:43 (Jul. 25, 2020, 2:26 PM),

21  https://www.facebook.com/256456004789181/videos/377506619883346.  As the shots

22  continued, Mr. Salisbury exclaimed "he's targeting!"  *Id.* 3:24:44-3:24:52.  Mr. Salisbury and

23  began coughing from the pepper spray and yelling "press!" "media!" and "our hands are up over

24  here!"  *Id.* 3:24:54-3:25:16.  Explosions continued going off in the foreground as gas lingered in

25  the street. *Id.* 3:25:16-18.  Second, as SPD launched flash bangs into a large crowd, one exploded

26  in a group of journalists hitting Mr. Salisbury's producer in the neck. *Id.* 2:48:50-2:50:15.  Less

MOTION FOR CONTEMPT (No 2:20-cv-
887 RAJ)  –7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

than a minute later, an SPD officer lobbed another flash bang grenade into the middle of the crowd, near Mr. Salisbury and other media. *Id*. 2:50:53-2:50:57. Mr. Salisbury's gas mask was also covered in blue dye, evidence that Mr. Salisbury had been targeted. *Id.* 3:13:44-3:14:55. Finally, SPD attempted to push the protesters back, including Mr. Salisbury and other journalists huddled together.  But because they were at the front line, the journalists could only retreat as fast as the people behind them.  Mr. Salisbury and others tried to tell SPD that they were moving back as fast as they could, but those statements were met pepper spray as multiple officers maced the journalists. @lukeryderrr, Twitter (Jul. 25, 2020, 4:45 PM), https://twitter.com/lukeryderrr/status/1287172224588214272.

Mr. Salisbury and his team were not the only journalists to be hit with pepper spray by SPD.  Renee Raketty is a reporter for the Seattle Gay News. On July 25, she was sitting alone on a fire escape taking pictures behind the police line with her press credentials draped around her neck. **She captured an SPD Officer intentionally and discriminately targeting her with a blast ball**.  Renee Raketty, Facebook, at 00:10-00:22 (Jul. 26, 2020, 1:48 AM), https://www.facebook.com/robert.raketty/videos/pcb.10222276500928791/10222276497168697/?type=3&theater 0:10-0:22.  She was the only person in the area and did nothing to provoke such a response, and was given no warning in advance. In the bottom left hand corner of the video, an SPD officer casually walks near her, and tosses a blast ball at her.

Joey Wieser is an independent journalist who has spent the last two months documenting SPD interacting with protesters.  Wieser Decl. at ¶ 2.  In those two months he had never witnessed SPD targeting the media—until July 25, 2020.  As he stood on a corner with other media, SPD started firing blast balls directly at them even as they shouted "media, media!"  *Id.* ¶ 4.  They also tried retreating.  But again, because they stood on the front lines, they could only retreat as fast as the protesters behind them.  But it was not fast enough for SPD.  Despite identifying himself as media earlier, SPD shoved him and then shot pepper spray into his mouth. *Id.* ¶ 5.  He tried retreating again, but couldn't escape before of the larger slow moving crowd.

MOTION FOR CONTEMPT (No 2:20-cv-887 RAJ)  –8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

An SPD officer pepper sprayed him again, this time directly in the face. *Id.* ¶ 6. The pepper spray blinded him. He screamed for help, was disoriented, and had to leave the protest to reach a safe space where a bystander poured various fluids into his eyes to relieve the pain. *Id.* ¶ 5. Mr. Wieser left and did not return to either protest or document the protest. *Id.* ¶ 8.

Mike Carter, a 43-year veteran *Seattle Times* reporter, who spent much of his career reporting on law enforcement and police accountability said that SPD's targeting of journalists during the July 25 protests was, based on his observation, ***retaliation*** rather than responses to illegal conduct or threats to safety. Mike Carter (@stimesmcarter), Twitter (Jul. 26, 2020, 11:41 AM), https://twitter.com/stimesmcarter/status/1287458152871366656.

**C.      SPD Violated the Injunction by Targeting Legal Observers**

NLG legal observers are immediately recognizable, even in a crowd. Each legal observer wears a bright green hat, which says "National Lawyers Guild Legal Observer." The NLG has observed protests in Seattle for decades. In early July 2020, NLG notified SPG that it would send observers to monitor the protests. Perez Decl., Ex. A. The SPD responded, acknowledging the importance of legal observers, and assuring NLG that they would not be targeted with police violence. *Id.*, Ex. B. **SPD broke its promise.**

The NLG reported that SPD officers purposely hit legal observers with flash bang grenades, and with bicycles, needlessly shoved and grabbed legal observers, and deliberately pepper sprayed one legal observer in the face at close range. *Id.*, Ex. C. Another NLG observer captured the incident on video. Heidi Groover (*Seattle Times*) (@heidigroover), Twitter (Jul. 26, 2020, 7:39 AM), https://twitter.com/heidigroover/status/1287532513192075265. The legal observer's bright green hat is clearly visible as the SPD officer pepper sprays her a few feet away. *Id.* The only other person visible in the clip had their back turned to the officer.

