UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLACK LIVES MATTER SEATTLE-
KING COUNTY, ABIE EKENEZAR,
SHARON SAKAMOTO, MURACO
KYASHNA-TOCHA, ALEXANDER
WOLDEAB, AND ALEXANDRA CHEN,

    Plaintiffs,

  v.

CITY OF SEATTLE,

    Defendant.

No. 2:20-cv-887

DECLARATION OF DAVID A. PEREZ IN SUPPORT OF MOTION TO SHOW CAUSE WHY CITY OF SEATTLE SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE PRELIMINARY INJUNCTION

I, David A. Perez, declare and state as follows:

1. The information contained in this declaration is true and correct to the best of my knowledge, and I am of majority age and competent to testify about the matters set forth herein.

2. I am a partner at Perkins Coie LLP, and I serve as counsel for Plaintiffs Black Lives Matter Seattle-King County, Abie Ekenezar, Sharon Sakamoto, Muraco Kyashna-Tocha, Alexander Woldeab, and Alexandra Chen in the above-entitled action. I submit this declaration in support of Plaintiffs' Motion for Temporary Restraining Order.

3. On July 25, 2020, I called Peter Holmes and Ghazal Sharifi, attorneys at the City Attorneys' Office, to discuss the unfolding protests that night. I could not reach Mr. Holmes, but Ms. Ghazal and I spoke briefly. I conveyed to her that we may be seeking relief from the Court

D. PEREZ DECL. ISO MOTION TO SHOW CAUSE (No. 2:20-CV-00887-RAJ) –1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

148991684.1

"early next week" (i.e., today), and requested that they provide information and an accounting of the use of force being deployed by the SPD against protesters.

4.     On July 27, 2020 on behalf of Plaintiffs, I had a telephone conference with counsel for the City and informed them that Plaintiffs would be filing a motion for an order to show cause, in light of SPD's repeated violations of the preliminary injunction during protests that occurred Saturday, July 25.

5.     Attached hereto as **Exhibit A** is a true and correct copy of a July 7, 2020 letter from Philip Chinn, President of Seattle Chapter of the National Lawyers Guild, to Chief Carmen Best.

6.     Attached hereto as **Exhibit B** is a true and correct copy of an email sent July 8, 2020, at 9:11 a.m., from Rebecca Boatright, Executive Director of Legal Affairs Seattle Police Department, to Neil Fox.

7.     Attached hereto as **Exhibit C** is a true and correct copy of a press release titled "Legal Observers from Seattle's National Lawyers Guild Aggressively Targeted by Law Enforcement" posted by National Lawyers Guild, Seattle Chapter, on July 26, 2020. Also available at https://www.nlg.org/seattle/2020/07/26/legal-observers-from-seattles-national-lawyers-guild-aggressively-targeted-by-law-enforcement/. The video referred to in the press release of a legal observer getting pepper sprayed in the face is available at: Heidi Groover (@heidigroover), Twitter (Jul. 26, 2020, 7:39 a.m.), https://twitter.com/heidigroover/status/1287532513192075265.

8.     Attached as **Exhibit D** is a true and correct copy of the e-mail exchange I had with the City's attorneys earlier today, to inform them of this motion, to schedule a meet and confer, and to circulate our proposed order.

Executed this 27th day of July 2020 at Seattle, Washington.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1        I declare under penalty of perjury under the laws of the United States and the State of

2 Washington that the foregoing is true and correct.

3

4                                         *s/ David A. Perez*_____

5                                         DAVID A. PEREZ

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# EXHIBIT A



July 7, 2020

Chief Carmen Best
Seattle Police Department
By Email and Fax


     Re: Protections for Legal Observers


Dear Chief Best:

During this time of national crisis, when many people, in Seattle and around the country, are daily protesting against police violence and racism, we are writing to you because we are concerned about the safety and well–being of our Legal Observers. We want to make sure that the Seattle Police Department and all of its officers and employees respect the Rule of Law and do not harass intimidate, injure or arrest Legal Observers at the scenes of various protests.

As you may know, the National Lawyers Guild – a progressive legal association with chapters around the country – trains lawyers, law students and legal workers to act as observers at the scenes of many protests.  All of our Legal Observers are trained not to participate in the protests but rather to observe and record interactions between the police and protestors to insure that protestors' rights to freedom of speech, to peaceably assemble, and to petition their government for redress of grievances are

respected. Our Legal Observers can be identified by a clearly marked "Legal Observer" hat (or in some cases a clearly marked safety vest).



Our Legal Observers are like journalists and reporters in the sense that, of necessity, they must physically be present in areas that the police have (lawfully or not) declared to be "off limits." Accordingly, despite the constitutional right of Legal Observers to observe and record police activities, over the past few weeks, in different parts of the country, NLG Legal Observers (and others with a similar program by the ACLU) have been attacked, arrested, harassed and even hospitalized during various protests stemming from the police killing of George Floyd.

