THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLACK LIVES MATTER SEATTLE-KING
COUNTY, ABIE EKENEZAR, SHARON
SAKAMOTO, MURACO KYASHNA-
TOCHA, ALEXANDER WOLDEAB,
NATHALIE GRAHAM, and ALEXANDRA
CHEN,

       Plaintiffs,

v.

CITY OF SEATTLE,

       Defendant.

NO.  2:20-cv-00887

THE CITY OF SEATTLE'S RESPONSE
TO PLAINTIFFS' MOTION FOR ORDER
TO SHOW CAUSE WHY THE CITY OF
SEATTLE SHOULD NOT BE HELD IN
CONTEMPT FOR VIOLATING THE
PRELIMINARY INJUNCTION

/

/

/

/

/

/

/

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 1

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

## I.      INTRODUCTION

For two months, people around the world have taken to the streets every night to protest for Black lives. This has been a nearly daily occurrence in Seattle, with mostly peaceful demonstrators, supported by Seattle Police. What occurred last Saturday, July 25, 2020, started as another planned demonstration. In the crowd of between 5,000 and 7,000 people, however, were armed and armored individuals with a plan and agenda to do harm to the public, injure police officers, and damage property along the way. Given this, it turned into a riot, despite the best efforts of roughly 150 police officers, whose responsibility it was to manage the crowd to protect the public from physical harm and property destruction that would cause a life safety threat.  The City, through its Police Department, had provided officers with the operative language of this Court's June 12, 2020 Order, while also briefing officers immediately before deployment on the rules of engagement consistent with that Order. Plaintiffs fail to establish through their required standard of clear and convincing evidence that the Seattle Police Department failed to substantially comply with the terms of this Court's preliminary injunction.

## II.      STATEMENT OF FACTS

Counsel for Plaintiffs refused to stipulate to an over-length brief. In an effort to convey all necessary information to this Court, the City incorporates the declarations of: Lt. John Brooks; Cesar Hidalgo-Landeros, David Puente, Robert L. Christie, and William Neale herein for the necessary factual background to support the substance of this brief.

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 2

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

III.     AUTHORITIES AND ARGUMENTS

A.     **Plaintiffs Cannot Establish the City Violated This Court's Preliminary Injunction.**

   *1.     Burden of Proof*

   Courts "'have inherent power to enforce compliance with their lawful orders through civil contempt.'" *State Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008), *citing Shillitani v. United States*, 384 U.S. 364, 370, 86 S. Ct. 1531 (1996).

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as –
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> (2) Misbehavior of any of its officers in their official transactions;
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.SC. § 401. The contempt need not be willful, however one should not be held in contempt for actions that appear to be based on a good faith and reasonable interpretation of the court's order. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006.)  Contempt may either by civil or criminal, defined by the character and purpose of the associated sanction. *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005).

   Plaintiffs request that the City of Seattle be held in civil contempt for allegedly violating this Court's June 17, 2020 Preliminary Injunction.  "[C]ivil contempt proceedings serve two purposes: (1) coercing compliance with a court order; and (2) compensating the prevailing party." *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1128 (9th Cir. 2013).  A party moving for civil contempt must prove that the non-moving party has violated a court order by clear and convincing evidence.  *In re Cinevision Int'l, Inc.*, 697

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 3

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   Fed.Appx. 542, 543 (9th Cir. 2017); *Jeff v. Otter*, 643 F.3d 278, 280 (9th Cir. 2011); *In re SK*

2   *Foods, L.P.*, 693 Fed. Appx. 655, 656 (9th Cir. 2017).  "The clear and convincing standard of proof

3   requires evidence sufficient to reasonably satisfy the fact finder that it is highly probable the

4   ultimate fact at issue happened."  *United States v. Century Clinic, Inc.*, 75 F. Supp. 2d 1127, 1134

5   (D. Nev. 1998).

6       Additionally, "[s]ubstantial compliance with a court order is a defense to an action for civil

7   contempt."  *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989); *General*

8   *Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986).  Further "[i]f a violating party

9   has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations

10  of the order will not support a finding of civil contempt." *Vertex Distributing v. Falcon Foam*

11  *Plastics, Inc.,* 689 F.2d 885, 891-92 (9th Cir. 1982); *see also Shuffler v. Heritage Bank,* 720 F.2d

12  1141, 1146–47 (9th Cir. 1983); *Sekaquaptewa v. MacDonald,* 544 F.2d 396, 406 (9th Cir.

