1    UNITED STATES DISTRICT COURT

2    WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3    _____

4                                )
     BLACK LIVES MATTER          ) C20-00887-RAJ
5    SEATTLE-KING COUNTY, et al.,)
                                 ) SEATTLE, WASHINGTON
6              Plaintiffs,       )
                                 ) July 31, 2020
7    v.                          )
                                 ) 9:00 a.m.
8    CITY OF SEATTLE,            )
                                 ) Status Hearing
9              Defendants.       ) conducted by Zoom
                                 ) video conferencing
10                               )

11   _____

12             VERBATIM REPORT OF PROCEEDINGS
           BEFORE THE HONORABLE RICHARD A. JONES
              UNITED STATES DISTRICT JUDGE
13   _____

14

15   APPEARANCES:

16

17     For the Plaintiffs:    David Perez
                              Perkins Coie
18                            1201 3rd Avenue
                              Suite 4900
19                            Seattle, WA  98101

20                            Molly Tack-Hooper
                              ACLU of Washington
21                            901 Fifth Avenue
                              Suite 630
22                            Seattle, WA  98111

23                            Robert Chang
                              Ronald A. Peterson Law Clinic
24                            Seattle University School of Law
                              1112 E. Columbia Street
25                            Seattle, WA  98122

1  For the Defendant:     Robert Christie
2                         Thomas P. Miller
                          Christie Law Group
3                         2100 Westlake Avenue N.
                          Suite 206
4                         Seattle, WA  98109

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    THE CLERK:  Your Honor, we are here in the matter of

2  Black Lives Matter Seattle-King County, et al., vs. City of

3  Seattle.  Cause No. C20-887-RAJ.  If counsel could please

4  make your appearances for the record.

5    MR. PEREZ:  David Perez, Perkins Coie, representing

6  the plaintiffs.

7    MS. TACK-HOOPER:  Molly Tack-Hooper, also for the

8  plaintiffs.

9    MR. CHANG:  Bob Chang, Korematsu Center, also for the

10  plaintiffs.

11    MR. CHRISTIE:  Good morning, Your Honor.  Bob

12  Christie on behalf of the City of Seattle.

13    MR. MILLER:  Good morning.  Tom Miller on behalf of

14  the City of Seattle.

15    THE COURT:  All right.  Good morning to all of you.

16  This matter was originally scheduled for a hearing on the

17  City's motion to show cause why this court should not hold

18  the defendants in contempt for violation of the court's

19  preliminary injunction order that was entered on June 17th of

20  this year.

21    In support of that motion, plaintiffs filed a host of

22  declarations with video evidence.  In conforming with the

23  preliminary injunction, the plaintiffs set the hearing on the

24  motion for today.  That's the reason for the short

25  turnaround.

1    On Wednesday evening, the defendants filed their response,

2 accompanied with several declarations.  In addition to

3 contending the defendants have not violated the court's

4 order, the defendants have also raised due-process concerns

5 and request additional time to substantively respond to the

6 allegations.

7    Now, I've outlined in my order that was issued yesterday

8 the legal justification for delaying today's proceedings.  We

9 will not be addressing whether we need to have an evidentiary

10 hearing; that issue has already been decided by the court.

11 As indicated in the order issued, the court advised the

12 parties that we will not be arguing the motion, but rather

13 discussing the scope and parameters for that type of hearing.

14    Now, I'll start with a couple indicators from this court,

15 as to matters that do not appear to be in dispute.  First,

16 the proceeding now before this court is being conducted with

17 the plaintiffs seeking to hold the defendants in civil, not

18 criminal contempt.  Second, the standard to be utilized by

19 this court as to whether a contempt of this court's order has

20 occurred is by clear and convincing evidence.  Now, I suspect

21 the members of the viewing public or listening public may be

22 confused and wonder why the court needs to set a hearing on a

23 contempt claim, why can't the court just make a finding based

24 on the videos and declarations filed?

25    This is a situation of indirect contempt that depends upon

1    evidence presented in the court, and the court thereafter

2    deciding if the evidence is sufficient to support such a

3    finding.

4        The court then has to decide, after both parties have had

5    an opportunity to present their evidence, make legal

6    argument, and it's improper for the court to make a

7    determination without an opportunity for the defendants to

8    respond.

9        Now, in light of these circumstances before this court, I

10   have directed the parties to be prepared to discuss several

11   matters, to frame the matter and format for the hearing.

12       Now, as noted in my order, a civil contempt proceeding may

13   not ordinarily be tried on the basis of affidavits.  But if

14   the parties are willing to so stipulate, we can proceed in

15   that fashion.  That would mean it would give the defendants a

16   deadline to file their additional and/or counter affidavits

17   and evidence; the plaintiffs may respond, if necessary; and

18   then allow the parties to make arguments to the court based

19   upon the written submissions.

20       Now, we have to deal with the realities of the situation

21   we find ourselves in with the pandemic.  This approach would

22   be most efficient, particularly in light of the challenges of

23   COVID-19, and the fact that this court is closed.  This court

24   has recently reissued a new modified order by our Chief

25   Judge, in a General Order, closing court proceedings until

1   September 8th.  This court will not be open until after that

2   time period.  And, again, that date is uncertain.

3       Normally I would begin with the plaintiffs.  However, it

4   appears they are ready to proceed, and have filed an

5   abundance of evidence for the court's consideration.  So I

6   wish to hear from the defendants first.

7       Now, before you begin, I wish to advise I will not

8   outright dismiss the plaintiffs' motion as you've requested.

