THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE

| | |
|---|---|
| BLACK LIVES MATTER SEATTLE KING COUNTY, ABIE EKENEZAR, SHARON SAKAMOTO, MURACO KYASHNA-TOCHA, ALEXANDER WOLDEAB, NATHALIE GRAHAM, AND ALEXANDRA CHEN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE,<br><br>Defendant. | No. 2:20-CV-00887-RAJ<br><br>MOTION FOR ORDER TO SHOW CAUSE WHY CITY OF SEATTLE SHOULD NOT BE HELD IN CONTEMPT<br><br>NOTE ON MOTION CALENDAR: Oct. 5, 2020<br><br>Oral Argument Requested |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

  A. August 26, 2020 Vigil Outside of Washington State Patrol ..... 1

  B. September 7, 2020, Labor Day SPOG March ..... 4

  C. September 22, 2020 ..... 6

  D. September 23, 2020 ..... 7

III. ARGUMENT ..... 8

  A. Legal Standard for Contempt ..... 8

  B. The City's Use of Less-Lethal Weapons Against Peaceful Protesters Violates the Clarified PI ..... 9

    1. Indiscriminate Use of Explosives, Projectiles, and Canisters of Gas Against Protesters ..... 9

    2. Indiscriminate and Excessive Handheld Pepper Spray ..... 10

    3. Use of Less-Lethal Weapons to Re-Route or Move Protesters ..... 10

    4. Use of Less-Lethal Weapons Without Warning or Reasonable Opportunity to Disperse and Interference with Attempts to Disperse ..... 11

  C. The City Has Failed to Take All Reasonable Steps to Comply with the Court's Orders ..... 11

IV. CONCLUSION ..... 12

## I. INTRODUCTION

The City of Seattle is openly and willfully defying this Court's orders. On at least four separate dates since this Court's entry of the Clarified Preliminary Injunction on August 10, 2020, the City of Seattle has used less lethal weapons against peaceful protesters in a manner that is indiscriminate, disproportionate, and unnecessary to prevent specific injury or illegal activity, in violation of this Court's orders. Specifically, SPD has repeatedly launched explosives into crowds of protesters, drenched protesters with pepper spray excessively and indiscriminately, used less-lethal weapons to re-route protests or force protesters to move faster, and used less-lethal weapons without ordering protesters to disperse or giving them a meaningful opportunity to do so. Many of these violations have resulted in injuries to peaceful protesters. Plaintiffs repeatedly have brought these violations to the City's attention, but the City has failed to take effective action to prevent SPD from continuing to do take these actions. Indeed, to date, the City maintains that SPD's conduct is consistent with the Orders, even as the evidence clearly disproves the City's justifications.[1]

The Court's prompt action therefore is necessary. The City should be held in contempt.

## II. STATEMENT OF FACTS

### A. August 26, 2020 Vigil Outside of Washington State Patrol

On August 26, protesters gathered near the Washington State Patrol (WSP) headquarters for a vigil in memory of Summer Taylor, who was murdered during a protest on I-5 when a driver drove his car into two protesters. Vigil participants sat around a circle of tea lights and flowers on the side of the road sharing memories, feelings, and observing a moment of silence.

[1] Counsel conferred about this motion on September 29, 2020. *See* Declaration of David A. Perez (Perez Decl.), ¶ 3. Counsel for the City provided information in response to allegations regarding August 26 and September 7 events, *see id.* at Ex. B, D, and committed to providing information regarding September 22 and 23 this week, *see id.*, at ¶ 8. Plaintiffs agreed to extend the City's time to respond to 48 hours from the time of this filing.

Wensnahan Decl. ¶ 4; Servian Decl. ¶ 5. To protect the vigil from traffic coming off I-5, a Car Brigade blocked one lane of the roadway. Wensnahan Decl. ¶ 7; Servian Decl. ¶ 5; Flynn Decl. ¶ 4.[2] No one damaged property or engaged in violent behavior; the vigil was peaceful. Servian Decl. ¶¶ 14, 19; Scaturo ¶¶ 10, 18; Wensnahan ¶ 4; Flynn Decl. ¶ 5.

