THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BLACK LIVES MATTER SEATTLE-KING COUNTY, ABIE EKENEZAR, SHARON SAKAMOTO, MURACO KYASHNA-TOCHA, ALEXANDER WOLDEAB, NATHALIE GRAHAM, AND ALEXANDRA CHEN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE,<br><br>Defendant. | No. 2:20-cv-00887-RAJ<br><br>DECLARATION OF DAVID A. PEREZ |

I, David A. Perez, declare and state as follows:

1. The information contained in this declaration is true and correct to the best of my knowledge, and I am of majority age and competent to testify about the matters set forth herein.

2. I am a partner at Perkins Coie LLP, and I serve as counsel for Plaintiffs Black Lives Matter Seattle King-County, Abie Ekenezar, Sharon Sakamoto, Muraco Kyashna-tochá, Alexander Woldeab, and Alexandra Chen in the above-entitled action. I submit this declaration in support of Plaintiff's Motion for Order to Show Cause Why City of Seattle Should Not be Held in Contempt for Violating the Preliminary Injunction.

PEREZ DECL. ISO MOTION FOR CONTEMPT (No. 2:20-cv-00887-RAJ) –1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

149700049.1

3. On September 29, 2020, my co-counsel Molly Tack-Hooper with the American Civil Liberties Union of Washington Foundation and Professor Robert Chang with the Fred T. Korematsu Center for Law and Equality had a telephone conference with counsel for the City and informed them that Plaintiffs would be filing a motion for an order to show cause, in light of SPD's repeated violations of the preliminary injunction during protests that occurred on August 26, September 7, September 22, and September 23, 2020.

4. Attached hereto as **Exhibit A** is a true and correct copy of an August 28, 2020 letter from Plaintiffs' counsel to counsel for the City regarding events on August 26, 2020.

5. Attached hereto as **Exhibit B** is a true and correct copy of a September 4, 2020 response letter from the City's counsel to counsel for Plaintiffs regarding events on August 26, 2020.

6. Attached hereto as **Exhibit C** is a true and correct copy of a September 9, 2020 letter from Plaintiffs' counsel to counsel for the City regarding events on September 7, 2020.

7. Attached hereto as **Exhibit D** is a true and correct copy of a September 11, 2020 response letter from the City's counsel to counsel for Plaintiffs regarding events on September 7, 2020.

8. Attached hereto as **Exhibit E** is a true and correct copy of a September 24, 2020 letter from Plaintiffs' counsel to counsel for the City regarding events on September 22 and 23, 2020. The City confirmed via e-mail that it would respond to this letter the week of September 28, 2020 (this week).

PEREZ DECL. ISO MOTION FOR
CONTEMPT (No. 2:20-cv-00887-RAJ) –2

149700049.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Executed this 29th day of September 2020 at Seattle, Washington.

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

By:___*s/ David Perez*_____

David A. Perez

PEREZ DECL. ISO MOTION FOR
CONTEMPT (No. 2:20-cv-00887-RAJ) –3

149700049.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# Exhibit A

# PERKINS COIe

1201 Third Avenue  
Suite 4900  
Seattle, WA 98101-3099

T. +1.206.359.8000  
F. +1.206.359.9000  
PerkinsCoie.com

August 28, 2020

David A. Perez  
DPerez@perkinscoie.com  
D. +1.206.359.6767  
F. +1.206.359.7767

**VIA EMAIL**

Ghazal Sharifi  
Carolyn Boies  
Seattle City Attorney's Office  
701 5th Ave, #2050  
Seattle, WA 98104

Re: Use of Force on August 26  
*Black Lives Matter, et al. v. City of Seattle*, Cause No. 2:20-cv-00887

Dear Ms. Sharifi and Ms. Boies:

We are disturbed by recent reports that the Seattle Police Department ("SPD") used excessive force against peaceful protesters and attendees of the vigil for Summer Taylor near the Washington State Patrol office in Eastlake on August 26, 2020.

Video evidence suggests that SPD's tactics during this protest event violate the preliminary injunction in this case. Police can be seen using chemical irritants as a dispersal method, repeatedly hitting members of the media with chemical irritants, and charging at peaceful protesters without giving the protesters enough time to move.[1] It appears that SPD deployed so much gas that clouds of it filled the street.[2] These tactics are troublingly similar to those that prompted our prior contempt proceedings. This was a peaceful protest.

