THE HONORABLE RICHARD A. JONES

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| BLACK LIVES MATTER SEATTLE-KING COUNTY, ABIE EKENEZAR, SHARON SAKAMOTO, MURACO KYASHNA-TOCHA, ALEXANDER WOLDEAB, NATHALIE GRAHAM, and ALEXANDRA CHEN,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE,<br><br>        Defendant. | NO. 2:20-cv-00887<br><br>THE CITY OF SEATTLE'S RESPONSE TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY THE CITY OF SEATTLE SHOULD NOT BE HELD IN CONTEMPT<br><br>NOTE ON MOTION CALENDAR: October 5, 2020<br><br>ORAL ARGUMENT REQUESTED |

/
/
/
/
/

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE (2:20-cv-00887) - 1

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

## I. INTRODUCTION AND RELIEF REQUESTED

The City of Seattle ("The City") is not in contempt and has substantially complied with this Court's Orders. (Dkts.. 42 & 110). For nearly four months, protests have occurred throughout the nation in support of Black lives. Almost daily, these protests occur across the City, and most have been peaceful and without any police involvement. Problems have arisen, however, at certain demonstrations with individuals, acting independently or in concert with others, assaulting officers, throwing dangerous projectiles, using explosive devices against officers and/or property, engaging in de-arrest tactics, or refusing to obey lawful orders to disperse such that their refusals hinders lawful police response to criminal activity or lawful police attempts to protect themselves and others from physical harm.

Plaintiffs' Motion for Contempt addresses four demonstrations that occurred on August 26, September 7, September 22, and September 23, 2020. (Dkt. 114). The declarations supporting the motion contain important snapshots of a complex series of events, but they do not present a complete story. These accounts lack context and a circumstantial understanding of what information the police commanders and officers had about the non-peaceful individuals they would be encountering, what was transpiring in the broader field of confrontation beyond their immediate field of vision, and why the trained police professionals employed specific force at a specific time against specific individuals or threats. The reality is that not all participants in these protests were peaceful, with many armed and armored individuals intent on destroying property, assaulting officers, or serving as obstruction or cover for others engaged in such conduct.

With time to collect and compile the necessary evidence, the City is prepared to address in

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE (2:20-cv-00887) - 2

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

detail the uses of force deployed on these four dates. Only then, with a complete set of evidence, would the Court be in a position to fairly determine whether any particular less lethal deployment or set of deployments violated the terms of the Court's Orders, and whether any violation, proven by clear and convincing evidence, justifies a finding that the City should be held in contempt. Entering the order requested by Plaintiffs, which is devoid of reference to the clear and convincing burden of proof, poses serious due process violations, as the City does not have a meaningful opportunity to be heard on the important, challenging, and nuanced issues raised with respect to four separate events.

The City has consistently and continuously instructed the members of its police department on the rules of engagement for the use of chemical irritants and projectiles (crowd control weapons or "CCWs") and the parameters of this Court's Orders. (*See* Brooks and Allen Decls.) The City also employs a robust system for review of alleged policy violations and uses of force with the level of depth and specificity necessary to meaningfully assess police uses of force in demonstration contexts and determine compliance, discipline, and/or needed policy changes. (*See* Sharifi Decl.) This review process cannot meaningfully take place in a rushed timeframe, with limited review of video snapshots posted online, and with isolated witness accounts. Plaintiffs essentially request the Court to broaden the scope of its prior order and implement new relief that shifts oversight of the City's crowd management training and policies away from those institutions and processes created and strengthened through the City's work with the DOJ as part of the Consent Decree, and instead create a mechanism for immediate review by these plaintiffs and this Court.

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE (2:20-cv-00887) - 3

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  The City seeks direction from the Court on what standard it will be applying to determine whether the City is in contempt of its orders, given the undisputed burden of proof that a violation must be established clearly and convincingly. The City requests that the Court clarify if it contemplates a single incident, multiple incidents, single event date, or multiple event dates as potentially rising to the level justifying a contempt finding. It will take considerable time to collect the necessary documentation to identify and assess each use of force portrayed in the videos presented by Plaintiffs. The City requests that the Court identify whether there is a preferred way to narrow the response to specific uses of force or specific incidents that raise the Court's concern.

