# EXHIBIT C(1)

# TYPE II USE OF FORCE
# CROWD MANAGEMENT
# INVOLVED OFFICER STATEMENT GUIDE

> **Instructions:**
>
> Please provide a detailed narrative answer to each of the questions asked. The listed bullet points are not specific to your incident and may or may not apply.
>
> By SPD Policy you must <u>document every use of force throughout the incident</u>. This includes your Lawful Authority/Lawful Purpose for the contact, De-escalation, Threat Assessment/ Decisions made, Force used, Medical Aid, and Resolution. You may do this in one statement, but you must provide these details and reasoning for each use of force.

Please read the following for information on what you might include in your statement. Every incident is different so not everything will apply and your use of force might have information that should be included that is not listed. This is a guide only.

At the bottom of this guide is the cut and paste section. Fill out your statement using the format included and then cut and paste your response into your Blue Team entry. If your response exceeds the character limits, save the entire statement and attach a .pdf or Word copy of it to your Blue Team entry after having it reviewed by a supervisor.

**Preface:**

A. In-person supervisor screening:

Supervisor's name/rank/serial number, date/time/location

B. ICV and BWV recorded: If not, explain why not
C. Note if you reviewed BWV, ICV, or other video prior to statement

**Pre-Arrival/Arrival**

A. Your relevant training/experience – please include any crowd management training and/or experience with demonstrations in the past (keep it brief).
B. Describe your assignment and uniform. (List gear if more than in uniform such as Helmet, Chest protector, Baton, etc.)

    C. Location
    D. Information received from briefing/supervisor
    E. What was happening when you arrived/first observed the demonstrators?
        a. People / other officers on scene, activity occurring, dangers
        b. Buildings, vehicles
        c. Environmental factors: weather, lighting

**Legal Authority / Lawful Purpose:**

    A. Legal Authority (Explain in Detail):
        i. Public area, Street, Park, Open to public
        ii. Exigency
    B. Lawful Purpose (Explain in Detail):
        a. Riot
        b. Looting
        c. Assault

**Contact with Subject(s): (If feasible)**

    A. How did you make your presence and authority clear?
        i. Uniform – UO Gear
        ii. Verbal identification, commands, instructions, orders, PA announcements
    B. Describe contact with involved subject(s)
        i. Observed details
            - Physical/verbal reaction to officer
            - Verbal actions / statements made
            - Size of crowd / movement
        ii. During line movements, provide details
            - Your actions
            - Subject's response

**De-Escalation Techniques Employed:**

    A. Communication
        i. Advisements/warnings. If no warning, explain why.
        ii. Describe instructions given
        iii. Dispersal orders you heard
    B. Time, Distance, or Shielding employed
    C. If De-escalation was not safe or feasible, explain why not

**Threat Assessment/Decision Made**

   A. Did the subject(s) pose a threat to you, another person, or another officer?
   B. Describe the threat in detail or why you believed there was a threat.
   C. Describe your decision regarding force and how you came to that decision
   D. Include any tactical decisions and scene control you employed

**Use of Force:**

Detailed description of the force used by you during the incident <u>and any force you clearly observed used by other officers (identify those officers and where they were in relation to you)</u>.

   A. Words, actions or threat posed by subject prior to, during, and after the use of force:
   B. Continued de-escalation attempts and the subject(s) response if feasible
       i. Verbal de-escalation
           - Warnings/commands to subject, if applicable.
   C. Describe the force used and lawful purpose of the force used:
       i. Describe any warning given. If none were given, explain why not.
   D. Explain your decision to use a technique or less lethal tool, based on feasible options
       i. Describe proportionality of force
       ii. How did the totality of circumstances affect the force used?
       iii. If force was necessary, explain why
   E. Explain effectiveness or lack of effectiveness of employed techniques
       i. Was this a trained technique? Where were you instructed in this technique?
       ii. Were you able to apply the technique properly? Explain why or why not.
           - If effective, describe assessment and modulation of force
               • Describe control of or compliance of subject
           - If not effective, explain why not and how you progressed from there
       iii. When and how was your force modulated?
   F. Restraint of subject. (handcuffs gauged/double-locked, hobbles, full restraint position)

**Medical Aid and Evaluation:**

   A. Injuries/Medical Aid
       i. Any complaint of pain, complaint of injury, apparent injury, or absence of injury to subject (before and after the force was used)
       ii. Did you offer Medical aid (who provided and where provided)? Why not offered?
       iii. Did the subject refuse medical aid or flee?
       iv. Describe any injuries to yourself

**Resolution:**

If subject arrested, where were they transported?

