THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE

| | |
|---|---|
| BLACK LIVES MATTER SEATTLE KING COUNTY, ABIE EKENEZAR, SHARON SAKAMOTO, MURACO KYASHNA-TOCHA, ALEXANDER WOLDEAB, NATHALIE GRAHAM, AND ALEXANDRA CHEN, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SEATTLE, <br><br> Defendant. | No. 2:20-CV-00887-RAJ <br><br> REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY CITY OF SEATTLE SHOULD NOT BE HELD IN CONTEMPT <br><br> NOTE ON MOTION CALENDAR: November 18, 2020 <br> Oral Argument Requested |

REPLY IN SUPPORT OF MOTION FOR CONTEMPT
(No. 2:20-cv-887 RAJ)
150082488.2

# TABLE OF CONTENTS

**Page**

I.   ARGUMENT ................................................................................................................. 1

    A.   The City Asserts the Wrong Legal Standard in an Attempt to Rewrite the
    Preliminary Injunction. ........................................................................................ 1

        *1.*   *The Civil Contempt Standard Governs this Motion, not Monell.* .............. 1

        *2.*   *The City Violated the Court's Orders.* ...................................................... 2

    B.   The City Has Failed to Present Evidence Sufficient to Show Substantial
    Compliance With the Court's Orders. .................................................................... 3

        *1.*   *The City Failed to Address Numerous Deployments of Less-Lethal*
        *Weapons Described in Plaintiffs' Motion.* ................................................ 3

        *2.*   *The City's Purported Justifications for Using Less-Lethal Weapons*
        *Against Protesters Are Insufficient to Show Substantial*
        *Compliance.* ............................................................................................... 4

II.  CONCLUSION ............................................................................................................ 6

## I.    ARGUMENT

### A.  The City Asserts the Wrong Legal Standard in an Attempt to Rewrite the Preliminary Injunction.

The City of Seattle twice stipulated to injunctive orders governing its conduct that *expressly apply* to the actions of individual SPD officers, with full knowledge that violations of such orders by its officers could result in a contempt finding. The Court should decline the City's invitation to rewrite the legal standard for contempt and narrow the scope of the preliminary injunction. Because the City has failed to prove that it substantially complied with the Court's orders, Plaintiffs' motion should be granted.

### 1.    The Civil Contempt Standard Governs this Motion, not *Monell.*

The City incorrectly claims that *Monell* applies to Plaintiffs' motion for contempt.[1] *Monell* governs municipal liability for constitutional violations in § 1983 civil rights suits, not contempt allegations when a municipality has already been enjoined. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Plaintiffs are only required to show that SPD officers violated the Court's orders, *not* that such violations would create liability under *Monell*. Cases applying *Monell* are inapposite to a contempt proceeding where a municipality has stipulated to an Order that explicitly governs conduct of its police department or its officers.

Applying the correct standard for civil contempt, Plaintiffs must prove "by clear and convincing evidence that the [nonmoving party] violated a specific and definite order of the court." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). Plaintiffs' motion and

---

[1] The City's *Monell* argument is untimely; it did not raise *Monell* in its prior filings in connection with this motion. *See* ECF 78; ECF 135. The Court should also reject the City's renewed request that the Court "identify deployments" alleged to be in violation of the Order and allow the City additional time to gather evidence. ECF 144 at 8 n.5. The City has been on notice as to the scope of this motion and evidence at issue, agreed to a process for adjudicating this motion, had the opportunity to file both an initial and supplemental response, and had months to review every use of a LLW on the four dates in question. No further process is due or necessary.

supporting declarations, as well as the City's own evidence and admissions, establish that SPD

officers repeatedly violated several specific and definite provisions of this Court's orders.

Plaintiffs need not prove more.[2]

2.      *The City Violated the Court's Orders*.

The City asserts that the Court's orders "do not apply to those engaged in criminal

conduct" or "unlawful activities" such as blocking traffic or littering. ECF 144 at 6. That is both

irrelevant and incorrect. First, this argument is non-responsive to Plaintiffs' extensive and

unrebutted evidence that SPD deployed less-lethal weapons ("LLWs") against many people

peacefully engaging in protests. Second, it finds no basis in the orders themselves, which do not

authorize the City to use LLWs against any protester suspected of committing any kind of

infraction[3]; rather, the orders allow SPD to use LLWs at protests only when "necessary,

reasonable, proportional, and targeted . . . to protect against a ***specific imminent threat of***

***physical harm*** to themselves or identifiable others or to respond to ***specific acts of violence or***

***destruction of property***." ECF 42 at 2 (emphasis added). Equally unavailing is the City's

argument that unlawful acts by a small minority of people in attendance at a protest strip other

protesters of the protections of this Court's orders.[4] The City wrongly claims that this Court's

orders "acknowledge[] that in the event of an unlawful assembly or riot it may not be feasible for

CCW deployments to be as specifically targeted as would be expected during lawful

---

[2] *See, e.g.*, *Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1130 (9th Cir. 2009) (rejecting MTA's attempt to show substantial compliance "by formulating a different measure of load improvement than the parties' bargain required"); *Bradford Techs., Inc. v. NCV Software.com*, No. C 11-04621 EDL, 2013 WL 75772, at *7 (N.D. Cal. Jan. 4, 2013) ("no 'substantial compliance' when an SPO is directly violated").
[3] The City must comply with the requirements of the order, regardless of whether the protester was allegedly committing an infraction such as littering (ECF 144 at 9), blocking the road (*id.* at 8), "obstructing a police officer" (ECF 147-1 at 15), or "failure to disperse" (*id.*).
[4] *See also N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 933-43 (1982) (rejecting the call to impute specific violent acts to an entire protest during the civil rights movement).

REPLY IN SUPPORT OF MOTION
FOR CONTEMPT (No. 2:20-cv-887 RAJ) - 2
150082488.2

demonstrations[.]" ECF 144 at 4 (citing Clarified PI). The Clarified PI contains no such language. To the contrary, the Clarified PI—to which the City voluntarily agreed—specifically states that "[d]eclaring a protest to be an unlawful assembly or a riot ***does not exempt the City from its obligation to comply with this Order***[.]" ECF 110 at 5 (emphasis added). That provision makes clear that SPD cannot circumvent the PI by declaring an entire protest to be unlawful.

**B.      The City Has Failed to Present Evidence Sufficient to Show Substantial Compliance With the Court's Orders.**

      *1.      The City Failed to Address Numerous Deployments of Less-Lethal Weapons Described in Plaintiffs' Motion.*

It is not enough for the City to show that it instructed SPD officers on the Court's orders; the City must also show that its officers ***substantially complied*** with them. But the City fails to address much of Plaintiffs' evidence that SPD used LLWs against peaceful protestors in a manner that was indiscriminate, unreasonable, disproportionate, and unnecessary to prevent specific injury or destruction of property.

For example, on August 26, SPD deployed OC spray and a number of blast balls against peaceful vigil attendees. ECF 116 ¶ 21; ECF 118 ¶¶ 11-14; ECF 117 ¶¶ 9, 15; ECF 134 ¶ 8. Yet the City provides no justification for a number of these deployments or provides an explanation plainly inconsistent with video evidence. *Compare* ECF 145, Ex. A ("Video A") at 41:59 (blast ball deployed at retreating crowd) *with* ECF 145-1 at 3 (acknowledging blast ball without explanation); *compare* ECF 146-1 at 19 (explaining OC spray deployed at protestors "assaulting an officer") *with* Video A at 43:20 (showing officer striking protestor and deploying OC spray and no footage of protestors assaulting officers).

On September 23, SPD deployed at least 22 blast balls, but the City provided no explanation or video footage for a number of these deployments. *See, e.g.*, ECF 144 at 12-13

(failing to address any blast ball deployments on Sept. 23); ECF 145-1 at 15 (listing no video evidence for use of blast balls). There are seven Use of Force Reports ("UFRs") where officers state they deployed as many as six blast balls each on September 23, but body-worn video ("BWV") was not provided for any of those officers. ECF 146-2 at 2, 42, 54, 63, 92, 124, 162. The only BWV provided where the officer throws a blast ball on September 23 is Officer Eastgard's. ECF 145, Ex. C ("Video C") at 47:55, 50:05 (throwing blast balls across intersection and over other officers for no apparent reason). His corresponding UFR not only fails to explain these deployments, it fails to mention them *at all.* ECF 146-4 at 132. Other footage shows blast balls detonating in or near the crowd of protestors, corroborating Plaintiffs' evidence, but the City provides no explanation or justification for their use.

Because the Plaintiffs have shown clear and convincing evidence that the City deployed LLWs restricted by the Court's orders on multiple occasions, and because the City has failed to adequately justify these deployments, the City has failed to show substantial compliance and should be found in contempt.

> 2.  *The City's Purported Justifications for Using Less-Lethal Weapons Against Protesters Are Insufficient to Show Substantial Compliance.*

The City's failure to address many of the alleged violations in Plaintiffs' motion is sufficient to grant the motion. But the City also fails to demonstrate compliance with respect to the LLW deployments the City actually addresses.

First, the City repeatedly attempts to justify LLW deployment based on alleged protester misconduct that does not pose a "specific imminent threat of physical harm" to a police officer or identifiable others and was not a "specific act of violence or destruction of property." *E.g.*, ECF 148 ¶ 32 (stating that blast ball was deployed "to create separation between the officers and the crowd"); ECF 137, Ex. B at 1:07 (corresponding video); ECF 146-1 at 48 (justifying OC spray

deployment for failure to move back); ECF 144 at 10 (same); *id.* at 11 (stating officers used blast balls and OC spray to "keep the crowd moving"); ECF 145, Ex. B ("Video B") at 47:50 (showing officer spraying back of protester); ECF 146-4 at 165 (stating that blast ball was thrown "to keep [protesters] from organizing").

On September 7, for example, 80 SPD officers ambushed a peaceful protest under the pretense of attempting to arrest a single protester who allegedly had a Molotov cocktail. *See* ECF 144 at 9-10; Video B.[5] Officers OC sprayed protesters recklessly and in a manner plainly inconsistent with the Court's Orders. *See* Video B at 24:09 (showing Didier OC spraying woman filming him), 24:21 (showing Didier OC spraying Plaintiff Chen while she films and retreats), 26:48 (showing Didier OC spraying people as he bikes into crowd), 29:40 (showing officers repeatedly OC spraying retreating crowd), 36:17 (same); ECF 146-2, Ex. B at 283 (stating "I used pepper spray to move individuals in the crowd").

Second, even if LLW deployments were justified to prevent property destruction or a specific imminent threat of physical harm, SPD repeatedly deployed LLWs indiscriminately and disproportionately in response. *See* Video B at 28:12 (showing Didier throwing blast ball into the crowd after asking who threw a rock and another officer responding he did not know), 28:10 (showing numerous blast balls detonating next to retreating crowd), 30:37 (showing Didier lobbing blast ball into crowd), 33:53 (showing blast balls thrown indiscriminately into retreating column of people), 48:57 (showing Eastman throwing blast ball across three lanes of road at crowd), 1:02:07 (showing Dorr removing pin from blast ball, waiting 30 seconds to throw it into

---

[5] The few bags of garbage placed along the parking lot fence are a red herring. SPD does not allege LLWs were used in response to the bags and SPD made no effort to address the bags at the time. The City attempts to connect Plaintiff Chen with a protester who threw a garbage bag over the fence "a few moments later" (Video B at 4:11) by editing out three intervening minutes, without notice to the viewer. *See* Video B at 3:30; Supp. Decl. of Alexandra Chen at ¶¶ 4-11.

crowd with no clear provocation or target); Video C at 24:50 (showing multiple officers spraying entire line of protesters retreating), 47:55 (showing blast ball thrown into crowd), 52:23-45 (showing blast ball thrown to "disperse crowd"). In addition to not being targeted or in response to a specific threat of imminent harm, many of these deployments appear to be for the purpose of re-routing the protest, in violation of the Clarified PI Section 6.1.a. *E.g.*, ECF 146-2, Ex. B, at 43 ("Lt. Brooks ordered the use of OC and blast balls to continue pushing the crowd"), 283 ("I deployed blast balls to move the crowd").

Third, the City repeatedly claims that LLWs were deployed "in response" to acts that were far in time or location from SPD's deployment of force.[6] Minutes or hours elapsed between the alleged precipitating act and deployment; in many instances, the act and deployment were blocks apart. *E.g.*, ECF 148 ¶¶ 15-16 (connecting property destruction resulting in arrests to Aug. 26 vigil that began approximately 90 minutes later and 1.9 miles away from arrests); *id.* ¶¶ 30-33 (connecting protesters on Sept. 22 allegedly surrounding SPD vehicles and the later deployment of a blast ball); *see generally* Video C (attempting to justify deployments of LLWs based on unrelated thrown objects, fireworks, and trash can fires). An alleged act of property destruction or violence by a protester does not give SPD *carte blanche* to use LLWs against that person or the crowd anywhere and at any time after that.

## II.   CONCLUSION

Because Plaintiffs have presented clear and convincing evidence of multiple incidents of SPD officers violating this Court's orders, and because the City has failed to show how such actions substantially complied with the Orders, Plaintiff's Motion should be granted.

---

[6] The City's editing of the videos makes it difficult to understand how events relate to each other temporally. There were 20 instances in Video B and 15 in Video C where the surveillance or body-worn video was edited to remove anywhere from 30 seconds to 30 minutes of video without warning to the viewer. Cutting video between thrown objects or fireworks and deployments of LLWs could imply more correlation between events than is warranted.

DATED:  November 9, 2020

By:  s/ David A. Perez
By:  s/ Carolyn S. Gilbert
By:  s/ Nitika Arora
By:  s/ Heath Hyatt
By:  s/ Paige L. Whidbee
David A. Perez #43959
Carolyn S. Gilbert #51285
Nitika Arora #54084
Heath Hyatt #54141
Paige L. Whidbee # 55072

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  DPerez@perkinscoie.com
         CarolynGilbert@perkinscoie.com
         NArora@perkinscoie.com
         HHyatt@perkinscoie.com
         PWhidbee@perkinscoie.com


By:  s/ Molly Tack-Hooper
By:  s/ Nancy L. Talner
By:  s/ Lisa Nowlin
By:  s/ Breanne Schuster
By:  s/ John Midgley
Molly Tack-Hooper, #56356
Nancy L. Talner #11196
Lisa Nowlin #51512
Breanne Schuster #49993
John Midgley #6511

**American Civil Liberties Union of
Washington Foundation**
P.O. Box 2728
Seattle, WA  98111
Telephone: (206) 624-2184
Email:  mtackhooper@aclu-wa.org
         talner@aclu-wa.org
         lnowlin@aclu-wa.org
         bschuster@aclu-wa.org
         jmidgley@aclu-wa.org


By:  s/ Robert S. Chang
By:  s/ Melissa Lee
By:  s/ Jessica Levin

REPLY IN SUPPORT OF MOTION
FOR CONTEMPT (No. 2:20-cv-887 RAJ) - 7
150082488.2

1

2

Robert S. Chang, #44083
Melissa Lee #38808
Jessica Levin #40837

3

**Fred T. Korematsu Center for Law and
Equality**
Ronald A. Peterson Law Clinic
Seattle University School of Law
1112 E. Columbia Street
Seattle, WA  98122
Telephone: 206.398.4025
Fax:  206.398.4077
Email:  changro@seattleu.edu

4

5

6

7

*Attorneys for Plaintiffs Black Lives Matter
Seattle-King County, Abie Ekenezar, Sharon
Sakamoto, Muraco Kyashna-tochá, Alexander
Woldeab, Nathalie Graham, and Alexandra
Chen*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23