1              UNITED STATES DISTRICT COURT

2       WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3 _____

| | |
|---|---|
| 4                        ) | |
| 5  BLACK LIVES MATTER         ) C20-00887-RAJ | |
|   SEATTLE-KING COUNTY,      ) | |
| 6                      ) SEATTLE, WASHINGTON | |

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE RICHARD A. JONES
UNITED STATES DISTRICT JUDGE

```
 1                UNITED STATES DISTRICT COURT

 2          WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3  _____

 4                              )
    BLACK LIVES MATTER          ) C20-00887-RAJ
 5  SEATTLE-KING COUNTY,        )
                                ) SEATTLE, WASHINGTON
 6            Plaintiff,        )
                                ) October 14, 2020
 7  v.                          )
                                ) 10:00 a.m.
 8  CITY OF SEATTLE,            )
                                ) Status Hearing
 9            Defendants.       )
                                )
10                              )
   _____

11
                 VERBATIM REPORT OF PROCEEDINGS
12           BEFORE THE HONORABLE RICHARD A. JONES
                  UNITED STATES DISTRICT JUDGE
13  _____

14

15  APPEARANCES:

16

17    For the Plaintiffs:    David Perez
                             Perkins Coie
18                           1201 3rd Avenue
                             Suite 4900
19                           Seattle, WA 98101

20                           Lisa Nowlin
                             ACLU of Washington
21                           901 Fifth Avenue
                             Suite 630
22                           Seattle, WA 98111

23                           Robert Chang
                             Ronald A. Peterson Law Clinic
24                           Seattle University School of Law
                             1112 E. Columbia Street
25                           Seattle, WA 98122
```

1    For the Defendant:        Carolyn Boies
                               Ghazal Sharifi
2                              Seattle City Attorney's Office
                               701 Fifth Avenue
3                              Suite 2050
                               Seattle, WA  98104
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    THE CLERK:  Is everybody ready to proceed?  Okay.  I
2  will let Judge Jones know that we're ready.  Thank you
3  everybody.
4    THE COURT:  Good morning, Ms. Ericksen, if you would
5  please call the case.
6    THE CLERK:  Yes.  We are here in the matter of Black
7  Lives Matter Seattle King County, et al., v. City of Seattle,
8  Cause No. C20-887-RAJ.
9    If counsel, first for the plaintiff, could make your
10  appearance for the record.
11    MR. CHANG:  Sure.  Bob Chang, Korematsu Center, for
12  the plaintiffs.
13    THE COURT:  Good morning.
14    MS. NOWLIN:  Lisa Nowlin of the ACLU of Washington,
15  for plaintiffs.
16    THE COURT:  I'm sorry, you're going to have to speak
17  louder.
18    MS. NOWLIN:  Lisa Nowlin of the ACLU of Washington,
19  for plaintiffs.
20    MR. PEREZ:  David Perez, Perkins Coie, for
21  plaintiffs.
22    THE COURT:  And counsel for defendant, if you could
23  please make your appearances.
24    MS. SHARIFI:  Ghazal Sharifi on behalf of the City of
25  Seattle.

1    MS. BOIES:  Carolyn Boies on behalf of the City of

2  Seattle as well.

3    THE CLERK:  And, Your Honor, we're also joined by our

4  court reporter, Debbie Zurn.

5    THE COURT:  All right, counsel.  The court has set

6  this hearing in order to assess where we stand on the issue.

7  And it's my understanding that the plaintiffs in this case

8  are seeking a contempt order against the City.  And it claims

9  the City violated the injunction on four separate occasions:

10  August 26, 2020, September 7, 2020, September 22, 2020 and

11  September 23, 2020.

12    I'd like to begin, first of all, by indicating that I'm

13  not sure if the parties have come to any resolution or even

14  had discussions about what to expect by way of an evidentiary

15  hearing, because it appears that's the direction that the

16  parties are seeking for the opportunity to present the facts

17  and circumstances that they have.

18    The court has already reviewed all the affidavits that the

19  parties have provided.  I will tell you -- and we'll get to

20  this a little bit later -- that the court was unable to

21  review some of the documents by way of the video attachments

22  that were submitted by way of Twitter.  Again, I'll get to

23  that a little bit later.  But for right now, I want you to

24  know I've read all the pleadings that have been filed with

25  this court.

1      So the primary focus right now is to talk about what we do

2  by way of an evidentiary hearing.  Let me hear first from the

3  plaintiffs to confirm that that's what you're seeking.

4  Counsel for the plaintiff, I'm not sure who will be speaking

5  for you.

6      MR. CHANG:  Your Honor, Robert Chang.  And so, yes,

7  that is what we are seeking.  And we do have a proposal in

8  terms of the process.

9      THE COURT:  All right.  Let me hear from you, then,

10  counsel, on what your proposed process is, before I go to the

11  defense.  Is this a proposed process that you've discussed

12  with the defendants?

13      MR. CHANG:  Well, we sent an e-mail on October 5th to

14  the City, but we haven't received a response back.

15      And so in our e-mail that we sent on October 5th, we

16  rejected the City's request that they be given 60 days to

17  submit their substantive response.  We note that this is even

18  longer than they requested in terms of the July 31st

19  conference; our first contempt motion.  So in our e-mail we

20  proposed two weeks for the City to submit rebuttal evidence.

21  Though we sent that e-mail on October 5th, two weeks from

22  today would be October 28th.  We'll note that this actually

23  gives the City four weeks from when we submitted our contempt

24  motion.

25      In our e-mail we also proposed that then we be given one

1   week after that to submit our reply brief and rebuttal

2   evidence.  This would be Wednesday, November 4th.  That's the

3   day after the election, so we might actually beg the

4   indulgence of the court and the parties, the City, to make

5   that midday November 5th, the next day.

6        We then proposed in our e-mail that we have a

7   meet-and-confer that would precede a status conference with

8   the court.  In that e-mail we didn't include the timing for

9   the status conference, but we propose today that that status

10  conference be scheduled for sometime during the week of

11  November 9th to the 13th.  That would give the parties

12  sufficient time, after the City has submitted its evidence

13  and after we've submitted our rebuttal evidence, to meet and

14  confer to try to come to terms as to the hybrid process.  We

15  agree with the approach that Your Honor suggested on

16  July 31st, based on *Peterson v. Highland Music*, that a hybrid

17  process is likely the most efficient way to get to an

18  expeditious resolution of this matter.

19       We also expect that there might be some issues that arise

20  with regard to the body-cam evidence, and to that I'd also

21  add the dash-cam evidence.  We believe that we would be able

22  to discuss this during the meet-and-confer, try to come to

23  terms on that.  And if we are unable to, that we would then

24  be able to take care of that also during that status

25  conference, where, during that status conference, we would

1    figure out what the next steps are.

2        In a lot of ways we don't know exactly what the scope of

3    the evidentiary hearing will be.  We hope that through this

4    process it can be narrowed, that it can be targeted, and that

5    then it can be scheduled as soon or not too long after that.

6    So let me stop there.

7            THE COURT:  And, counsel, when you're contemplating

8    what you think would be an appropriate amount of time for an

9    evidentiary hearing, what number of days are you looking

10   towards?

11           MR. CHANG:  Well, Your Honor, I think it depends on

12   what we're able to decide mutually in terms of what we can

13   just submit by affidavit.  We don't expect it to be any

14   longer than what Your Honor scheduled last time, no longer

15   than the five days; equal time to both parties.  But we would

16   hope, actually, that we could do something in a shorter

17   amount of time, especially because it's really uncertain what

18   actually would be in dispute.  It's also uncertain how much

19   of it would be duplicative.  So we would try to be efficient

20   in terms of how we proceed.

21           THE COURT:  And I trust, counsel, that you're not

22   opposed to the idea of having portions of the testimony

23   provided by way of declarations or affidavits; is that

24   correct, counsel?

25           MR. CHANG:  Yes.  We are certainly good with that.

1  We are very much in favor of the hybrid process.

2           THE COURT:  Okay.  All right.  All right.  Thank you,

3  counsel.  Does that complete your presentation on your

4  proposal?

5           MR. CHANG:  In terms of our proposal, yes.

6           THE COURT:  All right.  Let me hear from the City.

7  I'm not sure who will be speaking for the City.

8           MS. SHARIFI:  I will for now, Your Honor.  Good

9  morning.

10          THE COURT:  Good morning.

11          MS. SHARIFI:  Your Honor, I -- as counsel for

12  plaintiffs was talking -- I've been frantically digging

13  through my e-mail.  I had apparently a draft e-mail on

14  Tuesday the 6th that I circulated to my co-counsel, and I

15  have it here, and I guess it did not get sent.  So I -- my

16  sincere apologies to plaintiffs' counsel and to the court.

17     And in it, I can just read it.  It's a very short e-mail

18  saying, "Thank you for reaching out and taking the time to

19  think through some possible approaches going forward.  It's

20  helpful to know your thoughts and these ideas.  As we noted

21  in our response brief, we need some guidance from the

22  court" --

23          THE COURT:  Counsel, slow down a little bit.  We have

24  a court reporter.

25          MS. SHARIFI:  Sure.  No problem.  "We really need

1  some guidance from the court about the scope, timing and

2  parameters of how the court seeks to evaluate this contempt

3  motion.  This is the reason why we asked for a status

4  conference.  And we appreciate your willingness to work

5  cooperatively to develop parameters, as we have some guidance

6  from the court next Wednesday.  I will anticipate that we'll

7  be working through next steps."

8       So, again, I thought I had sent that e-mail, even though

9  it's not much in substance by way of setting parameters, but

10 from the City's perspective, Your Honor, we, in order to

11 engage in terms of scheduling and timing, as we noted in our

12 briefing, we need to get an understanding from the court on

13 how the court is going to evaluate contempt in this

14 circumstance.  And I think we asked a series of kind of

15 hypothetical-type questions in our briefing, whether it's

16 going to be based on specific events, incidents, people,

17 days, and so that will help us better determine how to

18 collect information, process information, and present it to

19 the court.

20       THE COURT:  Well, counsel, the injunction itself

21 identifies four separate occasions, and that's the reason I

22 started off my remarks by identifying the specifics.  And

23 there's a fair amount of detail in the plaintiffs' motion

24 itself.  So when you say "regarding the specific events,"

25 what more do you need than the identification of the date and

1   circumstances?  In other words, for example, the August 26th

2   date, it says, "Vigil outside of Washington State Patrol."

3   September 7th, "Labor Day, Seattle Police Officers Guild

4   march."  Counsel, does not the plaintiffs' motion in and of

5   itself reflect with specificity the scope of why they're

6   seeking contempt?

7          MS. SHARIFI:  I think -- I'm sorry, Carolyn, go

8   ahead.

9          MS. BOIES:  I think, Your Honor, what we're trying to

10  understand is, you know, in terms of the record that you have

11  before you now, including our preliminary information that we

12  submitted, I think a day or two after the motion was filed,

13  you know, there's a clear record of the City, you know,

14  taking the order seriously, providing it before every

15  rollcall to our officers -- not every rollcall, but every

16  demonstration rollcall -- and making sure that everyone is

17  aware of the parameters and various actions that we have

18  taken that are very consistent with the order.

19      So I think what we're trying to understand is what would

20  constitute contempt?  Is it a pattern?  Is it a single

21  incident?  And that will allow us to understand what we're

22  supposed to present back to you.  Because the record in terms

23  of the City as an organization, would show that there is a

24  strong attempt to comply and to honor the terms of the order.

25         THE COURT:  I understand your position, counsel, but

1  that still doesn't move the needle from the point where --

2  there have been four specific incidents, and I guess I'm just

3  having trouble understanding why the City hasn't accepted

4  that.  Because as I read the documentation, I read the

5  declarations and affidavits, they all talk about one of these

6  four incidents.

7      And you can take every one of the declarations, for the

8  most part, and fit them under one of these categories.  And

9  it would appear to the court that that in and of itself

10  defines the scope of the parameters of the contempt actions

11  being sought by the plaintiffs.

12      So, when you talk about what you were doing prior to these

13  meetings, that's a little bit different story, counsel.  It's

14  a question of how you respond to the specific contempt issues

15  that have been raised.  So that's what I'm looking for in

16  terms of, what part of it don't you understand?

17          MS. SHARIFI:  I think, Your Honor, what we're --

18  there's two parts in response to that.  One of them is, are

19  we requested to account for every incident of force at every

20  one of these events?  Because based on our attempts at trying

21  to piece together a declaration that didn't have a whole lot

22  of information the last time, and trying to find where,

23  during the demonstration event, and then which officer used

24  the force that was directed, or, you know, impacted the

25  individual declarant, that's very difficult to do.

1      And so the one question is, as this motion is directed at
2   the City and not specific individual officers or specific
3   incidents of force, we're trying to get our heads wrapped
4   around what contempt for the City means.  And that's one of
5   the reasons why Ms. Boies was addressing, kind of the steps
6   that the City and SPD takes to prepare its officers and
7   respond to these demonstration events.
8      And I think the secondary question is more just a matter
9   of procedure, where we're trying to kind of gauge from the
10  court, do we need to sit and identify every video for every
11  use of force at every one of these four demonstrations, and
12  all of the corresponding materials that the court identified,
13  or is there some assessment of trying to, I guess, target the
14  information for the court's ability to evaluate whether the
15  City is or is not in contempt, in response to these
16  demonstration events?
17         THE COURT:  Well, counsel, it's almost as if you're
18  asking for the court to engage in a discovery process for the
19  City, by way of a request for admission, asking the
20  plaintiffs in this case to identify what is included, what
21  the specifics are that you need to respond to or defend
22  against.
23      These are the type of things, counsel, to be honest with
24  you, that should have been addressed by the parties having
25  the opportunity to meet and confer.  I believe that was

1    Mr. Chang's effort in sending that initial e-mail.  I

2    appreciate the fact that you failed to get your response

3    e-mail out, or failed to take that into consideration, but

4    it's not an efficient use of the court's time to go through

5    and marshal out what's included and what's not included.

6        Let me hear from Mr. Chang.  Mr. Chang, are you in a

7    position, do you believe, if you had a chance to sit and meet

8    and confer with counsel for the City, to identify with

9    greater specificity?  Because one of the approaches to a

10    contempt proceeding is to try and narrow the scope of the

11    proceedings to identify the specifics, but make sure that due

12    process is accorded, and at the same time make sure the

13    plaintiffs have an opportunity to fully present the facts and

14    basis to support their complaints.

15        So, Mr. Chang, do you believe that you or your team are in

16    a position to be able to narrow, with specificity, so that we

17    can get our hands around what exactly are the issues that

18    need to be resolved?

19        I see four different events.  Counsel is saying that on

20    some of the videos there may be multiple actions by law

21    enforcement officers -- I suspect where she's going -- and

22    because of the multiple actions, which ones are we going

23    after, which ones are they responding to, for example, on

24    August 26th.

25        So, Mr. Chang, let me hear from you.

1          MR. CHANG:  Sure.  So as an example, we believe we

2     have provided a lot of specificity, where -- and I don't want

3     to go into the merits here -- but when one of our declarants

4     talks about 20, 30 flash bangs or blast balls being directed

5     into the middle of a crowd, on a certain day; that's

6     specific.  And so I guess I just don't really understand what

7     more we need to provide for that.

8          They can provide their rebuttal evidence that places that

9     incident into context.  And I think counsel for the City is

10    also in some ways asking for an advisory opinion from you in

11    terms of, well, what do we need to establish for contempt?

12    They ask, is it a single incident that violates the order?

13    Is it multiple incidents?  Is it a single event?  Is it

14    multiple events?  A pattern?

15         Your Honor, a single incident that violates your order is

16    a violation of your order.  Now, whether that amounts to a

17    finding of contempt and sanctions, that's different.  What

18    plaintiffs are seeking is specificity in terms of examples.

19    So if there's an example that the judge finds is a violation

20    where an officer tosses, overhand, a blast ball into the

21    middle of a crowd, and, judge, you say that that violates the

22    order, regardless of whether you find a formal finding of

23    contempt, regardless of whether you find sanctions, that's

24    useful and important, because then that can be used as

25    guidance for the SPD.

1    On July 31st -- and also going back to your TRO order, you

2    talked about the need for providing guidance in order for the

3    City to know what it's able to do, what it's not able to do.

4    But the thing is, each finding of violation provides an

5    example.  It becomes a training tool, and then it provides

6    further clarity.  And it also, then, provides protection, the

7    expectations for our plaintiffs and for protestors to be able

8    exercise their rights, without fear of having their

9    constitutional rights violated.

10            MS. SHARIFI:  Your Honor, may I follow up?

11            THE COURT:  Yes.

12            MS. SHARIFI:  Thank you.

13    So, I think that the first kind of big-picture inquiry

14    that we have, and an advisory opinion or not, I think we're

15    framing this as a Fourth Amendment analysis.  And so kind of

16    this lingering question is, is this going to be a respondeat

17    superior type consideration of individual officer actions, or

18    what SPD and the City is doing as a response?

19            And that is one of the reasons why we persist in kind of

20    inquiring and seeking some guidance.  Because one officer's

21    actions and the assessment of that officer's actions, one, is

22    that officer has presumably been directed and instructed on

23    the appropriate use of force under the court's order; which

24    we've represented that they have.  And then to the extent

25    that officer's actions go outside of policy, which

1  incorporate the court's order for the time being, then that

2  officer is subject to discipline via OPA.

3        THE COURT:  Doesn't that go more towards mitigation

4  of what took place as opposed to an act of contempt?  In

5  other words, you're talking about policy; did that person

6  violate that police policy or the training.  But I think

7  that's separate, don't you agree, from the individual act of

8  the officer?

9        MS. SHARIFI:  I guess that's the question, Your

10  Honor, is, are we assessing the individual acts of officers

11  as opposed to the acts of the City as a whole?  And at what

12  point do we cross that benchmark?  So that's kind of one

13  big-picture question that defense has.

14     The second layer of it is, the plaintiffs alluded to a

15  number of alleged acts that are inconsistent -- I'm so sorry

16  -- my children, I'm sorry.

17        THE COURT:  That's fine, counsel.

18        MS. SHARIFI:  So, is the number of -- I'm sorry, I

19  lost my train of thought.

20        THE COURT:  No worries.

21        MS. SHARIFI:  The plaintiffs have referenced a number

22  of actions that fall outside the scope and parameters of the

23  court's order, those being the bike officer who is under

24  criminal investigation, uses of batons, uses of bikes as a

25  dispersal method.  And do we need to respond to those, I

1  guess, is another question?  Because that's outside of the

2  parameters of the court's order.

3      And the third question is, do we need to substantively

4  address the plaintiffs' prayer for relief which goes, again,

5  beyond just a contempt order on the preliminary injunction,

6  and, again, seeks to amend, modify, or add to the existing

7  preliminary injunction.

8      Because if we do need to get into that, then we need time

9  to be able to evaluate those and respond to those

10  appropriately, and how that fits, I guess, within the City's

11  overall accountability structure and processes.

12      So there's a multi-layered kind of request by the

13  plaintiffs where -- and this is why we do ask the court, you

14  know, what are the parameters of what contempt is, because it

15  impacts the amount of time that we'll need to be able to meet

16  these specific lines of inquiry.

17          THE COURT:  Well, counsel, I have to agree with

18  counsel for the plaintiffs in this case, what you're asking

19  the court to do is essentially give you an advisory opinion.

20  And some components of what takes place is you're trying to

21  blend everything all under one umbrella.  And I think the

22  more appropriate posture would be is, one, the plaintiffs in

23  this case must establish that contemptuous behavior has taken

24  place.  That would be whatever acts or allegations that

25  they've made.  That's what you would be defending against.

1    The next component of that is if the court were to make a

2  determination that there were violations of the court's

3  order, that's a separate component of this proceeding.  And

4  that's the reason I make reference to mitigation.

5    So the first part of what we're going to do is to

6  determine whether or not, in response to the specific and

7  precise allegations made by the plaintiffs, whether or not

8  that behavior took place.  And I think that's as far as the

9  court is prepared to go at this time, counsel.

10    The court has had the benefit of allegations, and the

11  court has had the benefit of responses from the City, but the

12  court hasn't heard any specific detailed argument or whatever

13  testimony is going to be provided.  The City has asked the

14  court for additional time for your officers to go out and get

15  additional information to be able to provide, by way of body

16  cams or video cams.

17    So whatever source of information -- I can't tell you,

18  counsel, how to defend your position.  I can't tell you what

19  direction for you to go.  What I can tell you is that there's

20  some very precise and specific allegations made against you.

21  That's the reason I started off with, have the parties had a

22  chance to meet and confer?  Because, to be honest with you, I

23  really do believe that a more efficient use of everyone's

24  time is to not have this e-mail battle, but to get on the

25  phone and get on the Zoom call and have the parties sit down

1   and try and hammer out, if there's any more detail or

2   specifics that you need based upon what's provided on the

3   four separate allegations.

4       From my review of the plaintiffs' brief, it appears to be

5   pretty specific and fairly succinct in terms of where the

6   allegations are.  Now, there's different conduct that takes

7   place, for example, on a given day.  And there are different

8   things that people are accused of doing on a given day.  But

9   nonetheless, counsel, I think if you went through that

10  pleading right now, and went through and identified specific

11  actions, and went through and looked at the declarations, as

12  I mentioned before, you can put those declarations under one

13  of these four categories.

14      I know there are some people in the declarations who have

15  represented that they went to multiple or more than one of

16  these events.  But nonetheless, it doesn't mean that you

17  can't categorize the claims that have been made against the

18  City.

19      Now, you may have a substantial amount of evidence that's

20  just out there.  And you're asking the court:  Help us narrow

21  down what evidence we need to pull in.  I can't direct your

22  defense in this case, counsel.  What I can do is tell you

23  that you'll have an opportunity, either through testimony or

24  declarations, to respond to the specific allegations.

25      But I really do believe that there's value to continuing

1  this hearing for a couple days, to give you and the

2  plaintiffs the benefit of an opportunity to meet and confer

3  and see if the parties can narrow down the specifics of what

4  the allegations are.

5      Counsel, I can tell you up to this point in time the

6  parties may disagree in terms of how events have taken place

7  and what should happen.  But nonetheless, I find that the

8  parties have been able to work through their differences and

9  come to different forms of resolution.  And I think you can

10  do the same thing here, not on the contempt determination

11  itself, but I think you can at least sit down and narrow the

12  specifics of what you have to defend.

13      It's in the plaintiffs' interest as well to be able to

14  narrow down the scope, because the City has asked for an

15  extended, long period of time to try and figure out what do

16  we need, and some of these cameras and some of the

17  investigation.

18      I'll tell you, the court was going to be somewhat tolerant

19  in giving the City a little more time to prepare your

20  materials, but at the same time the City is not going to wait

21  until you exhaust your administrative processing of law

22  enforcement officers, where there are investigations, be they

23  criminal or administrative determinations, as to whether or

24  not officers have violated procedures or policies.

25      The court is not going to give you that long a period of

1  time, because, as you know, counsel, some of those

2  investigations, with Loudermill hearings and some of the

3  other things, they can go on for months.  And I don't think

4  anyone wants this process or contempt hanging over you for

5  months.  So it's in the best interests to give you the chance

6  to try and engage in that process by discussing some of these

7  issues with counsel for the plaintiffs.

8      So what I'm going to do is I'm going to give you a couple

9  days, I'm going to reset this hearing, and it's not going to

10 be that far down the road.  And today is the 14th of October.

11 And what's the availability of the parties on Monday the

12 19th?  And I'm setting the date of the 19th to return back to

13 the court.  Is there any reason why the parties would not be

14 able to meet between today's date and the close of business

15 on Friday in order to be back before this court on the 19th?

16      MS. SHARIFI:  That should be fine, Your Honor.

17      MR. CHANG:  Yes, we'll be able to meet.

18      In terms of our schedule, it's best in the morning, 9:00

19 to 11:00 is my availability.  I teach a class at 11:00.  So

20 if we could avoid me having to reschedule that, I'd

21 appreciate that.

22      THE COURT:  How about the same time as today,

23 10 o'clock?

24      MR. CHANG:  That's perfect for us.

25      THE COURT:  And, counsel, if you can come to a joint

1  submission that's available to this court, that would be

2  greatly appreciated.  And I wonder if we should set this on

3  the 20th, that's Tuesday.  And, Victoria, we have status

4  hearings at 9:00 and 11:00.  I don't believe that the

5  9 o'clock matter is going to take more than an hour.

6        THE CLERK:  Your Honor, that is something that I

7  wanted to discuss with you.  I think both of those hearings

8  will be stricken.

9        THE COURT:  Counsel, why don't you spend the balance

10  of this week to work out your differences, get a joint

11  submission to this court on Monday.  And we can have a

12  hearing on the 20th at 10 o'clock.  Does that work all the

13  way around?

14        MS. SHARIFI:  Does the court want the joint

15  submission, even if there are kind of disagreements on

16  timeframe or parameters?

17        THE COURT:  I'll give you the parameters, counsel, in

18  terms of how far the court is going to go, for the City's

19  benefit, to know how much time you have to work with now,

20  counsel.

21     The response that was filed by the City indicating you

22  needed more time was October 2nd, we're now at the 14th, so

23  almost two weeks have already gone by.  The court will give

24  you the opportunity to go through -- I'd say November 2nd,

25  counsel, that would be Monday, the day before the election.

1　And here's the problem, counsel, in terms of the limited time

2　you have available, one, we have the holidays.  But more

3　importantly, this court is engaging in an attempt to try and

4　reopen our court for criminal jury trials.  We haven't been

5　able to do that for several months.  We tried to identify the

6　priorities of those defendants that have been in custody for

7　long periods of time, single defendants, and other issues, so

8　that we can move some of these cases that have not gone to

9　trial.

10　　　　Of the several cases that have been identified, this court

11　has responsibility of three cases.  Those cases are set for

12　trial, one week in duration, starting on the 30th of

13　November.  The next one starts on December 7th.  And the next

14　one after that starts December 14th.  So as you can see,

15　counsel, my calendar to try and balance all the demands is

16　putting some pressure on this court.

17　　　　Victoria, just let me ask something.

18　　　　　　THE CLERK:  Your video is off.  Thank you.

19　　　　　　THE COURT:  All right.

20　　　　　　MS. BOIES:  Your Honor, if I may.  The types of OPA

21　investigations for these types of use-of-force incidents, not

22　including the Loudermill and the process that occurs after

23　the administrative investigation is done, we typically give

24　them a six-month timeframe, because that is how long it takes

25　to do these things.  So even just understanding the pressures

1   of the court and your schedule, even an extra week here would

2   be really helpful in making sure that we are able to fully

3   provide the best defense for our client.

4          THE COURT:  Now, when you say "extra week," extra

5   week to do what?

6          MS. BOIES:  You said November 2nd.  So even a week

7   beyond that would be helpful.

8          MR. CHANG:  Your Honor, if I may.

9          THE COURT:  Yes.

10          MR. CHANG:  We have notified the City right after

11   each event.  So after August 26th, we sent a letter on

12   August 28th.  After September 7th, we sent a letter on

13   September 9th.  So they've been on notice for, I don't know,

14   in one circumstance 45 days, another circumstance 30-some-odd

15   days.  In the interests of getting an expeditious resolution,

16   as Your Honor knows, the protests are ongoing, we feel an

17   extra week is not appropriate here.

18          MS. BOIES:  We did receive those letters and provided

19   information in response.  What happened after that is

20   nothing.  We weren't told that there were still concerns.  We

21   weren't given any sort of feedback.  We provided a response

22   of our understanding of the events of every evening in

23   question, and we explained why we thought they were within

24   the parameters of the court, and we got no response back.

25          So, notice is a term that is both true and not so true,

1   because we were not aware that there were continuing

2   concerns, once we explained the perspective of the

3   commanders, the full understanding that they had, using

4   radios and everything else, about the full events of the

5   crowd and what they needed to respond t, that allowed for use

6   of these crowd-control tools within the parameters that the

7   court order had established.

8        THE COURT:  Counsel, whatever time the court gives

9   you, what do you contemplate providing to the court at the

10  end of that timeframe?  What do you contemplate providing to

11  the plaintiffs at the end of that timeframe?

12       MS. SHARIFI:  I think at this juncture, at least

13  personally my goal is to meet and confer with the plaintiffs

14  to specifically identify what we can agree on, and perhaps we

15  provide the court a preliminary response to the contempt

16  motion, so something more substantive, I anticipate, by

17  however long we have.

18       THE COURT:  All right.  Anything further from the

19  parties?

20     All right.  This is what the court is going to do.  I'm

21  not going to give you a timeframe.  I will tell you it will

22  not be any sooner than that first week in November, or any

23  later than that at this point in time.  And depending upon

24  what you come back to this court with on the 20th, that might

25  be helpful for the court in figuring out how much more time

1    is needed.  In other words, the more specificity that can be

2    identified in terms of what allegations to support the

3    contempt claims that are being made, then perhaps that way

4    narrow down what needs to be presented to the court so it

5    makes it easier for the court to narrow the scope of

6    proceeding.

7        Now, one of the things that I'm going to encourage the

8    parties to do is, whether the court gives you five days or

9    not -- that's the timeframe that we had set aside before --

10   one of the things I would encourage you to do is to work

11   towards agreement of the submission of declarations as

12   opposed to having live-witness testimony.

13       The live-witness testimony I'm not sure adds much more,

14   because in many of these the individuals in the declarations,

15   primarily by the plaintiffs, they identify an incident, and

16   the incident is supported by a video.  The court will have

17   the benefit of the video, presumably, as well as the

18   declaration, if the parties agreed to the declaration.  And

19   the defendants have the opportunity, if they have

20   counter-designations for videos or body cameras, to provide

21   information for the court's consideration.  Again, that can

22   be done by declaration as well as supplemented by videos.

23       So I don't know that we need to have 20, 25 or more people

24   come in and testify to repeat the same type of events or to

25   cross reference the same type of videos.  One of the videos I

1    believe was around -- I forgot the gentleman's name -- but

2    it's around 45 minutes long.  Counsel has targeted a specific

3    location in the video for the court to look at.  But

4    nonetheless, the court is looking for an approach that's

5    going to be concise, specific, and try and narrow the issues

6    so that each side has the opportunity to get their evidence

7    before the court.

8         But, again, I'm not in support of having volumes of

9    witnesses just to come in and repeat testimony over and over

10   again.  That applies both to the plaintiffs and applies to

11   the defendants as well.

12        The court also wants to emphasize what I mentioned

13   earlier, and that was the plaintiffs' submissions had a host

14   of Twitter videos.  Counsel, despite the modern age, I don't

15   have access -- I don't have a Twitter account.  I don't plan

16   on getting a Twitter account.  And I don't have some of the

17   other social-media accessibility, because that's not the type

18   of thing that I think judges need to be doing.  And it also

19   exposes us in a lot of different ways to a lot of other

20   different issues.

21        So if you do have that type of format that you want the

22   court to consider -- and that applies to plaintiffs and

23   defendants -- you need to put it on a flash drive or some

24   other means for the court to be able to access and review.

25        There were very few videos, counsel for the plaintiffs,

1  that I was actually able to see, and this applies to my law

2  clerk as well, that we were able to see, because of that

3  Twitter restriction.

4      And I'll let you know, I don't plan on signing up for

5  Twitter just for purposes of this case, for a lot of

6  different reasons.  But nonetheless, I think a word to the

7  wise is sufficient regarding what you're pursuing.

8      The other issue, counsel, is some components of the

9  submission by the plaintiff appears to be a modification of

10  the preliminary injunction.  And that may be a different

11  topic, counsel, as opposed to the subject of a motion for

12  contempt.  And so I'm giving you that as a heads up as well,

13  when you meet and confer with counsel regarding what

14  direction you wish to take.

15      The parties also raised what the format of the court was

16  to make a determination of a contempt finding and what the

17  sanction should be.  I think we're putting the cart before

18  the horse.  The court has to make a determination, first of

19  all, that there was contemptuous behavior, and then the next

20  question is the mitigation component, which may necessitate a

21  different hearing.  But nonetheless, we have to go on a

22  progressive fashion as opposed to saying, contempt, therefore

23  we need to issue the sanctions immediately.

24      Right now I have no idea what the plaintiffs even

25  contemplate by way of sanctions.  But I don't know if that's

1 something that you need to discuss at this point in time.

2 Right now we're trying to get to the evidentiary hearing and

3 have the opportunity to get those issues resolved and

4 addressed.

5 So, counsel, you've got a fair amount of work to do in the

6 next few days. And, again, I haven't identified how much

7 time the plaintiff is going to get. You know you're going to

8 receive at least a delay until that, until the 2nd, which

9 I've already stated. And depending upon what you identify, I

10 may extend it. I may leave it the same. But nonetheless,

11 counsel, that's as far as the court is prepared to go right

12 now.

13 Let me ask something else. What about discovery issues?

14 Is that an issue that needs to be addressed by the court?

15 MS. SHARIFI: Your Honor, if I may, I think one of

16 the questions is, the plaintiffs have filed their contempt

17 motion and they've submitted their supporting declarations.

18 At this point I think it's the City's position to respond

19 with evidence. I don't know -- I guess my question is, I

20 don't really know what discovery needs to occur, given kind

21 of, the contempt motion with supporting evidence, the

22 response with supporting evidence. And then I anticipate

23 that the plaintiffs will have the opportunity to reply. So,

24 that's kind of another area where I'm happy to meet and

25 confer with plaintiffs, as needed.

1          THE COURT:  The reason I bring this up, counsel, is

2     that was some question in the last go around in terms of how

3     much body-cam footage that plaintiffs were entitled to, and

4     then how much notice or timing would be allocated to the

5     plaintiffs to prepare their response and reply.  And so that

6     is an issue that needs to be addressed as well.

7          Obviously, the defendants have to figure out the scope of

8     what you need to produce by way of discovery -- not

9     discovery, by way of where you're going to get and what

10    you're going to get in terms of presenting by way of

11    evidence, and then what and how it can be produced to the

12    plaintiffs.

13         I hope that clarifies and helps the parties out.

14         MS. SHARIFI:  Yes, Your Honor.

15         THE COURT:  All right.  Just one second.

16    All right.  I think that covers as much as I can see.  One

17    of my questions was going to be whether or not the City would

18    waive an evidentiary hearing and proceed to resolve this just

19    on affidavits.  So I think I'll ask the question anyway.

20         Mr. Chang, do you know at this point, would the plaintiffs

21    be capable of agreeing to waiving a formal evidentiary

22    hearing and instead resolving the matter just on affidavits

23    and declarations and the video submissions?

24         MR. CHANG:  Your Honor, we are prepared to move just

25    on affidavits and video submissions.

1      THE COURT:  All right.  And let me ask the City the

2  same question.

3      MS. SHARIFI:  And, Your Honor, I'm going to have to

4  confer with the client on that one.

5      THE COURT:  Okay, that's fine.  That's another issue

6  that you can discuss with your client.  I'm not going to

7  force your hand.  But I'm just trying to, as they call it,

8  smoke out all the possible issues, as a means of trying to

9  craft a resolution so the parties can come back to the court

10  for something that's meaningful.

11     And, counsel, as far as what your written submission could

12  be, I hope it would be a joint submission.  Or you can have

13  one document, you can obviously have your differences

14  included in that document, but I prefer to have one document

15  as opposed to countering documents.  You can put plaintiffs'

16  position, defendant's position.  But I'm trying to cut down

17  on the volume of paperwork, particularly in light of the

18  volume of paperwork I have on a host of other matters.

19     So, anything further from counsel for the plaintiff,

20  Mr. Chang?

21     MR. CHANG:  Just one thing, Your Honor.  I might have

22  missed it.  But was there a time on the 19th that you want

23  our submission?

24     THE COURT:  Yes, let's get it here by 3 o'clock on

25  the 19th.  Then we've agreed for the hearing to take place on

1    the 20th at 10 o'clock.

2        Okay.  Counsel for the defense, I've already asked counsel

3    for the plaintiff.  Is there's anything further?  Anything

4    further from the defense perspective?

5            MS. SHARIFI:  No, Your Honor.  I thank you for your

6    time.

7            THE COURT:  Thank you, counsel, for participating

8    today.  And I trust the Zoom format is adequate to give the

9    parties an opportunity to meet with the court.

10       We will be in recess.  Thank you.

11                    (Adjourned.)

12              C E R T I F I C A T E

13

14

15       I certify that the foregoing is a correct transcript from

16   the record of proceedings in the above-entitled matter.

17

18

19

20   /s/ Debbie Zurn

21   DEBBIE ZURN
     COURT REPORTER

22

23

24

25