THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE

| | |
|---|---|
| BLACK LIVES MATTER SEATTLE KING COUNTY, ABIE EKENEZAR, SHARON SAKAMOTO, MURACO KYASHNA-TOCHA, ALEXANDER WOLDEAB, NATHALIE GRAHAM, AND ALEXANDRA CHEN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE,<br><br>Defendant. | No. 2:20-CV-00887-RAJ<br><br>PLAINTIFFS' MOTION FOR CONTEMPT SANCTIONS<br><br>NOTE ON MOTION CALENDAR:<br>December 25, 2020 |

PLAINTIFFS' MOTION FOR CONTEMPT
SANCTIONS
(No. 2:20-cv-887 RAJ)

150426442.2

**TABLE OF CONTENTS**

**Page**

I. RELIEF REQUESTED ................................................................................................ 1

II. BACKGROUND ......................................................................................................... 1

III. AUTHORITY AND ARGUMENT ............................................................................. 1

    A. Nonmonetary Coercive Sanctions Are Appropriate ............................................... 2

    B. The Court Should Award Plaintiffs Attorneys' Fees and Costs ............................. 5

IV. CONCLUSION ............................................................................................................ 6

## I. RELIEF REQUESTED

Plaintiffs seek an order granting civil contempt sanctions to ensure future compliance with the Court's orders to prevent Defendant City of Seattle from further uses of less lethal weapons against peaceful protestors in a manner that is indiscriminate, disproportionate, and unnecessary to prevent specific injury or illegal activity. Plaintiffs additionally seek attorneys' fees and costs.

## II. BACKGROUND

The Court entered a Temporary Restraining Order ("the TRO") limiting the City's use of less-lethal weapons on June 12, 2020. ECF 34. The parties stipulated to a preliminary injunction with terms identical to the TRO extending the injunction through September 30, 2020, which the Court entered on June 17, 2020 (the "PI Order"). Citing numerous violations of the PI Order, Plaintiffs moved for an Order to Show Cause why the City should not be held in contempt for violating the PI Order on July 27, 2020. Subsequently, the parties reached an agreement and the Court entered an Order Granting Stipulated Clarification of the Preliminary Injunction ("Clarification Order"). ECF 109. The Clarification Order expanded on but did not supersede the PI Order, which remains in effect. On September 30, 2020, Plaintiffs again moved for an Order to Show Cause why the City should not be held in contempt for violating the Court's Orders on August 26, September 7, September 22, and September 23. On December 7, 2020, the Court granted Plaintiffs' motion in part, holding the City in contempt and requesting briefing and a proposed order in support of Plaintiffs' request for sanctions.

## III. AUTHORITY AND ARGUMENT

A district court has broad discretion to fashion appropriate relief in civil contempt proceedings where the relief is calculated to compel compliance with a court order. *See*

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 2:20-cv-887 RAJ) – 1

150426442.2

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949) ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief."); *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980).  Sanctions may be either coercive or compensatory.  *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947); *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992).  If a sanction is imposed to coerce the defendant to comply with the court's order, "the court must, in determining the size and duration of the sanction, consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."  *Whittaker Corp.*, 953 F.2d at 517 (internal quotations omitted).

**A.     Nonmonetary Coercive Sanctions Are Appropriate**

Full remedial relief requires nonmonetary coercive sanctions because, as this Court held, the City's violations are not technical, and "are clear, in part, because they fundamentally defy the Court's Orders and the purpose behind them."  ECF 161 at 25.  The potential harm to Plaintiffs and other peaceful protesters from the City's continued noncompliance with the Court's Orders is high, especially in light of the City's consistent position—including in the lead-up to Plaintiffs' Second Contempt Motion—blaming protesters when force was used against them rather than acknowledging (much less correcting) any violation of the Court's Orders.  *See* ECF 114 at 12 (citing Perez Decl., Ex. B, D).  In its Nov. 2 Supplemental Response, the City includes a short section that declares that SPD officers are subject to discipline if they are found to violate the Order but provides no example of any officer who has been disciplined.  ECF 144 at 7-8.  The next section heading declares: "***Police officers deployed CCWs in compliance with the Court's Orders.***"  *Id*. at 8 (emphasis in original) (footnote omitted).

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 2:20-cv-887 RAJ) – 2

150426442.2

Further, as the Court noted, it is impossible to determine whether the City is compliant when the City fails to provide body-worn video footage "for many of the deployments," ECF 161 at 24, even when such evidence is available but not provided.  As the City itself has repeatedly stressed, Plaintiffs' witnesses do not always have the full context for a given deployment, without which it is difficult to ascertain the City's compliance with the Court's Orders.  The City's contempt, coupled with its refusal to provide video evidence that would allow the Court to evaluate compliance, demonstrate the need for greater transparency around the City's use of less-lethal weapons covered by the Orders.  Plaintiffs' proposed sanctions are narrowly tailored and strike a balance between providing the Plaintiffs with sufficient information to effectively monitor compliance without unduly burdening the City.

Plaintiffs request that each time the City deploys a less-lethal weapon covered by the Orders,[1] the City be required to submit the deploying officer's Use of Force Report[2] and relevant body worn video[3] to Plaintiffs within five days of the deployment.  The Use of Force Report should include: who deployed the less-lethal weapon; when it was deployed; the type and number of less-lethal weapons deployed; and an explanation about why each deployment of the less-lethal weapon(s) was used.[4]

---

[1] Alternatively, the Court could require the City provide Use of Force Reports and body worn video only when blast balls are deployed.

[2] Seattle Police Department Policy 8.400-POL-1 already requires officers to report all uses of OC spray, 40 mm launchers, and other impact weapons (including blast balls). http://www.seattle.gov/police-manual/title-8---use-of-force/8400---use-of-force-reporting-and-investigation. This requirement would not require any additional documentation beyond what is already required in the policy.

[3] Relevance will be a subjective determination by the City, but at a minimum should include the 90 seconds of video preceding and succeeding the deployment at issue.

[4] Seattle Police Department Police 8.400-TSK-3 requires Use of Force Reports to include, at a minimum, the following information: brief summary of the incident; description of the Type I force; why the force was necessary; who screened the incident; where the screening occurred; anything else noteworthy. http://www.seattle.gov/police-manual/title-8---use-of-force/8400---use-of-force-reporting-and-investigation#8.400TSK3

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 2:20-cv-887 RAJ) – 3

150426442.2

The requirement that the City promptly account for each use of less-lethal weapons is intended to "give to the alleged contemnor the opportunity to bring himself into compliance," and is entirely appropriate given the conduct at issue here and the City's failure to bring SPD into compliance even in light of the TRO, the PI Order, Plaintiffs' first Motion for an order to show cause, the Clarified Order, and the numerous letters Plaintiffs provided the City putting it on notice of officers' violative conduct. *Whittaker Corp.*, 953 F.2d at 518; *see also Puget Soundkeeper Alliance v. Rainier Petroleum Corp.*, No. C14-0829JLR, 2017 WL 6515970, at *11 (W.D. Wash. Dec. 19, 2017) (coercive sanctions should "motivate the contemnor with the opportunity to purge") (internal quotation omitted).

Plaintiffs also request that the City instruct all officers on the specific instances of contempt found by this Court. Such instruction should include provision of the Court's Order on Plaintiffs' Motion for Contempt, discussion of the facts surrounding the violations, and a warning of what the consequences will be for similar violations in the future.

Where, as here, actions short of sanctions fail to motivate compliance, nonmonetary coercive sanctions of the kind we request are appropriate. For example, in *Parsons v. Ryan*, 949 F.3d 443, 458-59 (9th Cir. 2020), the Ninth Circuit recently upheld nonmonetary sanctions including that the Arizona Department of Corrections file monthly reports of every instance of noncompliance with the parties' settlement agreement. In another case, after finding that the City of Memphis had violated a consent decree, the court imposed several sanctions to ensure future compliance with the consent decree, including establishing a training program for the police department, revising police department policies, and instituting periodic reporting. *See ACLU of Tennessee, Inc. v. City of Memphis*, No. 17-CV-02120, 2020 WL 5630418, at *2 (W.D. Tenn. Sept. 21, 2020); *see also Trueblood v. Washington State Dep't of Social and Health*

*Services*, No. C14-1178-MJP, 2016 WL 3632486, at *9 (W.D. Wash. July 7, 2016) (imposing sanctions in the form of a reporting requirement and monetary fines after defendants failed to comply with the court's preliminary injunction by the compliance deadline); *Mannick v. Kaiser Found. Health Plan, Inc.*, No. C 03-5905 PJH, 2006 WL 3734390, at *14 (N.D. Cal. Dec. 18, 2006) (rigorous court oversight was more effective in enforcing compliance with consent decree than monetary penalty and imposed sanction of regular compliance hearings); *Coleman v. Brown*, No. 90-CV-0520, 2017 WL 1398828, at *5 (E.D. Cal. Apr. 19, 2017), *aff'd*, 756 F. App'x 677 (9th Cir. 2018) (implementing additional reporting requirements to coerce compliance with court-ordered remedial plan). *Cf. In re Recall of Jenny Durkan*, No. 98897-8, 2020 WL 7252088, at *7 (Wash. Dec. 10, 2020) (expressing that allegations of SPD officers' response "to the protesters' exercise of their First Amendment rights" are "deeply troubling and certainly cannot be considered frivolous" and that "those responsible must be held accountable").

The nonmonetary sanctions Plaintiffs propose are well within the bounds of the Court's discretion in remedying contempt and are aimed at changing the harmful police behavior that the Court found was contemptuous. The proposed sanctions will assist the Court in both purging the contempt and preventing future violations of the Court's orders.

**B.      The Court Should Award Plaintiffs Attorneys' Fees and Costs**

When a Court imposes civil sanctions, it has two goals: future compliance with the violated order and full remedial relief to the party harmed by the breach. *McComb*, 336 U.S. at 193. A district court has discretion to award attorneys' fees for the time and resources spent as a result of the City's violation of its legal obligations. *Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994).  The award of fees and costs is "independent of an award of compensatory damages." *Cmty. Ass'n for the*

*Restoration of the Env't v. Nelson Faria Dairy, Inc.*, No. CV-04-3060-LRS, 2011 WL 6934707, at *11 (E.D. Wash. Dec. 30, 2011) (citing *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985)). This rule appreciates that "the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order." *Id.* at 705. *See also Donovan v. Burlington Northern, Inc.*, 781 F.2d 680, 684 (9th Cir. 1986) (abuse of discretion where the district court failed to analyze whether awarding attorneys' fees would be a proper remedial measure).

Plaintiffs are entitled to compensation for the fees and costs incurred in bringing its motion to hold the City in contempt, pursuant to a petition for fees that Plaintiffs will file separately. *See RRW Legacy Mgmt. Grp., Inc. v. Walker*, No. C14-326 MJP, 2017 WL 1283480, at *1 (W.D. Wash. Apr. 6, 2017) (granting plaintiff's motion for sanctions in the form of an award of its fees and costs, and ordering that plaintiff submit its request for reasonable costs and attorney fees in separate motion to be filed within 14 days of date of order), *aff'd*, 751 F. App'x 993 (9th Cir. 2018); *see also BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1011-RSM, 2020 WL 4430998, at *5 (W.D. Wash. July 31, 2020) (granting defendant's motion for contempt sanctions—including attorneys' fees—and ordering that defendant include its fee request with documentary evidence reflecting fees sought and hourly rate in later Motion for Attorney's Fees to be made at conclusion of case).

## IV.     CONCLUSION

For these reasons, Plaintiffs respectfully request the Court enter Plaintiffs' proposed Order Granting Plaintiffs' Motion for Sanctions.

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 2:20-cv-887 RAJ) – 6

150426442.2

DATED: December 11, 2020

By: s/ David A. Perez
By: s/ Carolyn S. Gilbert
By: s/ Rachel Haney
By: s/ Nitika Arora
By: s/ Heath Hyatt
By: s/ Paige L. Whidbee
David A. Perez #43959
Carolyn S. Gilbert #51285
Rachel Haney #52637
Nitika Arora #54084
Heath Hyatt #54141
Paige L. Whidbee # 55072

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  DPerez@perkinscoie.com
           CarolynGilbert@perkinscoie.com
           RHaney@perkinscoie.com
           NArora@perkinscoie.com
           HHyatt@perkinscoie.com
           PWhidbee@perkinscoie.com

By: s/ Nancy L. Talner
By: s/ Lisa Nowlin
By: s/ Breanne Schuster
By: s/ John Midgley
Nancy L. Talner #11196
Lisa Nowlin #51512
Breanne Schuster #49993
John Midgley #6511

**American Civil Liberties Union of Washington Foundation**
P.O. Box 2728
Seattle, WA  98111
Telephone: (206) 624-2184
Email:  talner@aclu-wa.org
           lnowlin@aclu-wa.org
           bschuster@aclu-wa.org
           jmidgley@aclu-wa.org

By: s/ Robert S. Chang
By: s/ Melissa Lee
By: s/ Jessica Levin
Robert S. Chang, #44083

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 2:20-cv-887 RAJ) – 7

150426442.2

Melissa Lee #38808
Jessica Levin #40837

**Fred T. Korematsu Center for Law and Equality**
Ronald A. Peterson Law Clinic
Seattle University School of Law
1112 E. Columbia Street
Seattle, WA  98122
Telephone: 206.398.4025
Fax:  206.398.4077
Email:   changro@seattleu.edu

*Attorneys for Plaintiffs Black Lives Matter Seattle-King County, Abie Ekenezar, Sharon Sakamoto, Muraco Kyashna-tochá, Alexander Woldeab, Nathalie Graham, and Alexandra Chen*