THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLACK LIVES MATTER SEATTLE-KING COUNTY, ABIE EKENEZAR, SHARON SAKAMOTO, MURACO KYASHNA-TOCHA, ALEXANDER WOLDEAB, NATHALIE GRAHAM, and ALEXANDRA CHEN,

    Plaintiffs,

v.

CITY OF SEATTLE,

    Defendant.

NO. 2:20-cv-00887

THE CITY OF SEATTLE'S MOTION FOR RECONSIDERATION AND REQUEST FOR LEAVE TO SUPPLEMENT THE RECORD RE PLAINTIFFS' MOTION TO HOLD THE CITY IN CONTEMPT

NOTE ON MOTION CALENDAR:

**December 21, 2020**

/
/
/
/
/

THE CITY OF SEATTLE'S MOTION FOR RECONSIDERATION AND REQUEST FOR LEAVE TO SUPPLEMENT THE RECORD RE PLAINTIFFS' MOTION TO HOLD THE CITY IN CONTEMPT
(2:20-CV-00887) - 1

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

| | |
|---|---|
| 1 | **I.   STATEMENT OF FACTS** |

Plaintiffs' Complaint and TRO motion sought relief under *Monell* alleging that relief was necessary because of the City's "policies and practices." (Dkt 1, ¶¶ 1, 12, 140-47; Dkt. 6). The Court temporarily enjoined deployments of crowd control weapons ("CCW") absent certain conditions, and included "officers" among the enjoined, the same language later absorbed into a stipulated preliminary injunction. (Dkts. 41 & 42; 109-10; Dkt. 34).

Plaintiffs' September 30 motion for contempt encompassed many CCW deployments from four events, supported by videos and 19 declarations. (Dkts. 114-34.) The City consistently raised concerns about compressed timeframes for responding. In its supplemental response, the City provided as much evidence related to CCW use at the four demonstrations as reasonably possible, including draft reports not yet reviewed for completeness, which detailed 122 deployments. (Dkt. 144.) Of those deployments, the Court based its contempt finding on four, about which the City sets forth additional, clarifying evidence in the declarations of Matthew Didier, Riley Caulfield, Bob Christie, Erik Eastgard and (Supplemental) John Brooks, filed herewith.

**II.   AUTHORITIES AND ARGUMENTS**

This Court has authority to reconsider its December 7, 2020 Order and deny Plaintiffs' motion to hold the City in contempt. LCR 7(h)(1) sets the standard for reconsideration motions, which are disfavored. While contempt proceedings often occur in a "more summary fashion," additional information and consideration is appropriate if a party has given the court "any reason to believe they would have found [more] significant evidence had they been given more time." *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1130 (9th Cir. 2013). Here, the City diligently prepared a response to the Motion for Contempt

THE CITY OF SEATTLE'S MOTION FOR
RECONSIDERATION AND REQUEST FOR LEAVE
TO SUPPLEMENT THE RECORD RE PLAINTIFFS'
MOTION TO HOLD THE CITY IN CONTEMPT
(2:20-CV-00887) - 2

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

and consistently raised concerns about its ability to fully respond in the short timeframe. (Dkts. 135 and 144). Reconsideration of the Court's contempt finding is appropriate because it did not apply the *Monell* standard; erroneously held the City to a perfect, rather than substantial, compliance standard; and incorrectly concluded 4 of 122 deployments violated the injunction.

### A. *Monell* Standard Must Apply to Hold a Municipality in Civil Contempt.

The Court determined *Monell* did not control here. Further, it found the City's stipulation to a preliminary injunction waived its objections to vicarious liability. Both assertions are incorrect. That individual agents of the City (officers) would be the ones to use the CCWs governed by the injunction is simply a practical reality and legally consistent with Rule 65(d)(2) binding parties' agents to injunctions. The legal question of which entities and individuals are bound by the injunction is distinct from the legal question of what constitutes a violation by the City as a whole. The threshold for finding a violation by the City does not change with the mere mention of officers in the injunction; any such change in legal standards would need to be expressly stated. *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) ("An injunction against state actors . . . must not 'require more of state officials than is necessary to assure their compliance with the constitution.'").

*Monell*'s prohibition on vicarious liability absent the City's actions being the moving force behind an unconstitutional policy or practice applies with equal force to the injunction. Yet the contempt finding was not based on City policy or practices, but four individual, isolated, officer actions. Relief in the Contempt proceedings therefore impermissibly went beyond what could be enjoined, given its basis in a *Monell* action. "Nothing in the text of § 1983 suggests that the causation requirement contained in the statute should change with the form of relief sought." *Los*

RECONSIDERATION AND REQUEST FOR LEAVE
TO SUPPLEMENT THE RECORD RE PLAINTIFFS'
MOTION TO HOLD THE CITY IN CONTEMPT
(2:20-CV-00887) - 3

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*Angeles Cty., Cal. v. Humphries,* 562 U.S. 29, 36-37, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010). Other courts have rejected similar attempts to widen the reach of an injunction to exceed the relief available for the claims in the Complaint:

> An overly broad decree whose terms are divorced from the relief sought may be as ambiguous as a vague decree. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 197, (1949) (Frankfurter dissent). Accordingly, at times we have found it necessary to construe the language of an injunction consistently with plaintiff's complaint and the relief to which he was entitled under the appropriate legislation.

*New York Tel. Co. v. Commc'ns Workers of Am., AFL-CIO*, 445 F.2d 39, 48 (2d Cir. 1971) (some internal citations omitted). Plaintiffs' Complaint sought relief from the alleged unconstitutional City policy or customs during demonstration management, but absent that, not from individual officer actions. The injunctive language should be similarly construed. If the injunction is construed to allow a contempt finding against the City because of isolated officer actions, it is the embodiment of overly broad, ambiguous injunctions about which Justice Frankfurter warned. "[C]ourts are to construe ambiguities and omissions in consent decrees as redounding to the benefit of the person charged with contempt." *Gilday v. Dubois,* 124 F.3d 277, 282 (1st Cir.1997) (internal citations and punctuation omitted), *See also United States v. Holtzman,* 762 F.2d 720, 720 (9th Cir. 1985).

The *Monell* standards properly applied do not support a contempt finding on this record. Even if 4 of 122 deployments violated the Order, this Court already recognized that the City went beyond the requirements of the Orders on pushing compliance (Dkt. 161, p. 25:11-17) and no clear and convincing evidence establishes a practice to the contrary.[1] Moreover, the 122 deployments

---

[1] To the extent that individual officers are being accused of violating the Order, due process guarantees each accused Officer the right to a complete record.  *See* Dkt. 78, pp. 4-5.

THE CITY OF SEATTLE'S MOTION FOR RECONSIDERATION AND REQUEST FOR LEAVE TO SUPPLEMENT THE RECORD RE PLAINTIFFS' MOTION TO HOLD THE CITY IN CONTEMPT (2:20-CV-00887) - 4

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

are not the appropriate universe for evaluating the conduct. When evaluating if the City has practices of "sufficient duration, frequency and consistency" such that unnecessary CCW deployments are the City's "traditional method" of demonstration management, one cannot ignore (as Plaintiffs' ask the Court to do) all the other daily protests between August 26 and September 22 about which Plaintiffs presented no evidence, in part because CCWs were often not deployed. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Even if the four event dates are considered in isolation, there is still no pattern or practice established here.

### B. The City Took All Reasonable Steps to Comply with the Injunction.

If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt. *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir.1986). The U.S. Supreme Court has held similarly, especially where there is a "fair ground of doubt as to the wrongfulness of the conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801–02 (2019). Here, even when seeking coercive relief, Plaintiffs fail to identify a single step the City should have, but did not, take to achieve compliance; the inability to do so speaks volumes. The record shows the City took steps to promote compliance and that was recognized by this Court.[2] (*See* Dkt. 161, p. 25).

### C. Plaintiffs Did Not Provide Clear and Convincing Evidence for Contempt.

A contempt finding requires clear and convincing evidence to establish that the enjoined party (a) violated the court order, (b) did not substantially comply, and (c) did not apply a good

---

[2] Those steps included disseminating the Order department-wide and during protest management roll calls. The Blue Teams template reinforces for officers there are limited permissible CCW deployments. See Christie Decl., Ex. B.

THE CITY OF SEATTLE'S MOTION FOR RECONSIDERATION AND REQUEST FOR LEAVE TO SUPPLEMENT THE RECORD RE PLAINTIFFS' MOTION TO HOLD THE CITY IN CONTEMPT (2:20-CV-00887) - 5

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

faith and reasonable interpretation of the order. *Labor/Cmty. Strategy Ctr. v. Los Angeles County. Metro. Transp. Authr.,* 564 F.3d 1115, 1123 (9th Cir. 2009).  Discussed in reverse order here, Plaintiffs cannot establish any of these elements. First, officers made reasonable interpretations of the order. This injunction is unusual, with no concrete mandate (produce documents) or restriction (stop using a company name). Compliance is predicated instead on a perception-based safety analysis, allowing targeted use of CCWs when necessary for safety under the totality of the circumstances.[3] The record establishes why each officer viewed deploymentS as reasonable and necessary. For the contempt standard to be met, the officer's field threat assessment must have been not just wrong, but *unreasonable*[4] as a matter of law. "The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 490 (1989).[5] The Court viewed most of these deployments as a "close call" and the officer's perception matters. Second, the City should not be enjoined for isolated violations of a protester's rights;[6] and such violations should not equal contempt. Substantial compliance depends on the circumstances, and an enjoined party need not "achieve 'letter perfect compliance' with the order at issue." *AccuSoft Corp. v. Palo*, 237 F.3d 31, 47 (1st Cir. 2001) (internal citations omitted); *See also S. Ry. Co. v. Bhd. of*

---

[3] Acknowledgment of attendee violence at demonstrations is not evidence of the City's resistance to limitations on CCW deployment. While protest movements of the past embraced non-violence as a central, core component of their message, currently, some attendees – repeatedly - come prepared to attack property and police. Even if most protesters do not support the violence, targeted use of CCWs may be reasonable and necessary under such circumstances.

[4] A deployment during a peaceful demonstration may have been unreasonable under the law. However, here, the Court already recognized that none of the events at issue were completely peaceful.

[5] For example, if a lieutenant determines a strobe light flashing in the eyes of an officer driving a car surrounded by an angry crowd requires intervention, the Court must not just disagree, but find it unreasonable as a matter of law.

[6] "Sporadic or isolated violations of individual protester's rights are insufficient to support broad injunctive relief against an entire agency." *Lewis v. Casey,* 518 U.S. 343, 360 (1996).

| | |
|---|---|
| THE CITY OF SEATTLE'S MOTION FOR RECONSIDERATION AND REQUEST FOR LEAVE TO SUPPLEMENT THE RECORD RE PLAINTIFFS' MOTION TO HOLD THE CITY IN CONTEMPT (2:20-CV-00887) - 6 | **Peter S. Holmes**<br>Seattle City Attorney<br>701 5th Avenue, Suite 2050<br>Seattle, WA 98104-7095<br>(206) 684-8200 |

*Locomotive Firemen & Enginemen*, 337 F.2d 127, 135 (D.C. Cir. 1964) (substantial compliance with 47 violations in 42,000 instances); *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 19 (D.D.C. 1999) (substantial compliance based on percentage of existing documents produced).

Here, Plaintiffs' contempt motion alleged, but did not prove, widespread, totally indiscriminate CCW use. Then, the Court's assessment of substantial compliance compared only four confirmed compliant deployments to four non-compliant ones. It held that there was no clear and convincing evidence that the "other use" deployments (the remaining 114) were inconsistent with the Orders. (Dkt. 161, p. 24). Excluding the "other uses" in the Court's calculation improperly ignores the Plaintiffs' burden and the Court's own findings. "Close calls" establish reasonable, if not letter perfect, deployments and cannot simply be removed from the substantial compliance analysis. For the Plaintiffs' motion for contempt to be viable, clear, and convincing evidence of more than four isolated perceived violations are required.

Finally, there were no violations of the Order. Consideration of actions not specifically enjoined, like CCW use by back row officers, or not watching where blast balls land, is improper. Omissions or lack of clarity in *draft* Blue Team reports are not evidence of failure to comply. Additional declarations of the four events further detail the basis for each deployment.[7]

### III.   CONCLUSION

The City requests that the Court reconsider its prior ruling and vacate its contempt Order.

---

[7] FN 5 of the City's response stated in part: "If the Court disagrees that Plaintiffs are required to prove *Monell* liability in order to establish contempt […] the City requests that this Court identify those individual deployments and allow the City additional time to fully identify all of the information relevant to each one so that the Court can examine the totality of evidence available for each deployment. Dkt. 144, p. 8.

THE CITY OF SEATTLE'S MOTION FOR RECONSIDERATION AND REQUEST FOR LEAVE TO SUPPLEMENT THE RECORD RE PLAINTIFFS' MOTION TO HOLD THE CITY IN CONTEMPT (2:20-CV-00887) - 7

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Respectfully submitted this 21st day of December, 2020.

PETER S. HOLMES
Seattle City Attorney

By   */s/ Carolyn U. Boies*
   GHAZAL SHARIFI, WSBA# 47750
   CAROLYN U. BOIES, WSBA #40395
   Attorneys for Defendant City of Seattle
   Assistant City Attorneys
   Seattle City Attorney's Office
   701 Fifth Avenue, Suite 2050
   Seattle, WA 98104
   Phone: 206-684-8200
   E-mail:  Ghazal.Sharifi@seattle.gov
         Carolyn.Boies@seattle.gov

CHRISTIE LAW GROUP, PLLC

By   */s/ Robert L. Christie*
   ROBERT L. CHRISTIE, WSBA #10895
   THOMAS P. MILLER, WSBA #34473
   ANN E. TRIVETT, WSBA #39228
   MEGAN M. COLUCCIO, WSBA #44178
   Attorneys for Defendant City of Seattle
   2100 Westlake Avenue N., Suite 206
   Seattle, WA 98109
   Phone: 206-957-9669
   Email: bob@christielawgroup.com
        tom@christielawgroup.com
        ann@christielawgroup.com
        megan@christielawgroup.com

THE CITY OF SEATTLE'S MOTION FOR
RECONSIDERATION AND REQUEST FOR LEAVE
TO SUPPLEMENT THE RECORD RE PLAINTIFFS'
MOTION TO HOLD THE CITY IN CONTEMPT
(2:20-CV-00887) - 8

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200