THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLACK LIVES MATTER SEATTLE-KING
COUNTY, ABIE EKENEZAR, SHARON
SAKAMOTO, MURACO KYASHNA-
TOCHA, ALEXANDER WOLDEAB,
NATHALIE GRAHAM, and ALEXANDRA
CHEN,

                        Plaintiffs,

v.

CITY OF SEATTLE,

                        Defendant.

NO.  2:20-cv-00887

DECLARATION OF RILEY CAULFIELD

I, RILEY CAULFIELD, hereby declare as follows:

1.       I am over the age of 18 years old and am a citizen of the United States. I have personal knowledge of the facts set forth herein and am competent to testify to them at trial.

2.       I am a police officer with the Seattle Police Department.

3.       On September 22, 2020, I was on duty and on patrol.  At approximately 2218 hours, I responded to a request for additional units to assist with managing a group of 30-40 protestors

DECLARATION OF RILEY CAULFIELD - 1

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

that had converged the Seattle Police Department's East Precinct on 12th Avenue.   At approximately 2219 hours, a pickup pulled up directly outside of the East Precinct cement wall. Aside from the driver, another individual was observed hanging out of the window of the truck. The truck parked on Pine Street and inched just east of the intersection, so it could view the portion of the precinct along 12th Ave East. The truck then reversed directions and parked directly next to the East Precinct wall on the south side of Pine street.   This was significant to us, as several individuals have thrown Molotov cocktails over the fence of the Precinct resulting in fires. Individuals have also attempted to pile debris blocking police vehicle entry and exit points, which they then attempted to light on fire while simultaneously attempting to trap officers inside of the building by securing the emergency exits shut through improvised means.

4.     At the same time the truck had arrived at the East Precinct, a group of approximately 30-40 protestors were marching on foot, blocking all northbound, southbound, and center turn lanes of 12th Avenue East just south of Pine Street.   The group on foot converged at 12th Avenue East and Pine with the truck.   The truck turned northbound along 12th Ave and traveled ahead of the protest group. The protest group on foot followed after the truck.   The truck proceeded to make several laps around the surrounding blocks as the group continued to march and surround police vehicles.

5.     The protestors on foot blocked all vehicular traffic along 12th Avenue East from East Pine street to East Howell street as they marched.   Several Police vehicles responded to monitor the group.   Various members of the group were carrying bright strobe flashlights, umbrellas, and aluminum cans.   The protestors began aggressively encroaching on a police vehicle

DECLARATION OF RILEY CAULFIELD - 2

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    that was facing southbound, just north of the protest group.  The protestors began to surround the

2    officer's vehicle, while screaming, blaring loud noise devices, and shining their strobe lights

3    directly in the Officer's eyes.  The Officer was forced to begin driving in reverse to get away from

4    the group who was actively attempting to encircle their vehicle.  While the officer was driving in

5    reverse, the protestors continued to shine strobe lights into their eyes from mere feet away, causing

6    a significant and imminent risk to the safety of both the officer and the public.

7        6.    Several other police vehicles responded from the south of the protest group to

8    distract them from the single police vehicle to the north that was being overwhelmed.  As the police

9    vehicles met the protest group, multiple individual protestors began attempting to approach our

10   police vehicles from the rear.  A white female, with blue hair wearing all black, attempted to

11   approach a vehicle from its blind spot, in an obvious attempt to sneak up on its driver.  I intercepted

12   this protestor by shining my emergency lights and spotlight at the female.  The female began

13   screaming, and then went around our vehicles to join the larger protest group.  While the protest

14   group was advancing towards a police vehicle north of the group, members of the crowd began

15   laying down sharp metal objects in the road behind them in an apparent attempt to hinder, delay,

16   or damage police vehicles that were following the group.  I recovered two of these items, which

17   were pieces of metal cans that had been cut and contorted into sharp edges that protruded upwards

18   from the ground.

19       7.    Once the police vehicle to the north of the group was able to get out of the crowd

20   safely, the group changed directions southbound along 12th Avenue East.  They began

21   aggressively shouting and blaring noise devices, blinding me and other officers who were

DECLARATION OF RILEY CAULFIELD - 3

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    attempting to reverse their vehicles away.  The group was also encircling police vehicles that were

2    unable to safely reverse. Multiple residents of nearby homes also joined in the group,  walking into

3    the street and behind police vehicles.

4            8.      As the majority of the police vehicles reversed away from the encroaching protest

5    group, the crowd encircled my vehicle. Members of the crowd surrounded the driver's side

6    window, hood, passenger side window, and rear trunk of my vehicle.  I was unable to continue to

7    reverse the vehicle safely due to these actions, as members of the crowd were now behind me and

8    I did not want to accidentally hit one of them with the vehicle.  Even though I continued to display

9    my emergency lights and activate the siren, the crowd kept surrounding my vehicle. Lt. John

10   Brooks made multiple public address announcements, directing the protest group to disperse, clear

11   the roadway, and stop preventing officers from driving safely and freely. The crowd ignored these

12   repeated orders.  Because the crowd kept shining strobe lights into my vehicle, I could only

13   navigate the vehicle by looking at the backup camera display on located in the rearview mirror.

14   Even that was difficult to do because of the strobe lights being shined in my eyes.  The crowd

15   eventually seemed to realize that I was using the backup camera to see where I was going, they

16   moved behind the vehicle and blocked that out.  This created an extremely dangerous situation for

17   the crowd, other vehicles on the roadway, and me.  The roadway I was on (12th Avenue East) is a

18   major arterial road for the area and other cars were traveling on it.  The crowd had forced me to

19   move backwards in the wrong lane of travel.  This created an obvious safety hazard, and the

20   presence of people surrounding my vehicle in the roadway only compounded that hazard.  The

21   crowd surrounded my vehicle for several minutes before I had to stop due to the fact that they

DECLARATION OF RILEY CAULFIELD - 4

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

blocked the backup camera and continued to shine lights in my eyes, making it too dangerous to operate the vehicle safely.

9.     Once I brought my patrol vehicle to a stop, the surrounding protestors intimidated me by putting their cigarettes out on the hood of the vehicle, placing their hands on the car, and approaching both the driver and passenger side windows.  It became apparent that the crowd was intentionally creating roadblocks, interfering with my ability to drive safely.  I was also mindful of the fact that there had been recent attacks on police officers and the East Precinct.  Being isolated by the crowd created a dangerous situation that rendered me more vulnerable to being dragged out of my patrol car by the crowd and assaulted.

10.    The crowd behind my vehicle then moved away from the rear of the vehicle and I was able to resume moving slowly backwards in reverse.  However, the crowd in front of the vehicle continued to shine lights into my eyes and threaten to make contact with my vehicle.  This continued to pose a significant life safety threat to the crowd, the traveling public, and me.  While I was backing slowly, I could not see to operate the vehicle due to the multiple strobe lights.  I also continued to fear that I would be forced to stop, and members of the crowd would grow violent towards me, as they had been threatening to do that evening.  It was at this time that Lt. Brooks ordered an officer certified in use of crowd control weapons to deploy a blast ball to disperse the crowd from my vehicle.  The single blast ball deployment was effective.  It did not impact any members of the crowd, but it achieved its intended purpose of stopping the immediate threat to public safety and officer safety that the crowd around my vehicle posed.  The crowd dispersed from the front of my vehicle.  Further increasing the danger of this event, at around the time the

DECLARATION OF RILEY CAULFIELD - 5

blast ball was deployed, I spotted an unknown individual wearing all black clothing, obscuring their identity, with a bag of unknown items, heading into the crowd.  This concerned me, since there were recent Molotov attacks by similar protest groups at the East Precinct and the Seattle Police Officer's Guild.  I feared this individual may have been carrying Molotov cocktails or other items that could harm us.  I broadcast this information over the radio, which can be heard on the recording from my in-car video, which I understand has been filed with this Court as Exhibit F to the Declaration of John Brooks (docket 148).  This unknown threat added to the imminent safety threats the crowd's actions created.

11.    After the blast ball detonated, I pulled forward down a side street to provide backup to the officer who deployed the blast ball, because the crowd started advancing toward her.  I exited my vehicle and ordered the crowd back.  Once they moved back, I was able to rejoin the other police vehicles, which had been forced to retreat back to 12th Avenue East and East Pine street. The crowd continued to advance on police vehicles, at which point Lt. Brooks gave another dispersal order over his vehicle's public address system.

12.    Officers were able to move the crowd to the sidewalk and out of the street momentarily.  Lt. Brooks continued to issue multiple dispersal orders over the public address system of his car and advised to the group of available routes to leave.  The group was ordered to disperse either to the North or the West.  Eventually the crowd returned to block vehicular traffic in the street. Police vehicles initially followed the crowd to monitor for significant property damage or acts of violence.  The crowd continued to encircle, approach both driver's and passenger's side doors of patrol cars, blare sirens, and shine strobing lights in officer's eyes as they

DECLARATION OF RILEY CAULFIELD - 6

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   drove.  The group then continued to march in the street across several blocks surrounding the East

2   Precinct area, until they stopped inside of Cal Anderson park, changed out of their all-black attire,

3   and seemingly disbanded their protest.

4        13.    Prior to September 22, 2020, I had been repeatedly advised of this Court's

5   preliminary injunction regarding the use of crowd control weapons (CCWs), including OC spray

6   and blast balls.  Supervisors briefed officers on the contents of this Court's orders before every

7   demonstration, instructing us that all uses of crowd control weapons must comply with it.  I

8   understood that SPD officers were not permitted to use certain CCWs against persons peacefully

9   engaging in protests or demonstrations, but that the use of CCWs was permitted to take necessary,

10  reasonable, proportional, and targeted action to protect against a specific imminent threat of

11  physical harm to themselves or identifiable others or to respond to specific acts of violence or

12  destruction of property.  I also understood that, to the extent chemical irritants or projectiles were

13  used in accordance with the Court's order, they should not be deployed indiscriminately into a

14  crowd and, to the extent reasonably possible, they should be targeted at the specific imminent

15  threat of physical harm or to respond to specific acts of violence or destruction of property.  I also

16  understood that certain CCWs could not be used to re-route a protest (unless necessary to prevent

17  specific imminent threat of physical harm or to respond to acts of violence or destruction of

18  property); that certain CCWs should not be used without, when feasible, first issuing a warning

19  that is reasonably calculated to alert attendees in the area where the weapons are to be deployed

20  and allowing them time, space, and opportunity under the circumstances to leave the area; and that

21  certain CCWs could not be targeted against journalists, legal observers, or medics acting in that

DECLARATION OF RILEY CAULFIELD - 7

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

capacity.  Finally, I understood that it would not be a violation of the Court's order to direct a blast ball to an open space near a targeted individual rather than at a targeted individual.  These principles were routinely discussed with us and explained to us.

14.     From my observations on the scene, the bicycle officer who deployed the blast ball at Lt. Brooks' request on September 22 did so in compliance with the provisions of this Court's orders.  While the intent behind the deployment of the blast ball was to move the crowd away from my patrol car, the reason the crowd needed to be moved is that they posed a serious and imminent threat to officer safety and public safety.  Given the way the crowd had been encircling my vehicle and other vehicles, I feared that they would do so again and possibly smash a window and forcibly remove me from the car in an effort to harm me.  I was also concerned for the safety of the protesters, since my vision was significantly impaired by the multiple strobe lights being shined in my eyes.  This impeded my ability to see as I drove, which created an obvious safety threat.  Because I was afraid to stop my vehicle for fear of being harmed, I had to keep moving, but I worried that one or more protesters may put themselves in a position of danger behind my vehicle, resulting in serious injury.  The deployment of the blast ball to open space near the crowd caused the crowd to move away from my vehicle, de-escalating the imminent risk of harm the surrounding crowd posed.

/ / /

/ / /

/ / /

/ / /

DECLARATION OF RILEY CAULFIELD - 8

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1        I declare under penalty of perjury under the law of the United States that the foregoing is

2   true and correct.

3        SIGNED in Seattle, Washington this 19th day of December, 2020.

4

5                             _____

6                             RILEY CAULFIELD

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

DECLARATION OF RILEY CAULFIELD - 9

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669