HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BLACK LIVES MATTER SEATTLE-KING COUNTY, ABIE EKENEZAR, SHARON SAKAMOTO, MURACO KYASHNA-TOCHA, ALEXANDER WOLDEAB, NATHALIE GRAHAM, AND ALEXANDRA CHEN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE, SEATTLE POLICE DEPARTMENT,<br><br>Defendant. | Case No. 2:20-cv-00887-RAJ<br><br>ORDER ON MOTIONS FOR CONTEMPT SANCTIONS (Dkt. # 164), ATTORNEYS' FEES (Dkt. # 166), AND RECONSIDERATION AND LEAVE TO SUPPLEMENT THE RECORD (DKT. # 178) |

**I.   INTRODUCTION**

Before the Court are three motions. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, Plaintiffs' Motion for Contempt Sanctions (Dkt. # 164) is **GRANTED in part** and **DENIED in part**; Plaintiffs' Petition for Attorneys' Fees (Dkt. # 166) is **GRANTED in part** and **DENIED in part**; and Defendant's Motion for Reconsideration and Request for Leave to Supplement the Record (Dkt. # 178) is **DENIED**.

ORDER – 1

## II. BACKGROUND

On December 7, 2020, the Court found Defendant City of Seattle ("City") in contempt for violating the Court's preliminary injunction orders. Dkt. # 161. That ruling was the result of a contempt proceeding set in motion months earlier.

In late September, Plaintiffs filed a motion for an order to show cause why the City should not be held in contempt for violating the Court's preliminary injunction orders. Dkt. # 114. It was the second time Plaintiffs sought to hold the City in contempt. Two months before, Plaintiffs had filed another contempt motion. Dkt. # 51. That motion was initially set for an evidentiary hearing, Dkt. ## 89, 90, until the parties stipulated to dismiss the motion without prejudice and to enter an amended preliminary injunction, Dkt. # 110.

In their second motion for contempt, Plaintiffs claimed that the City violated the original preliminary injunction order, Dkt. # 42, and the amended preliminary injunction order, Dkt. # 110, during several protests. Specifically, Plaintiffs contended that the City's use of crowd control weapons on August 26, September 7, September 22, and September 23 of last year violated the two orders. Dkt. # 114.

Like the previous motion for contempt, the Court held a status conference to determine how to proceed with an evidentiary hearing. Dkt. ## 140, 159. The Court also asked whether the parties would stipulate to an alternative process. *Id.* Days after the conference, the parties agreed that the Court could consider the motion for contempt "based entirely on [] written submissions and without any live testimony." Dkt. # 141 at 2; *see also* Dkt. ## 142, 143. And so the Court did. In addition to its initial response to Plaintiffs' contempt motion, the City filed a supplemental response. Dkt. # 144. The supplemental response was supported by several declarations, containing scores of video evidence and police officer "use of force reports. Dkt. ## 145-151. In turn, Plaintiffs filed their reply. Dkt. # 152. On November 18, 2020, the Court heard oral argument on the motion. Dkt. # 160.

ORDER – 2

Weeks later, after reviewing both parties' submissions and hearing oral argument, the Court granted in part and denied in part Plaintiffs' contempt motion and held the City in contempt. Dkt. # 161. The contempt order identified four violations of the preliminary injunction orders and four "compliant uses." The remaining deployments, the Court held, were neither violations nor compliant uses. To determine the appropriate sanction, the Court requested supplemental briefing.

Since then, the parties have filed three motions. Dkt. ## 164, 166, 178. As requested, Plaintiffs filed a motion for contempt sanctions, in which they explain their requested sanctions. Dkt. # 164. Part of their request is a request for attorneys' fees, so they also filed a separate petition to that end. Dkt. # 166. The City responded to both motions, Dkt. ## 171, 176, and filed a motion of its own, a motion for reconsideration and leave to supplement the record, Dkt. # 178. Those motions are now before this Court, and the Court addresses each in turn.

### III.  DISCUSSION

**A.  Motion for Reconsideration and Leave to Supplement the Record (Dkt. # 178)**

Found in contempt of the Court's preliminary injunction orders, the City now asks for reconsideration. Dkt. # 178. According to the City, the Court erred "because it did not apply the *Monell* standard; erroneously held the City to a perfect, rather than substantial, compliance standard; and incorrectly concluded 4 of 122 deployments violated the injunction[s]." *Id.* at 3. The Court finds no such error.

**i.  Standing Order – Meet and Confer**

Under this Court's standing order, "counsel contemplating the filing of *any* motion shall first contact opposing counsel to discuss." Dkt. # 24 ¶ 6 (emphasis in original). This is a strict requirement. *Id.* Before filing this motion, the City did not meet and confer with Plaintiffs, nor did it seek to meet and confer. Dkt. # 187 ¶ 3. This is a violation of the Court's standing order. Though the Court will not strike the motion on

ORDER – 3

that basis, it will not hesitate to do so in the future.

### ii. Legal Standard

Motions for reconsideration are disfavored under the Local Rules for the Western District of Washington. Local Rules W.D. Wash. LCR 7(h)(1). "[I]n the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence," such motions will ordinarily be denied. *Id.* "A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (emphasis in original) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

### iii. *Monell*

The City previously argued that, to find it in contempt, the Court must fuse the civil contempt standard with the municipal liability standard articulated in *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). Dkt. # 144 at 4-5. The Court already considered the argument and rejected it. Dkt. # 161 at 9-10. The City insists that this was in error. Dkt. # 178 at 3-5. But it is the City that is mistaken.

The City claims that although individual SPD officers are indeed bound by the preliminary injunction orders, the "legal question of which entities and individuals are bound . . . is distinct from the legal question of what constitutes a violation by the City as a whole." Dkt. # 178 at 3. The Court's contempt finding, it says, still needed to be based on an "unconstitutional policy or practice." *Id.* Despite having multiple opportunities to do so, the City has cited no case in which a court has fused the civil contempt analysis and the municipal liability analysis in this way.

In re-raising this argument, the City does not raise new facts or intervening law that were not previously available to it. The Court presumes then that the City is seeking reconsideration for manifest error.

ORDER – 4

The Court rejects the City's call to ignore the well-settled standard for civil contempt in favor of a makeshift legal standard that the City just fashioned. The City's proposed standard fails for many reasons, two chief among them. First, neither the City nor the Court has found any precedent for this approach. At oral argument, when asked if they were aware of any other court fusing *Monell* with civil contempt, counsel for the City responded, no, "believe me, we looked." Dkt. # 165 at 38:18. Even now, the City has failed to supply any pertinent authority. Based on the Court's independent review, no court has done as the City suggests. Second, the City does not explain what its innovative civil contempt standard might look like. The City postulates that *Monell*'s standard for municipal liability applies equally to municipal contempt but does not say what its new proposed standard is. It does not say where the civil contempt analysis ends and where the *Monell* analysis begins. Even if the Court were to accept that *Monell* should be incorporated here, the City does not explain how.

The Court rejected this argument before, and it does so again. There is no manifest error.

To be sure, *Monell* is a live issue in this case; it is just not an issue here. Plaintiffs must no doubt meet the demands of *Monell* to ultimately prevail on their § 1983 claims. In granting preliminary injunctive relief, a court's findings of fact and conclusions of law are just that, preliminary, and are not binding at trial. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Surely, when the Court returns to the merits of the case, the City is free to argue that Plaintiffs have not proven municipal liability under *Monell*. But here the Court's inquiry is much narrower.

This matter is before the Court on the City's contempt of a court order. The Court's contempt order did not address the merits of the case. Here, the Court must assess whether the City violated the preliminary injunction orders—orders that the City co-authored and stipulated to. In those orders, the City is collectively defined as "including the Seattle Police Department and any other officers, departments, agencies,

ORDER – 5

or organizations under the Seattle Police Department's control." Dkt. # 42 ¶ 1; Dkt. # 110 ¶ 6(1). The City concedes that individual officers of the City are bound by the Orders. Dkt. # 178 at 3. But it suggests that individual officer violations do not result in contempt, leaving the preliminary injunction orders all but toothless. *Id.* Broadly, the Court agrees that in most circumstances a single officer's violation alone would not result in contempt of the Court's order. But the civil contempt standard already permits a court to exclude de minimis violations through the substantial compliance doctrine. The Court need not shoehorn in *Monell* as well.

Simply put, on a motion for contempt, the inquiry before the Court is will it hold the City to preliminary injunction orders that it has agreed to (twice), that Plaintiffs agreed to, and that the Court entered as its own order. The answer is yes. The next question is what standard shall the City be held to. The answer is not *Monell* but the civil contempt standard.

### iv. Substantial Compliance

In the contempt order, the Court found that the City did not substantially comply with the preliminary injunction orders. On motion for reconsideration, the City's argument is two-fold. First, it says that its compliance was perfect; there were no violations of the preliminary injunction orders at all. Dkt. # 178 at 7. Second, it says that even if there were violations, the City substantially complied but that the Court erroneously held it to a "letter perfect" compliance standard. *Id.* at 5-7. Again, because the City does not raise new facts or legal authority that were previously unavailable to it, the Court assumes that the City is seeking reconsideration for manifest error.

On the City's first point, the Court already explained that the City's conduct during the protest was not perfect and will not rehash that analysis here. *See generally* Dkt. # 161. Further, the Court did not hold the City to "letter perfect" compliance; it correctly applied the "substantial compliance" doctrine. *Id.* at 24-26. Under that doctrine, the City failed. *Id.*

ORDER – 6

1  The City has not identified any manifest error in the Court's application of the
2  substantial compliance defense.  In its previous order, the Court cited *In re Dual-Deck*
3  *Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993).  In that
4  case, the Ninth Circuit stated, "'Substantial compliance' with [a] court order is a defense
5  to civil contempt, and is not vitiated by 'a few technical violations' where every
6  reasonable effort has been made to comply." *Id.* (quoting *Vertex Distrib., Inc. v. Falcon*
7  *Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)).  The Court held that the City fell
8  short of this defense because the four clear violations of the preliminary injunction orders
9  were not "few" in number or "technical" in nature.  Dkt. # 161 at 24-26.

10  On motion for reconsideration, the City points to no manifest error, only its
11  disagreement with the Court's decision.  The Court did not hold the City to "letter
12  perfect" compliance, thereby holding the City liable for one, isolated incident of
13  misconduct.  Instead, the Court reviewed the evidence submitted by the parties—hours of
14  video evidence, declarations, and use of force reports—and based on the totality of the
15  circumstances found the City in contempt.

16  It based its finding on four clear violations of the preliminary injunction orders,
17  violations that were neither "technical" nor "inadvertent."  Dkt. # 161 at 24-26.  It
18  compared those violations against four uses that were justified.  *Id.*  Comparing the
19  violations and compliant uses, the Court found it even: four to four.  *Id.*  The Court
20  explained that the relevant comparison was between violations and compliant uses—not
21  violations and all uses, most of which were inconclusive.  *Id.*  But the City still insists
22  that the four violations must be weighed against all 122 deployments.  Dkt. #  178 at 7.
23  That is illogical.  The Court already explained that to do so would be to reward the City
24  by treating "remaining uses" and "compliant uses" all the same.  Dkt. # 161 at 25-26.  If
25  the Court had more evidence, many of these "remaining uses" may in fact be "clear
26  violations," making the City's contempt even more grave than previously thought.  *See*
27  *id.* at 24-26.  Thus, such a comparison would be inappropriate.

28  ORDER – 7

Besides holding that the violations were not technical or inadvertent, the Court also held that the City failed to show that it "made every reasonable effort to comply." Dkt. # 161 at 25. True, the Court noted that the City held mandatory briefings beyond what was required in the preliminary injunction orders. *Id.* at 25. But this was simply *an* effort to comply. In its response to the motion for contempt, the City did not explain how this mandatory briefing constituted *every reasonable effort* to comply. Dkt. ## 135, 144.

The Court finds no manifest error in its substantial compliance analysis.

### v.     Leave to Supplement the Record

The City also seeks leave to supplement the contempt record with five new declarations. Dkt. ## 179-83. Two of them supplement declarations already submitted; three are from brand new declarants. The declarations are from SPD officers, some of whom violated the preliminary injunction orders. In each, the officer offers new facts justifying the violations. The Court will not consider this evidence.

First, the information contained in the declarations existed at the time of the contempt proceedings. The City suggests that, had it been given more time, it would have provided this evidence. Dkt. # 178 at 2-3. That is unconvincing. The City does not argue that this new information—the identity of the officers who deployed the crowd control weapons in question and their detailed factual account of the deployments—were only just made available to the City. The City knew of these deployments and the officers involved when the motion for contempt was heard. It does not argue that this information, despite reasonable diligence, "could not have been brought to the attention of the court earlier." Local Rules W.D. Wash. LCR 7(h)(1). Instead, the City is providing this information only now because it now has the benefit of the Court's ruling. Dkt. # 178 at 7 n.7. Therefore, it was not time constraints that prevented the City from introducing these declarations earlier; it was because, at the time, the City did not know which deployments were in violation. That is not an appropriate reason to submit new evidence on a motion for reconsideration. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma*

ORDER – 8

*GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

Second, permitting the City to supplement the record would create an unworkable procedure for any future contempt proceeding. For illustration, the Court offers the following scenario: A protest is held. SPD uses crowd control weapons. Plaintiffs file a contempt motion. The Court sets the matter for an evidentiary hearing, allowing both parties to present their case with live testimony and providing the Court the benefit of direct and cross examination. Rather than proceed with the evidentiary hearing, the City stipulates to an abridged proceeding. Instead of live testimony, the City submits declarations and video evidence of its crowd control weapon use. Because the City presumably possesses most of the pertinent evidence (for example, body worn video footage and use of force reports), the City gets to define the universe of evidence that Plaintiffs and the Court review. Then, using only the evidence provided by the City, Plaintiffs make their arguments. Similarly, the Court reviews the imperfect record and draws its conclusions. Once the Court does so, the City supplements the record only where it disagrees with the Court's conclusions.

That is the procedure born by granting leave to supplement here. That procedure enables the City to use the lack of evidence as both sword and shield. A shield because, during the contempt proceedings, the City would only introduce the evidence that it sees fit and would ask the Plaintiffs and the Court to consider only that limited record. A sword because the City would then attack any findings made by the Court based on that limited record. The City asks to supplement the record only with evidence that exculpates it and not any evidence that incriminates it. For example, for the protest on September 23, 2020, there were thirty-something blast ball uses for which there was no body worn video footage. Dkt. # 161 at 24-25. The City does not ask to supplement the record to account for these uses. It only does so for its violations. And should the Court, out of fairness, allow Plaintiffs to obtain the evidence it seeks, these proceedings would be endless.

ORDER – 9

The Court will not allow the City to supplement the record. Doing so would permit the City to trickle out evidence that it had all along, long after Plaintiffs made their arguments and long after the Court drew its conclusions from the universe of evidence set by the City. The City's request for leave is denied.

### B.    Motion for Contempt Sanctions and Attorneys' Fees (Dkt. ## 164, 166)

Having found the City in contempt, the Court requested supplemental briefing on what the appropriate sanction should be. Dkt. # 161 at 27. Plaintiffs responded and request that the Court grant nonmonetary coercive sanctions and compensatory sanctions in the form of attorneys' fees. Dkt. # 164.[1] "A court may wield its civil contempt powers for two separate and independent purposes: (1) 'to coerce the defendant into compliance with the court's order'; and (2) 'to compensate the complainant for losses sustained.'" *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (quoting *United States v. UMWA*, 330 U.S. 258, 303-04 (1947)); *see also Parsons v. Ryan*, 949 F.3d 443, 455 (9th Cir. 2020). Coercive civil sanctions are designed to deter, often taking the form of conditional fines. *Shell*, 815 F.3d at 629. The "most definitive characteristic" of this type of sanction is the ability of the contemnor to "purge" itself of its contempt. *Id.* Compensatory civil sanctions, on the other hand, are meant to "compensate the complainant for actual losses." *Parsons*, 949 F.3d at 455 (quoting *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1129 (9th Cir. 2013)). "[T]hey typically take the form of unconditional monetary sanctions." *Shell*, 815 F.3d at 629. A court must determine "what [it] primarily seek[s] to accomplish by imposing the sanction[.]" *Id.*

### i.    Civil Coercive Sanctions

Coercive sanctions are inappropriate. Plaintiffs request that each time it deploys a

---

[1] In their motion for contempt sanctions, Plaintiffs claim that they are seeking attorneys' fees and costs. Dkt. # 164 at 3. In their separate petition for attorneys' fees, however, they do not request or mention costs or offer any evidence of costs. Dkt. # 166. Absent any evidence, the Court will not award any costs and will solely address the issue of fees.

ORDER – 10

crowd control weapon the City be required to submit the deploying officer's use of force report and relevant body worn video footage to Plaintiffs within five days. Dkt. # 164 at 5. Plaintiffs also ask that the City "instruct all officers on the specific instances of contempt," by using provisions of the Court's contempt order, discussing the facts surrounding the violations, and warning officers of any consequences. *Id.*

The Court will not grant these requests because they lack a purge condition, the most definitive characteristic of coercive sanctions. Given that the City cannot purge itself of its previous contempt, Plaintiffs' proposed sanctions would be unconditional, likely making them criminal, rather than civil, in nature. *Shell*, 815 F.3d at 629 (9th Cir. 2016) ("The civil contemnor is said to 'carr[y] the keys of his prison in his own pocket,' whereas the criminal contemnor 'is furnished no key, and he cannot shorten the term by promising not to repeat the offense.'" (quoting *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 827 (1994))).

### ii. Civil Compensatory Sanctions

Compensatory sanctions are appropriate. They may be used to "compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Shell*, 815 F.3d at 629 (quoting *Ohr ex rel. NLRB v. Latino Express, Inc.*, 776 F.3d 469, 479-80 (7th Cir. 2015)). And they must be based on "actual losses sustained as a result of the contumacy." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983). "[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 958 (9th Cir. 2014) (quoting *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985)). Hence, a trial court has discretion to "analyze each contempt case individually and decide whether an award of fees and expenses is appropriate as a remedial measure." *Perry*, 759 F.2d at 705.

Besides coercive sanctions, Plaintiffs also seek attorneys' fees. Dkt. # 164 at 7-8.

ORDER – 11

In total, they claim to seek $263,708.50 for 485.45 hours of work in preparing the motion for contempt and the motion for sanctions. Dkt. # 166. The City contests that amount, arguing that Plaintiffs hourly rates are too high, that they seek recovery for unrecoverable tasks, and that they only prevailed on four of 122 deployments. Dkt. # 176.

### (1) Attorneys' Fees

District courts have broad discretion to determine the reasonableness of fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). A district court employs a two-step process to calculate a reasonable fee award. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court calculates the lodestar figure, which represents the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Second, the court determines whether to increase or reduce that figure based on several factors that are not subsumed in the lodestar calculation. *See Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *see also Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). The lodestar figure is presumed reasonable. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

### (2) Reasonable Hourly Rate

The court must determine a reasonable hourly rate by considering the "experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). A reasonable hourly rate is not determined by the rate actually charged by a prevailing party. *Id.* Instead, the court considers the rate "prevailing in the community" for similar work by comparable attorneys. *Id.* at 1210-11. Affidavits of the attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for an attorney, are satisfactory evidence of the prevailing market rate. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). A Court may also rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate.

ORDER – 12

*Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Plaintiffs seeks to recover the fees for twelve attorneys, with varying levels of experience, and two paralegals. Dkt. # 166 at 2-3. Counsel's hourly rates range from $270 to $785. *Id.* Specifically, Plaintiffs claim the following hourly rates for each attorney: David Perez ($785); Carolyn Gilbert ($555); Rachel Haney ($500); Nitika Arora ($455); Malori McGill and Delaney Butler ($435); Paige Whidbee and Rachel Dallal ($410); Caitlin Hoeberlein ($270); Molly Tack-Hooper ($500); Lisa Nowlin ($400), and Robert Chang ($650). Dkt. # 168 ¶ 7; Dkt. # 169 ¶¶ 5, 8; Dkt. # 170 ¶ 11. Plaintiffs also seek fees for work done by two paralegals, Kiyomi Robinson ($295) and Maxim Yeryomenko ($285). Dkt. # 167 at 19; Dkt. # 168 ¶ 7. Nine of the 12 attorneys and both paralegals are from the law firm Perkins Coie. In support of the claim that these rates reflect the market, Plaintiffs offer a declaration from the managing partner of the law firm's Seattle office. Dkt. # 168. He claims that these rates are reasonable given Perkins Coie's regular "detailed market analysis of [its] billing rates using data from independent sources." *Id.* ¶¶ 6-7. The City contests these rates across the board. Dkt. # 176 at 3-6. It asks the Court to cut the rates because they are more than what comparable attorneys in this district have been awarded. *Id.* The Court agrees with the City. Based on the Court's knowledge and familiarity with the legal market and based on rate determinations in other cases, most of these rates are too high and must be reduced.

In addition to the Court's own knowledge and familiarity with the legal market, the Court relies on a couple authorities. Starting with counsel and paralegals from Perkins Coie, the Court notes that it has awarded attorney's fees to Mr. Perez in another case. Supplemental Declaration of Nicholas P. Gellert in Support of Plaintiffs' Motion for Sanctions ¶¶ 3, 7, *Wagafe v. Trump*, No. 2:17-cv-00094-RAJ, 2020 WL 2494726, at *1 (W.D. Wash. May 14, 2020), Dkt. No. 232. In *Wagafe*, the Court found that Mr. Perez's hourly rate at the time, $575, was reasonable. It also found that an hourly rate of $490 for a Perkins Coie associate with five years of experience was also reasonable.

ORDER – 13

Previous rate determinations such as these are satisfactory evidence of the market rate. *United Steelworkers*, 896 F.2d at 407.

Further, the Court relies on one of Plaintiffs' own cited cases. That case, *Thomas v. Cannon*, No. 3:15-cv-05346-BJR, 2018 WL 1517661, at *2 (W.D. Wash. Mar. 28, 2018), was filed in this district, and the court found that based on a "sampling of nationwide billing rates," Perkins Coie in the Seattle market charged $215 per hour for "associate low" and $405 per hour for "associate average." In *Thomas*, a partner at a law firm was awarded $600 an hour after requesting $625. *Id.*

The only evidence that Plaintiffs provide for the prevailing hourly rate for attorneys in Seattle is a conclusory declaration from a partner at Perkins Coie. Dkt. # 168 ¶¶ 6, 7. The declaration states each attorney's hourly rate and concludes that "[b]ased on industry studies and information from . . . Perkins Coie['s] data analytics experts . . .[the rates] fall within the reasonable range for attorneys and paralegals with their equivalent skill, experience, and education." *Id.* ¶ 7. This evidence is unhelpful. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) ("We have repeatedly held that the determination of a reasonable hourly rate 'is not made by reference to the rates actually charged [by] the prevailing party.'" (quoting *Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000)). Perkins Coie's self-assessment of what are reasonable attorneys' fees in the Seattle market—without a single outside source to corroborate the assessment—must be given little weight.

The hourly rate for the Perkins Coie attorneys must be adjusted accordingly. The Court finds that Mr. Perez's reasonable hourly rate should be reduced from $785 to $625. Similarly, for the associates who have practiced for more than a year—Ms. Gilbert, Ms. Haney, Ms. Arora, Ms. Whidbee, and Ms. Dallal—the Court finds a reasonable hourly rate of $420. For the associates who have practiced less than a year—Ms. McGill, Mr. Butler, and Ms. Hoeberlein—the Court finds a reasonable hourly rate of $270. These reductions bring the hourly rates within the ranges set forth in *Wagafe* and *Thomas*.

ORDER – 14

Regarding the paralegals, Plaintiffs provide no evidence that Perkins Coie's hourly rates are reasonable. In another case filed in this district, *Stewart v. Snohomish County Public Utility District No. 1*, No. C16-0020-JCC, 2017 WL 4538956, at *1 (W.D. Wash. Oct. 11, 2017), a court listed a range of reasonable paralegal rates, from $145 to $240. Because Plaintiffs fail to provide evidence justifying hourly rates of $295 and $285 for paralegal work, such as the paralegals' years of experience, the Court uses the low end of the *Stewart* range. Thus, the reasonable rate for paralegals here is $145.

For remaining counsel, the Court finds that Mr. Chang's hourly rate should be reduced to $600, in keeping with Mr. Perez's reduction. But Ms. Tack-Hooper's and Ms. Nowlin's hourly rates of $500 and $400, respectively, are reasonable and do not need to be reduced. The Court finds that, given their experience, their rates are reasonable. Ms. Tack Hooper has more than eleven years of experience; Ms. Nowlin, more than nine. Dkt. # 169 ¶¶ 2, 6.

### (3) Reasonableness of the Hours

As with the hourly rate, the party seeking fees has the "burden of showing the time spent and that it was reasonably necessary to the successful prosecution" of the case. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989). This requires evidence supporting the requested hours. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court excludes those hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434.

In total, Plaintiffs claim that their counsel spent 542.15 hours[2] in bringing this

---

[2] Plaintiffs claim that they are seeking attorneys' fees for 485.45 hours' worth of work. Dkt. # 166 at 5. The Court, however, has reviewed and tallied all the time entries that they have submitted and has calculated a total of 542.15 hours. In calculating attorneys' fees, the Court relies on its own tabulation, not Plaintiffs' representation. The Court arrived at the total using the actual timesheets submitted by Perkin Coie, the ACLU of Washington, and the Fred T. Korematsu Center for Law and Equality. Dkt. # 167 Ex. A; Dkt. # 169 Exs. A & B; Dkt. # 170 Ex. A. Those timesheets result in a total of 542.15 hours that the Court uses here.

ORDER – 15

contempt motion. Dkt. # 166 at 5. That total includes "prepar[ing] and fil[ing] the Motion to Hold the City in Contempt, the reply brief in support of the same, and the Motion for Sanctions." *Id.*

The City argues that much of this time is unrecoverable. Dkt. # 176 at 2. Many of Plaintiffs' time entries, it says, are duplicative, block billed, clerical, or unrelated to the deployments at issue. *Id.* It also says that the number of hours must be discounted to account for Plaintiffs' narrow success. *Id.* at 7. After all, Plaintiffs only prevailed on showing four instances of contempt out of 122 deployments. *Id.* To that end, the City has reviewed opposing counsel's time entries and has highlighted which ones should be stricken. Dkt. # 174. The City asks to exclude those entries based on the following criteria: the entry relates to use of crowd control weapons during the August 26, 2020 protest (in which the Court found no violation); the entry relates to witnesses whose accounts did not form the basis for the contempt order; the entry is vague, clerical, or block billed. *Id.*

Having reviewed all the time entries submitted by Plaintiffs, the Court agrees with the City: significant reductions are required here. To exclude hours that are excessive, redundant, or unnecessary, a court has two options. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013). First, it may exclude the hours for which it would be unreasonable to compensate the prevailing party by conducting an "hour-by-hour analysis of the fee request." *Id.* Second, if faced with a "massive fee application," the court may make "across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure" to exclude non-compensable hours in the application. *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)). Whether the court applies the cuts to the number of hours claimed or the final lodestar figure "makes no difference." *Id.*

Here, an "hour-by-hour analysis" is impractical. The request reflects the work done by twelve attorneys and two paralegals, with varying levels of experience and

ORDER – 16

hourly rates, across three different organizations. Dkt. # 166 at 2-3. In discounting the hours sought, the Court will not go entry-by-entry as the City suggests. Instead, it will employ an across-the-board percentage cut to the final lodestar figure. The Court reduces the final lodestar figure on two grounds.

### (a) Block-Billed, Vague, Clerical Entries

First, as the City correctly observes, many time entries are block billed, vague, or clerical. *See, e.g.*, Dkt. # 167 at 18 (6.8 hours to "[c]onduct video and [use of force report] review of September 23rd events"); Dkt. # 169 at 5 (9.3 hours to "[r]eview videos, declarations, and use of force reports for reply," prepare notes on the same, and incorporate the same into the reply); *id.* at 8 (9 hours for "[i]nterviewing protestors about 9/7 SPOG rally"). These entries fail to meet Plaintiffs' burden to "document[] the appropriate hours expended." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). Billing in this manner makes it impossible to determine the reasonableness of the work and to identify distinct claims. *Id.* As such, these types of entries are within the Court's discretion to exclude. *Id.* After careful review, however, the Court finds that the frequency of these entries is slight. On balance, the Court determines that these entries warrant a 5 percent reduction to the total lodestar figure.

### (b) Partial Success

Second, the Court must account for Plaintiffs' limited success. "The reasonableness of [a] fee is determined primarily by reference to the level of success achieved by the plaintiff." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). A court must "provide a concise but clear explanation of its reasons for the fee award" and "make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* When a court decides that a percentage cut is warranted, it must explain "why it chose to cut the number of hours or the lodestar by the specific percentage it did." *Gonzalez*, 729 F.3d at 1203.

ORDER – 17

Plaintiffs brought this motion for contempt in response to SPD's "repeated[]," "open," and prolific use of crowd control weapons on four separate days of protests. Dkt. # 114. In the end, of 122 total deployments, the Court found that four clearly violated its preliminary injunction orders. Dkt. # 161 at 24; Dkt. # 179 ¶ 4. The four violations were sufficient to hold the City in contempt. But now, in crafting a sanction, the Court must acknowledge that Plaintiffs' success was narrow when compared to the relief sought. Surely, awarding attorneys' fees only for the work related to the four specific violations is an impossibility. The attorneys did not bill their time deployment-by-deployment, nor would have it been reasonable for them to do so. No formula, then, will be perfect. But the Court sets forth some guiding principles in explaining its fee award.

To start, the award must be reduced by at least half. The Court's contempt order was only based on four of 122 deployments, far fewer than half. Plaintiffs failed to prove that the remaining deployments were violations. Next, the Court has already applied a 5 percent discount for block-billed, ambiguous, and clerical entries. Thus, at minimum, the Court will apply a 55 percent reduction.

Were the Court to apply strict arithmetic and compare success sought against success obtained, as the City suggests, it would find Plaintiffs' success rate at about 3 percent. Dkt. # 176 at 7. The Court will not apply that calculation, however, because a "pro rata distribution of fees" in this way "makes no practical sense." *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 808-09 (9th Cir. 1994); *see also McCown*, 565 F.3d at 1104. Still, the 3 percent figure may provide an upper, albeit impractical, extreme for the Court to consider. *See McCown*, 565 F.3d at 1105 ("Although the district court need not be so mechanical as to divide the amount of fees and costs requested by the number of claims, and therefore grant one-ninth of the fees and costs, the district court should take into account [plaintiff]'s limited success when determining a reasonable award.").

In all, the Court finds that a 65 percent reduction is appropriate. Plaintiffs' success

ORDER – 18

was indeed narrow. But to bring this motion Plaintiffs were required to parse complex and dynamic protests, during which hundreds of protestors and dozens of police officers exchanged countless projectiles. Dkt. # 161 at 2. Each violation shared a common core of facts with the other deployments. To obtain their success, Plaintiffs inevitably had to review all deployments and should not be penalized for doing so. What is more, the Plaintiffs achieved a public benefit. Through this motion, the Court has identified several misuses of crowd control weapons and has provided SPD guidance for any future uses. Now SPD may use the Court's contempt order to avoid more violations. Peaceful protestors who may be harmed by SPD's previous interpretation of the preliminary injunction will, in theory, no longer be. This is a significant "nonmonetary success" that the Court also considers in setting the reduction at 65 percent. *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996).

Plaintiffs shall be awarded attorneys' fees as follows:

| Timekeeper | Hourly Rate | Hours Worked | Total |
|---|---|---|---|
| **David Perez** | 625 | 19.6 | $12,250 |
| **Carolyn Gilbert** | 420 | 56.7 | $23,814 |
| **Rachel Haney** | 420 | 83.2 | $34,944 |
| **Nitika Arora** | 420 | 7 | $2,940 |
| **Paige Whidbee** | 420 | 1.4 | $588 |
| **Rachel Dallal** | 420 | 39.4 | $16,548 |
| **Malori McGill** | 270 | 17.4 | $4,698 |
| **Delaney Butler** | 270 | 15.5 | $4,185 |
| **Caitlin Hoeberlein** | 270 | 15 | $4,050 |
| **Kiyomi Robinson** | 145 | 36.5 | $5,292.50 |
| **Maxim Yeryomenko** | 145 | 0.4 | $58 |

ORDER – 19

| Lisa Nowlin | 400 | 66.25 | $26,500 |
|---|---|---|---|
| Molly Tack-Hooper | 500 | 118.7 | $59,350 |
| Robert Chang | 600 | 65.1 | $39,060 |
| **Total Hours Worked** | | 542.15 | |
| **Initial Lodestar Calculation** | | | **$234,277.50** |
| **Final Lodestar Calculation (Applying 65% Reduction)** | | | **$81,997.13** |

Thus, Plaintiffs shall be awarded $81,997.13 in attorneys' fees. The Court need not adjust that amount further using the *Kerr* factors because those factors have already been subsumed in the Court's calculations. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002) (declaring that a court *may* adjust the final lodestar figure based on *Kerr* factors and need only consider those factors "called into question by the case at hand and necessary to support the reasonableness of the fee award" (quoting *Kessler v. Assocs. Fin. Servs. Co. of Hawaii*, 639 F.2d 498, 500 n.1 (9th Cir. 1981))).

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion for Contempt Sanctions (Dkt. # 164); **GRANTS in part** and **DENIES in part** Plaintiffs' Petition for Attorney's Fees (Dkt. # 166); and **DENIES** Defendant's Motion for Reconsideration and Request for Leave to Supplement the Record (Dkt. # 178). The City is hereby **ORDERED** to pay Plaintiffs' attorneys' fees in the amount of $81,997.13.

DATED this 28th day of January, 2021.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 20