**D.      SPD Violated the Injunction by Targeting Medics**

Medics are an increasingly common presence at protests against police brutality, and do not present a threat to anyone. An organization of medical professionals attended the July 25

MOTION FOR CONTEMPT (No 2:20-cv-887 RAJ)  –9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

protest. Elise Barrett, a nurse supervisor, and former intensive care unit nurse who specialized in helping patients with traumatic injuries, volunteered to assist protesters in need.  She even wore her scrubs to be easily identifiable as a medical professional to both SPD and protesters.  Around 5:00 p.m. she heard a call for a medic and went to investigate.  She saw an SPD officer pin a man against a retaining wall.  Ms. Barrett approached the officer with her hands out to show she was not a threat and to offer first aid.  Almost instantly she was pepper sprayed directly in the face by another officer while a third officer knocked her backwards to the ground.  Video shows no reason to believe she posed a threat. Worse, the video shows that SPD targeted her precisely because she was an identifiable medical professional trying to help a protester.

That would only be the *first* time Ms. Barrett was pepper sprayed on July 25.  Later that evening, Ms. Barrett was pepper sprayed again when she went to guide protesters who had been blinded by SPD's pepper spray to safety, off the street, as SPD advanced against the crowd. Barrett Decl. ¶¶ 16-17.  As she moved people out of the street, she got caught at the back of the crowd of retreating protesters.  SPD pushed the crowd further back, but people in the back could only move as fast as those in the front.  SPD officers pushed her to move faster. She turned to say to the officers, "I'm going as fast as I can," but before she could get a word out **an SPD officer sprayed her directly in the face with pepper spray.**  She was still wearing her scrubs. The sprays were so intense that they saturated her mask.  Ms. Barrett, a volunteer medical professional, struggled to breathe, her eyes and face burning.  She wasn't a threat.  She's a nurse.

## III.  ARGUMENT

### A.  Legal Standard for Contempt

The City of Seattle should be held in contempt for violating the June 17 Preliminary Injunction.  A party may be held in civil contempt where it "fail[ed] to take all reasonable steps within the party's power to comply [with a specific and definite court order]."  *Federal Trade Comm'n v. Productive Marketing, Inc.*, 136 F Supp 2d 1096. 1106 (C.D. Cal. 2001), citing *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir 1993).

MOTION FOR CONTEMPT (No 2:20-cv-887 RAJ)  –10

148988058.4

Willfulness is not an element of contempt.  *Id.* ("there is no good faith exception to the requirement of obedience to a court order").  A party who without just cause fails to comply with an order of the court may be subject to "such other sanctions as the court may deem appropriate." LCR 11(c).  "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both."  *General Signal Corp. v Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).  A party seeking contempt may also be entitled to attorneys' fees and costs incurred in bringing the motion. *BMG Music v Perez*, 952 F.2d 318, 320 (9th Cir. 1991).

**B.     The City Plainly Violated the Preliminary Injunction by Targeting Peaceful Protestors, Journalists, Legal Observers, and Medics.**

The City of Seattle can provide no adequate justification for its continued and escalated use of pepper spray, blast balls, flash-bang grenades, and other projectiles against unquestionably peaceful protesters and other neutral parties.  In fact, the City has already conceded that what it did was wrong: Mayor Durkan admitted that it was wrong for SPD officers to target NLG observers and journalists calling these allegations "***deeply troubling and chilling***."[3]  No amount of property damage could justify the force SPD used a mile away against a large crowd of protesters unconnected with the alleged crimes of earlier.

Neither can the SPD's overwhelming response by justified by injuries to officers.  Even assuming SPD officers were injured by protesters, rather than their own weapons, this Court's order does not permit SPD to use force for retaliation.  Officers may only use force against protesters when such force is necessary, reasonable, proportional, and targeted as outlined in the June 17 Preliminary Injunction.  On July 25, SPD breached this standard.

SPD may claim there was a "riot."  But SPD declaring a "riot" does not invalidate or dilute this Court's June 17 Preliminary Injunction.  In fact, calling a situation "a riot" has no

---

[3] Bush, Evan, et. al., *As Seattle protests resume Sunday, demonstrators and police trade allegations about Saturday's violence*, Seattle Times (updated Jul. 26, 2020, 8:39 pm), https://www.seattletimes.com/seattle-news/as-seattle-protests-resume-sunday-demonstrators-and-police-trade-allegations-about-saturdays-violence/.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

legal effect at all on how SPD is permitted to treat protesters. SPD's constitutional obligations to peaceful protesters are the same whether SPD has declared a riot or not. The leading Washington state case on this issue made clear that a person is not a "rioter" merely because they are in the presence of others who may in fact be rioters. *See State v. Moe*, 174 Wash. 303, 306 (1933) (stating that "[m]ere presence at the scene of the riot is not sufficient" and then vacating riot conviction of person who was merely present and not participating as a rioter) (citations omitted). Moreover, SPD cannot merely declare a riot and then consider an entire area of people a specific threat, or use alleged violence one place to use indiscriminate force in a totally different place. This is the exact type of violence the Preliminary Injunction sought to enjoin.

## IV.    CONCLUSION

In many ways, what happened on July 25 was worse than the events that led to the Court's June 12 order. In a vengeful outburst, the SPD deliberately targeted peaceful protesters, medics attending to those protesters, journalists chronicling those protesters, and legal observers sent to ensure those protesters' rights are protected. This conduct is wrong even in the absence of a court order. But here, it is especially troubling given the Court's clear guidance that peaceful protesters must not be targeted, and that projectiles cannot be deployed indiscriminately into the crowd. The City willfully violated the Court's order, and should be held in contempt. Plaintiffs' proposed order seeks not only to clarify the injunction already in place but also to sanction the City for these blatant violations. The City must be held accountable.

A "two sides to every story" response isn't good enough when peaceful protesters, medics, journalists, and legal observers are getting shot in the ribs, head, legs, and face. Finding the City in contempt, and sanctioning this conduct will go a long way towards ensuring it doesn't happen again.

MOTION FOR CONTEMPT (No 2:20-cv-887 RAJ)  –12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

DATED:  July 27, 2020

By:  s/ David A. Perez
By:  s/ Joseph M. McMillan
By:  s/ Carolyn S. Gilbert
By:  s/ Nitika Arora
By:  s/ Heath Hyatt
By:  s/ Paige L. Whidbee
David A. Perez #43959
Joseph M. McMillan #26527
Carolyn S. Gilbert #51285
Nitika Arora #54084
Heath Hyatt, #54141
Paige L. Whidbee, # 55072

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  DPerez@perkinscoie.com
        JMcMillan@perkinscoie.com
        CarolynGilbert@perkinscoie.com
        NArora@perkinscoie.com
        HHyatt@perkinscoie.com
        PWhidbee@perkinscoie.com


By:  s/ Molly Tack-Hooper
By:  s/ Nancy L. Talner
By:  s/ Lisa Nowlin
By:  s/ Breanne Schuster
By:  s/ John Midgley
Molly Tack-Hooper, #56356
Nancy L. Talner #11196
Lisa Nowlin #51512
Breanne Schuster #49993
John Midgley, #6511

**American Civil Liberties Union of**
**Washington Foundation**
P.O. Box 2728
Seattle, WA  98111
Telephone: (206) 624-2184
Email:  mtackhooper@aclu-wa.org
        talner@aclu-wa.org
        lnowlin@aclu-wa.org
        bschuster@aclu-wa.org
        jmidgley@aclu-wa.org

MOTION FOR CONTEMPT (No 2:20-cv-887 RAJ)  –13

148988058.4

1

2      By:  s/ Robert S. Chang
       By:  s/ Charlotte Garden
3      By:  s/ Melissa Lee
       By:  s/ Jessica Levin
4      Robert S. Chang, #44083
       Melissa Lee #38808
5      Jessica Levin #40837

6      **Fred T. Korematsu Center for Law and
       Equality**
7      Ronald A. Peterson Law Clinic
       Seattle University School of Law
8      1112 E. Columbia Street
       Seattle, WA  98122
9      Telephone: 206.398.4025
       Fax:  206.398.4077
10     Email:  changro@seattleu.edu

11     *Attorneys for Plaintiffs Black Lives Matter
       Seattle-King County, Abie Ekenezar, Sharon*
12     *Sakamoto, Muraco Kyashna-tochá, Alexander
       Woldeab, Nathalie Graham, and Alexandra*
13     *Chen*

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR CONTEMPT (No 2:20-cv-
887 RAJ)  –14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

148988058.4