Over the past five years or so, SPD officers have targeted our Legal Observers on occasion - i.e., shooting them with projectiles, illegally detaining them, using pepper spray, and shoving them with bicycles with sufficient force so as to knock someone down. Given what has happened in other parts of the country recently, we are legitimately concerned about the repetition of such acts toward people who are an integral part of civil society's check on state violence.

We note that in Portland recently, a federal judge issued a TRO against the City of Portland ordering that:

> the Portland Police Bureau and all persons acting under the direction of the Portland Police Bureau ( collectively, "the Police"), are enjoined from arresting, threatening to arrest, or using physical force directed against any person whom they know or reasonably should know is a Journalist or Legal Observer (as explained below), unless the Police have probable

cause to believe that such individual has committed a crime. *For purposes of this Order, such persons shall not be required to disperse following the issuance of an order to disperse, and such persons shall not be subject to arrest for not dispersing following the issuance of an order to disperse.* Such persons shall, however, remain bound by all other laws.

*Woodstock v. City of Portland*, 20–CV–1035–SI (D. Ore. 7/2/20) (emphasis added). We are providing you with a copy of this court order for your convenience.

We are asking that you acknowledge receipt of this letter. We ask that you provide us with assurances that the SPD will respect the rights of Legal Observers and will not attack, harass or arrest them either for recording police actions or for not following a dispersal order.  We would like you to provide direction and training to SPD officers about Legal Observers so that officers on the line understand who they are, the role they play, and their exemption from dispersal orders.  We also would like documentation that you have provided this information to all officers in your department and that you have ordered that they respect the rights of Legal Observers upon pain of discipline or criminal charges.

Please provide us with this information by July 20, 2020.

Sincerely,

s/ Philip Chinn
President, Seattle Chapter of the National Lawyers Guild
nationallawyersguildseattle@gmail.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TUCK WOODSTOCK; DOUG BROWN; SAM GEHRKE; MATHIEU LEWIS-ROLLAND; KAT MAHONEY; JOHN RUDOFF;** and those similarly situated, | Case No. 3:20-cv-1035-SI **TEMPORARY RESTRAINING ORDER** |
| Plaintiffs, | |
| v. | |
| **CITY OF PORTLAND; and JOHN DOES 1-60**, | |
| Defendants. | |

Matthew Borden, J. Noah Hagey, Athul K. Acharya, and Gunnar K. Martz, BRAUNHAGEY & BORDEN LLP, 351 California Street, Tenth Floor, San Francisco, CA 94104; Kelly K. Simon, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON, P.O. Box 40585, Portland, OR 97240. Of Attorneys for Plaintiffs.

Naomi Sheffield and Denis M. Vannier, Deputy City Attorneys, OFFICE OF THE PORTLAND CITY ATTORNEY, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Tuck Woodstock, Doug Brown, Sam Gehrke, Mathieu Lewis-Rolland, Kat

Mahoney, and John Rudoff (collectively, "Plaintiffs") bring this putative class action against the

City of Portland (the "City") and numerous as-of-yet unnamed individual and supervisory

officers of the Portland Police Bureau ("PPB") and other agencies allegedly working in concert

with the PPB. As alleged in the Complaint, Plaintiffs seek "to stop the Portland police from

assaulting news reporters, photographers, legal observers, and other neutrals who are

documenting the police's violent response to protests over the murder of George Floyd."

Complaint, ¶ 1 (ECF 1). Plaintiffs assert that "[t]he police's efforts to intimidate the press and

suppress reporting on the police's own misconduct offends fundamental constitutional

protections and strikes at the core of our democracy." *Id.* Plaintiffs allege violations of the First

and Fourth Amendments of the United States Constitution and Article I, sections 8 and 26 of the

Oregon Constitution. Plaintiffs request declaratory and injunctive relief and money damages.

Pending before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary

Injunction. ECF 7. The Court has reviewed Plaintiffs' motion and 19 supporting declarations.

Although Defendants have not yet formally appeared in this lawsuit or had sufficient time to file

any responsive documents, on July 1 and July 2, 2020, the Court heard the respective positions

of the parties by telephone conference. For the reasons explained below, Plaintiffs' motion for a

temporary restraining order ("TRO") is granted in part.

## STANDARDS

In deciding whether to grant a motion for TRO, courts look to substantially the same

factors that apply to a court's decision on whether to issue a preliminary injunction. *See*

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A

preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear

showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Defense Council, Inc.*,

555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show that:

(1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in

the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) that

an injunction is in the public interest. *Id.* at 20 (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction).

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test. *See All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

## DISCUSSION

Plaintiff Tuck Woodstock has been a journalist for seven years. Their work has been published in the *Washington Post*, *NPR*, *Portland Monthly*, *Travel Portland*, and the *Portland Mercury*. They has attended the George Floyd protests several times as a freelancer for the *Portland Mercury* and more times as an independent journalist. When they attended these protests, they wears a press pass from the *Portland Mercury* that states "MEDIA" in large block letters. At all times during police-ordered dispersals, They holds a media badge over their head. ECF 23, ¶¶ 2-3.

Plaintiff Doug Brown has attended many protests in Portland, first as a journalist with the *Portland Mercury* and later as a volunteer legal observer with the ACLU. He has attended the George Floyd protests on several nights, wearing a blue vest issued by the ACLU that clearly identifies him as a legal observer, for the purpose of documenting police interactions with protesters. ECF 9, ¶¶ 1-2.

Plaintiff Sam Gehrke has been a journalist for four years. He previously was on the staff of the *Willamette Week* as a contractor. He now is a freelance journalist. His work has been published in *Pitchfork*, *Rolling Stone*, *Vortex Music*, and *Eleven PDX*, a Portland music magazine. He has attended the protests in Portland during the last month for the purpose of documenting and reporting on them, and he wears a press pass from the *Willamette Week*. ECF 10, ¶¶ 1-3.

Plaintiff Mathieu Lewis-Rolland is a freelance photographer and photojournalist who has covered the ongoing Portland protests. He has been a freelance photographer and photojournalist for three years and is a regular contributor to *Eleven PDX*. He is listed on its masthead. ECF 12, ¶¶ 1-2.

Plaintiff Kat Mahoney is an independent attorney and unpaid legal observer. She has attended the Portland protests nearly every night for the purpose of documenting police interactions with protesters. She wears a blue vest issued by the ACLU that clearly identifies her as an "ACLU LEGAL OBSERVER." ECF 13, ¶¶ 1-2; ECF 26, ¶ 3.

Plaintiff John Rudoff is a photojournalist. His work has been published internationally, including reporting on the Syrian refugee crises, the "Unite the Right" events in Charlottesville, Virginia, the Paris "Yellow Vest" protests, and the Rohingya Genocide. He has attended the protests in Portland during the past month for the purpose of documenting and reporting on them. While attending the Portland protests, he carries and displays around his neck press identification from the National Press Photographers Association, of which he has been a member for approximately ten years. He also wears a helmet that is clearly marked "Press." ECF 17, ¶¶ 1-3.

Plaintiffs and other declarants have submitted evidence of PPB officers targeting journalists. For example, Tuck Woodstock reports that on several nights, the police have

announced that any members of the press who remain in a specified area "will be arrested alongside protesters." ECF 23, ¶ 10. In addition, on June 30, 2020, Ms. Mahoney attended the protests in North Portland as a legal observer. She wore a blue ACLU-issued vest that clearly identifies her as a legal observer. Her vest reads "ACLU LEGAL OBSERVER," in big block letters across the back and smaller lettering on the front. Ms. Mahoney states that a police officer slammed her in the back with a truncheon, striking her diagonally from the base of her right shoulder blade to her lower left side, across her spine and ribcage. Another officer ran up to her, yelled, "MOVE," and shoved her. She stumbled into a protester and had to be helped to her feet, all while wearing her blue ACLU-issued legal observer vest with the words "ACLU LEGAL OBSERVER" plainly visible. She adds that she also saw the police chase and attempt to beat two other legal observers who also were clearly marked as legal observers. ECF 26, ¶¶ 3, 9, 13.

Declarant Alex Milan Tracy is a journalist with a master's degree in photojournalism. He reports seeing PPB officers arresting photojournalist Justin Yau and journalists Cory Elia and Lesley McLay after the arresting officers were informed that these people were credentialed members of the press. Declarant Tracy adds that the police removed Ms. McLay's press badge during her arrest. ECF 28, ¶¶ 1, 8-12. Declarant Tracy also reports that in the early hours of June 16th, he was documenting police officers, when one officer told Mr. Tracy to "get out of here now" or he would be arrested. According to Mr. Tracy, the officer added, "I don't care if you're press, get out of here right now." ECF 22, ¶ 12.

The First Amendment prohibits any law "abridging the freedom of speech, or of the press[.]" U.S. Const., amend. I. Although the First Amendment does not enumerate special rights for observing government activities, "[t]he Supreme Court has recognized that newsgathering is an activity protected by the First Amendment." *United States v. Sherman*, 581 F.2d 1358, 1361

(9th Cir. 1978); *see Branzburg v. Hayes*, 408 U.S. 665, 681 (1972) ("[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated.").

As the Ninth Circuit has explained: "Open government has been a hallmark of our democracy since our nation's founding." *Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir. 2012). Further, "the Supreme Court has long recognized a qualified right of access for the press and public to observe government activities." *Id.* at 898. By reporting about the government, the media are "surrogates for the public." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (Burger, C.J., announcing judgment); *see also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 490–91 (1975) ("[I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations."). As further described by the Ninth Circuit, "[w]hen wrongdoing is underway, officials have great incentive to blindfold the watchful eyes of the Fourth Estate." *Leigh*, 677 F.3d at 900 (quoting Timothy B. Dyk, *Newsgathering, Press Access, and the First Amendment*, 44 STAN. L. REV. 927, 949 (1992) ("[W]hen the government announces it is excluding the press for reasons such as administrative convenience, preservation of evidence, or protection of reporters' safety, its real motive may be to prevent the gathering of information about government abuses or incompetence.")).

Addressing the requirements for granting a temporary restraining order, because Defendants have not yet entered a formal appearance or had a sufficient opportunity to respond to the allegations and evidence, it would be unfair at this time for the Court to conclude that Plaintiffs have shown a substantial likelihood of success on the merits. There is, however, nothing unfair in the Court recognizing now that Plaintiffs have shown, at the minimum, serious questions going to the merits. In *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"),

478 U.S. 1 (1986), the Supreme Court established a two-part test for right of access claims. First,

the court must determine whether a right of access attaches to the government proceeding or

activity by considering (1) whether the place and process have historically been open to the press

and general public and (2) whether public access plays a significant positive role in the

functioning of the particular process in question. *Press-Enterprise II*, 478 U.S. at 8-9. Second, if

the court determines that a qualified right applies, the government may overcome that right only

by demonstrating "an overriding interest based on findings that closure is essential to preserve

higher values and is narrowly tailored to serve that interest." *Id.* at 9 (citation omitted); *see also*

*Leigh*, 677 F.3d at 898 (discussing *Press-Enterprise II*). The public streets historically have been

open to the press and general public, and public observation of police activities in the streets

plays a significant positive role in ensuring conduct remains consistent with the Constitution.

Further, there are at least serious questions regarding the police tactics directed toward

journalists and other legal observers and whether restrictions placed upon them by the PPB are

narrowly tailored.

Next, anytime there is a serious threat to First Amendment rights, there is a likelihood of

irreparable injury. "[U]nder the law of this circuit, a party seeking preliminary injunctive relief in

a First Amendment context can establish irreparable injury sufficient to merit the grant of relief

by demonstrating the existence of a colorable First Amendment claim." *Warsoldier v. Woodford*,

418 F.3d 989, 1001-02 (9th Cir. 2005) (quotation marks omitted); *see also* 11A Charles Alan

WRIGHT, FEDERAL PRACTICE & PROCEDURE, § 2948.1 (2d ed. 2004) ("When an alleged

deprivation of a constitutional right is involved, most courts hold that no further showing of

irreparable injury is necessary.").

Regarding the public interest, "[c]ourts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quotation marks omitted). Further, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation marks omitted) (granting an injunction under the Fourth Amendment). Finally, because Plaintiffs have "raised serious First Amendment questions," the balance of hardships "tips sharply in [Plaintiffs'] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (quotation marks omitted).

Accordingly, the Court grants in part Plaintiffs' motion for TRO (ECF 7) and Orders as follows:

### TEMPORARY RESTRAINING ORDER

1.      Defendants and their agents and employees, including but not limited to the Portland Police Bureau and all persons acting under the direction of the Portland Police Bureau (collectively, "the Police"), are enjoined from arresting, threatening to arrest, or using physical force directed against any person whom they know or reasonably should know is a Journalist or Legal Observer (as explained below), unless the Police have probable cause to believe that such individual has committed a crime. For purposes of this Order, such persons shall not be required to disperse following the issuance of an order to disperse, and such persons shall not be subject to arrest for not dispersing following the issuance of an order to disperse. Such persons shall, however, remain bound by all other laws.

2.      Defendants and their agents and employees, including but not limited to the Portland Police Bureau and all persons acting under the direction of the Portland Police Bureau (collectively, "the Police"), are further enjoined from seizing any photographic equipment,

audio- or video-recording equipment, or press passes from any person whom they know or reasonably should know is a Journalist or Legal Observer (as explained below), or ordering such person to stop photographing, recording, or observing a protest, unless Defendants are also lawfully seizing that person consistent with this Order. Police must return any seized equipment or press passes immediately upon release of a person from custody.

3.      To facilitate the Police's identification of Journalists protected under this Order, the following shall be considered indicia of being a Journalist: visual identification as a member of the press, such as by carrying a professional or authorized press pass or wearing a professional or authorized press badge or distinctive clothing that identifies the wearer as a member of the press. These indicia are not exclusive, and a person need not exhibit every indicium to be considered a Journalist under this Order. The Police shall not be liable for unintentional violations of this Order in the case of an individual who does not carry a press pass or wear a press badge or distinctive clothing that identifies the wearer as a member of the press.

4.      To facilitate the Police's identification of Legal Observers protected under this Order, the following shall be considered indicia of being a Legal Observer: wearing a green National Lawyers' Guild issued or authorized Legal Observer hat (typically a green NLG hat) or wearing a blue ACLU issued or authorized Legal Observer vest.

5.      The Police may issue otherwise lawful crowd-dispersal orders for a variety of lawful reasons. The Police shall not be liable for violating this Order if a Journalist or Legal Observer is incidentally exposed to crowd-control devices after remaining in the area where such devices were deployed after the issuance by the Police of an otherwise lawful dispersal order.

6.      In the interest of justice, Plaintiffs need not provide any security, and all requirements under Rule 65(c) of the Federal Rules of Civil Procedure are waived.

7.      This Order shall expire fourteen (14) days after entry, unless otherwise extended

by stipulation of the parties or by further order of the Court.

8.      The parties shall confer and propose to the Court a schedule for briefing and

hearing on whether the Court should issue a preliminary injunction.

**IT IS SO ORDERED**.

DATED this 2nd day of July, 2020, at 4:55 p.m.

Michael H. Simon
United States District Judge

# EXHIBIT B

**Neil Fox**

| From: | Boatright, Rebecca <Rebecca.Boatright@seattle.gov> |
|---|---|
| Sent: | Wednesday, July 8, 2020 9:11 AM |
| To: | Neil Fox |
| Subject: | RE: Letter regarding National Lawyers Guild Legal Observers |

Dear Mr. Fox,

I am writing in response to the letter attached to the below email, to acknowledge receipt, and to assure you that the Seattle Police Department recognizes the rights of legal observers and media to peacefully observe and record the activities of law enforcement officers during protests and following any orders to disperse. We are also aware of the order out of Portland, which is consistent with our direction to officers.

I appreciate, as well, you including in your letter the photographs of the identifying clothing worn by your volunteers.

Sincerely,

**Rebecca Boatright**
Executive Director of Legal Affairs
Seattle Police Department
610 Fifth Avenue
P.O. Box 34986
Seattle, WA 98124-4986
Office: (206) 233-5023



Please note that all emails and attachments, including personal information, sent to and from the Seattle Police Department are subject to the Washington Public Records Act, Chapter 42.56 RCW, and may be subject to disclosure to a third-party requestor.

---

**From:** Neil Fox [mailto:nf@neilfoxlaw.com]
**Sent:** Tuesday, July 07, 2020 2:19 PM
**To:** Best, Carmen <Carmen.Best@seattle.gov>
**Subject:** Letter regarding National Lawyers Guild Legal Observers

> **CAUTION: External Email**

Please find attached a letter from the Seattle Chapter of the National Lawyers Guild regarding Legal Observers. Contact me if you have questions.

Thank you,

Neil M. Fox
Law Office of Neil Fox, PLLC
2125 Western Ave. Suite 330
Seattle WA 98121
USA

Phone:     206-728-5440
Cell:       206-953-0233
Fax:        866-422-0542
Email:     nf@neilfoxlaw.com

**Criminal Defense Trials | Appeals | Post-Conviction**
**Your referrals are most welcome.**

This electronic message is confidential and is intended only for the use of the individual to whom it is addressed. The information may also be legally privileged.  This transmission is sent in trust, for the sole purpose of delivery to the intended recipient.  If you have received this transmission in error, you are hereby notified that any use,  dissemination, distribution or reproduction of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify me by electronic message or telephone at 206-728-5440 and delete the message from your system.

# EXHIBIT C

# NATIONAL LAWYERS GUILD

Seattle Chapter | Northwest Region



**Home**     **About Us**     **Legal Observer Requests**     **"Know Your Rights!" Training Requests**

**Mass Defense Requests (Jail Hotline)**

## Legal Observers from Seattle's National Lawyers Guild Aggressively Targeted by Law Enforcement

Posted on July 26, 2020 by seattlenlg

*The Seattle National Lawyers Guild Condemns the Violent Targeting of its Volunteer Legal Observers by the Seattle Police Department*

SEATTLE – On Saturday, July 25, 2020, Seattle National Lawyers Guild's (NLG) legal observers were dispatched to Capitol Hill to witness the protests against police violence and the presence of federal law enforcement officers in the city of Seattle.

During the protests, Seattle Police Department officers engaged in the indiscriminate use of crowd control munitions against largely peaceful protestors. **All of the following were in violation of a federal court order (**Case 2:20-cv-00887-RAJ, attached**)**, including:

- Pepper Spray
- Blast Balls
- Rubber Bullets
- Flash Bang Grenades

In addition to SPD's haphazard and arbitrary deployment of force, officers specifically targeted the Seattle NLG's legal observers, all while concealing their badge numbers. These incidents included:

- Deliberately spraying pepper spray into a legal observer's face at close range
  - ***Video available by request***

- Tossing flash bang grenades directly at legal observers
- Needlessly grabbing and shoving legal observers
- Purposely hitting legal observers with their bicycles

The NLG has been providing legal observers at protests nationally since 1968, and in Seattle for decades. They are well-known to law enforcement and immediately recognizable by their bright green hats, which say "National Lawyers Guild Legal Observer." Legal observers fulfill the crucial function of monitoring demonstrations to ensure

that protesters' First Amendment rights are respected. They are important bulwarks against police misconduct. Seattle legal observers are all lawyers, law students, or legal workers. They are trained in professionalism and are not permitted to participate in the protests they observe or interfere with police actions.

The rights of legal observers are codified in Seattle law, which specifically permits the observation and recording of police officers; prohibits officers from punishing or retaliating against observers; and requires officers to minimize harm to observers when deploying crowd control munitions. Court orders have been issued in other cities, including Portland, OR., prohibiting use of force or retaliation against legal observers. Consistent with the ordinance and the orders, **the Seattle NLG had sought and received assurances from SPD that its legal observers would not be targeted at protests, per an email from the SPD's Legal Affairs Department on July 8, 2020**. Seattle NLG's legal observers relied upon those dishonored promises to their detriment.

Seattle NLG calls upon Chief Best to investigate SPD's use of force against legal observers and to impose disciplinary sanctions against the officers involved immediately.

Posted in Chapter News.

---

<div style="border:1px solid">

←   **Upcoming Event: NLG Seattle Student…**

</div>

## Leave a Reply

Your email address will not be published. Required fields are marked *

Comment

Name *

Email *

Website

☐ Save my name, email, and website in this browser for the next time I comment.

**Post Comment**

Search

🔲 **NLG Seattle on Twitter!**

**Twitter**

Follow @NLG_Seattle

**July 2020**

| M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

« Jun        Aug »

**Recent Posts**

Legal Observers from Seattle's National Lawyers Guild Aggressively Targeted by Law Enforcement

Upcoming Event: NLG Seattle Student Mixer

Upcoming Event: General Chapter Meeting and Special Presentation

Upcoming Event: General Chapter Meeting and Special Presentation

Announcement: New NLG Seattle Chapter Officers (May 2019 – May 2020)

**Archives**

July 2020

October 2019

September 2019

July 2019

June 2019

April 2019

January 2019

December 2018

October 2018

June 2018

May 2018

April 2018

November 2017

September 2017

July 2017

EXHIBIT D

| From: | Perez, David A. (SEA) |
|-------|------------------------|
| To: | Bob Christie |
| Cc: | Ghazal Shirifi; Arora, Nitika (SEA); Laura M. Pfeifer; Carolyn Boies; Kelly Nakata; Jennifer M Litfin; Tom Miller; Ann Trivett; Megan Coluccio; McMillan, Joseph M. (SEA); Gilbert, Carolyn S. (SEA); Hyatt, Heath (SEA); Whidbee, Paige (SEA); mtackhooper@aclu-wa.org; talner@aclu-wa.org; lnowlin@aclu-wa.org; bschuster@aclu-wa.org; jmidgley@aclu-wa.org; changro@seattleu.edu; leeme@seattleu.edu; levinje@seattleu.edu |
| Subject: | RE: Black Lives Matter v. Seattle - Motion for Contempt |
| Date: | Monday, July 27, 2020 1:04:00 PM |
| Attachments: | 2020-07-27, Proposed Contempt Order.DOCX |

All,

Thanks again for making the time to speak with us on short notice.  Attached is the proposed order we intend on filing with the Court.  Please let us know whether the City would be agreeable to stipulating to some or all of this.  We believe it's reasonable under the circumstances, particularly the clarifications.  Despite the severity of these violations, we have purposefully kept the monetary sanctions modest (attorneys' fees for bringing this motion).

Though the Court's order requires a response from the City within 24 hours, we would not oppose an extension to 12 p.m. on Wednesday for your response.  Let us know if this is agreeable to you.

And finally, as we discussed earlier, as soon as you are able, please let us know the quantity of projectiles that were used on Saturday (e.g., the number of blast balls, pepper balls, foam tipped bullets, etc.).

Take care,

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

---

**From:** Bob Christie <bob@christielawgroup.com>
**Sent:** Monday, July 27, 2020 11:52 AM
**To:** Perez, David A. (SEA) <DPerez@perkinscoie.com>
**Cc:** Ghazal Shirifi <Ghazal.Sharifi@seattle.gov>; Arora, Nitika (SEA) <NArora@perkinscoie.com>; Laura M. Pfeifer <laura@christielawgroup.com>; Carolyn Boies <Carolyn.Boies@seattle.gov>; Kelly Nakata <Kelly.Nakata@seattle.gov>; Jennifer M Litfin <Jennifer.Litfin@seattle.gov>; Tom Miller <tom@christielawgroup.com>; Ann Trivett <Ann@christielawgroup.com>; Megan Coluccio <megan@christielawgroup.com>; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; Gilbert, Carolyn S. (SEA) <CarolynGilbert@perkinscoie.com>; Hyatt, Heath (SEA)

<HHyatt@perkinscoie.com>; Whidbee, Paige (SEA) <PWhidbee@perkinscoie.com>;
mtackhooper@aclu-wa.org; talner@aclu-wa.org; lnowlin@aclu-wa.org; bschuster@aclu-wa.org;
jmidgley@aclu-wa.org; changro@seattleu.edu; leeme@seattleu.edu; levinje@seattleu.edu
**Subject:** Re: Black Lives Matter v. Seattle - Motion for Contempt

Great.  Talk to you then.

> On Jul 27, 2020, at 11:51 AM, Perez, David A. (Perkins Coie)
> <DPerez@perkinscoie.com> wrote:
>
> All, we're running about 10 minutes late.  Let's start at 12:10 p.m.

---

**From:** Perez, David A. (SEA)
**Sent:** Monday, July 27, 2020 11:33 AM
**To:** 'Robert Christie' <bob@christielawgroup.com>
**Cc:** Ghazal Shirifi <Ghazal.Sharifi@seattle.gov>; Arora, Nitika (SEA)
<NArora@perkinscoie.com>; Laura M. Pfeifer <laura@christielawgroup.com>; Carolyn
Boies <Carolyn.Boies@seattle.gov>; Kelly Nakata <Kelly.Nakata@seattle.gov>; Jennifer
M Litfin <Jennifer.Litfin@seattle.gov>; Tom Miller <tom@christielawgroup.com>; Ann
Trivett <Ann@christielawgroup.com>; Megan Coluccio
<megan@christielawgroup.com>; McMillan, Joseph M. (SEA)
<JMcMillan@perkinscoie.com>; Gilbert, Carolyn S. (SEA)
<CarolynGilbert@perkinscoie.com>; Hyatt, Heath (SEA) <HHyatt@perkinscoie.com>;
Whidbee, Paige (SEA) <PWhidbee@perkinscoie.com>; mtackhooper@aclu-
wa.org; talner@aclu-wa.org; lnowlin@aclu-wa.org; bschuster@aclu-
wa.org; jmidgley@aclu-
wa.org; changro@seattleu.edu; leeme@seattleu.edu; levinje@seattleu.edu
**Subject:** RE: Black Lives Matter v. Seattle - Motion for Contempt

Bob:

One event is one too many.  But as you must know (or will soon find out), there
were many such incidents.

Below are a few.  There are many more.  Given these clear and obvious
violations, we are interested in learning whether the City will stipulate to a
contempt finding.

NLG video included again as #4 so you have them all in one place:

1. https://twitter.com/daeshikjr/status/1287270463773609987?s=09
   a. Police spraying protestor with bear mace when already on the
      ground and unarmed.
2. https://twitter.com/lukeryderrr/status/1287172224588214272

      a. Protestors complying with request to move back (videographer: "We're moving [but] there's a lot of people behind us.") Front line (including O. Salisbury, press) are pepper sprayed.

3. https://twitter.com/daeshikjr/status/1287270463773609987?s=09

      a. Seattle Police Department drowning protestor with bear mace while they're already on the ground unarmed in broad daylight.

4. https://twitter.com/ByMikeBaker/status/1287212851807940608

      a. Indiscriminate use of blast balls and pepper spray against retreating crowd to continue moving them back. One woman falls to the ground, seems like she was hit.

5. https://twitter.com/NLG_Seattle/status/1287427693680582656

      a. NLG Legal Observer pepper sprayed directly in her face at short range when recording officers.


**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

**From:** Robert Christie <bob@christielawgroup.com>
**Sent:** Monday, July 27, 2020 10:05 AM
**To:** Perez, David A. (SEA) <DPerez@perkinscoie.com>
**Cc:** Ghazal Shirifi <Ghazal.Sharifi@seattle.gov>; Arora, Nitika (SEA) <NArora@perkinscoie.com>; Laura M. Pfeifer <laura@christielawgroup.com>; Carolyn Boies <Carolyn.Boies@seattle.gov>; Kelly Nakata <Kelly.Nakata@seattle.gov>; Jennifer M Litfin <Jennifer.Litfin@seattle.gov>; Tom Miller <tom@christielawgroup.com>; Ann Trivett <Ann@christielawgroup.com>; Megan Coluccio <megan@christielawgroup.com>; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; Gilbert, Carolyn S. (SEA) <CarolynGilbert@perkinscoie.com>; Hyatt, Heath (SEA) <HHyatt@perkinscoie.com>; Whidbee, Paige (SEA) <PWhidbee@perkinscoie.com>; mtackhooper@aclu-wa.org; talner@aclu-wa.org; lnowlin@aclu-wa.org; bschuster@aclu-wa.org; jmidgley@aclu-wa.org; changro@seattleu.edu;leeme@seattleu.edu; levinje@seattleu.edu
**Subject:** Re: Black Lives Matter v. Seattle - Motion for Contempt

David, I have seen the one event. Your email refers to multiple events. We look forward to our discussion and will look for your link.

Bob

> Robert L. Christie attorney/principal
  Christie Law Group, PLLC
  Julie's Landing on Lake Union
  2100 Westlake Ave. N., Ste. 206
  Seattle, WA 98109

  main: 206-957-9669
  cell:  206-979-3859
  fax:  206-352-7875
  email: bob@christielawgroup.com
  web: christielawgroup.com

Member of The Federation of Defense & Corporate Counsel

NOTICE: The information contained in this email message and any accompanying files is intended only for the personal confidential use of the designated recipients.  The information may, also, be legally privileged and should not be disclosed without the approval of the sender. If you are not the intended recipient and have received this in error, please destroy this email and notify the sender.  Thank you for your assistance.

On Jul 27, 2020, at 9:58 AM, Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com> wrote:


Bob: noon works.  I'll send an invite for then.  I'm also adding Pete to this string, as I inadvertently left him off before.

We'll gather a few videos to send to you before then, though we're frankly surprised you haven't already seen them.  I presume the City's attorneys have, in fact, seen them as several City officials have already reacted to them.

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com
http://www.perkinscoie.com/dperez/

**From:** Bob Christie <bob@christielawgroup.com>
**Sent:** Monday, July 27, 2020 9:43 AM
**To:** Perez, David A. (SEA) <DPerez@perkinscoie.com>
**Cc:** Ghazal Shirifi <Ghazal.Sharifi@seattle.gov>; Arora, Nitika (SEA) <NArora@perkinscoie.com>; Laura M. Pfeifer <laura@christielawgroup.com>; Carolyn Boies <Carolyn.Boies@seattle.gov>; Kelly Nakata <Kelly.Nakata@seattle.gov>; Jennifer M Litfin <Jennifer.Litfin@seattle.gov>; Tom Miller <tom@christielawgroup.com>; Ann Trivett <ann@christielawgroup.com>; Megan Coluccio <megan@christielawgroup.com>; McMillan, Joseph M. (SEA) <JMcMillan@perkinscoie.com>; Gilbert, Carolyn S. (SEA) <CarolynGilbert@perkinscoie.com>; Hyatt, Heath (SEA) <HHyatt@perkinscoie.com>; Whidbee, Paige (SEA) <PWhidbee@perkinscoie.com>; mtackhooper@aclu-wa.org; talner@aclu-wa.org; lnowlin@aclu-wa.org;bschuster@aclu-wa.org; jmidgley@aclu-wa.org; changro@seattleu.edu; leeme@seattleu.edu; levinje@seattleu.edu
**Subject:** Re: Black Lives Matter v. Seattle - Motion for Contempt

David:

Carolyn and I are available at noon.  Without details of what you are alleging in your email it will be difficult to have a substantive discussion.  I see Molly's quote in today's Seattle Times.  Do you have video of the incident involving the observer that you can share?  The more that you can share the specifics of the events you intend to include in your motion the more productive our discussion can be.

Sincerely,

Bob Christie

> Robert L. Christie   attorney/principal
  Christie Law Group, PLLC
  Julie's Landing on Lake Union
  2100 Westlake Ave. N.,
  Suite 206
  Seattle, WA 98109

  main: 206-957-9669
  cell:   206-979-3859
  fax:   206-352-7875
  email: bob@christielawgroup.com
  web: christielawgroup.com

**FDCC Member and Officer**

NOTICE: The information contained in this email message and any accompanying files is intended only for the personal confidential use of the designated recipients. The information may also be legally privileged and should not be disclosed without the approval of the sender. If you are not the intended recipient and have received this in error, please destroy this email and notify the sender. Thank you for your assistance.

On Jul 27, 2020, at 9:28 AM, Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com> wrote:

Dear Ghazal, Carolyn, and Pete,

Later today we plan to file a motion for an order to show cause, in light of SPD's repeated violations of the preliminary injunction during the Saturday protests.

The videos from Saturday, and the witness testimonials demonstrate that SPD targeted journalists, medics, legal observers, and peaceful protesters, and wantonly disregarded the Court's specific instruction not to fire indiscriminately into the crowd.

As you know, the City's response will be due 24 hours after our brief is filed. This is obviously time sensitive, but we would like to confer with you, if you have time today, to see whether the City would agree to our proposed order concerning this issue, and to discuss what information the City is willing to provide to us about Saturday's events.

Please let us know if you are available at 10 a.m., 11 a.m., 12 p.m.-1 p.m., or at 2 p.m. Ghazal and Pete have my cell phone but for the group it's 206.618.4293.

Take care,

David

**David A. Perez | Perkins Coie LLP**
**Partner**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
p: 206.359.6767
c: 206.618.4293
e: DPerez@perkinscoie.com

http://www.perkinscoie.com/dperez/

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.