13  1976), *cert. denied,* 430 U.S. 931, 97 S. Ct. 1550 (1977).  "[T]he use of the contempt power places

14  an additional limitation on a district court's discretion . . .  'in selecting contempt sanctions, a court

15  is obliged to use the 'least possible power adequate to the end proposed.'" *Spallone v. United*

16  *States*, 493 U.S. 265, 276 (1990).

17      The City is also entitled to due process protections in responding to plaintiffs' allegations.

18  A party subject to a claim of civil contempt involving "out-of-court disobedience to complex

19  injunctions," which require both elaborate and reliable factfinding, are entitled to due process

20  beyond basic civil procedural protections because "the risk of erroneous deprivation from the lack

21  of a neutral factfinder may be substantial."  *See Int'l Union, United Mine Workers of Am. v.*

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 4

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    *Bagwell*, 512 U.S. 821, 833-34, 114 S. Ct. 2552, 2560–61, 129 L. Ed. 2d 642 (1994) citing *Green*

2    *v. United States,* 356 U.S. 165, 217, n. 33, 78 S.Ct. 632, 660, n. 33, 2 L.Ed.2d 672 (1958) (Black,

3    J., dissenting) ("Alleged contempt committed beyond the court's presence where the judge has no

4    personal knowledge of the material facts are especially suited for trial by jury. A hearing must be

5    held, witnesses must be called, and evidence taken in any event. And often ... crucial facts are in

6    close dispute") (citation omitted). "Under these circumstances, criminal procedural protections

7    such as the rights to counsel and proof beyond a reasonable doubt are both necessary and

8    appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial

9    power." *Bagwell* at 834, 114 S.Ct. 2552.

10           2.      *Plaintiffs Failed to Provide the Court with Clear and Convincing Evidence that the*
                     *City Failed to Substantially Comply with the Preliminary Injunction.*

11

12           From the issuance of the Court's Preliminary Injunction, the City took reasonable steps to

13   comply with the Court's Order.  Soon after the Court's TRO was entered by the Court on June 12,

14   2020, all SPD officers were provided with the operative language of the Court's Order via email.

15   (Puente Decl., ¶ 2).  In addition, for subsequent demonstrations, SPD officers were again instructed

16   on the Court's order.  Each of the directives to SPD officers pertaining to the use of specific crowd

17   control devices was based on a good faith and reasonable interpretation of the Court's Order.

18           At the July 25 role call preceding the subject riot, Lt. Brooks read the operative language

19   from this Court's Order, instructing officers that officers were only to use OC spray, blast balls,

20   flash bang grenades, or foam-tipped projectiles to protect against a specific imminent threat of

21   physical harm to themselves or identifiable others or to respond to specific acts of violence or

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 5

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   destruction of property.  (Brooks Decl., ¶ 11.)  He also advised officers that to the extent that

2   chemical irritants or projectiles are used, they shall not be deployed indiscriminately into a crowd

3   and to the extent reasonably possible, they should be targeted at the specific imminent threat of

4   physical harm to themselves or identifiable others or to respond to specific acts of violence or

5   destruction of property. (*Id*.)  SWAT officers were given the same directives.  (*Id*.)  This directive

6   and all prior directives given to SPD officers are consistent with the plain language of the Court's

7   Order (Dkt. 42.)

8          Plaintiffs' motion is predicated on a series of video accounts documented on social media

9   and the declarations of various individuals.  While these accounts speak to and document the

10  dynamic situation presented to SPD officers charged with restoring the peace in the midst of a riot,

11  they are silent and dismissive of the danger presented to the public generally and to peaceful

12  protestors and the officers more specifically.  This is understandable, as each individual protestor

13  did not and could not know all the information known to the police officers as a whole or to the

14  specific officer deploying a specific use of force at a particular moment in time.  The fact that a

15  peaceful protestor was affected, for example, by pepper spray or a blast ball, is not sufficient to

16  demonstrate a violation of this Court's order.  The issue is not whether a peaceful protestor

17  experienced a police use of force; the issue is whether the officer, at the time he or she deployed

18  that force, did so in a manner that was necessary, reasonable, proportionate, and targeted at a

19  specific threat to a person(s) or property.

20         Plaintiffs also claim that the City violated the Court's Order by targeting peaceful

21  protestors, journalists, legal observers, and medics.  But there is no evidence to support their

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 6

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

conclusion.   Lay opinions and characterizations are unreliable and inadmissible to prove an officer's state of mind, and they cannot, standing alone, meet the clear and convincing standard required to sustain a civil contempt finding.  For example, plaintiffs rely heavily on the account of Ms. Barrett, who they claim approached a man to offer first aid and was subsequently pepper sprayed.  (Dkt. 51 at 12:1-19).  Plaintiffs claim: "Video shows no reason to believe she posed a threat. Worse, the video shows that SPD targeted her precisely because she was an identifiable medical professional trying to help a protestor."  (Dkt. 51 at 12:8-9).  Conspicuous for its absence in plaintiffs' motion and Ms. Barrett's declaration is reference to the interview she subsequently gave to Ms. Del Rosario from QFox13:

https://twitter.com/SimoneReports/status/1287223999869497345?s=20:

> Ms. Del Rosario: "What were you trying to do in that moment before you got sprayed?"
>
> Ms. Barrett:      "Pull the guy away. I mean, I've seen footage from Hong Kong, of like, how you have to get people away from the cops because once they get them they arrest them, they brutalize them, they beat them, they look like, I saw the guy with the baton…….." "I saw the guy with the baton, I saw the guy they tried to drag down and thought no no, shit no. So yeah"

Ms. Barrett was, by her own admission, using de-arrest tactics and interfering with a police officer attempting to arrest a suspect for something that occurred completely out of frame in the video submitted by plaintiffs.  An officer responded by dispersing a targeted burst of OC spray at the specific, imminent threat posed by Ms. Barrett's de-arrest approach.

Plaintiffs also claim to provide evidence of a National Lawyers Guild Legal Observer being targeted with flash bangs and OC spray.  (Dkt. 51 at 11:10-23.)  Plaintiffs offer no declarations in

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 7

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   support of these claims from any impacted individuals, instead relying on a single Twitter video

2   involving OC spray. (*Id.*) Again, close scrutiny offers clarity. Plaintiffs claim that this individual

3   was deliberately targeted as her green hat identified her as a legal observer. (Dkt. 51 at 1: 6-7).

4   Taking the video frame by frame, the individual was filming officers with her phone: moves to her

5   left and comes into the path of a stream of OC spray that an officer had targeted towards another

6   individual, who is out of frame, before she is struck.

7        These particular examples speak to the unreliability of providing the Court with a single

8   perspective in the context of a broader, dynamic situation presented by a crowd of individuals,

9   including numerous members of the crowds intent on harming others and the police. Plaintiffs'

10  do not offer the Court with any clear and convincing evidence as to how the City has taken

11  unreasonable steps to comply with the Court's order. Plaintiffs are silent with respect to the

12  involved officers, information the police commanders had about the non-peaceful groups of

13  individuals they would be encountering, what transpired in the broader field of confrontation

14  beyond their immediate field of vision, and why trained police professionals employed certain

15  disbursement tactics. There is no clear and convincing evidence presented by plaintiffs of a

16  knowing violation of the Order where deployments were "targeted at the specific imminent threat

17  of physical harm." There is no clear and convincing evidence has been submitted to this Court

18  establishing that peaceful protestors were targeted by SPD during the course of the riot. Absent

19  such direct evidence, the fact that a peaceful protestor was impacted by a lawful, compliant

20  deployment is not a violation of the Court's Order.

21

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 8

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    Moreover, it is patently unlawful for any police officer to use retaliatory force against a

2    protestor because of his or her status as a journalist, legal observer, or medic, and the City does

3    not condone such conduct.  Without an opportunity for the City to identify the officers accused of

4    such retaliation and collect the documentation necessary to evaluate and defend against such a

5    claim, it would be a violation of the City's due process rights to have the Court make a finding of

6    contempt based upon only plaintiffs' allegations at this early stage.

7    Finally, even if this Court were to determine, based upon the limited evidence presented

8    here, that any one individual police officer violated the terms of the June 17 Order by

9    unnecessarily, unreasonably, disproportionately, or  indiscriminately deploying pepper spray or

10   blast balls, plaintiffs cannot prove by clear and convincing evidence that the City as a whole failed

11   to substantially comply with the Court's order in good faith.

12   As the Court is aware, the City and SPD are still in the initial stages of investigating the

13   July 25 riot and uses of force deployed therein.  The City takes plaintiffs' allegations seriously and

14   is thoroughly investigating.  Any and all use of force investigations are subject to multiple levels

15   of review, including an investigation by OPA.  The City has acted in good faith and taken

16   reasonable steps to comply with the Court's Order, and plaintiffs have failed to meet their burden

17   of proof.

18   **B.      Plaintiffs' Motion is Used as a Vehicle to Seek Relief Beyond the Bounds of a Civil
         Contempt Filing and in Violation of Judge Robart's July 25, 2020 TRO Order.**

19

20   In asking this Court to find the City in contempt for violation of the Court's Order, plaintiffs

21   also seek injunctive relief well beyond the bounds of the Order.  (Dkt. 51-1.)  In essence, by

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 9

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

requesting that the Court amend its Order, plaintiffs are seeking injunctive relief without actually having to meet the legal standards of a TRO or preliminary injunction.  They are requesting extraordinary relief beyond the bounds of the available civil sanctions and attorneys' fees and costs that may be awarded to a party seeking contempt. *See generally, General Signal Corp.,* 787 F.2d 1376; *BMG Music v. Perez,* 952 F.2d 318 (9th Cir. 1991).

Broadly, under the guise of a contempt motion, plaintiffs seek new injunctive relief of seven additional detailed terms to the Court's Order.  (Dkt. 51-1.)  In essence, the true relief sought by plaintiffs is a TRO, which is an "extraordinary and drastic remedy."  *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997).  TROs "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974).  "[T]he standards for issuance of a temporary restraining order are at least as exacting as those for a preliminary injunction."  *Pohlman v. Hormann*, 2014 WL 5425502 *1 n.1 (D. Or. Oct. 20, 2014) (citing *Los Angeles Unified Sch. Dist. v. United States Dist. Court for the Cent. Dist. of Cal.,* 650 F.2d 1004, 1008 (9th Cir. 1981)).  "Plaintiffs bear the burden of proving each one of the [four] elements."  *Klein v. City of San Clemente,* 584 F.3d 1196, 1201 (9th Cir. 2009).  "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."  *Caribbean Marine Servs. Co. v. Baldridge,* 844 F.2d 668, 674 (9th Cir. 1998).  Plaintiffs fail to meet and even address this standard.

For example, plaintiffs seek specific relief pertaining to medical, media, and legal observers, to limit the use of SPD tools in re-routing and directing protestors, use "indiscriminate"

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 10

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

chemical weapons or projectiles, heightened warnings, and daily deployment logs provided every 24 hours.  (Dkt. 51-1, at 3-6).  Not only do plaintiffs fail to meet the required legal standards for such relief, such additional relief is simply not feasible and stands to create life-safety threats to both officers and demonstrators.  Moreover, it is simply not feasible to require supervisor approval before each individual deployment of projectile or non-directional chemical weapons, leaving officers with only handheld OC spray to address imminent threats.  Such a requirement fails to account for dynamic, violent situations faced by officers.  Despite best efforts, the City cannot guarantee that a person will not be impacted by a crowd control device just because they belong to a certain group of people, i.e., a medic, media, or legal.  It is already unlawful for such individuals to be targeted, and the City already has policies that speak to those concerns.[1]  Pursuant to the Consent Decree and SPD policy, there is a robust force reporting and investigation process.

Finally, the relief sought suggests plaintiffs are attempting to work around both the Consent Decree and Judge Robart's July 25, 2020 TRO in *United States v. Seattle,* C12-1282JLR (Dkt. 630).  By seeking to remove nearly all forms of less lethal crowd control force options, plaintiffs would effectively deprive the Federal Government of its right under the Consent Decree to review SPD policies prior to implementation.  (C12-1282JLR (Dkt. 630)).  The relief sought by plaintiffs does not provide time for police training in alternative mechanisms to de-escalate and resolve dangerous situations if virtually all crowd control weapons are removed.  While Judge Robart's

[1] SPD Manual Section 5.160-POL "Observation of Officers" is available at: https://www.seattle.gov/police-manual/title-5---employee-conduct/5160---observation-of-officers

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   and the Court's Order are not presently in conflict with one another, plaintiffs' requested relief

2   seeks to circumvent the established process.  (C12-1282JLR (Dkt. 630 at 9)).[2]

3   **D.      The City Requests Additional Time to Substantively Respond.**

4          The City recognizes that the July 25, 2020 riot involved a number of deployments and is

5   committed to documenting and investigating uses of force.  However, this process requires time.

6   Given the time constraints of responding to plaintiffs' motion, the City is limited to only

7   preliminary information.  Should the Court decline to deny plaintiffs' motion outright, the City

8   requests an additional 60 days to substantively respond and provide the Court with pertinent

9   documentation including use of force reports and relevant BWV.

10          Ultimately, plaintiffs are asking this Court, on short notice and with limited information,

11   either to determine that officers violated the First Amendment by intentionally discriminating

12   against certain peaceful protestors, or to assess the objective reasonableness of individual police

13   action under the Fourth Amendment by focusing on the experiences of the individuals in this crowd

14

15

16   [2] In addition to reviewing specific uses of force and misconduct allegations, the City is undertaking
     a more systemic analysis of SPD's response to the mass protests.  On June 5, 2020, Mayor Durkan
17   requested that OPA, OIG, and the Community Police Commission ("CPC") evaluate SPD's crowd
     management policies and tactics and make recommendations based on best practices.  *See* June 5,
18   2020 Letter from Mayor Durkan. In addition, the City Council has asked the OPA, OIG, and CPC
     (who is represented in this Consent Decree litigation by Plaintiffs' lead counsel)  to analyze SPD's
19   use of less lethal devices for crowd control management and provide recommendations for future
     use and regulation of these devices. Crowd Control Ordinance Section 2. They are currently
20   carrying out this important work. *See e.g.*, OIG's Project Scoping Documents. Plaintiffs' request
     interferes and conflicts with these processes from the City subject matter experts tasked with such
21   a responsibility.

CITY OF SEATTLE'S RESPONSE TO                    **CHRISTIE LAW GROUP, PLLC**
PLAINTIFFS' MOTION FOR ORDER TO               2100 WESTLAKE AVENUE N., SUITE 206
SHOW CAUSE - 12                                        SEATTLE, WA 98109
                                                            206-957-9669

that have filed unchallenged declarations. This is not the correct inquiry. Additional time is necessary to evaluate the force through a proper Fourth Amendment analysis.

## IV.    CONCLUSION

The City of Seattle has been and continues to be committed to deploying its police force in a way that both protects the right of every citizen to peacefully protest, while also protecting the public from physical harm and violent property destruction. Emotions are high and people want to see change. The City understands this. The City also takes seriously its obligation to keep the public safe and to ensure police officers have the tools and resources they need to maintain their own safety while protecting the public. In striking this necessary balance, the City has complied with its legal obligations under the Court's June 17, 2020 Order and it will continue to do so as our police department and our community look to the future. Plaintiffs have not established any violation of the Court's Order, and their motion to hold the City in contempt should be denied.

Respectfully submitted this 29th day of July, 2020.

CHRISTIE LAW GROUP, PLLC

By ____/s/ Robert L. Christie_____
ROBERT L. CHRISTIE, WSBA #10895
THOMAS P. MILLER, WSBA #34473
ANN E. TRIVETT, WSBA #39228
MEGAN M. COLUCCIO, WSBA #44178
Attorneys for Defendant City of Seattle
2100 Westlake Avenue N., Suite 206
Seattle, WA 98109
Phone: 206-957-9669
Email: bob@christielawgroup.com
           tom@christielawgroup.com
           ann@christielawgroup.com
           megan@christielawgroup.com

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE - 13

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

PETER S. HOLMES
Seattle City Attorney


By _____ */s/ Ghazal Sharifi*_____
     GHAZAL SHARIFI, WSBA# 47750
     CAROLYN U. BOIES, WSBA #40395
     Attorneys for Defendant City of Seattle
     Assistant City Attorneys
     Seattle City Attorney's Office
     701 Fifth Avenue, Suite 2050
     Seattle, WA 98104
     Phone: 206-684-8200
     E-mail:  Ghazal.Sharifi@seattle.gov
            Carolyn.Boies@seattle.gov

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669