9   They have presented a dearth of evidence via affidavits and

10  videos.  In opposition, you have filed declarations, some

11  video, and still shots that represent that you have not had a

12  chance to substantively respond to the claims and evaluate

13  the force that was used through a proper Fourth Amendment

14  analysis.  What you have filed only addresses some of the

15  issues raised.  In order to give you a chance to respond, as

16  noted, I need your input on the questions I've identified.

17      So let's start first, what's your position with respect to

18  conducting the hearing on the basis of affidavits or

19  declarations in lieu of a formal hearing?

20          MR. CHRISTIE:  Good morning, Your Honor.  This is Bob

21  Christie.

22          THE COURT:  Good morning.

23          MR. CHRISTIE:  We are not amenable to conducting it

24  solely on affidavits.  We think it's vital that there be live

25  testimony.

1    THE COURT:  And when you say "live testimony,"

2    counsel, what do you contemplate by way of presentation of

3    evidence?

4    MR. CHRISTIE:  I contemplate presentation of

5    body-worn video and an explanation by witnesses that have

6    knowledge of that video.

7    THE COURT:  Counsel, you've represented in your

8    materials that you have, I believe the number is 1,394,

9    different body-cam videos.  Do you plan or do you even

10   believe that's realistic to attempt to present that volume of

11   evidence to this court in a reasonable time period?

12   MR. CHRISTIE:  No, we don't, Your Honor.  What we

13   would anticipate is that we set a hearing date, we work

14   backwards from that, with a deadline for disclosure by

15   Mr. Perez, of the people that he plans to present as

16   witnesses and what video he plans to present.  That would

17   help define the scope of our response.  And we would focus

18   our response on those items that are relevant to what he is

19   presenting.

20   So what we would -- and I'm prepared to speak to all the

21   topics that the court has outlined, if you want me to do that

22   now, or I'll do it at the end.

23   THE COURT:  Well, I may interrupt you as we go along,

24   counsel.  Plaintiffs right now, I believe, have identified

25   20-plus affidavits and declarations, not to mention the

1  variety of videos that they've presented.  Is it your plan to

2  counter each of those by way of body-cam evidence?

3       MR. CHRISTIE:  As best we can, Your Honor.  It's

4  imprecise, for sure.  And we're actively collecting and

5  evaluating that evidence.  But if the scope of the

6  plaintiffs' evidence is the declarations that have currently

7  been filed and the video that's currently been identified,

8  that would be good to know.  And if that is the case, then

9  that is the -- that would define the scope of our response.

10  We would expect to have testimony consistent with the

11  declaration of John Brooks that was filed that talks overall

12  about how the scene unfolded.

13     But in terms of focus, since this is about claims of

14  identifiable specific individuals who claim there was a use

15  of force, either OC spray, blast balls, or perhaps blue nose,

16  that are quite specific.  And the measuring is whether that

17  complies with your order.  Our intent would be to respond as

18  best as possible to those specific uses of force.

19       THE COURT:  Counsel, do you believe it's necessary to

20  call an abundance of witnesses, or are you willing to accept

21  some form of declaration and affidavit that could be

22  countered by declaration and affidavit?  In other words, a

23  hybrid-type approach.  So as opposed to having live testimony

24  which would warrant the plaintiffs utilizing all 24, for

25  example, declarations that they've presented, and then you

1   countering each of those.  Do you believe that's necessary

2   and sufficient to be able to balance that with some affidavit

3   and some live testimony?

4       MR. CHRISTIE:  That's an excellent question, Your

5   Honor.  I have candidly not discussed that with our full

6   team.  I would appreciate an opportunity to do that.  And we

7   could respond quite quickly to the court on that.

8       THE COURT:  Now, when you say "consult with your

9   team," are you asking the court to take a brief recess during

10  the course of this hearing, then reconnect to this court?

11      MR. CHRISTIE:  Well, that would be one thing that we

12  could do, we could very briefly go offline and I could jump

13  online with my team and provide an answer to that probably

14  within about five minutes at the most.

15      THE COURT:  All right.  We'll take that time at the

16  appropriate time, counsel.  And the court believes there's

17  urgency, counsel, to address these matters.  The protests

18  have been ongoing for a significant period of time, and the

19  court is concerned about the issues that have been raised.

20  In that fashion, the court has a desire to move in an

21  expeditious fashion to be able to tell the plaintiffs if

22  they've made their case, and to tell you if you've

23  sufficiently defended against the claim of contempt.  That's

24  the reason the court is pushing in the manner that it is

25  today.  Is that understood, counsel?

1    MR. CHRISTIE:  It is, Your Honor.

2    THE COURT:  So let's continue with the question the

3  court presented to you, counsel.

4    MR. CHRISTIE:  So, looking at that and being

5  sensitive to what the court just stated, as we had indicated

6  in our original response, we thought a timeframe of 60 days

7  would be appropriate to set a hearing.  So if we were to look

8  at a calendar right now, and we sketched out some dates, if

9  the court was to pick October 5th as the hearing date,

10  working backwards from that, if the plaintiffs were fully

11  disclosed with their evidence by August 7th, within 30 days

12  of that, September 4th, we would identify our witnesses and

13  all of the evidence that we might present, and then

14  anticipating a hearing subsequent to that.

15    THE COURT:  Counsel, I have no idea what the Black

16  Lives Movement plan is for continued demonstrations.  The

17  court is concerned that every weekend that we delay and every

18  day that we delay, there's uncertainty in terms of the

19  outcome of this proceeding.  It would be helpful to have

20  guidance, clear guidance from this court, so that you and

21  plaintiffs have a clear understanding of what is permitted

22  and what is not permitted, or what needs to be modified, or

23  if the order in place now is sufficient.

24    So 60 days seems, counsel, to be a little bit unrealistic

25  in light of the circumstances that are before this court, and

1  the imminent nature of the court's concern.

2      So when you have your offline conversation with your

3  co-counsel, take that into consideration.

4          MR. CHRISTIE:  Thank you, Your Honor.

5          THE COURT:  All right.  Please continue, counsel.

6          MR. CHRISTIE:  Well, so looking at the scope -- and,

7  again, I think if the scope is defined by the 20-some

8  individuals that have filed declarations, I would anticipate

9  -- and this is a rough estimate -- 10 to 15 witnesses on our

10 side that would respond to that.  That's a body of about,

11 let's just pick a number, 40 witnesses.  Anticipating how

12 many of those could realistically testify in a day, if it's

13 six to eight that might testify in a day, I think that

14 defines the length of this hearing as something in the six to

15 eight day timeframe.

16         THE COURT:  Now, counsel, you represented to the

17 court a total of 40 witnesses based upon what the plaintiffs

18 have provided, as well as the defense anticipated witnesses?

19         MR. CHRISTIE:  I was estimating 10 to 15 on our side,

20 in addition to theirs.  So I think, if my math is correct,

21 that would bring us up to about 40 on the high side.

22         THE COURT:  Counsel, you know, one of the court's

23 concerns in any type of litigation is cumulative evidence.

24 And is what you're representing to the court that you want to

25 have 10 to 15 different officers essentially present to the

1  court that this was a riotous situation and continue to

2  repeat the testimony of the previous officer?  That's not an

3  efficient use of time.

4         MR. CHRISTIE:  We would not plan to do that, Your

5  Honor.  We would plan, to the extent possible, to have

6  witnesses address the specific uses of force that are the

7  basis for the claim, that there's been an isolated -- or in

8  this case, multiple, individual violations of the terms of

9  your order.  We would not want to duplicate testimony in any

10  way.

11         THE COURT:  Please continue, counsel.

12         MR. CHRISTIE:  So I think I've touched on all of

13  them, except the preferred technology to conduct the hearing.

14  We're anticipating that it's likely to be this format for

15  that.  I believe that with this format, while there are some

16  inefficiencies in it, it can be done as expeditiously as

17  possible, as long as we have screen-sharing control such that

18  we could present our videos through a screen share with the

19  court, have the witness discuss them on an ongoing basis, if

20  we could control that screen share.  Of course, all the

21  documents or all of the video evidence would have been

22  previously disclosed, so everybody would know exactly what

23  we're looking at.  But that's the format that we would

24  anticipate presenting this in, Your Honor.

25         THE COURT:  Counsel, one of your justifications for

1　the delay includes your desire to obtain pertinent

2　documentation.  And that would include, again using your

3　representation, use-of-force reports and relevant BWV.  It

4　also suggests that the use-of-force investigations are

5　subject to multiple levels of review, including an

6　investigation by OPA.

7　　　Now, counsel, it's this court's experience, and I think

8　that you'd have to agree, that those type of investigations

9　are complicated, have multiple layers of review, and that's

10　not even counting a Loudermill hearing, and also a review of

11　the Chief of Police.

12　　　So, counsel, if that's what you're contemplating, that

13　extensive of an investigation, that may be fine for an

14　internal investigation for discipline against your officers,

15　but are you suggesting to the court that it's that type of

16　investigation that needs to be completed before you're

17　prepared and ready to deal with this hearing?

18　　　　MR. CHRISTIE:  No, Your Honor.  We recognize that

19　those processes exist and will be followed.  But to the

20　maximum extent possible in the timeframe that I have

21　requested, it's our desire to get to the heart of the matter.

22　And there's some logistics, and there's some issues relative

23　to all of those other processes that we're going to have to

24　deal with.  This is a different circumstance.  But we are

25　going to use the best that we can in this process to compile

1  and present substantive evidence on these events.

2      THE COURT:  And, counsel, you'd agree that you

3  already have an identification by the plaintiffs of the

4  nature and scope of their arguments to this court.  You have

5  the specific individuals and you also have the video evidence

6  that they've identified.  As a matter of fact, some of the

7  declarations you provided have still screenshots of the

8  videos provided by the plaintiffs.  So shouldn't that

9  considerably narrow the amount of time necessary for you to

10  prepare for this type of hearing?

11      MR. CHRISTIE:  Your Honor, if we know right now --

12  and perhaps we do, and Mr. Perez can confirm -- that the

13  scope of the evidence on his side has been defined in his

14  motion and in the declarations that have been filed, and if

15  that is the case, then we wouldn't need to wait until

16  August 7th to know that disclosure.  We begin -- that helps

17  us.  We're rapidly compiling the body-worn video and trying

18  to get to that, that's relevant and responsive.

19      So it may well be that we could do that before the

20  September 4th deadline.  But there is quite a volume of

21  material.  And the way those individual body-worn cameras are

22  linked to this event, requires a fair amount of investigation

23  to try to find the exact opposite screen video of what has

24  been presented.  So it is a bit of a challenge.  We're

25  working on it actively now.

1      THE COURT:  Okay.

2    And, counsel, would you once again give the court your

3  proposed timeline, not that I'm going to adopt it, but I just

4  want to hear what you're proposing again.

5      MR. CHRISTIE:  Yes, Your Honor.  Again, the timeline

6  would be setting a hearing date that would likely be six to

7  eight days, starting October 5th.

8    Backing up from that, if the plaintiffs were to disclose

9  their material by no later than August 7th, our disclosures

10  would be 30 days, or four weeks from that, actually,

11  September 4th.  And then what I guess I would need some

12  guidance from the court is whether or not there's any

13  anticipation of any active discovery process in that interim

14  period.

15      THE COURT:  Well, counsel, this is a contempt

16  proceeding.  I don't believe that contempt rules contemplate

17  discovery.

18      MR. CHRISTIE:  I agree.

19      THE COURT:  Plaintiffs have already identified the

20  specifics of the basis for their allegation.  Again, this is

21  a contempt proceeding.  I recognize case authority talks

22  about a trial, which is an evidentiary hearing, which is what

23  *Peterson* refers to.  And that's what the court contemplates

24  allowing for your defense and for the plaintiffs' prosecution

25  of their claims.

1    MR. CHRISTIE:  Thank you, Your Honor.  That would be

2    my understanding, too.  I appreciate the clarification.

3        THE COURT:  Okay.  All right.

4    Let me hear from, I believe it's Mr. Perez.  Are you going

5    to be speaking on behalf of the plaintiffs?

6        MR. PEREZ:  Yes, Your Honor.

7        THE COURT:  All right.  Mr. Perez, let me hear from

8    you.  Good morning, again.

9        MR. PEREZ:  Thank you, Your Honor.  And thanks for

10   making the time.  How about I just go down the list, and

11   interrupt me as I go down.

12   Starting with the date.  We agree with Your Honor, 60 days

13   is impractical.  There are three protests scheduled for this

14   weekend.  And so we would be strongly opposed to a 60-day

15   timeline, because that just may very well lead to more

16   complications and misunderstandings.  We would push for a

17   hearing within the next 14 days, or at most 30 days.  But

18   60 days is impractical.

19   We're probably closer -- the parties are probably closer

20   in length, although there's a lot of efficiencies we can

21   capture if we did a hybrid approach.  And in a civil-contempt

22   proceeding, there is an awful lot of authority to suggest a

23   court can and courts often do rely on affidavits.  Unless and

24   until the contempt sanctions begin to approach a criminal

25   sanction, the due process for a full-fledged trial on the

1    merits is not required, in a civil-contempt proceeding.

2        And note that the sanction we're asking for is relatively

3    modest.  So I do think we should strongly consider a hybrid

4    approach or even one that relies more on affidavits than live

5    testimony.  And we have live testimony for targeted

6    questions.  But a two-to-three day -- two to three days per

7    side makes sense to us, you know.  So that's probably

8    anywhere from five to seven days total.

9            THE COURT:  Counsel, let me clarify.  Did you say it

10   does or does not make sense?

11           MR. PEREZ:  I think two to three days per side makes

12   sense.  But we could streamline that, should we adopt a

13   hybrid approach, which would be more efficient.  But I think

14   on the top end, it would be five to seven days.  We could

15   reduce that should the parties be able to agree on

16   introducing some affidavits.

17           THE COURT:  Let me ask you a question, counsel, and

18   perhaps I should have asked counsel for the defendants as

19   well.  Have the parties attempted to meet and confer to craft

20   a timeline, as well as a proposed format for the proceeding?

21   The court's always desirous of the parties crafting their own

22   resolution, their timelines, so that the court does not have

23   to be imposing a deadline that neither party wishes to adhere

24   to or desires to have an alternative consideration.  So,

25   Mr. Perez, have you met with defense counsel?

1       MR. PEREZ:  We haven't had an opportunity yet to meet

2  and confer.  It's just too quick of a turnaround.  But

3  actually, that's a good idea.  And we had those in our notes,

4  in our e-mails back and forth, that we should meet and confer

5  on, for instance, the video format, on the amount of

6  testimony each side would require.  I think it makes sense

7  after this hearing, if there are loose ends, for us to meet

8  and confer and tie those loose ends.  I guess we're going to

9  be at an impasse on the timeline, because 60 days is just way

10  too long.

11       We could easily iron out, with the court's approval, the

12  technology format.  And I think we may even be able to iron

13  out the *Peterson* question, which is whether we can proceed on

14  a hybrid approach.  Although I understand from Mr. Christie

15  he'll be speaking and getting us clarification on that with

16  his client later in the hearing.  So I think we'll be close

17  on several of these issues.  But the timeline is going to be

18  the big one.

19       To bookmark this for a second.  We have submitted

20  declarations, Your Honor.  I don't think if we go to an

21  evidentiary hearing, we should be limited just to those

22  declarations.  I like the notion of, if we have a hearing in

23  two weeks, we disclose any additional witnesses within a

24  certain amount of time, and the City can disclose their

25  witnesses soon thereafter.  But if the City is going to be

1  cherry-picking videos, I do think it makes sense for that

2  body, or that universe of videos, either be made available to

3  plaintiffs, or the City makes some representation that if

4  they come across a video that, in fact, does show force or is

5  relevant, or does show one of our witnesses and one of our

6  plaintiffs, they can't simply withhold that and then only

7  show Your Honor the cherry-picked videos out of 1,300 that

8  suggest or seem to support their case.

9      From the affidavits we submitted, there is a strong

10 likelihood, Your Honor, that many of those videos will

11 support our case.  And should the City withhold those videos

12 in advance of a contempt hearing, we would suggest to you,

13 Your Honor, that would be improper.

14     THE COURT:  Okay.

15     And, counsel, I think you represented that on the outside,

16 a 30-day postponement.  So I want to clarify your position.

17 On the outside, a 30-day date set for the hearing and then a

18 five-day hearing, five-to-six-day hearing, correct?

19     MR. PEREZ:  Yes, Your Honor.  We think that's

20 reasonable.  Thirty days would be -- we would be very

21 concerned with that timeline, given that there are three

22 protests this weekend.  But, yes.

23     You know, if we were to work backwards, if we had a

24 hearing the week of the 24th of August --

25     THE COURT:  Let me get my calendar, counsel.

1          MR. PEREZ:  Sure.  And that is a Monday.  If we

2     started right away on Monday the 24th, that is, in fact, one,

3     two, three, four, that's the fifth week since the incident.

4     And I'll represent to Your Honor that we had phone calls with

5     the City on the 25th as the incident was occurring and

6     unfolding.  So they were already gathering information as of

7     the 25th.  So that would be basically the fifth week since

8     the incident.

9        We could disclose -- we could meet and confer and work

10    with counsel to create a schedule based on that, disclosures,

11    witnesses, documents, and present that to Your Honor,

12    contemplating the week of the 24th.  We can have a chess

13    clock, which is usually the most efficient, of two days each

14    side, with half a day each side argument.  So that's five

15    days total.  And to the extent neither side can fit their

16    evidence within two days, we're just going to have to be

17    sufficient with affidavits.  And that's just what we're going

18    to have to do, given the confines of litigation and time

19    constraints we're under.

20       But I think that would be the Cadillac version of due

21    process from the City.  That's a lot of due process,

22    particularly here, where we're not seeking a sanction that's

23    so serious that it requires anything more than that.  Again,

24    we would suggest it requires much less.

25          THE COURT:  All right.  Anything further from the

1 plaintiffs' perspective?

2     MR. PEREZ:  Not unless you have any additional

3 questions.  I think that's it.

4     THE COURT:  Let me hear from counsel for the

5 defendants.

6     MR. CHRISTIE:  Thank you, Your Honor.  I have a jury

7 trial scheduled to start August 24th in front of Judge

8 Michael Scott.  We're planning to try that in the Bellevue

9 Maidenbower Center.  That case is locked and loaded to go.

10 And he's done everything humanly possible to make sure that

11 actually goes.  So if we could start after Labor Day, the

12 8th, that would really be the earliest I think that is

13 realistic.  I'm trying to be sensitive to the court's desire

14 to get this going.

15     What I'm a bit concerned about, in the response I heard

16 from Mr. Perez, is a broadening of the scope.  We need a

17 deadline when the scope is defined by whoever he's going to

18 present.  We are amenable to a hybrid fashion.  I was able to

19 confer by text with my team.  So I think that could create

20 some efficiencies.  And I guess it would just be up to the

21 parties and how they present their evidence, and the court

22 will define how long we have on each side to do that.  I do

23 like the chess-clock approach, it's fair.

24     And the idea that we would find video that would support

25 him and hide that, we would never do that.  The court rules

1  would prohibit us from doing that.  We would find relevant

2  video, relevant to the event.  It is what it is.  That's the

3  point of the time to gather this evidence.

4      So, if we were to start, at the earliest -- I'm trying to

5  be sensitive to what the court is saying -- the Tuesday after

6  Labor Day, and proceed accordingly with the amount of time

7  the court is willing to give on this, I think, in fairness, I

8  think three days would be fair.  And if it's shorter, it's

9  shorter.  It wouldn't be any attempt to run the clock out, it

10  would be to try to get the evidence in and present it

11  efficiently.

12      THE COURT:  Counsel, if the parties are going to

13  engage in the utilization of the hybrid approach suggested by

14  this court, the court does not see the need for a lengthy

15  process, in other words, seven or eight days.  The court will

16  certainly put on a clock, that's what the court typically

17  does for all its civil proceedings, so that the parties are

18  efficient in the use of their time.  When I say efficient use

19  of the time, I want to emphasize efficient use of the time.

20  Because when that clock expires, you sit down.  Your time has

21  expired at that point in time.  That, I've found from my

22  experience, generates an enormous amount of passion and

23  desire to have your witnesses testify, and testify

24  efficiently.  And that clock time includes the direct and

25  cross examination that you use with the witnesses.

1       So I'd say, at a maximum, this hearing would last -- a

2  five-day proceeding, two and a half days per side, and

3  nothing more.

4       The court is going to need to confer with my in-court

5  deputy.  So what I'm going to do is I'm going to put you on

6  mute, I'm going to contact my in-court deputy, and then we'll

7  discuss available dates.  The court had one date in mind, a

8  lot shorter than 60 days, I'll tell you that right now.  And

9  then I'll come back online.  So if the parties will just

10  remain on the line.

11                          (Recess.)

12          THE COURT:  All right, counsel.  Are the parties back

13  on the line?  All right.

14          MR. CHRISTIE:  I'm good, Your Honor.  Thank you.

15          THE COURT:  Mr. Christie?  Okay.

16       Counsel, here's the schedule.  One, I'm going to direct

17  that the parties do meet and confer after the court gives you

18  the specific deadlines that the court is going to impose.

19  Now, again, the court's undertaking an aggressive approach to

20  try to get this matter resolved; Mr. Perez has already

21  announced perhaps that they're going to have perhaps three

22  protests this weekend.  And I have no idea, and he hasn't

23  represented what that looks like for the next few weeks down

24  the road.

25       But I'm going to set the following:  The court is going to

1    set the date for the initial disclosures of August 5th.

2    That's next Wednesday.  And, counsel for the plaintiff, I

3    believe you are prepared to proceed today.  So you should

4    know the witnesses and affidavits that you will utilize for

5    purposes of the trial or hearing.  The court has already set

6    a five-day time period for the trial.  The initial

7    disclosures will be August 5th.  The responding disclosures

8    will be August 8th, that's the following Wednesday.

9          MR. PEREZ:  August 12th, do you mean.

10         THE COURT:  August 12th, excuse me.  It will be

11   August 12th.  The court will require that the joint witnesses

12   and exhibit lists be filed by August 18th.  And all the

13   deadlines I'm imposing, counsel, the deadlines will be known

14   on those days.  I'm trying to maximize the amount of time the

15   court has to review and the maximum amount of time the

16   parties have to review each party's disclosure.  The court is

17   going to require the submission of exhibits and any other

18   documents that you want the court to consider.  And that

19   deadline for filing is going to be August 21st.  That will

20   give the court the time to process whatever you're going to

21   submit to the court.

22      I will also let you know that obviously I'm working from

23   home and my mainframe computer, our browser doesn't allow me

24   to access Twitter.  So many of the videos that were on

25   Twitter, the court had to revert to its iPad.  I don't have

1   the highest skill set in technology, but I'm doing the best

2   that I can.  And so I can see and saw most of the videos that

3   were on the Twitter browser format, except for just two.  So,

4   please be sensitive to that when you're making your

5   submissions to the court.  I'll get to them, but it makes it

6   far easier if you're using Twitter -- and that appears to be

7   the format for many if not most of the videos that were

8   provided to the court.

9      The court asks that the submission of exhibits be by

10   Dropbox.  And I trust that all of you have the technical

11   capability that you and my in-court deputy can communicate

12   and know how to make that transmission.

13      Also, if you need training, and I suspect you may need

14   training to work with our Zoom system, because that's the

15   format that we're going to use, that you undertake whatever

16   is necessary to be familiar with the court process and

17   procedures.  There will be no in-court opportunity.  The

18   in-court will be by Zoom and only zoom.  We're going to use

19   the exact same format as today.  It will be an open

20   proceeding for audio participation for any members of the

21   public that wish to listen and review.  But as far as the

22   parties, it will be just by Zoom.

23      If you wish to expand the participation by way of having

24   client representation, you can do that, just let the in-court

25   deputy know, so that we can make sure that those individuals

1  will have the proper access line to be able to participate

2  and observe.

3       Again, that's your call.  But you need to make that

4  disclosure in advance of the court proceeding, so that we can

5  accommodate client representation.  I'm not requiring client

6  representation.  I'm not asking for the Mayor and the Chief

7  of Police to appear, and I'm certainly not asking for all the

8  named plaintiffs to appear.  But if they wish to appear by

9  Zoom to see, they'll have the opportunity to do that.  But as

10  you may recall, when we had the temporary restraining order

11  hearing, that was a burden upon the court because members of

12  the public were doing everything from ordering food, to

13  having friendly conversations with each other, talking about

14  the weather, and everything else.  That's not acceptable to

15  the court and it's not acceptable and shouldn't be acceptable

16  to the parties.

17       This court expects this proceeding to be conducted just as

18  if we were in open court.  And the court wants all of you to

19  be respected fully, without disruption, and a full

20  opportunity to present your case and positions.  And I'd

21  expect nothing less from the parties or the participants.

22       The court has set the hearing and is setting the hearing

23  for August 26th, that's a Wednesday.  And with the desire of

24  the parties to have an opportunity to have meaningful

25  presentation of their evidence, we'll start the hearing on

1 the 26th. I'm going to have to move a number of things

2 around on my calendar to accommodate. So that will mean the

3 26th, 27th and 28th we will be in trial, and we will complete

4 -- and the 31st, which is the following Monday. And then

5 we'll finish on the 1st. And then we'll go into closing

6 remarks on that day.

7 That should give finality. And then that will hopefully

8 give the court an opportunity to get an order out in an

9 expeditious fashion to give you direction on what the court's

10 position is going to be on what you file.

11 Counsel, I hope that gives you enough guidance and

12 direction in the court's expectations. Now, if you have any

13 questions or need clarification, this is your opportunity.

14 Starting first with counsel for the plaintiff. Mr. Perez?

15 MR. PEREZ: One thing we discussed, and just I failed

16 to ask, Your Honor, our request would be if the defendants

17 are going to be relying on the body-cam videos, we think it's

18 the most efficient for them to turn that over. We can

19 stipulate to a protective order. But both sides should have

20 access to those videos. And I understand and appreciate

21 Mr. Christie's representation that he'll just hand over

22 relevant videos as they come across them. But we might have

23 a different interpretation of what's relevant. So it just

24 makes sense, given that all the videos are about this

25 incident, they should just be turned over. We shouldn't have

1    a fight over that.

2        THE COURT:  When you say "all the videos," you mean

3    the videos defendants plan on utilizing; correct, counsel?

4        MR. PEREZ:  Well, they're only going to utilize the

5    videos that are helpful to them.  We're thinking there are

6    videos that won't be helpful for them that they won't utilize

7    that we want to utilize.  How do we get access to those

8    videos.

9        THE COURT:  Counsel, I think the number is 1,394 --

10   my number may be off, but I think that's a proper number --

11   are you asking the City to give to you that many body-cam

12   videos?

13       MR. PEREZ:  We would ask for at least a portion of

14   those or all of them, yes.  We don't think that would be too

15   heavy of a lift, because some of those would be short videos

16   and we can view them very quickly by increasing the speed of

17   the video.  And we have a review team ready to go to review

18   some of those videos.

19       If they are already going to be reviewing them on their

20   end for relevance, it strikes me as proper to have us review

21   them for relevance on our end as well.

22       THE COURT:  All right.  Any other points of

23   clarification from you, Mr. Perez?

24       MR. PEREZ:  I think that was it.

25       One other -- I'm sorry -- one other clarification is, and

1  we could possibly meet and confer about this, too, but Your

2  Honor has set the date for the hearing on the contempt.  One

3  thing we might be able to separate from the contempt, and I

4  don't want to argue this since Your Honor doesn't want

5  argument, is the clarifications to the PI.  That is something

6  that may be separated from contempt, doesn't necessarily

7  require additional due process.  But I just wanted to flag

8  that, given there's going to be protests between now and the

9  26th.

10  THE COURT:  Repeat the beginning part, counsel.  I

11  didn't hear a little of it.

12  MR. PEREZ:  As Your Honor recalls, we asked for two

13  things in our motion.  We asked for a clarification to the

14  PI, and then we asked for a finding of contempt and

15  sanctions.  And the sanctions were the attorneys' fees.  We

16  do believe that those two requests, the clarification to the

17  PI, can be separated from the contempt, and between now and

18  the 26th, that clarification on the briefs can be decided and

19  a clarification might avoid additional, shall we say,

20  disruptions between now and the 26th.

21  THE COURT:  And, counsel, why don't you narrow the

22  specifics of the things that you believe are proposed to be

23  clarified.  And I have your proposed order.

24  MR. PEREZ:  It would be everything in our proposed

25  order, everything other than the portion that finds them in

1  contempt and issues attorneys' fees.  It would be the

2  additional clarifications, for example, Your Honor, that you

3  cannot target legal observers, you cannot target medics, you

4  cannot target peaceful protestors, certain other

5  clarifications about throwing projectiles indiscriminately

6  into the crowd.

7  Our evidence suggests that rather than use teargas, what

8  they did was they substitute, for teargas, they substituted

9  pepper spray and began using that indiscriminately.  So these

10  are clarifications that are consistent with your order.  You

11  don't need to wait for a contempt hearing to issue them.  And

12  the papers themselves justify those clarifications.  We're

13  just suggesting you can separate those.

14  THE COURT:  All right.  Let me hear from counsel for

15  the defendants.

16  MR. CHRISTIE:  Thank you, Your Honor.  Respectfully,

17  the last request is inappropriate.  It's functionally a

18  request for a new preliminary injunction without trying to

19  meet the TRO standard.  It is a significant change from the

20  court's present order, and hasn't been the subject of

21  briefing, or hearing, or any attempt to present proof to the

22  level that the plaintiff must prove in order to seek that new

23  relief.

24  If we're talking about what we started this conversation

25  with, this discussion about 24, 26 events, with us responding

1   to those events, then I think that's what we -- that's what

2   the court framed up in terms of a hearing.

3      So we are strongly opposed to you, I guess, evaluating, or

4   taking under advisement, or separating off what we think is a

5   completely inappropriate request, guised as clarification.

6      And the second point, I may have to tell Judge Scott I was

7   ordered to a hearing in your court.  I do have a trial that I

8   mentioned to the court, and I just want to make sure that's

9   not lost on this, starting August 24th, a jury trial in King

10  County Superior Court before Michael Scott.  And if the court

11  orders me to be in court on the 26th, I'll tell Judge Scott

12  that you've ordered me to be in court on the 26th.

13         THE COURT:  Well, you can let Judge Scott know from

14  the court, with all due respect, that when I was serving as

15  Superior Court Judge, I can't tell you how many times a

16  federal judge overruled a date that I had set for a

17  proceeding or a trial.  Again, I emphasize with all due

18  respect.  But, counsel, I don't know the nature of the case

19  that you have before Judge Scott, but the nature of the

20  proceedings that are before this court have citywide impact.

21  And this court needs to address that.  And I'm quite certain

22  that -- reasonable minds could differ, but I think Judge

23  Scott will agree with the court's concern.

24         MR. CHRISTIE:  I'm confident he will, Your Honor.  I

25  just wanted to make that point clear, so I can make it clear

1  that I pointed it out to the court, and I've got enough

2  direction on that.  Thank you.

3      Finally, with respect to the scope of the videos produced,

4  we think it is unreasonable to ask that we produce a body of

5  1,400 body-worn videos.  Plaintiff has put forward their

6  evidence.  Our goal is to identify any video that relates to

7  the events that have been put forth, and any video that

8  relates to the events put forth would be part of what would

9  be made available for counsel to review.

10      THE COURT:  All right.  This is what the court is

11  going to do -- did you need to respond, Mr. Perez?

12      MR. PEREZ:  No.

13      THE COURT:  This is what the court is going to do,

14  counsel:

15      As the court read through your motions for contempt, and

16  though you characterize it as a motion for clarification, the

17  court saw it as a modification of the court's prior order.

18  This court was quite precise and specific in terms of the

19  prohibition.  And that was based upon the pleading papers

20  that the parties submitted to this court.  And I granted

21  relief based upon what was submitted to this court.

22      Subsequent to the issuance of that order, the last

23  demonstration that resulted in the proceeding now, had a

24  significant variation in terms of what the facts were before

25  the court at the time of application for the TRO.  In light

1  of that, counsel, I think it would be unfair and

2  inappropriate, even though you characterize it as a

3  clarification, this would appear to be a modification, and

4  that would require an additional or separate TRO.  And the

5  court doesn't believe it's appropriate at this point in time.

6      Counsel, you'll certainly have your day and opportunity to

7  present the facts to justify all the relief that you're

8  seeking.  But I don't believe it's appropriate for the court

9  to do that at this point in time without following the

10 necessary protocols for a TRO or injunctive relief.  So to

11 that extent, your oral request for modification is going to

12 be denied.

13     Second, counsel, as to the videos.  The court is not going

14 to order the defense to produce 1,394 videos.  I understand

15 you may have a significant team out there that are

16 powerhouses ready to go through that, counsel.  But I don't

17 think, in light of the circumstances, that that's appropriate

18 or necessary.

19     The court is not going to require the City to produce that

20 volume.  But what I'm going to do, counsel, I'm going to give

21 the parties the opportunity to try and craft your own

22 resolution of what plaintiffs' counsel needs and what defense

23 counsel plans on producing.  So, counsel, if you believe that

24 there are connecting or linking videos that are supportive or

25 necessary, confer with counsel.  If for some reason, counsel,

1     you can't agree on the scope -- and I'm telling you now I'm

2     not going to order 1,394 videos to be produced, because I

3     want to have the parties focus and concentrate on what you're

4     going to present to the court, as opposed to fighting over

5     the breadth and extent of your discovery.

6       So I will give you the freedom, counsel, of meeting and

7     conferring.  And I'll even give you a time right now to come

8     back to the court.  And then we can further discuss whatever

9     you can't agree upon by way of discovery or disclosures.

10    Would that be acceptable to you, Mr. Perez?

11        MR. PEREZ:  Absolutely.  Thank you.  I think that

12    strikes the right balance.

13        THE COURT:  Mr. Christie, would that be an acceptable

14    proposal?

15        MR. CHRISTIE:  Yes, Your Honor.

16        THE COURT:  Counsel, what I'm going to do is I'm

17    going to give you a date and time right now, so you don't

18    have to seek permission from the court, and you know with

19    certainty when you can come back to the court.  What I will

20    require, however, whatever issues you can't agree upon, I

21    want a joint submission to be provided to this court, a brief

22    joint submission.  And I'll give you the date and time now,

23    so that you can know when to file a submission, and also what

24    date and time for the hearing.

25       Since the plaintiffs' initial disclosures are the 5th,

1 when do you propose, counsel, that you'd like to have a

2 meeting with the court?  Let me hear from both sides.

3      MR. PEREZ:  Well, if we're disclosing our witnesses

4 on the 5th and theirs on the 12th, I think it makes sense,

5 sometime very shortly after the 12th, for us to discuss what

6 videos or additional videos we would need.  So probably by

7 the 14th?  I know that's a quick turnaround after the 12th.

8 But I think we can make it work.

9      THE COURT:  Counsel for the defense?

10      MR. CHRISTIE:  I think we can make that work, Your

11 Honor.

12      THE COURT:  All right, then.  Counsel, I have our

13 DREAM calendar that afternoon of the 14th.  Is there any

14 reason why we can't have this discussion on the afternoon of

15 the 13th or the morning of the 14th?  Do you have some place

16 you need to be other than home on those dates?

17      MR. PEREZ:  That works for us.

18      MR. CHRISTIE:  The morning of the 14th would be our

19 preference.

20      THE COURT:  All right.  Then we'll set it for the

21 morning of the 14th.  It appears acceptable to both parties.

22 And we'll set that at 9:00 a.m. on the 14th.

23      Now, again, counsel, if you agree, contact the court and

24 you can strike.  The court wants your written submissions,

25 whatever this joint submission is going to be, by noon on

1    the 13th.  Can you do that, counsel?

2            MR. PEREZ:  We'll make it work.

3            THE COURT:  Counsel, Mr. Christie?

4            MR. CHRISTIE:  Yes, we will make that work, Your

5    Honor.

6            THE COURT:  All right.  Then that's the deadline for

7    that.

8        Counsel, I think the court has addressed all of the issues

9    presented to this court.  I've given you deadlines.  Counsel,

10   we have enormous issues that are presently before this court.

11   The issue is about the opportunity for peaceful

12   demonstrations.  And the issue is also about law enforcement

13   engaging in proper procedures to protect peaceful protestors,

14   as well as engaging in their duties as law enforcement

15   officers.  This matter is complicated enough without further

16   additions to stirring the pot and causing additional issues

17   of further claims of contempt.  I would encourage counsel to

18   work with your clients.

19       Counsel for the plaintiff, Mr. Perez, you have an

20   organization that is dedicated to try and make change in

21   society.  Counsel for the police, you have a

22   responsibility -- and the City -- you have a responsibility

23   to confer with your clients to make sure that they are

24   complying with the directives of this court.  I read in the

25   pleadings how the incident commander read specifically from

1   the court's order.  But, again, I want to emphasize, it's not

2   going to make progress unless both parties talk to your

3   clients, meet with your clients, and tell them we're trying

4   to engage in resolution of the issues before this court.

5      With that, counsel, we will be in recess.

6          MR. CHRISTIE:  Thank you, Your Honor.

7              (Adjourned.)

8

9             C E R T I F I C A T E

10

11

12     I certify that the foregoing is a correct transcript from

13   the record of proceedings in the above-entitled matter.

14

15

16

17   */s/ Debbie Zurn*

18   DEBBIE ZURN
      COURT REPORTER

19

20

21

22

23

24

25