SPD officers abruptly moved into formation, erecting police lines blocking the street. Wensnahan Decl. ¶¶ 6-7; Scaturo Decl. ¶ 7; Servian Decl. ¶ 5; Flynn Decl. ¶ 5. SPD announced that it had called tow trucks to remove the Car Brigade. Scaturo Decl. ¶ 7. Without warning, SPD officers advanced on the peaceful crowd, chanting "move back" and pushing the crowd with batons. Wensnahan Decl. ¶¶ 10, 12; Scaturo Decl. ¶¶ 10-12; Servian Decl. ¶ 8; Flynn Decl. ¶ 5. Police smashed the window of one of the Car Brigade cars and arrested the driver. Wensnahan ¶ 13; Scaturo ¶ 9. As police broke up the vigil, an SPD officer sprayed a stream of pepper spray into the air, forming a cloud of gas over the protesters. Servian Decl. ¶ 9.

SPD pushed protesters to and around the freeway ramp, creating a human bottleneck and causing people to trip over one another. Wensnahan Decl. ¶¶ 17, 18. SPD unnecessarily shot pepper spray at people who could not retreat fast enough and roughly pinned and arrested two protesters. Wensnahan Decl. ¶¶ 19, 20; Scaturo Decl. ¶ 13; Servian Decl. ¶ 13.

SPD ordered vigil participants to disperse only after using less-lethal weapons against the group. Wensnahan Decl. ¶ 21; Scaturo Decl. ¶¶ 11-14; Servian Decl. ¶¶ 9, 15; Flynn Decl. ¶ 8.

An SPD officer threw a blast ball at a retreating protester's shield from four feet away, causing it to bounce back at the police line and explode. Wensnahan Decl. ¶ 23; Scaturo Decl.

[2] Two other protests took place on August 26. The first shut down the Ballard Bridge briefly in honor of George Floyd. The second was a march in Capitol Hill, at which SPD arrested at least two individuals for property damage. *See* SPD Blotter, Aug. 25, 2020 1:31 a.m., *available at* https://spdblotter.seattle.gov/2020/08/25/one-arrested-after-multiple-fires-are-set-to-buildings-during-protests/.

¶ 15. Jasper Wensnahan, a teacher, began coughing from the OC gas in the blast ball, and her eyes burned. Wensnahan Decl. ¶ 24. SPD lobbed another explosive overhand into the middle of the crowd protesters *who were already retreating*. Servian Decl. ¶ 10.

SPD then began to march protesters at "double time" speed, forcing protesters to run, and continued to use OC spray on people who fell. Wensnahan Decl. ¶¶ 27; Scaturo Decl. ¶ 15; Salisbury Decl. ¶ 3 (https://www.youtube.com/watch?v=zkQZhlmKQbI at 28:08). SPD chased retreating protesters for about 15 minutes, ***verballing mocking them as exhausted protesters struggled to keep up and to breathe***. Wensnahan Decl. ¶¶ 28-39; Servian Decl. ¶ 17; Scaturo Decl. ¶¶ 16-17. SPD arrested protesters who could not move quickly enough and released more gas and pepper spray. Servian Decl. ¶¶ 11-13, 18. Josh Servian, a disabled veteran with disabilities from his military service, was one of many protesters who could not keep up with the pace SPD demanded. *Id.* ¶¶ 2, 17. SPD's tactics at the vigil hurt many protesters who did not pose a threat. Wensnahan Decl. ¶¶ 26, 30, 37-38; Servian Decl. ¶ 13-14; Salisbury Decl. ¶ 3 (https://www.youtube.com/watch?v=zkQZhlmKQbI at 20:10-20, 22:45, 29:30-48).

In a letter to Plaintiffs, the City cited property damage at a ***separate*** Capitol Hill protest event as justification for the use of less-lethal weapons ***at the vigil***.[3] The City also claimed that protesters and their cars obstructed several blocks and access to the entryway of the Washington State Patrol building and a fire station.[4] But in fact ***SPD blocked the entryways to WSP and the fire station, not protesters***. Wensnahan Decl. ¶ 7; Servian Decl. ¶ 5. Nor had any protesters damaged any property at the vigil. Wensnahan Decl. ¶¶ 21-22. SPD's force was improper.

[3] *See* Perez Decl., Ex. B (referencing "property damage by some in a group near Volunteer Park, which resulted in an arrest and the discovery of Molotov cocktails").

[4] *Id.* & n.1.

**B. September 7, 2020, Labor Day SPOG March**

On Labor Day, a few hundred protesters marched peacefully to the Seattle Police Officers' Guild (SPOG) building in SODO. No property was damaged on the way to SPOG and protesters were peaceful as they approached the SPOG building, writing messages in chalk. Smith Decl. ¶ 5; Wensnahan Decl. ¶¶ 40-41; Martin Decl. ¶¶ 26-27; Scaturo Decl. ¶ 21; Schade Decl. ¶ 3; Servian Decl. ¶ 20; Robinson Decl. ¶¶ 8-9; Schade Decl. ¶ 3; Haughie Decl. ¶¶ 4, 9; Eby Decl. ¶ 4; Swanson Decl. ¶¶ 10, 18; Krein ¶¶ 16-18.

Nonetheless, SPD preemptively armed themselves and mobilized approximately ***100 police officers to meet the peaceful protest with force***. Wensnahan Decl. ¶ 42. Moments after protesters arrived outside SPOG, SPD piped loud country music from the SPOG building as dozens of SPD bike officers, covertly positioned in a nearby alley, rode into the protest, hitting protesters with their bikes. Wensnahan Decl. ¶ 43; Martin Decl. ¶¶ 30-31, 33; Scaturo Decl. ¶¶ 22-23; Schade Decl. ¶ 4; Servian Decl. ¶¶ 21, 22; Haughie Decl. ¶ 6; Eby Decl. ¶ 6; Swanson Decl. ¶¶ 5-7; Smith Decl. ¶¶ 6-8; Krein ¶¶ 19-20. As they rushed into the crowd, SPD tossed weapons containing OC gas ***indiscriminately into the crowd***. Martin Decl. ¶ 32; Karhu Decl. ¶¶ 11-12; Scaturo Decl. ¶ 25; Servian Decl. ¶ 23; Schade Decl. ¶ 5; Haughie Decl. ¶¶ 7-8; Eby Decl. ¶ 7; Swanson Decl. ¶¶ 8-9; Smith Decl. ¶ 9; Krein ¶ 20. "***We came with sidewalk chalk, and they gassed us immediately***." Martin Decl. ¶ 33.

Witness accounts could have been pulled directly from accounts of June protests: SPD immediately began ripping away protesters' umbrellas and shields, pepper spraying protesters, and launching explosives indiscriminately into the crowd. *See* Eby Decl. ¶ 8 (SPD "almost immediately began coating protesters' umbrellas and shields in pepper spray and then ***snatching away the umbrellas and shields and spraying the now-defenseless front line of protesters with***

***pepper spray***”); *see also* Wensnahan Decl. ¶¶ 43-45, 47-49; Schade Decl. ¶ 5; Robinson Decl. ¶ 6; Martin Decl. ¶¶ 35-37; Scaturo Decl. ¶ 23; Haughie Decl. ¶ 11; Swanson Decl. ¶¶ 8; Smith Decl. ¶ 9; Krein ¶ 20. This attack injured peaceful protesters and observers, including senior citizens wearing sandals and a five-year-old child who got OC spray in his eyes. Robinson Decl. ¶ 6; Wensnahan Decl. ¶ 45; Servian Decl. ¶ 24; Krein Decl. ¶ 22; Schade Decl. ¶ 7; Haughie Decl. ¶ 11; Eby Decl. ¶¶ 7-8; Smith Decl. ¶¶ 9, 11. SPD did not give a dispersal warning before this attack. Wensnahan Decl. ¶ 59; Robinson Decl. ¶¶ 6, 11; Scaturo Decl. ¶ 23; Servian Decl. ¶ 24; Schade Decl. ¶ 17; Smith Decl. ¶ 6; Krein ¶¶ 22-24.

SPD officers indiscriminately and excessively pepper sprayed protesters as they pushed them away from SPOG and funneled them onto Fourth Ave., and indiscriminately shot protesters with projectiles, blast balls, and pepper spray along Fourth Ave.[5] Plaintiff Alexandra Chen was one of the many protesters maced at the Labor Day SPOG march. While she was protesting peacefully and complying with orders by SPD officers to “move back,” an SPD officer maced her directly in the face. Chen Decl. ¶ 9. Many others were pepper sprayed in the face retreating, including declarants Madison Lynn Haughie, Melissa Schade, and Casey Martin.[6] SPD ripped the goggles off of at least one protester before macing them. Wensnahan Decl. ¶ 47.

Police herded and forcibly cleared protesters from the area, chasing them at biking speed on a more than 2-mile forced march, all while preventing protesters from dispersing.[7] SPD arrested protesters randomly, including those who fell behind or tried to leave SPD’s forced

[5] Wensnahan Decl. ¶¶ 46-49; Martin Decl. ¶¶ 39-42; Scaturo Decl. ¶¶ 23-28; Schade Decl. ¶¶ 5, 12-16, 18; Servian Decl. ¶¶ 25-30; Wommack Decl. ¶ 7; Eby Decl. ¶¶ 10-12; Swanson Decl. ¶¶ 11-14; Smith Decl. ¶ 13; Krein ¶ 24.

[6] Haughie Decl. ¶¶ 15-17; Schade Decl. ¶¶ 10, 12-14; Martin Decl. ¶¶ 35-37, 40.

[7] Wensnahan Decl. ¶¶ 52-53; Martin Decl. ¶¶ 44-45, 52, 54; Karhu Decl. ¶¶ 15-17, 20; Scaturo Decl. ¶¶ 29-30; Schade Decl. ¶ 20; Chen Decl. ¶ 15; Servian Decl. ¶¶ 25, 31-32; Haughie Decl. ¶¶ 18-26; Swanson Decl. ¶¶ 16-17; Smith Decl. ¶¶ 17-18, 22.

march route, and threatened many more people with force and arrest, including protesters pausing to recover from or seek medical attention for police-inflicted injuries.[8] SPD threw dozens of blast balls and flashbangs indiscriminately at the retreating protesters.[9] SPD fired foam-tipped projectiles after protesters tossed lightweight objects such as plastic water bottles or traffic cones in the general direction of police.[10] SPD swatted away one clearly marked journalist's phone to prevent him from recording SPD's use of force. Smith Decl. ¶¶ 19-21.

Many protesters struggled to breathe.[11] Madison Lynn Haughie lost consciousness after suffering an asthma attack when she was maced by SPD and then forced to march for miles. Haughie Decl. ¶¶ 24-31; Eby Decl. ¶¶ 14-23. A medic "palpitated her chest until she sputtered and sat back up" after losing all muscle control and consciousness. Eby, ¶ 19. One protester estimated that SPD injured between 50 and 100 protesters that day. Wensnahan Decl. ¶ 58.

**C. September 22, 2020**

On September 22—the day that Seattle's City Council voted to modestly cut SPD's budget—a small group of 20-30 protesters joined together in peaceful protest in Capitol Hill. Tinney Decl. ¶¶ 3-4; Mowery Decl. ¶¶ 5, 6. As they chanted and walked in the empty streets, SPD dispatched a large police team. *See* Tinney Decl. ¶ 4 (estimating there were 14 SPD vehicles policing the 20-30-person protest). SPD trapped the protest between two sets of police vehicles, occasionally revving the engine and accelerating menacingly towards protesters. Tinney Decl. ¶¶ 7, 8; Mowery Decl. ¶ 6. ***Every SPD vehicle had its lights on and sirens blaring***

---

[8] Smith Decl. ¶¶ 8-9, 14, 16, 18; Schade Decl. ¶ 19; Martin Decl. ¶¶ 42, 54; Servian Decl. ¶ 31; Haughie Decl. ¶¶ 18-26; Eby Decl. ¶¶ 11-13.

[9] Swanson Decl. ¶ 14; Schade Decl. ¶¶ 15, 16; Servian Decl. ¶¶ 26-28; Martin Decl. ¶¶ 47-48; Karhu Decl. ¶ 17; Smith Decl. ¶ 15.

[10] Perez Decl., Ex. D; Smith Decl. ¶ 16; Scaturo ¶ 28; Schade Decl. ¶ 16; Swanson Decl. ¶ 15.

[11] Schade Decl. ¶ 20; Haughie Decl. ¶¶ 24-27, 30-32; Eby Decl. ¶¶ 14-18; Martin Decl. ¶¶ 45.

at a deafening level, drowning out the chants of "Black lives matter" and "no justice, no peace." Tinney Decl. ¶¶ 4-5. This wasn't policing; this was retaliation.

As the protest crossed through the intersection of 12th Avenue and East Pine Street, an SPD officer threw a blast ball at a protester lying down in the street. Tinney Decl. ¶¶ 11, 13; Mowery Decl. ¶ 8. Witnesses reported that they saw no apparent justification for the use of any police force at all, let alone potentially lethal force. Tinney Decl. ¶ 14; Mowery Decl. ¶¶ 7-8. Immediately after the explosion, SPD gave a dispersal order for the first time, telling protesters "you've committed an unsafe act, you've put officers' lives in jeopardy. You've created a safety hazard." Tinney Decl. ¶ 15.

**D. September 23, 2020**

On Wednesday, September 23—the night after prosecutors in Louisville decided not to charge Breonna Taylor's killers with murder—a few hundred protesters gathered in Capitol Hill. Frazier Decl. ¶ 5; Servian Decl. ¶ 34. A small number of protesters reportedly damaged property. Frazier Decl. ¶ 10; Servian Decl. ¶ 35; Smith Decl. ¶¶ 26-27, 30, 37. Throughout the night, SPD incessantly deployed flashbang grenades, detonated canisters of gas that blanketed the streets in thick clouds of chemicals, blinded and choked dozens of protesters with excessive amounts of pepper spray leaving some vomiting and unable to breathe, and fired rubber bullets or foam-tipped projectiles at the crowd of protesters, while making seemingly random arrests.[12] For one period of about 15 minutes, ***SPD lobbed a flashbang grenade every 1-2 seconds***. Frazier ¶ 18; Servian ¶ 49. SPD's near-constant use of less-lethal weapons against ***retreating*** protesters lasted almost 90 minutes. Schade Decl. ¶ 34.

[12] Frazier Decl. ¶¶ 4, 7, 12-16, 18-19, 21-22, 24, 26; Schade Decl. ¶¶ 23, 26, 27, 31, 32, 34-37, 39, 40, 42-44, 46-47; Servian Decl. ¶¶ 41, 43-45, 47, 49; Haughie ¶¶ 34-35; Swanson Decl. ¶¶ 25-30, 33, 36; Smith Decl. ¶¶ 27-29, 35, 38, 40; Krein ¶¶ 28-29, 31.

SPD injured numerous peaceful protesters that night.[13] Ames Frazier and a nearby protester were hit in the head with the explosives, sending the other disoriented protester to the hospital with a bloody head injury. Frazier Decl. ¶¶ 18-19, 21-23.[14] Another protester in a Kevlar vest sustained shrapnel wounds on his arms. Haughie Decl. ¶ 36. As Melissa Schade and her friend retreated, she was hit with two flashbangs on her backpack and shoulder and her friend was hit by another. Schade Decl. ¶ 44. Some tactics seemed designed to injure. SPD swung bikes over their heads, smashing them down on protesters, instead of pushing at waist height. Schade ¶ 25. SPD pulled one protester's goggles off before macing him in the face, Schade ¶ 40, and rolled a bike over another's neck. Frazier Decl. ¶ 17; Schade Decl. ¶ 36.[15] As one reporter said: "an officer attempted to seize the umbrella of another individual near me … the protester holding the umbrella fell to the ground. An officer immediately used some kind of rifle to ***fire three rounds of rubber bullets into the downed protester at close range***." Smith Decl. ¶ 38. "That night," a protester recalled, "I experienced ***more intense and aggressive violence by SPD than I had at any other protest before***." Schade Decl. ¶ 23.

Many protesters were desperate to leave and go home, but SPD would not allow them to split off from the group, even to seek treatment for their injuries.[16] SPD used less-lethal weapons to chase protesters into Cal Anderson park, soaking one protester with so much mace that he staggered into the park and began vomiting. Frazier Decl. ¶ 29. For the first time since the protests began this summer, SPD surrounded the park and pursued protesters into the park, randomly grabbing and arresting people. Schade Decl. ¶¶ 49-50; Frazier Decl. ¶ 30.

---

[13] Frazier Decl. ¶¶ 12-13, 21-23, 32; Schade ¶¶ 25, 32, 36, 37, 40, 43; Haughie ¶¶ 36-41; Swanson ¶¶ 29-32, 34-36, 39; Krein ¶ 29; see also Twitter, @spekulation, https://twitter.com/spekulation/status/1309667714143670272.

[14] *See also* https://twitter.com/JonathanLit/status/1309079252013375489.

[15] *See also* https://twitter.com/spekulation/status/1309951862049652736.

[16] Frazier Decl. ¶ 25-28; Schade Decl. ¶ 43; Haughie Decl. ¶ 42; Krein ¶¶ 31-32.

## III. ARGUMENT

### A. Legal Standard for Contempt

The Court should hold the City in contempt for violating the Court's August 10 Clarified PI order. A party may be held in civil contempt where it "failed to take all reasonable steps within the party's power to comply with a specific and definite court order." *Fed. Trade Comm'n v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1107 (C.D. Cal. 2001) (alterations omitted) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). Willfulness is not required. *Id.* ("[T]here is no good faith exception to the requirement of obedience to a court order."). A party who without just cause fails to comply with a court order may be subject to "such other sanctions as the court may deem appropriate." LCR 11(c). "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp. v Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). A party seeking contempt may also be entitled to attorneys' fees and costs incurred in bringing the motion. *Perry v. O'Donnell*, 759 F.2d 702 (9th Cir. 1985).

### B. The City's Use of Less-Lethal Weapons Against Peaceful Protesters Violates the Clarified PI.

SPD's unnecessary and unreasonable uses of less lethal weapons cannot be justified under any exception to this Court's orders. The City is openly and willfully violating this Court's orders, and should be held in contempt.

#### 1. Indiscriminate Use of Explosives, Projectiles, and Canisters of Gas Against Protesters

The Court's orders ban the use of chemical irritants and projectiles against peaceful protesters unless it is necessary, reasonable, proportional, and targeted to either protect against

"specific imminent threat of physical harm to themselves or identifiable others" or to respond to "specific acts of violence or destruction of property." ECF 42 ¶ 1(1). Less-lethal weapons may not be "deployed indiscriminately into a crowd" and, "to the extent reasonably possible, they should be targeted at the specific imminent threat." *Id.* Blast balls, if deployed, must be "directed to an open space near the target individual(s) rather than at individuals." ECF 110 ¶ 6(5).

On all four dates, police launched explosives or fired projectiles at protesters in a manner that was both indiscriminate—directed into the center of a large crowd—and not necessary or targeted to prevent any imminent safety threat. SPD's use of explosives was also unreasonable, sometimes launched at protesters at very close range or high into the air, raining down shrapnel, posing an obvious and serious risk of injury, and injuring many. To the extent SPD used less-lethal weapons in response to protesters tossing non-injurious objects in the general direction of the police, it was also disproportionate. The Courts Orders do not permit SPD to inflict violence upon protesters *en masse* because of the conduct of a small number of individual protesters.

**2. Indiscriminate and Excessive Handheld Pepper Spray**

The Court's orders bar the use of handheld "chemical irritants" on the same basis as projectiles described above. *See* ECF 42 ¶ 1(1); ECF 110 ¶ 6(1). Deployment of handheld pepper spray or mace is only justified where necessary, reasonable, proportional, and targeted to project against specific and imminent threats. *See id.* Pepper spray may not be deployed indiscriminately at a group and must, "to the extent reasonably possible" be targeted at the specific imminent threat justifying its deployment.

On all four dates, SPD officers used handheld pepper spray or mace in a manner violative of the Court's orders. SPD's use of pepper spray was often indiscriminate. At other times, SPD drenched the "targets" of the spray with far more chemicals than was necessary to achieve any

legitimate end, and in a manner that affected far more people than the purported "targets," affecting hundreds of peaceful protesters—some quite seriously.

### 3. Use of Less-Lethal Weapons to Re-Route or Move Protesters

The Clarified PI bars "[u]sing chemical irritants or projectiles of any kind to re-route a protest, unless such re-routing is necessary to prevent specific imminent threat of physical harm to themselves or identifiable others, or to respond to specific acts of violence or destruction of property." ECF 110 ¶ 6(1)(a). Yet on August 26, September 7, and September 23, SPD used these weapons or the threat of these weapons to cut off protester access to side streets onto which protesters wished to disperse, forcing them to stay at the protest longer than they wanted to, and effectively preventing them from complying with the dispersal order; to force a protest to turn; or to force protesters to move faster. On none of these occasions were these actions necessary to prevent any imminent, specific threat.

### 4. Use of Less-Lethal Weapons Without Warning or Reasonable Opportunity to Disperse and Interference with Attempts to Disperse

The Court's order bars using less-lethal weapons "without, when feasible, first issuing a warning that is reasonably calculated to alert attendees in the area where the weapons are to be deployed and allowing them reasonable time, space, and opportunity under the circumstances to leave the area." ECF 110 ¶ 6(1)(b). Yet on all four dates, SPD officers deployed less-lethal weapons without providing protesters a warning or reasonable opportunity to disperse. Indeed, on August 26, September 7, and September 23, SPD actively prevented protesters from leaving the area by chasing protesters attempting to disperse or cutting off access to side streets.

## C. The City Has Failed to Take All Reasonable Steps to Comply with the Court's Orders

In letters to counsel, the City has placed all blame for these incidents on the protesters exercising their First Amendment rights rather than acknowledge (much less correct) any violation of the Court's Orders. Perez Decl., Ex. B, D.[17] The City appears to condone SPD's deployment of less-lethal weapons against entire crowds of people as a response to isolated acts of destruction or assault by individual protesters and as a means of preventing protesters from dispersing in order to thwart them from "having the time to stage and plan" property destruction. *See id.*; Brooks Decl., ECF 83 ¶¶ 4, 21.[18]

These excuses fall flat. The City's position has invited SPD's repeated and escalating violations of the Order, instead of showing any reasonable effort to comply. In the absence of any evidence that the City has attempted to change SPD behavior, the Court must intervene to curb SPD's abuses of less-lethal weapons.

## IV. CONCLUSION

The troubling patterns involving SPD's use of potentially lethal weapons over the past few months reflect an effort to shut down Black Lives Matter protests rather than a commitment by the City to protect protesters' First Amendment rights and use force only to the extent necessary to protect public safety. For the foregoing reasons, Plaintiffs respectfully request that the Court find that the SPD conduct highlighted in this motion violated the Court's PI Order and Clarified PI Order. Plaintiffs further request that the Court direct the City to take all actions necessary to bring it into compliance with the Orders, and to report to the Court what actions have been taken by a date certain.

---

[17] On September 24, Plaintiffs wrote to the City to ask for a justification of the less-lethal weapons deployed against protesters on September 22 and September 23. Perez Decl., Ex. E. The City has not yet responded to Plaintiffs' letter regarding the September 22 and 23 incidents.

[18] *See also* Police weapons control crowds, but may heighten chances of violence at protests, Seattle Times (Sep. 24, 2020), https://www.seattletimes.com/seattle-news/crowd-control-weapons-at-seattle-protests-have-caused-injuries-heightened-tensions-with-police/ (quoting ECF 83).

DATED: September 30, 2020

By: s/ David A. Perez
By: s/ Carolyn S. Gilbert
By: s/ Rachel Haney
By: s/ Nitika Arora
By: s/ Heath Hyatt
By: s/ Paige L. Whidbee
David A. Perez #43959
Carolyn S. Gilbert #51285
Rachel Haney #52637
Nitika Arora #54084
Heath Hyatt #54141
Paige L. Whidbee # 55072

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: DPerez@perkinscoie.com
CarolynGilbert@perkinscoie.com
RHaney@perkinscoie.com
NArora@perkinscoie.com
HHyatt@perkinscoie.com
PWhidbee@perkinscoie.com

By: s/ Molly Tack-Hooper
By: s/ Nancy L. Talner
By: s/ Lisa Nowlin
By: s/ Breanne Schuster
By: s/ John Midgley
Molly Tack-Hooper, #56356
Nancy L. Talner #11196
Lisa Nowlin #51512
Breanne Schuster #49993
John Midgley #6511

**American Civil Liberties Union of Washington Foundation**
P.O. Box 2728
Seattle, WA 98111
Telephone: (206) 624-2184
Email: mtackhooper@aclu-wa.org
talner@aclu-wa.org
lnowlin@aclu-wa.org
bschuster@aclu-wa.org
jmidgley@aclu-wa.org

By: s/ Robert S. Chang
By: s/ Melissa Lee
By: s/ Jessica Levin

Robert S. Chang, #44083
Melissa Lee #38808
Jessica Levin #40837

**Fred T. Korematsu Center for Law and Equality**
Ronald A. Peterson Law Clinic
Seattle University School of Law
1112 E. Columbia Street
Seattle, WA 98122
Telephone: 206.398.4025
Fax: 206.398.4077
Email: changro@seattleu.edu

*Attorneys for Plaintiffs Black Lives Matter Seattle-King County, Abie Ekenezar, Sharon Sakamoto, Muraco Kyashna-tochá, Alexander Woldeab, Nathalie Graham, and Alexandra Chen*