We understand the need to protect the safety of drivers and pedestrians. However, the Court's Orders prohibit the use of less-lethal weapons for ordinary crowd control purposes, and allow only "necessary, reasonable, proportional, and targeted" deployment of less-lethal weapons against peaceful protesters to prevent specific, imminent harm.

By Tuesday, September 1, at 12 p.m., please provide information on why the City views its response as consistent with the Court's orders, including an explanation for why such force was used, how many less-lethal weapons were used, who authorized the use of less-lethal weapons, what was communicated to officers about the circumstances in which they could be used, and any other information relevant to the SPD's decision to use this force.

---

[1] *See, e.g.*, https://www.facebook.com/WWConverge/videos/355310738820842/.  
[2] *See, e.g.*, https://twitter.com/TheBageler7/status/1298869784163975169

We would like to schedule a call with you shortly after receiving your response to discuss what happened on August 26.

Very truly yours,

Molly Tack-Hooper

Professor Robert Chang

Carolyn Gilbert

David A. Perez

# Exhibit B


# Seattle City Attorney
Peter S. Holmes

Ghazal Sharifi
Assistant City Attorney
(206) 684-8217
Ghazal.sharifi@seattle.gov

September 4, 2020

David A. Perez
Carolyn Gilbert
Perkins Coie
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

CC: Professor Robert Chang
Molly Tack-Hooper

Re: *Black Lives Matter, et al. v City of Seattle*, Cause No. 2:20-cv-00887

Dear Counsel:

Below please find the response to your letter dated August 28, 2020 regarding your inquiry about events that occurred on the evening of August 26th. Respectfully, we disagree that there is evidence of any deployment of "chemical irritants" on the part of Seattle Police officers on August 26, 2020 that was in any way inconsistent with the Orders entered on June 17, 2020 and on August 10, 2020. We provide the below based on our review of preliminary information from reports, conversations with incident command, and review of your videos.

The protest was not peaceful throughout the evening, (including attendee deployment of munitions). Nonetheless, Seattle Police did not deploy any CS gas. Based on the information we have, there were limited targeted deployments of OC spray and the deployment of OC was targeted at specific individuals who were engaged in assaultive behavior, resisting arrest, or engaged in attempts to de-arrest others subject to arrest.

The events on the night of August 26, 2020 began with property damage by some in a group near Volunteer Park, which resulted in an arrest and the discovery of Molotov cocktails (one in a suspect's backpack, one on the ground nearby.) Officers subsequently received information that protesters were using themselves and stopped cars to block access to streets over several blocks and to two public safety stations (belonging to Washington State Patrol and the Seattle Fire Department), creating a life safety

emergency.[1] Seattle Police officers issued several warnings to the drivers of the vehicles to move their vehicles and unblock the stations, to allow for the opening of the intersections. The warnings included both direct discussions with drivers and PA announcements to move the cars. When these requests were ignored, SPD called in additional resources, including tow trucks, to remove the vehicles.

When officers tried to contact the remaining drivers, assaults on the officers began, requiring at least one additional arrest prior to a dispersal order. The protestors shined lasers and strobes in the officers' eyes, impacting their safety and creating a direct risk of officer injury. Members of the crowd moved toward the officers and began striking them with umbrellas. After these events, Lieutenant John Brooks gave a dispersal order. This group of protestors was acting in concert, resisting lawful orders, and creating a substantial risk of injury. After the dispersal order, individuals in the crowd continued with assaults, resistance tactics and attempts to de-arrest, and someone in the crowd threw a large pyrotechnic improvised explosive device (IED) at the officers. Either that device or others also deployed by attendees released a cloud of smoke upon detonation. This may be the "gas clouds" you reference in your correspondence. Officers moved the crowd several times during the evening to avoid confrontations whenever possible and to reduce the need to use force. Your correspondence addresses individuals being "charged at" without time to disperse – while we disagree with your assessment of the circumstances, this is also not something that is contemplated by the parameters of our case or the Court's Order

In summary, we do not have any information to suggest that there were deployments of "chemical irritants or projectiles of any kind against persons peacefully engaging in protests or demonstrations." (Order, Dkt. 42, p. 2, par. 1.) Based on our information, the limited and targeted use of OC was also consistent with the clarifications set forth in paragraphs 1.a-c of the Order at Dkt. 110. The information we have to date suggests that Mr. Salisbury was not targeted, and his exposure to OC occurred by virtue of his close proximity to those individuals who were targeted consistent with the parameters of the Orders.

        Sincerely,

        PETER S. HOLMES
        Seattle City Attorney

By: *s/ Ghazal Sharifi*
   Ghazal Sharifi
   Assistant City Attorney

---

[1] Protestors around Roanoke and Broadway had stopped several of their cars in the street, causing a substantial backup stopping all vehicle movement and creating serious safety hazards. Metro buses became stuck in the intersections, extending the obstruction across several blocks. The protestors then exited on foot to block the entryway of a Washington State Patrol station and Seattle Fire Station 22. An estimated 10-15 cars blocked traffic with scores of people on foot blocking the stations. Emergency vehicles could not enter or exit the facilities, making it impossible to timely provide services to the community. It became impossible for other emergency vehicles to move through the area.

# Exhibit C

PerkinsCoie

1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

T. +1.206.359.8000
F. +1.206.359.9000
PerkinsCoie.com

September 9, 2020

David A. Perez
DPerez@perkinscoie.com
D. +1.206.359.6767
F. +1.206.359.7767

**VIA EMAIL**

Ghazal Sharifi
Carolyn Boies
Seattle City Attorney's Office
701 5th Ave, #2050
Seattle, WA 98104

**Re:** Use of Force September 7
*Black Lives Matter, et al. v. City of Seattle*, Cause No. 2:20-cv-00887

Dear Ms. Sharifi and Ms. Boies:

We write again with concern over reports that the Seattle Police Department ("SPD") violated the Court's Order. This time, we write concerning protests that occurred downtown near the Seattle Police Officer Guild's ("SPOG") on September 7.

According to witness reports and videos, SPD deployed blast balls and OC spray at peaceful protesters and journalists without provocation and while protesters were attempting to disperse. Such actions clearly violate the Court's preliminary injunction.

Though we call attention to SPD's apparent disregard for the letter of the law, we also are troubled by SPD's apparent disregard for the spirit of the law. SPD's tactics appear to be intended to intimidate people exercising their First Amendment rights and to create conditions increasing the likelihood of the use of less-lethal weapons and other methods that harm peaceful protesters and journalists. Though SPD sporadically issues dispersal orders, even when it does, it routinely denies peaceful protesters the time and opportunity to disperse before utilizing force or arresting them. We are concerned by reports that, on numerous occasions, SPD officers have charged at peaceful protesters who have not been ordered to disperse or at retreating protesters attempting to disperse.[1] Officers can be seen needlessly antagonizing protesters by ripping away umbrellas and other personal items and knocking away phones trying to record the events (including phones being held by clearly identifiable journalists) out of apparent retaliation.[2]

---

[1] https://twitter.com/richsssmith/status/1303162681663262727;
https://twitter.com/richsssmith/status/1303155617209577472.

[2] https://twitter.com/richsssmith/status/1303183854669160453.
https://twitter.com/richsssmith/status/1303163450248450049.

149472887.2
Perkins Coie LLP

Instead of using necessary, reasonable, proportional, and targeted force, as the Court's Order requires, SPD has done the opposite.

We are deeply concerned about SPD's disregard for the Court's orders and the City's apparent lack of concern about SPD's tactics.

By Friday, September 11 at 12 p.m., please provide information on why the City views its response as consistent with the Court's orders, including an accounting of how many less-lethal weapons were used and an explanation for why such force was used, identifying who authorized the use of less-lethal weapons, what was communicated to officers about the circumstances in which they could be used, and any other information relevant to the SPD's decision to use this force.

We note that the current order would require a response within 24 hours to a contempt motion. We are considering asking the Court to reopen contempt proceedings against the City. In lieu of doing that, for now, we are asking that you provide us with this information as soon as possible.

Very truly yours,

Molly Tack-Hooper

Professor Robert Chang

Carolyn Gilbert

David A. Perez

# Exhibit D



CHRISTIE : LAW GROUP PLLC

September 11, 2020

**VIA ELECTRONIC MAIL ONLY**

Molly Tack-Hooper
Robert Chang
Carolyn Gilbert
David Perez

    Re:    *Black Lives Matter, et al. v. City of Seattle*
             Cause No. 2:20-cv-00887

Dear Counsel:

      This responds to your letter dated September 9, 2020 inquiring about events that occurred in the early evening of September 7, 2020. Based on the information we have, Seattle Police Officers did not, as you allege, deploy blast balls and OC spray "at peaceful protesters and journalists without provocation while protesters were attempting to disperse." Based on the preliminary information we have gathered, on September 7, in response to crowd violence, Seattle Police Officers deployed a limited number of less lethal tools. Deployments were consistent with the Court's Orders. Over the course of the evening, 9 officers were injured, and 23 individuals were arrested.

      On September 7, officers were briefed that the use of less lethal tools must follow the law, SPD policy, their training, and be consistent with the Court's Orders. All officers were advised of the preliminary injunction limitations and reminded that officers cannot use Less Lethal Munitions against persons peacefully engaging in protests or demonstrations. Also consistent with the Orders, Officers were advised that they can take necessary, reasonable, proportional, and targeted action to protect against a specific imminent threat of physical harm to themselves or identifiable others or to respond to specific acts of violence or destruction of property.

      That evening, without using crowd control devices and to prevent imminent harm to individuals, Seattle Police Officers deployed bike officers as part of an effort to make a targeted arrest of a suspect. The arrest prompted certain individuals in the crowd to become violent, including hitting the arresting sergeant with a metal pipe. Officer attempts to make legitimate



arrests, including of a suspect identified in an attempted arson days earlier, were met with members of the crowd obstructing officers and concealing suspects. Officers were assaulted with rocks, bottles, explosives, bear spray, Molotov cocktails; they were jabbed with umbrellas and struck with improvised shields. Members of the crowd also attempted to pull away officers' bicycles.[1] Amongst other items, officers recovered a package of Molotov cocktails left behind by a member of the crowd. Seattle Police Officers gave multiple dispersal orders, along with repeated commands to the crowd to move back. Moving the crowd was an effective tactic that allowed for use of crowd control tools to be kept to a minimum.

Based on preliminary information, there were a total of 20 bursts of OC spray that were directed at specific suspects who were either actively assaulting officers by throwing projectiles, making hands-on contact with officers, or actively engaging in de-arrest tactics. Seattle Police Officers deployed 4 OC and 2 inert blast balls in the area of suspects actively engaging in de-arrest tactics and actively assaulting officers who were attempting to make arrests. Officers targeted 1 inert and 2 OC blast balls at suspects in the crowd who had thrown Molotov cocktails at officers, which posed an imminent threat of physical harm to them. Officers targeted 2 inert and 2 OC blast ball deployments at suspects actively throwing other types of projectiles, including rocks and mortars, at officers. There were 5 blue nose rounds deployed by a single officer directed at a single suspect who was throwing traffic cones at bike officers, striking one. The suspect was hit in the thigh and buttock region, and she dispersed into the crowd, avoiding arrest. Each of these deployments of CCWs were targeted at suspects who were engaged in active assaults of officers and posed imminent threats of physical harm. None of these deployments were targeted at members of the media, legal observers, or medics.

To be clear, Seattle Police Officers never deployed any CS gas on September 7. All of the deployments of Crowd Control Munitions were targeted and in direct response to violent acts from members of the crowd. In summary, we believe all uses of less lethal munitions on September 7, 2020 were entirely consistent with the Court's Order at Dkt. 42 and the clarifying Order at Dkt. 110.

You express concerns about whether the officers acted in a manner that was consistent with the "spirit" of the Orders. It is unclear exactly what is intended by this statement, but to the extent it concerns SPD conduct or tactics that are not covered by the parameters of Judge Jones' Orders, we remind you of the City's accountability system. The Office of Police Accountability is reviewing complaints arising out of demonstration events, including some alluded to in your letter. To the extent you have specific concerns or wish to make a specific OPA complaint, we direct you to the Office of Police Accountability's website, where a complaint can be made and investigated: https://www.seattle.gov/opa. Additionally, the City has the Office of Inspector General that is conducting a "sentinel event review" of the demonstration response from this summer, including an assessment of police tactics during demonstration events. More information

---

[1] *See* https://spdblotter.seattle.gov/2020/09/07/22-individuals-arrested-during-labor-day-demonstration/, which includes Body Worn Video footage of an assault on an officer and a Molotov cocktail thrown at officers.



CHRISTIE : LAW GROUP ᴾᴸᴸᶜ

about the OIG and its processes is available here, https://www.seattle.gov/oig. Seattle also has the Community Police Commission, an organization represented by Mr. Perez himself. As you know, the CPC offers the community arm to address accountability concerns with SPD, including concerns with demonstration tactics and management. The CPC's website is available here: https://www.seattle.gov/community-police-commission. Finally, as you are well aware, the City continues to be under consent decree with a newly appointed monitor and deputy monitor. The monitoring team will examine crowd management at recent demonstration events. In short, these structures and systems are in better position to assess and address the concerns you raise about the "spirit" of the Orders than through the parameters of this litigation.

Very truly yours,

/s/ Robert L. Christie
/s/ Thomas P. Miller
/s/ Ann E. Trivett
/s/ Megan M. Coluccio

Robert L. Christie
Thomas P. Miller
Ann E. Trivett
Megan M. Coluccio

# Exhibit E

![Perkins Coie]

1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

T. +1.206.359.8000
F. +1.206.359.9000
PerkinsCoie.com

September 24, 2020

David A. Perez
DPerez@perkinscoie.com
D. +1.206.359.6767
F. +1.206.359.7767

**VIA EMAIL**

Ghazal Sharifi
Carolyn Boies
Seattle City Attorney's Office
701 5th Ave, #2050
Seattle, WA 98104

Dear Ms. Sharifi and Ms. Boies:

We write regarding yet two more alarming protest events in which we received reports that the Seattle Police Department ("SPD") used excessive force against peaceful protesters.

The first was September 22. We received reports that an officer threw a blast ball at a protester laying on the ground.[1] There is no indication (as corroborated by witness reports) that the protester's, or surrounding protesters', conduct necessitated the use of force.

The second was last night, September 23. As you know, protesters across the country were reinvigorated in exercising their First Amendment rights after a grand jury decided to not indict police officers in Louisville, Kentucky, for the killing of Breonna Taylor. We received reports that SPD used pepper spray, cannisters of gas, blast balls, flash bangs, and projectiles (including from a gun permitting SPD to rapidly deploy rubber bullets and OC balls). We received reports of at least two protesters and one medic hit with flashbangs. A video documents another protester tripping after being pushed by police. While he was on the ground, an officer shot him several times, at close range, with what appear to be rubber bullets.[2] Other videos document an injured man laying in the street. The police did not help the injured man and in fact prevented civilians from helping the injured man.[3] Five minutes later, an officer ran over the injured man's head with his bike.[4]

These and other events about which we have already notified you demonstrate a systematic disregard of the Court's Order. Contrary to your characterization of our reporting of events in our letters, we are aware of the full events taking place at these protests, including incidents of violence and property damage. However, we are deeply troubled by the City's responses to our

---

[1] https://twitter.com/MarcusKulik/status/1308671251594977280 and
https://twitter.com/spekulation/status/1308859475428806657
[2] https://twitter.com/richsssmith/status/1309041882929008642
[3] https://twitter.com/WarlockBranis/status/1309047431707983872?s=20
[4] https://www.facebook.com/groups/329197415030572/permalink/348698509747129/

letters. The City has failed to acknowledge, even to the smallest degree, that its actions constitute excessive force. The City's responses to prior events have repeatedly placed the blame at the individuals attempting to exercise their First Amendment rights, without placing any responsibility on the shoulders of the officers charged with protecting these constitutional rights. Video footage and reports from protesters clearly refute the City's claims of widespread violence and destruction. The City has effectively condoned SPD's violation of the Court's Order by failing to critically review SPD's response to peaceful protesters. By all indications, the City intends to allow SPD to continue to violate the Order. In the absence of any indication that the City plans to address some of these concerns, we will be left with no other option but to bring our concerns back to the Court's attention.

Please provide information on why the City views its response to protests on September 22 and 23 as consistent with the Court's orders and what steps the City intends to take to correct SPD's actions moving forward.

Very truly yours,

Molly Tack-Hooper

Professor Robert Chang

Carolyn Gilbert

David A. Perez