The City also seeks guidance on the types of sanctions this Court may contemplate with such a contempt request. Twice now, Plaintiffs requested sweeping changes to the preliminary injunction, SPD policies, training, practices, and resources. In doing so, Plaintiffs seek to bypass the threshold injunctive requirements packaged in the form of a contempt motion. If this Court is considering changes to training, policies, or procedures, this will require the City to respond both to the substance of the considered remedies and to determine and present the possibility that any such remedy is feasible, permitted by law, or will violate its obligations under the Consent Decree. The City has respectfully requested this Court to set a status conference allowing the parties to address these questions and allow for a more efficient and meaningful response to Plaintiffs' motion. Based upon the limited information presented to the Court, Plaintiffs cannot meet their burden of establishing that the City should be held in contempt or that they are entitled to a new preliminary injunction. The Court should deny Plaintiffs' motion.

///

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE (2:20-cv-00887) - 4

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

## II. STATEMENT OF FACTS

**A. Procedural Facts**

On June 17, 2020, this Court entered a preliminary injunctive order enjoining the City from employing chemical irritants or projectiles of any kind (tear gas, OC spray, blast balls, rubber bullets) against peaceful protestors. (Dkt. 42.) The Order did not prohibit the use of these crowd control weapons when necessary, reasonable, proportional, and targeted to protect against a specific imminent threat of physical harm to themselves or others or destruction of property. (*Id*.) On August 10, 2020, the parties stipulated to an Order amending the terms of the preliminary injunction, which the Court entered on August 10, 2020. (Dkt. 110).

On August 28, 2020, Plaintiffs' counsel sent a letter to the City requesting information regarding SPD's use of CCWs at a demonstration in the Eastlake neighborhood on August 26 and how City viewed its response as consistent with the Court's Orders. (Dkt. 115 at Ex. A). The letter did not mention a motion for contempt. (*Id*.) On September 4, the City timely replied with the detailed information requested. (Dkt. 115 at Ex. B.) Plaintiffs' counsel did not respond to the City's letter, nor did they request additional information or a meet and confer with respect to any issues arising from the August 26 demonstration. (Declaration of Ghazal Sharifi, ¶ 4.)

On September 9, 2020, Plaintiffs' counsel sent a letter to the City requesting information regarding SPD's use of CCWs at a demonstration near the Seattle Police Officer's Guild ("SPOG") building on September 7. (Dkt. 115 at Ex. C.) Plaintiffs requested information about the CCWs deployed and how the City viewed its response as consistent with the Court's Orders. (*Id*.) The letter indicated that Plaintiffs were considering asking the Court to reopen contempt proceedings.

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE (2:20-cv-00887) - 5

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  (*Id.*)  On September 11, the City promptly replied with the requested information.  (Dkt. 115 at Ex. D).  Again, Plaintiffs' counsel did not respond to the City's letter, request additional information, or schedule a conference to discuss the issues raised.  (Sharifi Decl., ¶ 6.)

Finally, on Thursday, September 24, 2020, Plaintiffs' counsel sent another letter, requesting information regarding SPD's use of CCWs at demonstrations taking place in the Capitol Hill neighborhood over September 22 and 23.  (Dkt. 115 at Ex. E).  In addition to seeking detailed information, Plaintiffs' counsel made a number of claims against the City beyond the scope of the Court's Orders, essentially demanding concessions of civil liability with respect to allegations of excessive force under the Fourth Amendment.  (*Id.*)  The City's counsel acknowledged receipt of the letter on Friday, September 25, and indicated that a response would be forthcoming the following week.  (Sharifi Decl, Ex. A.)  The City began collecting the requested information and preparing its response.  (*Id.*, ¶ 8.)

At 6:30 a.m. on Tuesday, September 29, 2020, Plaintiffs' counsel sent an email requesting to meet and confer with the City that day about their "forthcoming motion for contempt."  (Sharifi Decl., Ex. B.)  Plaintiffs did not provide any details on the basis of the motion or their requested relief.  (*Id.*)  The City's counsel promptly responded and indicated that its work responding to the September 24 letter would be paused, as it appeared Plaintiffs' counsel had changed their mind about their request for information.  (Sharifi Decl., Ex. C).  A conference was scheduled for the same day, with Plaintiffs' counsel expecting "it will be a short call, as it seems that we fundamentally disagree about whether SPD's tactics involving less-lethal weapons are consistent with the Court's orders."  (Sharifi Decl., Ex. D.)

CITY OF SEATTLE'S RESPONSE TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE (2:20-cv-00887) - 6

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

During the telephonic conference on September 29, Plaintiffs' counsel stated they would be filing the subject motion based on events taking place on August 26 and September 7, 22, and 23. (Sharifi Decl., ¶ 11.) Given the volume of relevant evidence and the significant effort necessary to respond to the July motion for contempt, which only dealt with one specific demonstration, the City suggested the parties request a status conference with the Court to address the timing of a substantive response and next steps. (*Id.*) The parties agreed that such a conference would be beneficial. (*Id.*).

Plaintiffs' motion is supported by nineteen witness declarations, and significant individual video clips, some of which are quite long and others that were not previously provided to the City. (Sharifi Decl., ¶ 12.) As officers continue to draft and submit reports related to these four demonstrations, the City can review those drafts and associated body worn video. (*Id.*) Setting aside the challenges of producing that information before it is finalized consistently with the City's policies, the City would need multiple weeks to devote the staffing necessary to identify the officers involved in conduct referenced by Plaintiffs or their video footage in order to provide a full response to those allegations. (*Id.*)

**B.     Facts Related to the Four Demonstrations**

The City adopts and incorporates the facts contained in the declarations of Lieutenant John Brooks, Captain Matt Allen, and Ghazal Sharifi, filed herewith.

### III.     AUTHORITIES AND ARGUMENTS

**A.     Plaintiffs Cannot Establish the City Violated This Court's Order.**

The City fully articulated the legal standards applicable to this motion in its Response to

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE (2:20-cv-00887) - 7

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

plaintiffs' first Motion.  In the interest of judicial economy, and sensitive to the page limitations for this brief, the City incorporates its prior Response (Dkt. 78).  It is undisputed that a party filing a motion for civil contempt must prove that the non-moving party has violated a court order by clear and convincing evidence, something that plaintiffs acknowledged in their Reply brief.  (Dkt. 87, p. 6, ll. 11-12.)  Moreover, Plaintiffs have failed to provide the Court with clear and convincing evidence that the City failed to substantially comply with the Courts' Orders.

> **1.    It is undisputed that the City has unequivocally and consistently apprised its police officers of the terms of the Courts' Orders and the requirement that they comply with those Orders.**

Since the inception of the Court's TRO and later converted preliminary injunction, SPD has been disseminating and instructing officers of the parameters of the Court's Orders.  Relevant to the time frame of this motion, on August 11, 2020, Detective Puente sent an email to all SPD officers attaching the Court's June 17, 2020 and August 10, 2020 Orders, copying the language from each of those orders into the body of the email, and indicated in bold that "[a]ll SPD members are required to read each of these orders and be familiar with their terms." (Dkt. 112.)

SPD also holds mandatory briefings before each shift in which officers are expected to provide crowd control management.  (Brooks Decl, ¶ 3.)  As part of that briefing, one or more members of the command staff share with the group of officers the anticipated schedule and events for the day, intelligence gathered about potential threats, the Commander's intent and objectives, and the rules of engagement.  (*Id*.)  This briefing always includes a reminder to SPD officers to act consistently with SPD policies and the Court's Orders regarding use of CCWs.  (*Id*.)  Command staff also provides the SPD officers with a copy of the Incident Action Plan (IAP) associated with

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE (2:20-cv-00887) - 8

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

that shift. (*Id*.)  This standard protocol was followed on August 26, September 7, September 22, and September 23.  (*Id*.; Allen Decl. ¶ 8.)  The City of Seattle and its Police Commanders are not encouraging or inciting officers to violate the Courts' Orders, or that the City has failed to substantially comply with the Court's Orders in good faith.

        2.        *Police Officers Deployed CCWs in Compliance with the Court's Orders.*

Plaintiffs present numerous declarations of individuals who claim to have been peacefully protesting when they either witnessed what they believed to be an inappropriate use of force or experienced the impact of OC spray or a blast ball. However, the declarations of Plaintiffs' witnesses do not capture the events from the officers' perspectives and exemplify the incomplete nature of their perceptions.  For instance, the blast ball that Plaintiffs claim was targeted at the person on the ground was not, in fact, directed at that person and did not detonate near that person. (Brooks Decl., ¶ 25, Ex. C). Other examples of the same have unfolded during these demonstration events.  (*See* Dkt. 80; Sharifi Dec., ¶ 23 (referencing recent OPA decisions from viral videos.)).

These demonstrations present extreme challenges to both sides: protesters who want to exercise their right to demonstrate peacefully in support of causes that matter and police officers who are vastly outnumbered while also expected to protect others, protect each other, protect themselves, and prevent the destruction of property.  When individual members of the crowd fail to follow lawful orders to disperse, assault officers, attempt arson, throw projectiles, vandalizing businesses, and block traffic in way that poses a danger to others, the police are authorized – indeed charged - to act to protect safety of self and others and to address property destruction.  The issue is not whether crowd control devices were used and impacted members of the crowd; instead, the

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE (2:20-cv-00887) - 9

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

issue before the Court is whether officers, at the time they deployed that force, to the extent reasonably possible, did so in a manner consistent with the Court's Orders. There is no evidence in this record of officers deploying CCWs in violation of the Court's Orders.

        3.      ***The Court should not address police conduct not governed by its June 17, 2020 and August 10, 2020 Orders.***

Plaintiffs complain about various police conduct, including perceptions of police officer demeanor, the use of bikes to move crowds, police tactics involving the decision to move crowds away from a specific location, the decision not to allow cars to block the road, and music played by SPOG members. Respectfully, this type of conduct is not governed by this Court's Orders, nor is this the appropriate forum to determine whether any specific officer or the City in general has engaged in an excessive use of force under the Fourth Amendment or conduct that may trigger criminal or civil liability.[1]

**B.**    **Plaintiffs' Motion Seeks Infeasible Relief that Goes Beyond the Bounds of a Civil Contempt Filing.**

In addition to asking the Court to find the City in contempt, Plaintiffs seek new injunctive relief well beyond the bounds of the Orders: that the City (1) institute additional in-person training subject to this Court's approval; (2) notify Plaintiffs and the Court regarding its internal investigative process, including potential disciplinary actions, criminal investigations, and prosecutorial considerations within a matter of weeks; and (3) file with the Court within five

---

[1] For example, plaintiffs highlight the highly publicized video of a bike officer that appeared to roll over the head of an individual on the ground. This incident was immediately addressed by SPD command staff and later referred for criminal investigation by the Office of Police Accountability. See https://spdblotter.seattle.gov/2020/09/24/bike-officer-placed-on-leave-opa-sheriffs-office-conducting-reviews/; Allen Decl., ¶ 41-45.

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE (2:20-cv-00887) - 10

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

working days of every CCW deployment its determination whether that deployment is consistent with the Court's Orders. (Dkt. 114-1.) This requested extraordinary relief is beyond the bounds of the available civil sanctions that may be awarded to a party seeking contempt. *See General Signal Corp.,* 787 F.2d 1376; *BMG Music v. Perez,* 952 F.2d 318 (9th Cir. 1991).

Additionally, TROs "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974). "[T]he standards for issuance of a temporary restraining order are at least as exacting as those for a preliminary injunction." *Pohlman v. Hormann*, 2014 WL 5425502 *1 n.1 (D. Or. Oct. 20, 2014) (citing *Los Angeles Unified Sch. Dist. v. United States Dist. Court for the Cent. Dist. of Cal.,* 650 F.2d 1004, 1008 (9th Cir. 1981)). "Plaintiffs bear the burden of proving each one of the [four] elements." *Klein v. City of San Clemente,* 584 F.3d 1196, 1201 (9th Cir. 2009). Plaintiffs fail to meet or even address this standard.

Even if the Court had discretion to implement these requests, and the Plaintiffs established their necessity by clear and convincing evidence, the request should be denied. First, any attempt to alter the City's training and/or policies with respect to access or use of crowd control devices could interfere with the preliminary injunction in *United States v. Seattle,* C12-1282JLR (Dkt. 647), depending upon Plaintiff's expectations of changes to the current program. Second, any requirement the City notify Plaintiffs and the Court of internal investigations would likely violate the City's collective bargaining agreement with SPOG, police officers' Fifth Amendment and Garrity rights, and the City's policies allowing officers sufficient time to draft reports.

These requests to expand the scope of Court's injunctive relief are also unnecessary and threaten the integrity of the processes the City already has in place for systematic, comprehensive review of individual complaints. As set forth in Ms. Sharifi's declaration, the Office of Professional Accountability (OPA) already conducts a through and robust review of alleged inappropriate police activity. Examples of this review highlight (1) that troubling video images are not always what they seem; (2) comprehensive review focused on an examination of all available evidence is key to a reliable process; and (3) when police officers act inappropriately, the City is prepared to issue proper discipline.[2]

**C.     The City Requests Additional Time to Substantively Respond.**

The City recognizes that these four demonstrations involve several deployments. The City is committed to continue its effort to collect all relevant evidence and prepare a complete response, but this process requires time. If the Court is inclined to proceed with Plaintiffs' motion for contempt at this time, the City requests the clarification delineated above and an additional 60 days to provide a more substantive response. However, the City suggests that, instead, the Court hold a status conference so that the Court and the parties can confer about how best to proceed. It is clear that what the parties need at this moment is clarity about how the Court sees a civil contempt

---

[2] In addition to reviewing specific uses of force and misconduct allegations, the City is undertaking a more systemic analysis of SPD's response to the mass protests. On June 5, 2020, Mayor Durkan requested that OPA, OIG, and the Community Police Commission ("CPC") evaluate SPD's crowd management policies and tactics and make recommendations based on best practices. *See* June 5, 2020 Letter from Mayor Durkan. In addition, the City Council has asked the OPA, OIG, and CPC (who is represented in this Consent Decree litigation by Plaintiffs' lead counsel) to analyze SPD's use of less lethal devices for crowd control management and provide recommendations for future use and regulation of these devices. Crowd Control Ordinance Section 2. They are currently carrying out this important work. *See e.g.*, OIG's Project Scoping Documents. Plaintiffs' request interferes and conflicts with these processes from the City subject matter experts tasked with such a responsibility.

CITY OF SEATTLE'S RESPONSE TO
PLAINTIFFS' MOTION FOR ORDER TO
SHOW CAUSE (2:20-cv-00887) - 12

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

motion playing out, what issues it intends to address, the extent to which any individual officer violation negates the City's substantial compliance with the Orders, and what relief it is willing to consider. This will allow the City to better understand how, if at all, a contempt motion implicates the City's requirements under the Consent Decree, as well as request a more reasonable time frame for the City to respond to any future motion made by Plaintiffs.

## IV.   CONCLUSION

The City of Seattle has been and continues to be committed to deploying its police force in a way that both protects the right of every citizen to peacefully protest, while also protecting the public and officers from physical harm and violent property destruction. The City also takes seriously its obligation to keep the public safe, protect First Amendment rights, and ensure police officers have the tools and resources they need to maintain their own safety while doing so. The City has complied with its legal obligations under this Court's Orders, and it will continue to do so as our police department and our community look to the future. Plaintiffs have not established any violation of the Court's Orders, let alone proving a violation by clear and convincing evidence. This Court should deny Plaintiffs' motion.

/ / /

/ / /

/ / /

Respectfully submitted this 2nd day of October, 2020.

CHRISTIE LAW GROUP, PLLC

By  */s/ Robert L. Christie*
   ROBERT L. CHRISTIE, WSBA #10895
   THOMAS P. MILLER, WSBA #34473
   ANN E. TRIVETT, WSBA #39228
   MEGAN M. COLUCCIO, WSBA #44178
   Attorneys for Defendant City of Seattle
   2100 Westlake Avenue N., Suite 206
   Seattle, WA 98109
   Phone: 206-957-9669
   Email: bob@christielawgroup.com
            tom@christielawgroup.com
            ann@christielawgroup.com
            megan@christielawgroup.com

PETER S. HOLMES
Seattle City Attorney


By  */s/ Ghazal Sharifi*
   GHAZAL SHARIFI, WSBA# 47750
   CAROLYN U. BOIES, WSBA #40395
   Attorneys for Defendant City of Seattle
   Assistant City Attorneys
   Seattle City Attorney's Office
   701 Fifth Avenue, Suite 2050
   Seattle, WA 98104
   Phone: 206-684-8200
   E-mail:  Ghazal.Sharifi@seattle.gov
              Carolyn.Boies@seattle.gov