**Reference Checklist: (Make sure you include these elements in your detailed narrative for each use of force):**

| TOPIC | ✓ | TOPIC | ✓ |
|---|---|---|---|
| PRE-ARRIVAL DETAILS / BRIEFING | | DECISIONS MADE & ORDERS GIVEN AND RECEIVED | |
| ARRIVAL | | THREAT ASSESSMENT | |
| LEGAL AUTHORITY & LAWFUL PURPOSE | | FORCE USED | |
| CONTACT WITH SUBJECT (S) | | MEDICAL AID AND EVALUATION | |
| DE-ESCALATION | | RESOLUTION | |

**Copy and Paste Template Below. Using the above guide as a reference, please write your narrative below and cut and paste it into your Blue Team entry after having it reviewed by a supervisor.**

**EVENT/GO#: 2020-274440**

**DATE OF OCCURRENCE: 09/22/2020**

**STATEMENT OF: OFC. ANNE STRIBLING**

> This is a true and involuntary statement given by me in compliance with Section 8.400 of the Seattle Police Department manual order by Sergeant Brian Rees #6890. I DO invoke my Garrity rights prior to giving this statement.
>
> **Preface**:
> A. In-person supervisor screening: SGT B. REES
> B. ICV/BWV recorded: BWV RECORDED

**DETAILED NARRATIVE:**

I Officer Anne Stribling have been a Seattle Police Officer since November 1st, 2016. During this time, I have been assigned to the unit of patrol. I have been trained as a bicycle officer and have worked many protests and demonstrations. I am CART certified to use blast balls and OC. I have also attended the 40-hour CIT course through WACJTC.

On September 22nd 2020, I was working uniformed patrol as 3-EDWARD-82. At 2218 hours while inside of the East Precinct, I heard a group of demonstrators approach the precinct from the west on E Pine St. I notified east air and inquired with the desk clerk if there was any video surveillance. These nightly marches that have occurred at the East Precinct, are secondary to the prior almost four months of demonstrations, riots, violent attacks on officers and department property, and occupation of city streets and parks.

I was in a fully marked SPD uniform carrying a department issued Mark9 canister of pepper spray, five OC blast balls and equipped with a body camera.

I was notified by the desk clerk that there were approximately 30-35 demonstrators at 12 Ave/ E Pine St. In addition, there was also a truck ( WA #B19486X) that was parked parallel to the precinct fence line, with the passenger hanging out the window. This was alarming for several reasons. The first being that this passenger was potentially setting up some sort of explosive which has occurred on many occasions in the past with demonstrators throwing Molotov cocktails at the precinct, and second, that demonstrators would climb from the truck, over the fence line to cause property damage or attempt to breach the precinct. Simultaneously, a protestor from the group began to climb the fence line of the precinct on the 12th Ave side but never climbed over. He then rejoined the crowd. The demonstrators and truck remained at the intersection of 12 Ave/ E Pine for several minutes before moving northbound on 12TH Ave. They continued their march to 12th Ave/ E John St with additional responding units escorting them out of the area as directed by LT. Brooks, northbound on 12th Ave.

The demonstrators then had a change of heart and decided to move back southbound on 12th Ave. While doing this, they encroached on several patrol vehicles as they were reversing, shined bright lights into officers eyes and at one point began to surround Ofc. CAULFIELD'S #8680 vehicle while shining a strobe light at him. Ofc. CAULFIELD advised he was under control and was able to maneuver away from the crowd.

The crowd continued southbound on 12th Ave, taking up the entirety of the city street. LT. Brooks gave many attempts for the crowd to disperse and to cease shining bright lights into our eyes. The crowd ignored all commands as they approached 12th Ave/ E Pine St. When they approached, LT. Brooks gave more dispersal orders and the consequences if not obeyed. LT. Brooks ordered me to deploy a blast ball to disperse the crowd if they continued encroached on officers vehicles.

I was standing with my bicycle at 12th Ave/ E Pine St to the west. I observed the crowd arrive to 12th Ave/ E Pine St with numbers around 40. They proceeded to take over the intersection and began to surround patrol vehicles that were at that intersection and shine lights into their eyes, making it difficult to maneuver away from them and additional vehicle/pedestrian traffic in the area.

**Aside from LT. Brook's order for the blast ball deployment, I independently arrived to the conclusion that the use of a blast ball was feasible and appropriate due to the fact that many dispersal orders were given by LT. Brooks, the demonstrators were surrounding patrol vehicles with the risk of causing damage to the patrol vehicle or an imminent threat of an assault on an officer, surrounding the patrol vehicles to prevent officers a safe way to move away from the crowd, the demonstrators purposefully shining lights into officers eyes who were operating vehicles, causing a life safety risk to officers, and vehicle/pedestrian traffic, and that they were closing in on the precinct with the risk of property damage to the precinct. I deployed my blast ball (12:46 on BWV), throwing underhand towards the group that was encroaching on the patrol vehicle. The deployment of the blast ball appeared to be effective as the crowd then began to move westbound on E Pine St, away from the precinct and patrol vehicles. This was the only blast ball that I deployed and was not made aware by anyone in the crowd of any medical attention that someone may have needed since the crowd dispersed.**

**I used no other force during this dispersal which is being documented under 2020-274440. Even after my forced used, the demonstrators still occupied the street at 11th Ave/ E Pine St before marching back to the precinct, and around it to E Pike St. The crowd then dispersed into Cal Anderson Park without causing any further disturbance. No demonstrators were arrested during this incident. At the time of this incident, I was the only officer present with CART capability.**

**Legal Authority: This incident took place on city streets**

**Lawful Purpose: My blast ball deployment was for the imminent life safety risk to officers and the public and that if I did not use this force, Officers or members of the public would be injured, or that significant property damage to city property would take place.**

**De-escalation was no longer feasible at the time of my blast ball deployment. Demonstrators were given a chance to voluntarily comply to which they ignored and instead purposefully put officers and the public at a safety risk.**

**I later informed SGT B. Rees 6890 of my blast ball deployment and was informed that this blue team be routed to him.**

**ADDITIONAL INFORMATION**: